```
           IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF TENNESSEE
                     WESTERN DIVISION
```

| | |
|---|---|
| In re:  Regions Morgan         )<br>Keegan Open-End Mutual Fund   )<br>Litigation                     )<br>                                )<br>Elizabeth P. Willis, et al.    )<br>                                )<br>                                )<br>                                )<br>     Plaintiffs,               )<br>                                )<br>v.                              )<br>                                )<br>Morgan Keegan & Co., Inc.,      )<br>et al.                         )<br>                                )<br>     Defendants.               )  | Case Nos. 07-2784<br>           07-2830 |

**ORDER DENYING DEFENDANT'S MOTION TO PRECLUDE ARBITRATION OF DERIVATIVE AND CLASS CLAIMS AND FOR A STAY OF DISCOVERY**

Before the Court is Defendant Morgan Keegan & Co., Inc.'s motion to preclude arbitration and stay discovery in the arbitration styled Koella v. Morgan Keegan & Co., FINRA Dispute Resolution No. 08-00181 (the "Koella arbitration"). Because neither the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. §§ 78bb(f) and 77p, nor the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-307, allows this Court to enjoin the Koella arbitration under the present circumstances and because Morgan Keegan has not

demonstrated an entitlement to relief under the All Writs Act, 28 U.S.C. § 1651(a), the Court DENIES the motion.

## I. Factual Background

According to their Statement of Claim filed with the arbitration panel, Ernest Koella, III, his wife Cheryl Koella, Carl Koella, III, Rockford Manufacturing Company and its 401(K) savings plan[1], Barbara Sue Bowman, and Harriet Stevens Koella (collectively "Claimants") "invested heavily" in the Morgan Keegan Select Intermediate Bond Fund, the RMK Multi-Sector High Yield Fund, the RMK Strategic Income Fund, the RMK Advantage Income Fund, and the RMK High Income Fund (collectively the "Funds"). (Statement of Claim, Docket No. 161 Ex. 2, at ¶ 15.) ("SOC") Claimants invested in the Funds on the advice of their investment advisor Scott Sexton, a Morgan Keegan financial representative and broker. (SOC at ¶ 11.) Claimants assert that both Sexton and Defendant knew that Claimants "did not want risky investments that would expose their investment principal to sudden and dramatic losses." (SOC at ¶ 14.) Despite this knowledge, Claimants allege that Defendant recommended they invest in the Funds; although, it knew the Funds were actually "high-risk, junk

---

[1] Ernest Koella, III is the President of Rockford Manufacturing Co. and serves as the trustee of its 401(K) plan. Statement of Claim at ¶¶ 1, 7.

2

bond funds with portfolios grossly overweighted and concentrated with sub-prime debt securities and other high-risk asset-backed debt obligations," thereby making the Funds an inappropriate investment for a corporate retirement plan and individual investors focused on preserving their principal.  (SOC at ¶ 17.)  Claimants further assert that the portfolios Morgan Keegan structured for them were undiversified, i.e., consisting largely of the Funds, leaving Claimants' risk unhedged.  (SOC at ¶ 18.)

The Funds' value collapsed following the rapid decline in value of the Funds' mortgage-backed assets.  Claimants cumulatively lost $10.3 million on their investments.  (SOC at ¶ 33.)  Pursuant to the arbitration clause contained in their client agreement with Morgan Keegan, Claimants filed a Statement of Claim with the Financial Industry Regulatory Authority ("FINRA")[2] seeking to arbitrate their dispute with Defendant.  Claimants seek damages of $10.3 million, together with punitive damages, interest, costs, and attorneys' fees for their claims of common law negligence

---

[2] FINRA is "the largest independent regulator for all securities firms doing business in the United States."  FINRA resulted from the July 2007 merger of the National Association of Securities Dealers with the member regulation, enforcement, and arbitration functions of the New York Stock Exchange.  See About the Financial Industry Regulatory Authority, available at http://www.finra.org/AboutFINRA/ (last visited on Sep. 25, 2009).

