IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

| | |
|---|---|
| IN RE: REGIONS MORGAN KEEGAN OPEN-END MUTUAL FUND LITIGATION )<br>)<br>)<br>) | |
| RICHARD A. ATKINSON, MD, PATRICIA B. ATKINSON, et al. )<br>) | |
| ) | Case Nos. 07-2784 |
| Plaintiffs, ) | 07-2830 |
| ) | 08-2071 |
| v. ) | |
| ) | |
| MORGAN ASSET MANAGEMENT, INC., MORGAN KEEGAN & COMPANY, INC., MK HOLDING, INC., REGIONS FINANCIAL CORPORATION, REGIONS BANK, MK HOLDING, INC., et al., )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| Defendants. ) | |

---

**ORDER GRANTING RMK OPEN-END FUND GROUP'S MOTION FOR APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL AND LIAISON COUNSEL**

---

Plaintiffs Kathryn S. Cashdollar, Dajalis Ltd., Jeanette H. Landers, H. Austin Landers, and Frank D. Tutor (collectively "Movants" or the "RMK Open-End Fund Group") move for their appointment as lead plaintiff in these consolidated suits.  The Movants also seek approval of Head, Seifert, & Vander Weide, P.A. ("Head Seifert") and Lockridge Grindal Nauen, P.L.L.P. ("Lockridge Grindal") as

lead counsel and Apperson, Crump, & Maxwell, PLC ("Apperson Crump") as liaison counsel. For the following reasons, the Court finds that the Movants meet the requirements of the Public Securities Litigation Reform Act, ("PSLRA"), 15 U.S.C. §§ 77z-1 and 78u-4, and Federal Rule of Civil Procedure 23 ("Rule 23"). Therefore, the motion is GRANTED.

## I. Factual Background

For purposes of the present motion, only a brief factual summary of the underlying claims is necessary. The Court previously described the facts giving rise to this litigation when considering the <u>Atkinson</u> case, one of the consolidated actions in which Movants seek appointment as lead plaintiff:

> Morgan Keegan Select Fund, Inc. ("MK Select") is an open-end management investment company that consists of three portfolios: Regions Morgan Keegan Select Short Term Bond Fund ("Short Term Fund"), Regions Morgan Keegan Select Intermediate Bond Fund ("Intermediate Fund"), and Regions Morgan Keegan Select High Income Fund ("High Income Fund"). (Atkinson Am. Compl. ¶ 7.) Collectively, these three funds are referred to as the "Open-End Funds."
>
> Morgan Asset Management, Inc. ("Morgan Asset") managed and advised the Open-End Funds during the relevant time period. (Atkinson Am. Compl. ¶ 28.) . . . . Morgan Keegan & Company, Inc. ("Morgan Keegan"), a broker/dealer that provided accounting and administration services for the funds, was also paid a fee based on the net assets in each fund. MK Holding, Inc. (the

> parent company of Morgan Asset) and Morgan Keegan are wholly owned subsidiaries of Regions Financial Corporation ("Regions").
>
> In July, 2007, Morgan Keegan disclosed that its proprietary funds were experiencing challenges because of "rising short term interest rates, extremely tight spreads in credit markets, and volatility in sub-prime mortgage markets." (DeJoseph Compl. ¶¶ 6, 64.) In August, Morgan Keegan revealed that the "recent instability in the market for fixed income securities, particularly mortgage-backed securities, has affected the liquidity of the Funds portfolio." (Hartman Compl. ¶ 51; DeJoseph Compl. ¶ 8.) Given the difficulty Morgan Keegan had in valuing the assets in its portfolios in the absence of market demand, "the Board of Directors [] retained an independent valuation consultant to assist in determining the fair value of certain of the Funds portfolio securities." (Id.)
>
> The funds sustained significant losses during 2007. The Open-End Funds lost between 16.4 percent and 61.4 percent of their total value. (Atkinson Am. Compl. ¶¶ 68-70.) . . . . Plaintiffs contend that these losses are magnitudes greater than those suffered by similar funds and support the argument that Defendants pursued an unusually risky investment strategy. (Atkinson Am. Compl. ¶ 71.) According to Plaintiffs, Defendants' investment strategy, which focused on collateralized debt obligations ("CDOs"), including mortgage-backed and asset-backed securities, violated securities laws and was not adequately disclosed to investors. (Atkinson Compl. ¶¶ 1, 275, 285, 293, and 297.)

(Atkinson, et al. v. Morgan Asset Mgmt, Inc., et al., CA 07-2784, Order Granting in Part and Denying in Part Mots. at 4-7 (footnotes omitted).)

