# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| In re: Regions Morgan Keegan Open-End Mutual Fund Litigation | Case No. 07-2784 |

**ORDER DENYING WITHOUT PREJUDICE DEFENDANTS' MOTION TO STAY DISCOVERY IN LOUISIANA STATE COURT ACTION**

Defendants Morgan Keegan & Co., Inc., Morgan Asset Management, Inc., and MK Holding, Inc. ("Defendants") filed the present motion on August 21, 2009, seeking an injunction under the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. § 77u-4(b)(3)(D), blocking discovery in the Louisiana state court case styled <u>Firefighters' Retirement System v. Regions Bank</u>, No. 567874 (19th Jud. Dist. Parish Ct.). Firefighters' Retirement System ("FRS") has not responded to Defendants' motion, but Defendants filed a supplemental memorandum on September 15, asserting additional grounds to enjoin the Louisiana action. For the following reasons, the Court DENIES WITHOUT PREJUDICE the Defendants' motion.

## I. Factual Background

On June 12, 2008, FRS filed suit against Defendants in Louisiana state court. (Defendants' Supplemental Memo in

Support of Motion Ex. 1 (FRS Complaint) at 1.) ("Defs.' Supp." or "FRS Compl.") FRS is a legislatively chartered government corporation charged with operating the statewide retirement system for all Louisiana firefighters outside New Orleans. See La. Rev. Stat. Ann. §§ 11:2251-2265. As part of its task to manage the firefighters' retirement trust fund, the board of directors of FRS met with officials from Defendants about potential investment options for its more than $1 billion in assets. (FRS Compl. at ¶ 7.) FRS alleges that the Defendants improperly recommended that FRS invest a substantial sum in the Morgan Keegan High Income Fund ("Fund"), an open-end mutual fund specializing in high-yield, and therefore higher-risk, corporate bonds. (FRS Compl. at ¶ 10.) FRS' total investment, including dividends it reinvested, was nearly $62 million. (FRS Compl. at ¶ 37.) On May 28, 2008, when FRS sold its holdings in the Fund, it sustained losses of nearly $50 million. (FRS Compl. at ¶ 68.)

FRS' suit lists nine causes of action against Defendants, including violation of the Louisiana Blue Sky Laws, La. Rev. Stat. Ann. § 51:714; breach of fiduciary duties; breach of contract; and negligent misrepresentation. (FRS Compl. at ¶¶ 80-129.) The complaint's basic allegations are that Defendants

recommended that FRS invest in the Fund, whose assets were heavily invested in mortgage-backed securities for which there was only a limited market. (Id. at ¶¶ 82-85.) The Fund's purchase of those highly risky securities allegedly violated the Fund's own investment restrictions. The resulting collapse in the Fund's share price after the implosion of the credit markets in 2007-2008 resulted in FRS' sustaining massive investment losses. (Id. at ¶¶ 47-48.) FRS asserts that Defendants violated their duty to inform FRS of the nature of the Fund's investment portfolio and thereby caused FRS to lose its investment. (Id. at ¶¶ 53-65.)

Defendants removed FRS' suit to the United States District Court for the Middle District of Louisiana on July 10, 2008. Firefighters' Ret. Sys. v. Regions Bank, No. 08-429-C-M2, 2008 U.S. Dist. LEXIS 108606, at *6-7 (M.D. La. Sept. 10, 2008), adopted by 598 F. Supp. 2d 785, 787 (M.D. La. 2008). The district court determined that it did not have subject-matter jurisdiction over FRS' suit and remanded the case to Louisiana state court. Firefighters', 2008 U.S. Dist. LEXIS 108606, at *43. In remanding the case, the district court specifically found that:

> FRS has not alleged any violations of federal securities law or SEC rules on the face of its petition. Furthermore, while some of the

3

> allegations in the petition concerning valuation, liquidity, and the requirements for a prospectus may call upon federal law for guidance as to the applicable standards, those allegations that "merely provide a factual basis" for FRS's state law claims and which could "independently support either a state law claim or a federal law claim" are not sufficient to create a substantial question of federal law or to confer jurisdiction to the federal courts.