3

and unsuitability; breach of fiduciary duty; breach of contract; misrepresentation and fraud; and violation of the Tennessee Blue Sky Laws, Tenn. Code Ann. §§ 48-2-101 et seq., and the Tennessee Consumer Protection Act, Tenn. Code Ann. §§ 47-18-101 et seq.

Morgan Keegan filed the present motion in this Court on December 18, 2008. Claimants filed their response on January 9, 2009. With leave of Court, Defendant filed a reply on January 23. Defendant argues that Claimants have brought derivative claims to arbitration in violation of FINRA Rule 12205, which states that "[S]hareholder derivative actions may not be arbitrated under the Code." (Memorandum of Law in Support of Defendant's Motion at 11-15.) ("Def.'s Memo") Defendant also asserts that Claimants seek to litigate issues related to the class actions currently before this Court in the MDL proceedings without properly opting-out of any potential class action award and thereby violate FINRA Rule 12204.[3]  (Def.'s Memo at 16-18.)

---

[3] FINRA Rule 12204 provides, in pertinent part, that:

> Any claim that is based upon the same facts and law, and involves the same defendants as in a court-certified class action or a putative class action , or that is ordered by a court for class-wide arbitration at a forum not sponsored by a self-regulatory organization, shall not be arbitrated under the Code, unless the party bringing the claim files with FINRA one of the following:
>
> (1)  a copy of a notice filed with the court in which the class action is pending that the party will not participate

4

See In re Regions Morgan Keegan Open-End Mutual Fund Litig., No. 07-2784 (W.D. Tenn.). Defendant argues that the discovery requests approved by the arbitrators are onerous and an effort by Claimants' counsel to circumvent this Court's automatic stay pending disposition of a motion to dismiss. (Def.'s Memo at 18-27.) See 15 U.S.C. § 78-u4(b)(3)(B) (requiring an automatic stay of discovery in all federal securities suits prior to the disposition of the motion to dismiss). Defendant seeks an injunction prohibiting Claimants from arbitrating any derivative claims and those claims that it alleges mimic the claims currently before this Court in the MDL action. (Def.'s Memo at 15, 18.) Defendant alternatively requests an injunction limiting the scope of discovery available to Claimants in arbitration. (Def.'s Memo at 25.) Claimants dispute Defendant's assertions and argue that these questions are issues for the arbitrators to determine.

**II. Analysis**

Defendant seeks relief from this Court in the form of an order precluding Claimants from arbitrating some or all

---

      in the class action or in any recovery that may result from the class action, or has withdrawn from the class according to any conditions set by the court; or
      (2)  a notice that the party will not participate in the class action or in any recovery that may result from the class action.

FINRA Rule 12204(b).

5

of their claims or, in the alternative, limiting the scope of discovery. Defendant claims that three sources of authority permit this Court to issue such an order: SLUSA, the FAA, and the All Writs Act. (Def.'s Memo at 23-27.) Defendant does not argue that this Court's traditional equitable powers allow it to enter a "traditional injunction" prohibiting arbitration or limiting discovery. See Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1098 (11th Cir. 2004) (Tjoflat, J.) (noting that an injunction preventing a party from arbitrating a claim cannot be issued under a court's traditional equitable powers). It is axiomatic that a court cannot grant injunctive relief unless it has the authority to issue that relief.

### A. SLUSA Does Not Authorize the Court to Enjoin Arbitrations

Defendant maintains that SLUSA authorizes this Court to issue an injunction precluding Claimants' request for discovery. Defendant correctly notes that Congress enacted SLUSA to prohibit the shift of securities litigation from federal to state courts so that plaintiffs could not thwart Congress' intent to make federal courts "the sole venue for class actions alleging fraud in the purchase and sale of covered securities." Behlen v. Merrill Lynch, 311 F.3d 1087, 1091-92 (11th Cir. 2002). Litigants began to file

6

securities actions in state court to circumvent the stay of discovery in federal securities actions mandated by the Private Securities Litigation Reform Act of 1995 ("PSLRA"). See 15 U.S.C. 77z-1(b)(1) ("[A]ll discovery and other proceedings shall be stayed during the pendency of any motion to dismiss.")  To close this loophole, SLUSA amended the stay provisions of the PSLRA to provide:

> Upon a proper showing, a court may stay discovery proceedings <u>in any private action in a State court</u> as necessary in aid of its jurisdiction, or to protect or effectuate its judgments, in an action subject to a stay of discovery pursuant to this subsection.