On September 23, 2008, this Court consolidated the Atkinson, Willis, and Hartman actions. Id. at 39-40. In

3

the consolidation order, the Court also required the Atkinson plaintiffs to republish notice to all class members who might have an interest in moving for appointment as lead plaintiff. Id.; see also 15 U.S.C. § 77z-1(a)(3)(A) (requiring the publication of notice to potential lead plaintiffs). The Atkinson plaintiffs published the required notice on October 13, 2008, in Prime Newswire, "a widely circulated national business-oriented . . . wire service." Id. § 77z-1(a)(3)(A)(i). Pursuant to the Court's order and the PSLRA, the notice gave all potential lead plaintiffs sixty days to file motions with this Court seeking appointment. On December 12, 2008, the last day applicants could file such motions, Movants filed the present motion seeking appointment as lead plaintiff. See id. § 77z-1(a)(3)(A)(i)(II) (noting that motions for appointment as lead plaintiff must be filed "not later than 60 days after the date on which the notice is published").

On January 14, 2009, C. Fred Daniels, the Trustee ad Litem (the "Trustee") for the George C. Von Gall, III, Intervivos Q-TIP Trust Under Agreement and all other trusts and custodial accounts over which Regions Bank served as trustee, filed a response. Although not seeking to be appointed as sole lead plaintiff, the Trustee contested Movants' assertion in their motion that they held the

4

largest financial interest in the present suit. (Trustee ad Litem's Response at 1.) ("Trustee's Resp.") With the Court's permission, the Movants filed a reply on February 4, and the Trustee filed a surreply on February 19, 2009. The Trustee asserts his objection that the more than 4,500 trust accounts over which he is responsible have purchased more than $370 million of shares in the Open-End Funds, making him the most financially interested litigant. (Trustee Ad Litem's Surreply at 2 n.2) ("Trustee's Reply).

**II. Analysis**

The PSLRA requires that this Court make a decision about the appointment of the lead plaintiff "as soon as practicable" following its decision on consolidation. 15 U.S.C. § 77z-1(a)(3)(B)(ii). Each plaintiff who seeks appointment as lead plaintiff must file a statement with the Court that:

> (i) states that the plaintiff has reviewed the complaint and authorized its filing;
>
> (ii) states that the plaintiff did not purchase the security that is the subject of the complaint at the direction of plaintiff's counsel or in order to participate in any private action arising under this subchapter [15 USCS §§ 77a et seq.];
>
> (iii) states that the plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary;

5

> (iv) sets forth all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint;
>
> (v) identifies any other action under this subchapter [15 USCS §§ 77a et seq.], filed during the 3-year period preceding the date on which the certification is signed by the plaintiff, in which the plaintiff has sought to serve, or served, as a representative party on behalf of a class; and
>
> (vi) states that the plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond the plaintiff's pro rata share of any recovery, except as ordered or approved by the court in accordance with paragraph (4).

Id. § 77z-1(a)(2)(A).  The putative lead plaintiff must file his certification within the same sixty days he is given to move for appointment as lead plaintiff.  In re Able Labs. Sec. Litig., 425 F. Supp. 2d 562, 565-66 (D.N.J. 2006).

The PSLRA creates a rebutttable presumption that the "most adequate plaintiff" to serve as lead plaintiff is the one who 1) has either filed the initial complaint or made a motion in response to the sixty-day notice; 2) in the Court's judgment "has the largest financial interest in the relief sought by the class"; and 3) "otherwise satisfies the requirements of Rule 23."  15 U.S.C. § 77z-1(a)(3)(B)(iii)(I).  A member of the class may rebut the statutory presumption that the Court should appoint the

6

most adequate plaintiff as lead plaintiff by showing that the most adequate plaintiff "will not fairly and adequately protect the interests of the class" or that he "is subject to unique defenses that render such plaintiff incapable of representing the class." Id. § 77z-1(a)(3)(B)(iii)(II).

**A.  The Movants Have the Largest Financial Interest**

Because Movants are the only group that filed a formal motion for appointment as lead plaintiff, the Court will first consider whether they meet the PSLRA's requirements to serve in that capacity. Movants timely filed their motion within the sixty-day period established by statue. See 15 U.S.C. § 77z-1(a)(3)(A)(ii). The first question is whether the Movants have the largest financial interest in the relief sought by the consolidated suits. See Id. § 77z-1(a)(3)(B)(iii)(I)(bb). The party with the largest financial interest is generally considered to be the party who suffered the greatest loss. See, e.g., In re Cendant Corp. Litig., 264 F.3d 201, 223 (3d Cir. 2001); In re Telxon Corp. Sec. Litig., 67 F. Supp. 2d 803, 818 (N.D. Ohio 1999).