Id. at *37 (footnotes omitted).

Once back in Louisiana state court, FRS sought wide-ranging discovery from the Defendants. Specifically, FRS filed a pleading titled "Plaintiff's First Request for Production of Documents to Defendants" requiring Defendants to produce eighty-four different categories of documents. (Defs.' Supp. Ex. 3.) This discovery request prompted Defendants to file the present motion seeking to enjoin FRS from proceeding with any discovery in its state suit until this Court has ruled upon a motion to dismiss in the consolidated MDL litigation. (Defs.' Memorandum of Law in Support of Motion at 1-2.) ("Defs.' Memo")

**II. Analysis**

Defendants argue that this Court should use its authority under SLUSA to enjoin FRS from engaging in any discovery unless it coordinates its discovery timetable with the timetable in the consolidated federal MDL proceedings. The Private Securities Litigation Reform Act

4

of 1995 ("PSLRA") generally prohibits taking discovery until a federal court has ruled on a defendant's motion to dismiss. See 15 U.S.C. § 78u-4(b)(3)(B). Defendants assert that FRS' "aggressive and improper pursuit of discovery" will result in information leaking to the federal plaintiffs in violation of the PSLRA's automatic stay. (Defs.' Memo at 2, 8-13.) For support, Defendants argue that FRS' claims in the Louisiana litigation substantially overlap with those the federal plaintiffs are pursuing in the MDL. (Defs.' Memo at 6-8.) Defendants also allege that the discovery requested by FRS will place an unreasonable and onerous burden on them, which they assert SLUSA and the PSLRA prohibit. FRS has failed to file any pleadings in response to Defendants' motion.

### A. SLUSA Empowers This Court to Enjoin Any Related Action

The PSLRA provides that "[i]n any private action arising under [the federal securities laws], all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice . . . ." 15 U.S.C. § 78u-4(b)(3)(B). This provision, however, applies only to discovery proceedings

in federal court. See In re FirstEnergy S'holder Derivative Litig., 219 F.R.D. 584, 586 (N.D. Ohio 2004). Litigants have sought to evade this prohibition on discovery by shifting their securities suits to state courts, where discovery could continue uninhibited by the PSLRA. See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit, 547 U.S. 71, 88 (2006) (noting that before passage of the PSLRA, litigants filed "no significant securities class action litigation" in state courts). To stop this circumvention, Congress enacted SLUSA.

Among other provisions, SLUSA states that "[u]pon a proper showing, a court may stay discovery proceedings in any private action in a State court, as necessary in aid of its jurisdiction, or to protect or effectuate its judgments, in an action subject to a stay of discovery pursuant to [the PSLRA]." 15 U.S.C. § 78u-4(b)(3)(D). The text of the statute is clear: this Court has the power to enjoin discovery proceedings in any state court suit that might interfere with the ability of this Court to manage a federal action efficiently subject to the provisions of the PSLRA. See Newby v. Enron Corp., 338 F.3d 467, 473 (5th Cir. 2003) (SLUSA's injunction provision is broad and covers "any private, class or nonclass, action in state court."); In re DPL Inc., Sec. Litig., 247 F. Supp. 2d 946,

948 (S.D. Ohio 2003) (finding the SLUSA's injunction provision is broader in scope than its removal provision); City of Austin Police Ret. Sys. v. ITT Educ. Servs., Inc., No. 1:04-cv-0380-DFH-TAB, 2005 U.S. Dist. LEXIS 1646, at *11 (S.D. Ind. Feb. 2, 2005) ("[T]he language authorizing stays of state court discovery . . . is not limited to state securities fraud actions.").