15 U.S.C. § 77z-1(b)(4) (emphasis added).  Defendant argues that this amendment demonstrates Congress's intent to prevent litigants from using <u>any</u> forum to circumvent the stay mandated by the PSLRA.  (Def.'s Memo at 20-21.)

"'[L]egislative intent should be divined first and foremost from the plain language of the statue,' and if the text is clear, judicial inquiry is complete." <u>Fieger v. United States Attorney Gen.</u>, 542 F.3d 1111, 1116 (6th Cir. 2008) (quoting <u>Chrysler Corp. v. Comm'r</u>, 436 F.3d 644, 654 (6th Cir. 2006)).  As the statutory text makes clear, Congress directed its concern at actions "in a State court" that would circumvent the mandatory stay of federal discovery provided in the PSLRA.  15 U.S.C. § 77z-1(b)(4).

7

The word arbitration does not appear in the statute. As numerous courts have confirmed, Congress's sole intent was to prevent state courts from becoming a venue where litigants could circumvent the new restrictions placed on securities litigation by the PSLRA. See, e.g., Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit, 547 U.S. 71, 81-82 (2006) (noting that Congress enacted SLUSA to stem the tide of securities suits to state courts seeking to avoid heightened federal pleading standards); Newby v. Enron Corp. (In re Enron Corp. Sec., Derivative, & ERISA Litig.), 535 F.3d 325, 338 (5th Cir. 2008) (same); Behlen, 311 F.3d at 1091-92 (same). Defendant has cited no case where a court has enjoined discovery in an arbitration on the basis of SLUSA. Indeed, in every case Defendant cites, a district court has enjoined a state court proceeding. See, e.g., In re Cardinal Health, Inc. Sec. Litig., 365 F. Supp. 2d 866, 877 (S.D. Ohio 2005) (staying discovery in state court cases related to the federal securities litigation); In re DPL Inc. Sec. Litig., 247 F. Supp. 2d 946, 951 (S.D. Ohio 2003) (same). This Court must enforce the statute as written and declines the invitation to amend the statute's injunction provision to add the word "arbitration."

Were it possible for legislative history to override the clear and unambiguous language of the statutory text, Defendant would also fail.  The legislative history of SLUSA is similarly clear that the provision at issue applies only to proceedings in state court.  Cf. Chrysler Corp., 436 F.3d at 654 ("Only when our reading results in ambiguity or leads to an unreasonable result, may we look to the legislative history." (emphasis added, citation omitted)).  As the House report notes:

> [The injunction] provision authorizes a court to stay such proceedings in State Court, regardless of whether:  (1) there exists a parallel action in Federal court; or (2) the State proceedings were brought prior to, subsequent to, or concurrently with, a Federal filing.  Because circumvention of the stay of discovery of the Reform Act is a key abuse that this legislation is designed to prevent, the Committee intends the courts use this provision liberally, so that the preservation of State court jurisdiction of limited individual securities fraud claims does not become a loophole through which the trial bar can engage in discovery not subject to the stay of the Reform Act.

H.R. No. 105-640, 18 (1998) (emphasis added).  Courts are to construe the statute liberally to prevent litigants from using state court actions as a loophole, not to expand the statute to areas other than those Congress intended.  Because neither the statutory text nor the legislative history provides a basis for this Court to enjoin discovery

9

proceedings in an arbitration, SLUSA does not authorize injunctive relief.