Movants timely filed the present motion on December 12, 2008. According to the certification they submitted, they invested a total of $2,110,911.00 with the Funds,

7

sustaining losses of $1,084,467.00.[1] (Affidavit of Jerome A. Broadhurst, Exhibits B-C.) ("Broadhurst Aff.")  After the deadline for filing motions and certifications passed, the Trustee submitted a response asserting that he represented trusts that had purchased "over $370,000,000 in interests in the Open-End Funds that are the subject of this litigation." (Trustee's Resp. at 1.)  The Trustee later submitted a chart with his surreply detailing the share purchases of all of the trusts he represents. Those purchases totaled $377,906,632.42; but the Trustee has yet to submit any statement of total estimated aggregate losses. (Trustee's Reply Ex. A.)  The certifications filed by the Trustee when he filed his original suit listed only the assets held by six trusts and aggregate losses far less than those of Movants. See Daniels v. Morgan Asset Mgmt., No. 08-2454, Docket No. 1, Plaintiffs' Certification (W.D. Tenn.)  The Trustee has not disputed this fact in any filing with this Court.

As other courts interpreting the language of the PSLRA have found, the language of the statue is plain: the

---

[1] By order dated May 18, 2008, this Court ordered Movants to supplement their certification by having the Executrix of the Kathryn S. Cashdollar Estate sign the certification. (Docket No. 198.) The Movants' original certification had only the signature of the Estate's counsel. Movants filed a certification with the executrix's signature on May 22, 2008. Neither the total amount that Movants claimed as their aggregate losses nor the loss claimed individually by the Estate changed. Compare Supplement to the RMK Open-End Group's Motion for Appointment of Lead Plaintiff, at 8-9, with Broadhurst Aff. Ex. B-C.

sixty-day deadline is mandatory.  In re Abel Labs., 425 F. Supp. 2d at 565-66; In re Telxon Corp., 67 F. Supp. 2d at 818; see also U.S.C. § 77z-1(a)(3)(A)(i)(II) ("[N]ot later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff").  Courts may only examine the losses certified by the parties as of the close of the sixty-day period.  See In re Texlon Corp., 67 F. Supp. 2d at 819 (declining to consider plaintiff's certification filed after the sixty-day period when it contained a larger claimed aggregated loss); see also In re Eaton Vance Corp. Sec. Litig., 219 F.R.D. 38, 42 (D. Mass. 2003) (concluding that a plaintiff who failed to file the required certification within the sixty-day period may not serve as lead plaintiff).  That is the case even when a later-asserted loss would permit a different party to assert that it had the greatest financial interest in the litigation.  See id. at 818-19 (finding plaintiff with $428,000 loss had the greatest economic interest when plaintiff with $2.7 million loss filed late certification); In re Able Labs., 425 F. Supp. 2d at 565-66, 571 (declining to consider late amended certification asserting a $2.1 million loss and finding instead that plaintiffs with a

9

combined $1.7 million loss had the greatest financial interest).

In his two briefs in this Court, the Trustee has not disputed Movants' assertion that, as of December 2008, he had not filed a certification demonstrating that his trusts suffered losses greater than Movants' loss of $1,084,467. He, therefore, effectively concedes the point. To date, Trustee has asserted in his pleadings only that the trusts he represents have <u>invested</u> a total of more than $370 million dollars in the Funds. (<u>See</u> Trustee's Resp. at 1; Trustee's Reply at 2 n.2.) The Trustee, therefore, has not filed with this Court a certified statement detailing the total aggregate losses. Although it would seem reasonable that the Trustee would have suffered the greatest loss, the Trustee has not complied with the PSLRA's strict deadline. Congress passed the PSLRA in part to force the appointment of lead plaintiffs early in litigation and thereby end the gamesmanship that had surrounded the appointment process. <u>In re Texlon Corp.</u>, 67 F. Supp. 2d at 819. Because the Movants filed a certification by the deadline that demonstrated that, as of December 12, 2008, they had the largest aggregate loss, the Court finds that Movants have the greatest financial stake in the present suit for

10

purposes of the appointment of lead plaintiff. In re Able Labs. Sec. Litig., 425 F. Supp. 2d at 565-66, 71.

**B. Movants Meet Rule 23's Requirements**

The Movants also "otherwise satisfy the requirements of Rule 23" governing class actions. 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(cc). In the context of the selection of a lead plaintiff, courts are mainly concerned with whether a plaintiff can meet Rule 23's requirements of typicality and adequacy. In re Telxon Corp. Sec. Litig., 67 F. Supp. 2d at 807 n.10.

Rule 23(a)(3) provides that a plaintiff may sue on behalf of all members of the class only if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." Sprague v. General Motors Corp., 133 F.3d 388, 399 (6th Cir. 1998). A plaintiff's claim is typical if "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." In re Am. Med. Sys., Inc., 75 F.3d 1069, 1082 (6th Cir. 1996).