The consolidated MDL action currently pending before this Court is subject to the PSLRA's automatic stay. See 15 U.S.C. § 78u-4(b)(3)(B). FRS' Louisiana suit arises from the same course of conduct that forms the basis for the MDL action. Compare FRS Compl. at ¶¶ 47-48, 82-85 (noting that FRS' suit addresses Defendants' failure to disclose the nature of and risk involved in the assets held by the Fund), with Atkinson, et al. v. Morgan Asset Mgmt, Inc., CA 07-2784, Order Granting in Part and Denying in Part Mots. at 4-7 (noting that federal plaintiffs allege Defendants failed to disclose nature of Fund's assets). SLUSA thus empowers this Court to enjoin the proceedings in the Louisiana suit if the Defendants can demonstrate an entitlement to relief. See 15 U.S.C. § 78u-4(b)(3)(D).

## B. The Defendants Have Not Met the Standard for Injunctive Relief

Although SLUSA allows this Court to enjoin state proceedings, the mere pendency of a related state court action does not entitle Defendants to injunctive relief. City of Austin, 2005 U.S. Dist. LEXIS 1646, at *25-26. Courts in this circuit weigh three primary factors when considering whether to stay a state court proceeding under SLUSA: 1) whether there is a risk of the federal plaintiffs obtaining discovery from the state plaintiffs; 2) whether the federal and state actions involve overlapping facts and legal claims; and 3) the burden the state court discovery will place upon the Defendants. In re Cardinal Health, Inc. Sec. Litig., 365 F. Supp. 2d 866, 872 (S.D. Ohio 2005) (citing In re Gilead Sciences Sec. Litig., No. 03-4999, 2004 U.S. Dist. LEXIS 27309, at *8-9 (N.D. Cal. Nov. 22, 2004)). While demonstrating that a state court plaintiff has an intent to circumvent the PSLRA's automatic stay would strongly support a court's enjoining the state proceedings, showing intent is neither required nor dispositive. Id. at 873. The twin purposes of the PSLRA's stay should guide a court when determining whether an injunction is proper; namely, preventing plaintiffs from placing an "unreasonable burden" on Defendants and barring

discovery from resuscitating an initially frivolous complaint. Id. at 872 n.6; see also Newby, 338 F.3d at 471; In re DPL, Inc., 247 F. Supp. 2d at 950.

### 1. The Risk of Circumvention

One of the primary factors the Court must consider is whether there is a risk that federal plaintiffs could obtain materials turned over under FRS' discovery request and thus circumvent the PSLRA's automatic stay. In re Cardinal Health, 365 F. Supp. 2d at 875. When considering the likelihood of circumvention of the stay, this Court must consider whether a properly drafted confidentiality agreement could prevent unauthorized disclosures. Id. at 872. The risk of circumvention is greatest when counsel for the state court plaintiffs also represent plaintiffs in the federal action. See In re DPL Inc., 247 F. Supp. 2d at 950.

Defendants argue that the risk of circumvention is high in the present case for three reasons. First, FRS' counsel have already coordinated with counsel for plaintiffs in a related arbitration proceeding to serve one of Defendants' employees with a subpoena to testify. The Defendants reason that it is a small step from such coordination in service of process to the sharing of discovery materials. (Defs.' Memo at 18-19.) Second, the

fact that FRS' counsel also represents plaintiffs in four related Alabama suits raises Defendants' circumvention concerns. (Id. at 10.) Third, Defendants note the aggressive nature of FRS' discovery requests as emblematic of a take-no-prisoners litigation strategy that further suggests a likelihood of improper discovery sharing. (Id. at 19.)

Although each of the factors Defendants raise causes concern, collectively they are not dispositive and can be allayed by means other than injunctive relief. FRS has on multiple occasions stated that it would consent to the entry of a protective order prohibiting the sharing of discovery with non-parties to the state-court suit. Indeed, the correspondence submitted by Defendants indicates the parties have considered several drafts of a proposed order. (See Defs.' Supp. Ex. 7 at 8 (noting that FRS "offered to enter into a stipulation of confidentiality"); Id. Ex. 17 at 2 ("The parties will enter into a stipulation of confidentiality," and noting that a proposal is attached); Ex. 19 at 2 (stating that Defendants have attached a copy of a proposed protective order).)[1] Defendants have failed to explain why a properly drafted

---

[1] Although the exhibits mention attached proposed protective orders, the Defendants have not provided the text of the proposals.

order would not prevent disclosure.  See In re Cardinal Health, 365 F. Supp. 2d at 872.  FRS' willingness to enter into a confidentiality agreement lessens the risk of circumvention.  Cf. In re DPL Inc., 247 F. Supp. 2d at 950 (granting an injunction where state counsel told court he intended to share discovery with federal plaintiffs).