**B. The FAA Does Not Authorize an Injunction**

Defendant briefly asserts that the FAA authorizes this Court to enjoin the Koella arbitration on the ground that Claimants' action seeks to arbitrate both derivative and class claims, which the FINRA rules prohibit. (Defendant's Reply Memorandum ("Def.'s Reply") at 9.) Defendant's current motion, however, is not a motion to compel arbitration under §4 of the FAA. The parties voluntarily initiated an arbitration proceeding before FINRA. Defendant also did not file this action under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), seeking a declaration of the breadth of the parties' arbitration agreement. Cf. Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 82 (2002) (noting that the parties invoked the court's declaratory jurisdiction to construe their arbitration agreement); Royal Alliance Assocs., Inc. v. Branch Ave. Plaza, L.P., 587 F. Supp. 2d 729, 731 (E.D. Va. 2008) (same). Therefore, the FAA does not authorize this Court to enjoin the arbitration proceeding in the circumstances before the Court.

Defendant submitted the claim to arbitration without first contesting the scope of Claimants' Statement of Claim

10

in this Court. As the Sixth Circuit has held, "[T]he parties determine[] the issue of arbitrability when they submit[] the issue to an arbitrator." Int'l Union of Operating Eng'rs, Local 369 v. Office & Prof'l Employees Union, Local 367, No. 94-5786, 1995 U.S. App. LEXIS 36178, at *9 (6th Cir. Sept. 7, 1995). Defendant executed FINRA's Uniform Submission Agreement to submit the entire dispute to arbitration. (Def.'s Reply at 10.) Defendant did not offer an objection before submission reserving the right to contest whether Claimants impermissibly sought to arbitrate derivative and class claims. The Submission Agreement's statement that the parties agreed to arbitrate the matter "in accordance with the Rules . . . and/or Code of Arbitration Procedure of the sponsoring organization [FINRA]" is not a reservation of a right to litigate the issue of arbitrability. (Def.'s Reply at 10.) It is merely a statement that the parties have agreed that their arbitration will comply with FINRA rules and procedures. Therefore, "where the parties first submit the issue of arbitrability without reservation to an arbitrator rather than a court, [courts] will imply an agreement that the arbitrator's decision [on the issue of arbitrability] is within his authority." Int'l Union, 1995 U.S. App. LEXIS 36178, at *9 (citing Vic Wertz Distrib. Co. v. Teamsters

11

Local 1038, 898 F.2d 1136, 1140 (6th Cir. 1990)). Defendant did not expressly reserve the issue of arbitration in the Submission Agreement or file a declaratory judgment action before submission. It cannot now obtain relief under the FAA.

### C. Defendant Does Not Satisfy the Standard for Relief Under the All Writs Act

Defendant's final argument is that this Court can use its authority under the All Writs Act, 28 U.S.C. § 1651(a) (the "Act"), to enjoin the arbitration of what Defendant asserts are impermissible derivative and/or class claims. (Def.'s Reply at 17.) At a minimum, Defendant argues that this Court should rely on the Act to enjoin Claimants' request for discovery until this Court rules on a forthcoming motion to dismiss, thus preventing Defendant from shouldering the "unreasonable burden" of having to litigate contemporaneously in two different forums. (Def. Memo at 23-24.)

In the present posture of the case, the Act does not permit this Court to enjoin arbitration. As the Supreme Court has explained, the Act "is a residual source of authority to issue writs that are not otherwise covered by statute" so that "[w]here a statute specifically addresses the particular issue at hand, it is that authority, and not

12

the All Writs Act, that is controlling." Pennsylvania Bureau of Corr. v. United States Marshals Serv., 474 U.S. 34, 43 (1985). A court may only employ the Act "to fashion extraordinary remedies when the need arises . . . [not] when[] compliance with statutory procedures appears inconvenient or less appropriate." Id.