11

Movants generally allege that Defendants misled them about the composition of the Open-End Funds in which Movants invested and the methods that Defendants used to value the Funds' share prices. The Movants further assert that the proportion of the Open-End Funds' assets invested in high-risk mortgage-back securities was greater than that allowed by the Funds' investment policies and restrictions. (Compl. at ¶¶ 1, 185-98, 315-20.)  These are exactly the claims on which the other plaintiffs seek relief, and no party challenges the Movants' ability to satisfy the typicality requirement.  The Court, therefore, finds that Movants' claims are typical of those of the class that it seeks to lead.

The second pertinent requirement under Rule 23(a) is adequacy of representation.  Rule 23(a)(4) provides that a class action can be maintained only if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  This requires a two-step analysis.  First, the Court must determine whether the named representatives have interests that are antagonistic to the interests of any class members.  <u>Rodger v. Elec. Data Sys. Corp.</u>, 160 F.R.D. 532, 539 (E.D.N.C. 1995). Second, the Court must find that the class would be

represented by counsel who would vigorously prosecute the action. Id.

The first requirement is satisfied here. No party, including the Trustee, asserts that Movants have an interest antagonistic to that of any other member of the class. Indeed, as the Trustee has conceded, the Trustee may be unable to pursue some claims against Regions Bank directly because of the limitations of his authority. (See Trustee's Resp. at 5 (noting that the trustee "is not pursuing and cannot pursue" certain claims against Regions Bank).) The Court, therefore, finds that the Movants have no interests antagonistic to those of any other party.

Similarly, no party has challenged the ability of the proposed lead and liaison counsel to prosecute the current consolidated suits. The Trustee states that his "purpose is not to promote the engagement of any different or additional class counsel." (Trustee's Reply at 4.) Putative lead counsel Head Seifert and Lockridge Grindal have litigated a wide range of securities cases in both state and federal courts. (See Broadhurst Aff. Ex. D-F.) Both firms have served as lead counsel in federal securities actions before and have succeeded in gaining relief for their clients at both the trial and appellate levels. (Memorandum of Law in Support of the RMK Open-End

13

Funds Group's Motion for Appointment of Lead Plaintiff and Counsel, at 14-15.) ("Movants' Memo")  Proposed liaison counsel also has experience prosecuting complex securities actions, including service as lead counsel in an action currently pending in the Western District of Pennsylvania. (Movants' Memo at 16.)  Given this breadth of experience and the lack of objection from the Trustee, the Court finds that counsel will prosecute this action with the required vigor and skill.  See Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 562 (2d Cir. 1968) (requiring counsel to be "qualified, experienced and generally able to conduct the proposed litigation").

### C. Movants Are Qualified to Serve as Lead Plaintiff

The PSLRA allows other class members to rebut the presumption that the most adequate plaintiff is qualified to serve as lead plaintiff.  To rebut this presumption successfully, an objector must show that the most adequate plaintiff "will not fairly and adequately protect the interests of the class" or that he "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 77z-1(a)(3)(B)(iii)(II).  The Trustee generally alleges that Plaintiffs may not appreciate all of the intricacies that

14

may arise from claims the trusts may have. (See Trustee's Resp. at 5-6; Trustee's Reply at 6 n.7.)

"[O]nce the presumption is triggered, the question is not whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a fair and adequate job." In re Able Labs., 425 F. Supp. 2d at 568 (internal quotation marks and citation omitted). The Trustee's generalized fear that complications could arise that plaintiff might not foresee might be said of any proposed lead plaintiff. This concern cannot rebut the presumption that Movants are the most adequate plaintiff and therefore should serve as lead plaintiff. Id. Because the Trustee has not rebutted this presumption, the Court appoints Movants as lead plaintiff in this action.

**D. Selection of the Lead Counsel**

The PSLRA provides that "the most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 77z-1(a)(3)(B)(v). "[T]he power to 'select and retain' lead counsel belongs, at least in the first instance, to the lead plaintiff, and the court's role is confined to deciding whether to 'approve' that choice." In re Cendant

15

Corp., 264 F.3d at 273 (quoting 15 U.S.C. § 77z-1(a)(3)(B)(v)); see also In re Cardinal Health, Inc. Sec. Litig., 226 F.R.D. 298, 312 (N.D. Ohio 2005); In re Telxon Corp., 67 F. Supp. 2d at 824. Given that no party has found reason to object to the Lead Plaintiff's choice of counsel and the extensive experience their submissions to this Court demonstrate, the Court appoints Head Seifert and Lockridge Grindal as lead counsel and Apperson Crump liaison counsel. (See Broadhurst Aff. Ex. D-F.)

### III. Conclusion

For the foregoing reasons the Court GRANTS the motion to appoint Movants as lead plaintiff and their selected counsel as lead counsel in the consolidated open-end fund litigation.

So ordered this 30th day of September, 2009.

                                         s/ Samuel H. Mays, Jr.
                                         SAMUEL H. MAYS, JR.
                                         UNITED STATES DISTRICT JUDGE