Further alleviating the risk is the fact that FRS' counsel is not involved in the federal litigation. Counsel's involvement in similar Alabama state suits is inapposite where those suits do not share plaintiffs with the federal action.  Cf. id. (injunction granted where same attorney represented both federal and state plaintiffs). Similarly, Defendants cannot complain about hardball litigation tactics, such as coordinating service of process, when their first response is to seek to enjoin FRS' state suit rather than continue what appear to be potentially fruitful negotiations to solve the discovery disputes.  The Court is unconvinced that the parties cannot ensure the confidentiality of the discovery materials with the entry and enforcement of a proper protective order in the Louisiana state court.  Factor one weighs against granting an injunction.

### 2. Overlapping Claims

The second factor the Court must consider is whether FRS' claims overlap legally or factually with those of the federal plaintiffs. In re Cardinal Health, 365 F. Supp. 2d at 872. The Defendants are correct that the claims FRS raises substantially overlap with the claims in the MDL litigation. Both suits allege that Defendants misrepresented the risk involved with the Fund by overvaluing mortgage-backed assets for which there was only a limited market. Compare FRS Compl. at ¶¶ 47-48, 82-85, with Atkinson, at 4-7. That FRS has couched its arguments as state-law claims of breach of fiduciary duties, breach of contract, and violation of the Louisiana Blue Sky Laws is immaterial when the gravamen of the complaint is the same. See In re Cardinal Health, 365 F. Supp. 2d at 875-76. The second factor weighs in favor of enjoining the Louisiana litigation.

### 3. Burden on the Defendants

The final factor that this Court must consider is the burden discovery would place on the Defendants. FRS has requested a total of eighty-four separate categories of discovery. (Defs.' Supp. Ex. 3.) Responding to a request of this magnitude would place an unreasonable burden upon the Defendants. Cf. In re Cardinal Health, 365 F. Supp. 2d

at 876. However, the Louisiana court thus far has refused to grant a motion to compel that would require Defendants to produce the documents in toto. (Defs.' Supp. at 2 n.2 (noting that the trial court denied FRS' motion).) Following that refusal, FRS has offered to confine its discovery requests and to pursue them in "waves," limiting the number of documents Defendants must produce at any one time. (See Def. Supp. Ex. 17 at 2 (listing categories in the "first 'wave'").) If approved, this graduated discovery process would go far to limit the burden on Defendants. Given the state trial court's decision to deny FRS' motion to compel and the potential for a negotiated agreement to reduce the discovery burden Defendants will face, the third factor weighs against enjoining the Louisiana action at this time. Cf. City of Austin, 2005 U.S. Dist. LEXIS 1646, at *29 (noting that federalism and comity concerns require that courts not automatically grant SLUSA injunctions).

### III. Conclusion

The three factors do not weigh in favor of granting injunctive relief at this time. The Defendants have failed to demonstrate that no reasonable means exist to remedy their concerns about the potential for discovery sharing short of the drastic step of enjoining an ongoing state-

court proceeding.  See id. at *25-26 (rejecting the notion that a court should issue a stay anytime state court discovery coincides with a related federal securities suit).  The Court, therefore, DENIES the Defendants' motion WITHOUT PREJUDICE to the filing of a future motion should the status of the proceedings in the Louisiana action change substantially.

So ordered this 20th day of October, 2009.

                               s/ Samuel H. Mays, Jr.
                               SAMUEL H. MAYS, JR.
                               UNITED STATES DISTRICT JUDGE