Here, a specific act addresses the relief Defendant seeks: the FAA. Defendant could have sought an order precluding arbitration of impermissible claims by filing an action under § 4 of the FAA before submitting any claims to arbitration. See 9 U.S.C. § 4 (authorizing district courts to compel arbitration of properly arbitrable claims). Alternatively, Defendant could have filed an action under the Declaratory Judgment Act to determine the scope of the FINRA arbitration provisions at issue. See Royal Alliance, 587 F. Supp. 2d at 731. Defendant instead submitted the entire claim to arbitration without reservation. Defendant may not now invoke the Act when alternative statutory procedures exist. Pennsylvania Bureau, 474 U.S. at 43.

Even if the existence of alternative statutory procedures did not preclude reliance on the Act, Defendant has failed to demonstrate an entitlement to relief under the high standard the Act mandates. The Act "fill[s] the interstices of federal judicial power when those gaps

13

threaten to thwart the otherwise proper exercise of federal courts' jurisdiction." Pennsylvania Bureau, 474 U.S. at 41 (citations omitted). Although the Act authorizes the issuance of writs to compel action by parties and non-parties who "are in a position to frustrate the implementation of a court order or the proper administration of justice," United States v. New York Tel. Co., 434 U.S. 159, 174 (1977), that authority should only be invoked when a court "is . . . persuaded that [its] ability to decide [the] matter is in danger of serious impairment by virtue of [a party's] efforts to gain redress for alleged wrongs . . . by means of arbitration." In re ClassicStar Mare Lease Litig., MDL No. 1877, 2008 U.S. Dist. LEXIS 56247, at *28 (E.D. Ky. July 23, 2008).

Defendant points to the burden of arbitration discovery requests. (Def. Memo at 23.) Such burdens, however, are the necessary result of any parallel proceeding. The parallel Koella arbitration does not threaten this Court's jurisdiction or the efficacy of any of its orders. See Klay, 376 F.3d at 1110-11; In re ClassicStar, 2008 U.S. Dist. LEXIS 56274, at *26 ("The desire to prevent[ ] the piecemeal litigation that occurs when parties simultaneously assert claims in several forums, whether before a state court or an arbitration

14

panel, is insufficient to warrant an injunction under the All Writs Act." (alteration in original, internal quotations and citation omitted)). As the Sixth Circuit has recently explained, the avoidance of piecemeal adjudication does not undergird federal arbitration policy. See Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, 556 F.3d 459, 467-68 (6th Cir. 2009). "[T]he 'Arbitration Act requires district courts to compel arbitration of . . . arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums.'" Id. at 468 (omission and emphasis in original) (quoting Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 217 (1985)). That is the risk parties knowingly accept when they agree to arbitrate any future disputes. Although SLUSA evinces a federal policy to prevent the piecemeal adjudication of securities claims in state courts, it does not evince a policy to prevent their determination in arbitration. See 15 U.S.C. § 77z-1(b)(4). This Court cannot override the strong policy preference in favor of arbitration without a statutory directive to the contrary. See Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 119 (2005) (declining to hold that

15

employment contracts are non-arbitrable in the absence of an express exemption).

The arbitrators' discovery order does not frustrate this Court's ability to apply the heightened pleading standards required by the PSLRA in any future ruling on a motion to dismiss. If the existence of a parallel foreign judicial proceeding cannot justify enjoining arbitration, the added burden on Defendant here cannot justify this Court's use of the All Writs Act to enjoin the Koella arbitration or its related discovery. Cf. Answer in Genesis, 556 F.3d at 469.

### III. Conclusion

For the foregoing reasons, neither SLUSA nor the FAA authorizes this Court to enjoin the Koella arbitration or the related discovery, and Defendant cannot meet the high burden required under the All Writs Act. The Court, therefore, DENIES Defendant's Motion to Preclude Arbitration.

So ordered this 30th day of September, 2009.

                                          s/ Samuel H. Mays, Jr.
                                          SAMUEL H. MAYS, JR.
                                          UNITED STATES DISTRICT JUDGE