**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**MEMPHIS DIVISION**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
IN RE REGIONS MORGAN KEEGAN      :
SECURITIES, DERIVATIVE and ERISA    :
LITIGATION      :  MDL Docket No. 2009
      :  Hon. Samuel H. Mays, Jr.
This Document Relates to:      :
      :  Oral Argument Requested
*In re Regions Morgan Keegan*      :
*Open-End Mutual Fund Litigation*      :
No. 2:07-cv-02784-SHM-dkv      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
**BY REGIONS FINANCIAL CORPORATION AND REGIONS BANK**

Peter S. Fruin
**MAYNARD, COOPER AND GALE, P.C.**
1901 6th Avenue North, Suite 1900
Birmingham, Alabama  35203
Telephone:  (205) 254-1000
Facsimile:  (205) 254-1999
Email:  pfruin@maynardcooper.com

David B. Tulchin
David E. Swarts
Margaret E. Bartlett
**SULLIVAN & CROMWELL LLP**
125 Broad Street
New York, New York  10004
Telephone: (212) 558-4000
Facsimile:  (212) 558-3588
Email:  tulchind@sullcrom.com

*Attorneys for Regions Financial Corp.*
*and Regions Bank*

February 12, 2010

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................1

THE COMPLAINT ..............................................................................................2

    A.    The Parties ...............................................................................2

    B.    The Alleged Securities Law Violations ..........................................3

    C.    Regions and Regions Bank Are Not Alleged to Have Engaged in Any Wrongful Conduct .............................................................4

STANDARD ON THIS MOTION ...........................................................................5

    A.    Rule 12(b)(6) ...........................................................................5

    B.    Rule 9(b) and the PSLRA ............................................................6

ARGUMENT ....................................................................................................6

  I.    PLAINTIFFS' SECTION 11 AND 12(a)(2) CLAIMS FAIL BECAUSE REGIONS BANK IS NOT A PROPER DEFENDANT ...............................7

  II.    PLAINTIFFS HAVE FAILED TO ADEQUATELY STATE A CLAIM UNDER SECTION 10(b) AND RULE 10b-5 ..........................................9

    A.    Plaintiffs Have Alleged No Misstatements or Omissions ................9

    B.    Plaintiffs Also Fail to Plead Scienter ..........................................11

  III.    "HOLDER" CLAIMS ARE NOT COGNIZABLE UNDER THE SECURITIES LAWS ..................................................................13

  IV.    PLAINTIFFS HAVE FAILED TO PLEAD LOSS CAUSATION ............14

  V.    PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR CONTROL PERSON LIABILITY ...............................................................15

  VI.    PLAINTIFFS HAVE NO PRIVATE RIGHT OF ACTION FOR ALLEGED VIOLATIONS OF THE INVESTMENT COMPANY ACT .......17

CONCLUSION ................................................................................................19

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Adams* v. *Hyman Lippitt, P.C.*,
2005 WL 3556196 (E.D. Mich. Dec. 29, 2005) ........................................................8

*Alexander* v. *Sandoval*,
532 U.S. 275 (2001) ........................................................................................17

*Ashcroft* v. *Iqbal*,
129 S. Ct. 1937 (2009) ......................................................................................5

*Azzolini* v. *Corts Trust II for Provident Fin. Trust I*,
2005 WL 2253971 (E.D. Tenn. Sept. 16, 2005) ................................................7, 16

*Bell Atlantic Corp.* v. *Twombly*,
550 U.S. 544 (2007) ..........................................................................................5

*Bellikoff* v. *Eaton Vance Corp.*,
481 F.3d 110 (2d Cir. 2007) ..........................................................................17, 18

*Blue Chip Stamps* v. *Manor Drug Stores*,
421 U.S. 723 (1975) ......................................................................................13, 14

*Boguslavsky* v. *Kaplan*,
159 F.3d 715 (2d Cir. 1998) ..............................................................................17

*City of Monroe Employees Ret. Sys.* v. *Bridgestone Corp.*,
399 F.3d 651 (6th Cir. 2005) ..............................................................................9

*Coffey* v. *Foamex L.P.*,
2 F.3d 157 (6th Cir. 1993) ..................................................................................6

*Congregation of the Passion* v. *Kidder Peabody & Co.*,
800 F.2d 177 (7th Cir. 1986) ............................................................................14

*Dura Pharm., Inc.* v. *Broudo*,
544 U.S. 336 (2005) ......................................................................................14, 15

*Ernst & Ernst* v. *Hochfelder*,
425 U.S. 185 (1976) ..........................................................................................11

*GFL Advantage Fund, Ltd.* v. *Colkitt*,
272 F.3d 189 (3d Cir. 2001) ..............................................................................18

**TABLE OF AUTHORITIES**
*(continued)*

**Page(s)**

**CASES**
*(continued)*

*Gutter* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    644 F.2d 1194 (6th Cir. 1981) ........................................................................14

*Helwig* v. *Vencor, Inc.*,
    251 F.3d 540 (6th Cir. 2001) ....................................................................11, 12

*Herman & MacLean* v. *Huddleston*,
    459 U.S. 375 (1983) ........................................................................................7

*In re Century Bus. Servs. Sec. Litig.*,
    2002 WL 32254513 (N.D. Ohio June 27, 2002) ...........................................17

*In re Comshare, Inc. Sec. Litig.*,
    183 F.3d 542 (6th Cir. 1999) ..............................................................11, 12, 13

*In re Empyrean Bioscience, Inc. Sec. Litig.*,
    255 F. Supp. 2d 751 (N.D. Ohio 2003) ........................................................14

*In re Envoy Corp. Sec. Litig.*,
    133 F. Supp. 2d 647 (M.D. Tenn. 2001) ......................................................17

*In re Huffy Corp. Sec. Litig.*,
    577 F. Supp. 2d 968 (S.D. Ohio 2008) ..........................................................9

*In re Huntington Bancshares Inc. Sec. Litig.*,
    2009 WL 4666455 (S.D. Ohio Dec. 4, 2009) ...............................................10

*In re Lord Abbett Mut. Funds Fee Litig.*,
    407 F. Supp. 2d 616 (D.N.J. 2005) ...............................................................18

*In re Merrill Lynch & Co. Research Reports Secs. Litig.*,
    272 F. Supp. 2d 243 (S.D.N.Y. 2003) ..........................................................17

*In re Mut. Funds Inv. Litig.*,
    384 F. Supp. 2d 845 (D. Md. 2005) ..............................................................18

*In re Nat'l Century Financials Enters., Inc.*,
    504 F. Supp. 2d 297 (S.D. Ohio 2007) ..........................................................6

*In re Prison Realty Sec. Litig.*,
    117 F. Supp. 2d 681 (M.D. Tenn. 2000) ..............................................8, 15, 16

# TABLE OF AUTHORITIES
*(continued)*

**Page(s)**

**CASES**
*(continued)*

*In re Refco, Inc. Sec. Litig.*,
609 F. Supp. 2d 304 (S.D.N.Y. 2009) ....................................................................7

*In re Salomon Smith Barney Mut. Fund Fees Litig.*,
441 F. Supp. 2d 579 (S.D.N.Y. 2006) ..................................................................17

*In re SCB Computer Tech., Inc.*,
149 F. Supp. 2d 334 (W.D. Tenn. 2001) ..............................................................11

*In re Sirrom Capital Corp. Sec. Litig.*,
84 F. Supp. 2d 933 (M.D. Tenn. 1999) ..................................................................8

*In re Telexon Corp. Sec. Litig.*,
133 F. Supp. 2d 1010 (N.D. Ohio 2000) ..............................................................17

*In re The Goodyear Tire & Rubber Co. Sec. Litig.*,
436 F. Supp. 2d 873 (N.D. Ohio 2006) ................................................................10

*In re Van Wagoner Funds, Inc. Sec. Litig.*,
382 F. Supp. 1173 (N.D. Cal. 2004) ....................................................................18

*In re WorldCom, Inc., Sec. Litig.*,
2004 WL 1097786 (S.D.N.Y. May 18, 2004) ......................................................16

*Jacobs* v. *Bremmer*,
378 F. Supp. 2d 861 (N.D. Ill. 2005) ..................................................................18

*Korland* v. *Capital Research & Mgmt. Co.*,
2009 WL 936612 (C.D. Cal. Feb. 10, 2009) ........................................................17

*Mansbach* v. *Prescott, Ball & Turben*,
598 F.2d 1017 (6th Cir. 1979) ............................................................................11

*Montcalm County Bd. of Commissioners* v. *McDonald & Co. Sec., Inc.*,
833 F. Supp. 1225 (W.D. Mich. 1993) ..................................................................8

*Novak* v. *Kasaks*,
216 F.3d 300 (2d Cir. 2000) ................................................................................11

*O'Brien* v. *Cont'l Ill. Nat'l Bank & Trust Co.*,
593 F.2d 54 (7th Cir. 1979) ................................................................................14

**TABLE OF AUTHORITIES**
*(continued)*

**Page(s)**

**CASES**
*(continued)*

*Olmsted* v. *Pruco Life Ins. Co.*,
   283 F.3d 429 (2d Cir. 2002) ................................................................................17

*Pinter* v. *Dahl*,
   486 U.S. 622 (1988) ...........................................................................................8

*PR Diamonds, Inc.* v. *Chandler*,
   364 F.3d 671 (6th Cir. 2004) ..................................................................11, 15, 16

*Rombach* v. *Chang*,
   355 F.3d 164 (2d Cir. 2004) ................................................................................6

*San Leandro Emergency Med. Plan* v. *Philip Morris Cos.*,
   75 F.3d 801 (2d Cir. 1996) ...........................................................................11, 13

*Sanders Confectionery Prods., Inc.* v. *Heller Fin., Inc.*,
   973 F.2d 474 (6th Cir. 1992) .............................................................................16

*Shapiro* v. *Cantor*,
   123 F.3d 717 (2d Cir. 1997) ................................................................................7

*Slomiak* v. *Bear Stearns & Co.*,
   597 F. Supp. 676 (S.D.N.Y.1984) .......................................................................18

*Southland Sec. Corp.* v. *INSpire Ins. Solutions, Inc.*,
   365 F.3d 353 (2d Cir. 2004) ................................................................................9

*Stoneridge Inv. Partners, LLC* v. *Scientific-Atlanta, Inc.*,
   552 U.S. 148 (2008) ...........................................................................................7

*Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ....................................................................................11, 12

*White* v. *Heartland High-Yield Mun. Bond Fund*,
   237 F. Supp. 2d 982 (E.D. Wis. 2002) ................................................................18

*Zerman* v. *Jacobs*,
   510 F. Supp. 132 (S.D.N.Y. 1981) ......................................................................18

# TABLE OF AUTHORITIES

*(continued)*

**Page(s)**

### STATUTES

Section 11 of the Securities Act of 1933,
    15 U.S.C. § 77k ....................................................................................1, 3, 6, 7, 13, 14

Section 12(a)(2) of the Securities Act of 1933,
    15 U.S.C. § 77*l*(a)(2) ...........................................................................1, 3, 6, 7, 8, 13

Section 15 of the Securities Act of 1933,
    15 U.S.C. § 77o ...................................................................................1, 3, 4, 7, 13, 15

Section 10(b) of the Securities Exchange Act of 1934,
    15 U.S.C. § 78j(b) ............................................................................1, 3, 6, 9, 11, 13, 14

Section 20 of the Securities Exchange Act of 1934,
    15 U.S.C. § 78t ....................................................................................1, 3, 7, 15, 16

Private Securities Litigation Reform Act of 1995,
    15 U.S.C. § 78u-4 ..........................................................................................6, 9, 11

Sections 13, 22, 30, 34(b) and 47(b) of the Investment Company Action of 1940,
    15 U.S.C. § 80b-1, *et seq*. ................................................................2, 3, 4, 7, 17, 18

### RULES

Rule 10b-5, 17 C.F.R. § 240.10b-5.......................................................................3, 6, 9, 11

Rule 9, FED. R. CIV. P. ...............................................................................................6, 9

Rule 12(b)(6), FED. R. CIV. P. ......................................................................................1, 5

### OTHER AUTHORITIES

Ben S. Bernanke, Chairman, Board of Governors of Federal Reserve System,
    *The Economic Outlook*, Testimony Before the Joint Economic Committee,
    March 28, 2007 .........................................................................................................10

Ben S. Bernanke, Chairman, Board of Governors of Federal Reserve System,
    *The Nomination of Ben Bernanke to Continue as Chairman of the Board of*
    *Governors of the Federal Reserve*, Testimony Before the Senate Banking,
    Housing and Urban Affairs Committee, Dec. 3, 2009 ...........................................10

Henry M. Paulson, Jr., Secretary, Department of the Treasury, *The State of the*
    *International Financial System*, Testimony Before the House Committee
    on Financial Services, June 20, 2007 .....................................................................10

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, defendants Regions Financial Corporation ("Regions") and Regions Bank respectfully submit this memorandum in support of their motion to dismiss the Consolidated Amended Class Action Complaint (the "complaint" or "CAC") in this action. Regions and Regions Bank also join in and incorporate by reference the Memorandum of Law in Support of Motion to Dismiss filed February 11, 2010 by Morgan Asset Management, Inc., Morgan Keegan & Co., Inc. and MK Holding, Inc. (the "Morgan Keegan Brief").

## PRELIMINARY STATEMENT

Plaintiffs' 402 page complaint is an impermissible attempt to use the federal securities laws as an insurance policy for the losses they sustained when the share prices of the Regions Morgan Keegan Select Short Term Bond Fund (the "Short Term Fund"), the Regions Morgan Keegan Select Intermediate Bond Fund (the "Intermediate Fund") and the Regions Morgan Keegan Select High Income Fund (the "High Income Fund") (collectively, the "Funds") dropped as a result of an unforeseeable decline in the market for various mortgage-backed securities. The risk of investing in the Funds was fully disclosed to plaintiffs, and their "fraud by hindsight" claim should be flatly rejected.

In all events, plaintiffs' claims against Regions Bank under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b) (Counts V and VI), and Sections 11 and 12(a)(2) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77k and 77*l*(a)(2) (Counts I and II), should be dismissed because the complaint does not sufficiently allege that Regions Bank made any material misstatements or omissions, acted with scienter, or is a proper party defendant under Sections 11 and 12(a)(2) of the Securities Act. In addition, there is no basis for "control person" liability under Section 15 of the Securities Act, 15 U.S.C. § 77o (Count III), and Section 20 of the Exchange Act, 15 U.S.C. § 78t(a) (Count

VII), because, among other things, the complaint does not properly plead control by Regions or

Regions Bank.  Finally, because there is no private right of action under Sections 13, 22, 30 and

34(b) of the Investment Company Act of 1940, 15 U.S.C. § 80b-1, *et seq*., those claims against

Regions and Regions Bank in Count IV should also be dismissed.

## THE COMPLAINT[1]

This is a putative class action purportedly brought on behalf of persons who

purchased and held shares in three mutual funds offered as a series by Morgan Keegan Select

Fund, Inc. ("MK Select").[2]  (CAC ¶ 2.)  Although plaintiffs' claims are couched in terms of a

failure to disclose the risks associated with investing in the Funds, the essence of the allegations

is that defendants mismanaged the Funds by failing to avoid the losses that occurred when

certain securities held by the Funds dropped in value in mid-2007.  (*See*, *e.g.*, CAC ¶¶ 3, 120,

122, 144, 318-21, 340.)

### A.     The Parties

Plaintiffs make claims on behalf of two overlapping classes:  (1) persons who

purchased shares in the Funds between December 6, 2004 and December 6, 2007, and

(2) persons who "refrained from redeeming the Funds' shares during the period March 1, 2007

through April 30, 2008."  (CAC ¶ 2.)[3]  These classes purport to include all trusts and custodial

---

[1]     A more complete recitation of the allegations of the complaint can be found in the Morgan Keegan Brief.  To avoid unnecessary repetition, this brief focuses on the allegations against Regions and Regions Bank.

[2]     MK Select is an open-ended management investment company organized under the laws of the State of Maryland and pursuant to the Investment Company Act of 1940.

[3]     Elsewhere the complaint defines the putative classes as (1) persons who purchased shares in the Funds between December 6, 2004, and December 6, 2008, and (2) persons who held shares in the Funds on July 1, 2007, and sold those shares at a later date for less than either (a) the value of those shares on July 1, 2007 or (b) the purchase price.  (CAC ¶ 106.)

accounts for which Regions Bank was a trustee.  (CAC ¶ 106.)  Within these classes, plaintiffs

further seek to represent an alleged "Fiduciary Subclass" consisting of beneficiaries of trusts or

fiduciary accounts for which Regions Bank was a trustee and for which investment responsibility

was delegated to Morgan Asset Management, Inc. ("MAM") and Morgan Keegan & Company,

Inc. ("Morgan Keegan").  (CAC ¶ 107.)

   The Funds were managed by defendant MAM, a wholly-owned subsidiary of

defendant MK Holding, Inc., itself a wholly-owned subsidiary of Regions.  (CAC ¶¶ 40, 44, 48.)

Defendant Morgan Keegan, another wholly-owned subsidiary of Regions, provided

administrative and distribution services to the Funds.  (CAC ¶¶ 45, 48.)  Certain officers and

directors of the Funds, Morgan Keegan and MAM are also named as defendants.

(CAC ¶¶ 59-67, 75-85.)

   The only allegations against Regions Bank are that it offered services to trusts that

invested in the Funds and made the Funds available to its customers.  (CAC ¶¶ 32, 33, 42, 48, 49,

53, 106-08, 211, 659, 665, 760.)  Plaintiffs make no allegations of wrongdoing against Regions,

and instead concede that Regions is named as a defendant based solely on a theory of "secondary

liability."  (CAC ¶ 88.)

  **B.**  **The Alleged Securities Law Violations**

   The complaint makes claims under Sections 11, 12(a)(2) and 15 of the Securities

Act of 1933, 15 U.S.C. §§ 77k, 77*l*(a)(2) and 77o; Sections 10(b) and 20 of the Securities

Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder,

17 C.F.R. § 240.10b-5; and Sections 13, 22, 30, 34(b) and 47(b) of the Investment Company Act

of 1940, 15 U.S.C. § 80b-1, *et seq.*  Regions is named only in the Sections 15 and 20 control

person liability claims (Counts III and VII) and the Investment Company Act claims (Count IV).

Regions Bank is named in the Sections 11, 12(a)(2) and 10(b) claims (Counts I, II, V and VI);

Section 15 control person liability claim (Count III); and the Investment Company Act claims (Count IV).

### C.    Regions and Regions Bank Are Not Alleged to Have Engaged in Any Wrongful Conduct

The complaint's allegations against Regions and Regions Bank are sparse, vague and unsupported.  Most importantly, despite its length, the complaint fails to state any claim for violation of the securities laws against Regions or Regions Bank.  For instance, plaintiffs allege that Regions withheld unspecified information from the Funds' directors (CAC ¶ 74) but explain this not at all.  Plaintiffs also point to Regions' January 2007 sale of a mortgage company, EquiFirst Corporation, illogically alleging that this necessarily shows that Regions then understood that mortgage-backed securities would soon decline in value.  (CAC ¶¶ 329-340, 721, 738, 755.)  And plaintiffs claim that Regions "used its and Morgan Keegan's names to brand" services and products offered by Morgan Keegan and MAM, without further allegations as to how this could be wrongful conduct under the securities laws.  (CAC ¶ 650; *see also* ¶¶ 651-53.)  Indeed, the complaint never explains or sets forth how any of the alleged conduct could make out a violation of the securities laws.

Plaintiffs also allege that Regions Bank "offered trust services" to trusts that invested in the Funds (CAC ¶¶ 32, 33, 42, 49, 53, 106-08, 211), but plaintiffs concede that "Regions Bank's trust officers were no more than trust administrators," and that Regions Bank "delegated" management of the trust accounts to Morgan Keegan and MAM (CAC ¶ 665.)  At most these are allegations of mismanagement that cannot provide a basis for a claim under the securities laws.  Likewise, the allegation that Regions Bank made the Funds available to its

customers through its trust department and a "Morgan Keegan desk" at certain of its branches also implicates the securities laws not at all.  (CAC ¶¶ 49, 53, 58, 659.)[4]

The complaint contains no specific allegations of scienter by Regions or Regions Bank.  Instead, it repeats the conclusory phrase that all of the many defendants "knew, or should have known, or recklessly disregarded" the alleged violations.  (CAC ¶ 99; *see also* ¶¶ 104, 372, 375, 378, 381-83, 385, 394, 710, 748.)  As shown below, this conclusory averment is insufficient.

## STANDARD ON THIS MOTION

### A.      Rule 12(b)(6)

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint should be dismissed if it fails to plead sufficient grounds to entitle a plaintiff to relief.  *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007).  A plaintiff must set forth "allegations plausibly suggesting (not merely consistent with)" an "entitle[ment] to relief."  *Id.* at 557.  When the factual allegations are implausible, no matter how detailed, no claim for relief has been stated. *Ashcroft* v. *Iqbal*, 129 S. Ct. 1937, 1950 (2009).  Although a "claim has facial plausibility [where] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *id.* at 1949, the mere possibility that a plaintiff might prove some facts in support of its claims is insufficient to survive a motion to dismiss, *see Twombly*, 550 U.S. at 570.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 129 S. Ct. at 1949.

---

[4]      Further, plaintiffs allege that Regions Bank "directed or caused" unspecified "fiduciary [trust] accounts" to invest in or not to redeem shares in the Funds (CAC ¶ 55; *see also* ¶¶ 109, 211, 669, 736-38, 740), but allege no particulars, such as what trust accounts were affected, when these activities took place, who was involved or what was said or done.

B.      **Rule 9(b) and the PSLRA**

Because all of plaintiffs' claims are based on allegations of fraud, the complaint is subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4.  Rule 9(b) requires that all averments of fraud be pleaded with particularity.  *Coffey* v. *Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993).  Rule 9(b) applies "to all cases where the gravamen of the claim is fraud."  *In re Nat'l Century Financials Enters., Inc.*, 504 F. Supp. 2d 297, 322 (S.D. Ohio 2007), and also applies to non-fraud claims when they are premised on allegations of fraud.  *Rombach* v. *Chang*, 355 F.3d 164, 171 (2d Cir. 2004) (applying Rule 9(b) to claims under Sections 11 and 12(a)(2)).[5]

The PSLRA further requires that, where plaintiffs make Section 10(b) and Rule 10b-5 claims, they must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1).

## ARGUMENT

All claims against Regions and Regions Bank should be dismissed because plaintiffs have failed to adequately plead a primary violation of the securities laws or control person liability.  The complaint attempts indiscriminately to sweep up Regions Bank in its Sections 11, 12(a)(2) and 10(b) claims (Counts I, II, V and VI); Regions and Regions Bank in its

---

[5]      Here, allegations of fraud permeate the complaint.  *See*, *e.g.*, CAC ¶ 103 ("Each of the RMK Defendants [which the complaint defines to include Regions and Regions Bank] is liable as a participant in a fraudulent scheme and course of conduct that operated as a fraud or deceit on purchasers of the Funds shares by disseminating materially false and misleading statements and/or concealing material adverse facts.").

Investment Company Act claims (Count IV); and Regions in its Sections 15 and 20 control person liability claims (Counts III and VII).  As demonstrated below and in the Morgan Keegan Brief, plaintiffs have failed to state a claim under these statutes.[6]

## I.   PLAINTIFFS' SECTION 11 AND 12(a)(2) CLAIMS FAIL BECAUSE REGIONS BANK IS NOT A PROPER DEFENDANT.

In addition to the reasons set forth in the Morgan Keegan Brief (pp. 15-47), plaintiffs' claims against Regions Bank under Section 11 of the Securities Act (Count I) and Section 12(a)(2) of the Exchange Act (Count II) are also improper because Regions Bank is not a proper defendant.[7]

"A Section 11 action can be brought only against the issuer, its directors or partners, underwriters, and accountants who are named as having prepared or certified the registration statement."  *Herman & MacLean* v. *Huddleston*, 459 U.S. 375, 382 n.13 (1983) (citing 15 U.S.C. § 77k(a)).  Plaintiffs here do not and cannot allege that Regions Bank participated in either issuing or underwriting the Funds.  *See Azzolini* v. *Corts Trust II for Provident Fin. Trust I*, 2005 WL 2253971, at *12 (E.D. Tenn. Sept. 16, 2005) (holding that the parent of an issuer or underwriter is not a proper party defendant in a Section 11 case merely by virtue of its ownership or control).

---

[6]     Plaintiffs base their claims in part on allegations that unspecified defendants "participated . . . indirectly[] in the wrongful conduct alleged herein."  (CAC ¶ 104(a).)  All such claims must be rejected because, as the Supreme Court has held, there is no cause of action for aiding and abetting securities fraud.  *Stoneridge Inv. Partners, LLC* v. *Scientific-Atlanta, Inc.*, 552 U.S. 148, 166-167 (2008).  *See also In re Refco, Inc. Sec. Litig.*, 609 F. Supp. 2d 304, 311-312 (S.D.N.Y. 2009) (noting that a defendant "must actually make a false or misleading statement in order to be held liable under Section 10(b)" (quoting *Shapiro* v. *Cantor*, 123 F.3d 717, 720 (2d Cir. 1997))).

[7]     Regions is not named as a defendant in these claims.

Section 12(a)(2) claims can be brought only against statutory sellers of the securities. Assuming a material misstatement or omission has been made, Section 12(a)(2) only "imposes liability on the owner who passed title or other interest in the security to the buyer for value and/or on the person who successfully solicits the purchase, motivated at least in part by a desire to serve his own financial interests or those of the securities owner." *In re Sirrom Capital Corp. Sec. Litig.*, 84 F. Supp. 2d 933, 944-45 (M.D. Tenn. 1999) (citing *Pinter* v. *Dahl*, 486 U.S. 622, 647 (1988)). To establish liability under Section 12(a)(2), "[p]laintiffs must demonstrate direct and active participation in the solicitation of the immediate sale." *In re Prison Realty Sec. Litig.*, 117 F. Supp. 2d 681, 691 (M.D. Tenn. 2000).

The complaint alleges that "Regions Bank marketed the Funds at its various branches and recommended to persons seeking to invest in Regions Bank certificates of deposit to instead invest in the Funds through a 'Morgan Keegan desk' on the Regions Bank branch premises." (CAC ¶ 659.) This is entirely insufficient to state a claim for relief under Section 12(a)(2) because it does not allege that Regions Bank directly and actively solicited plaintiffs to purchase shares of the Funds beyond merely directing investors to Morgan Keegan representatives. *See Adams* v. *Hyman Lippitt, P.C.*, 2005 WL 3556196, at *2 (E.D. Mich. Dec. 29, 2005) (rejecting Section 12(a)(2) claim where plaintiffs "merely alleged that Defendants 'advised' Plaintiffs to invest; Plaintiffs have not alleged that [the] advice constitutes the type of 'urging' contemplated in *Pinter*"); *Montcalm County Bd. of Commissioners* v. *McDonald & Co. Sec., Inc.*, 833 F. Supp. 1225, 1232 (W.D. Mich. 1993) ("*Pinter* apparently requires someone to be an issuer or a paid participant who actually contacted a buyer and urged the buyer to purchase" the security.).

## II.    PLAINTIFFS HAVE FAILED TO ADEQUATELY STATE A CLAIM UNDER SECTION 10(b) AND RULE 10b-5.

Plaintiffs' claims under Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5 (Counts V and VI), should be dismissed as a matter of law because, among other things, plaintiffs identify no actionable misstatement or omission, and fail to plead that Regions Bank acted with scienter.[8]

### A.    Plaintiffs Have Alleged No Misstatements or Omissions.

As demonstrated in the Morgan Keegan Brief at pp. 20-45, the complaint fails to plead any actionable misstatements or omissions.  Further, plaintiffs have made no attempt to allege that Regions Bank made any of the purportedly misleading statements.  Rather, the complaint focuses on the disclosures made by the Funds.  (CAC ¶¶ 370-420.)  Rule 9(b) and the PSLRA require plaintiffs to plead each defendant's involvement in making each allegedly fraudulent statement.  *In re Huffy Corp. Sec. Litig.*, 577 F. Supp. 2d 968, 985 (S.D. Ohio 2008) (citing *Southland Sec. Corp.* v. *INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 365 (2d Cir. 2004)).  Here, however, plaintiffs impermissibly lump Regions Bank together with all other defendants.  (*See*, *e.g.*, CAC ¶ 88.)  Plaintiffs claim that "[t]he Funds and the defendants misrepresented or failed to disclose material facts" but then concede that they cannot "be more specific" as to what purported "wrongful conduct alleged herein is attributable to which" defendant.  (CAC ¶¶ 3, 97.)  This falls fatally short of the "statement-by-statement analysis" on a defendant-by-defendant basis required in this Circuit.  *City of Monroe Employees Ret. Sys.* v. *Bridgestone Corp.*, 399 F.3d 651, 682 (6th Cir. 2005).

---

[8]    Regions is also not named as a defendant in this claim.

The essence of plaintiffs' complaint is that defendants foresaw, or should have foreseen, the crisis in the market for certain mortgage-backed securities (the securities held by the Funds that declined in value in mid-2007), yet failed to warn plaintiffs of the risk of loss beyond the robust disclosures already provided in the Fund's offering documents.[9]  (CAC ¶¶ 3-5, 340.)  This is insufficient.  The disclosures were adequate as a matter of law, and it is more than implausible to allege that defendants must have seen the coming crisis.  No one in the industry—not even the Chairman of the Federal Reserve or the Secretary of the Treasury—understood what was coming.[10]

Further, the allegations on which the Section 10(b) claim is made are nothing but classic "fraud by hindsight," which is not actionable.  *In re Huntington Bancshares Inc. Sec. Litig.*, 2009 WL 4666455, at *6 (S.D. Ohio Dec. 4, 2009) (collecting cases holding that a plaintiff cannot plead "fraud by hindsight"); *In re The Goodyear Tire & Rubber Co. Sec. Litig.*, 436 F. Supp. 2d 873, 903-04 (N.D. Ohio 2006).  "[A]llegations that defendants should have anticipated future events and made certain disclosures earlier than they actually did," such as the

---

[9]     Examples of these risks disclosures are set out in Appendix A hereto.

[10]     *See* Ben S. Bernanke, Chairman, Board of Governors of Federal Reserve System, *The Economic Outlook*, Testimony Before the Joint Economic Committee, March 28, 2007 (testifying in that "[o]verall, the economy appears likely to continue to expand at a moderate pace over coming quarters.  As the inventory of unsold new homes is worked off, the drag from residential investment should wane.  Consumer spending appears solid, and business investment seems likely to post moderate gains."); Henry M. Paulson, Jr., Secretary, Department of the Treasury, *The State of the International Financial System*, Testimony Before the House Committee on Financial Services, June 20, 2007 (testifying that "[t]he global economy continues to be very robust"); *see also* Ben S. Bernanke, Chairman, Board of Governors of Federal Reserve System, *The Nomination of Ben Bernanke to Continue as Chairman of the Board of Governors of the Federal Reserve*, Testimony Before the Senate Banking, Housing and Urban Affairs Committee, Dec. 3, 2009 (testifying that he "did not anticipate a crisis of this magnitude and . . . severity").

allegations here, "do not suffice to make out a claim of securities fraud." *Novak* v. *Kasaks*, 216
F.3d 300, 309 (2d Cir. 2000).

### B.      Plaintiffs Also Fail to Plead Scienter.

Scienter is a necessary element of a Section 10(b) and Rule 10b-5 claim. *In re
SCB Computer Tech., Inc.*, 149 F. Supp. 2d 334, 343 (W.D. Tenn. 2001).  Under the PSLRA, a
plaintiff is obligated to "state with particularity facts giving rise to a strong inference that the
defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2).  *See also PR
Diamonds, Inc.* v. *Chandler*, 364 F.3d 671, 682 (6th Cir. 2004); *In re Comshare, Inc. Sec. Litig.*
("*Comshare*"), 183 F.3d 542, 548 (6th Cir. 1999).  For purposes of a Section 10(b) action, the
required state of mind is an "intent to deceive, manipulate, or defraud." *Helwig* v. *Vencor, Inc.*,
251 F.3d 540, 548 (6th Cir. 2001) (quoting *Ernst & Ernst* v. *Hochfelder*, 425 U.S. 185, 193 n.12
(1976)) (internal quotation marks omitted).  "[S]peculation and conclusory allegations" do not
suffice.  *Comshare*, 183 F.3d at 553 (quoting *San Leandro Emergency Med. Plan* v. *Philip
Morris Cos.*, 75 F.3d 801, 813 (2d Cir. 1996) (internal quotation marks omitted).  Rather, as the
Supreme Court recently held, the strong inference of scienter "must be more than merely
plausible or reasonable—it must be cogent and at least as compelling as any opposing inference
of nonfraudulent intent." *Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).

To satisfy the scienter pleading requirement, a plaintiff must allege with
particularity that the defendant acted knowingly or recklessly. *PR Diamonds, Inc.*, 364 F.3d at
681; *Comshare*, 183 F.3d at 552.  Recklessness is "highly unreasonable conduct which is an
extreme departure from the standards of ordinary care," *Helwig*, 251 F.3d at 550 (quoting
*Mansbach* v. *Prescott, Ball & Turben*, 598 F.2d 1017, 1025 (6th Cir. 1979)), and constitutes
scienter when it is "akin to conscious disregard," *PR Diamonds, Inc.*, 364 F.3d at 681 (quoting
*Comshare*, 183 F.3d at 550) (internal quotation marks omitted).  More specifically, the Sixth

Circuit has articulated nine factors that are "probative of scienter in securities fraud actions." *Id.* at 682–83.[11]  Plaintiffs have made no attempt to allege any of these factors as to Regions Bank. Rather, the complaint merely includes the mantra that all defendants "knew or should have known, or recklessly disregarded" information contrary to the alleged misstatements.  (CAC ¶ 99; *see also* CAC ¶¶ 104, 205, 372, 375, 378, 381-83, 385, 394, 710, 748.)  Such conclusory statements are insufficient to plead scienter.  *See Tellabs,* 551 U.S. at 314, 319-22; *Comshare*, 183 F.3d at 553.

The most plaintiffs allege is that, in January 2007, Regions sold a subsidiary of Regions Bank, EquiFirst Corporation, a subprime mortgage originator, after EquiFirst experienced "a significant reduction in . . . loan sales" and "an increase in early payment default losses" in 2006.  (CAC ¶¶ 329-31.)  Plaintiffs claim that this shows that in 2006, Regions and Regions Bank understood that the "sub-prime market meltdown" was inevitable, yet failed to inform Regions Bank's trust department, Morgan Keegan or MAM of the impending crisis. (CAC ¶¶ 338-40.)  This is illogical to say the least.  An ordinary course sale of EquiFirst shows

---

[11]     The factors probative of scienter are:

(1) insider trading at a suspicious time or in an unusual amount; (2) divergence between internal reports and external statements on the same subject; (3) closeness in time of an allegedly fraudulent statement or omission and the later disclosure of inconsistent information; (4) evidence of bribery by a top company official; (5) existence of an ancillary lawsuit charging fraud by a company and the company's quick settlement of that suit; (6) disregard of the most current factual information before making statements; (7) disclosure of accounting information in such a way that its negative implications could only be understood by someone with a high degree of sophistication; (8) the personal interest of certain directors in not informing disinterested directors of an impending sale of stock; and (9) the self-interested motivation of defendants in the form of saving their salaries and jobs.

*PR Diamonds, Inc.*, 364 F.3d at 682-83 (quoting *Helwig*, 251 F.3d at 552).

nothing of the sort, and plaintiffs' allegations concerning EquiFirst's experiences in 2006 are in no way indicative of an impending "market meltdown." Hindsight is always 20/20, but there are no allegations sufficient to show that Regions or Regions Bank could foretell the future.

Plaintiffs attempt to bolster this unsupported claim by citing a Regions March 2008 advertisement stating that, while Regions was criticized at the time for the small premium it received when it sold EquiFirst in January 2007, the sale turned out to be fortuitous because it left them with little direct sub-prime mortgage exposure. (CAC ¶ 333.) Plaintiffs attempt to convert a statement made over a year later that the transaction turned out to have an unexpected benefit into an allegation that Regions knew in 2006 that there would be a crisis in the sub-prime mortgage market in 2007 is precisely the sort of "speculation and conclusory allegation[]" that does not suffice to plead scienter.[12] *Comshare*, 183 F.3d at 553 (quoting *San Leandro*, 75 F.3d at 813) (internal quotation marks omitted).

## III. "HOLDER" CLAIMS ARE NOT COGNIZABLE UNDER THE SECURITIES LAWS.

Plaintiffs seek to include in the putative class anyone who merely held shares in the Funds, *i.e.*, anyone "[w]ho refrained from redeeming the Funds' shares during the period from March 1, 2007 through April 30, 2008." (CAC ¶ 2; *see also* CAC ¶¶ 106, 697-707, 742-57.) But claims under Section 10(b) may be brought only by purchasers or sellers, not mere holders of securities. *Blue Chips Stamps* v. *Manor Drug Stores*, 421 U.S. 723, 754-55 (1975). Likewise, claims under the Securities Act of 1933 (here, Sections 11, 12(a)(2) and 15) may be

---

[12] Plaintiffs' reference to an alleged statement by a Regions credit officer in mid-2007 that he and other executives "knew about a year earlier (*i.e.*, in mid-2006) that unpaid loans" would start to negatively affect banks and that this was the reason EquiFirst was sold (CAC ¶ 332) is likewise no indication of knowledge that a sub-prime mortgage crisis was inevitable in mid-2007. This is insufficient to plead scienter. *Comshare*, 183 F.3d at 553.

brought only by purchasers, not holders.  *Gutter* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc*., 644 F.2d 1194, 1196 (6th Cir. 1981) (Section 12); *In re Empyrean Bioscience, Inc. Sec. Litig*., 255 F. Supp. 2d 751, 766 (N.D. Ohio 2003) (Section 11).

Plaintiffs also purport to bring claims on behalf of a putative "Fiduciary Subclass" consisting of beneficiaries of certain trust accounts that continued to hold shares in the Funds because Morgan Keegan and MAM, who had investment discretion for the trusts, and Regions Bank, as trustee, allegedly "breached the[ir] fiduciary dut[y] . . . to redeem the Fiduciary [Subc]lass's shares in the Funds."  (CAC ¶¶ 107, 757.)  For the same reason stated above, these holder claims are not cognizable.  Further, the beneficiaries of the trusts do not have standing to bring a Section 10(b) claim because they were not the purchasers of the shares.  *See Blue Chip Stamps*, 421 U.S. at 754-55; *see also Congregation of the Passion* v. *Kidder Peabody & Co.*, 800 F.2d 177, 181 (7th Cir. 1986) (holding that religious order that had delegated investment discretion to an investment advisor could not bring a claim under Section 10(b) because "[t]here was no investment decision to be made by plaintiffs") (quoting *O'Brien* v. *Cont'l Ill. Nat'l Bank & Trust Co.*, 593 F.2d 54, 60 (7th Cir. 1979))).

## IV.   PLAINTIFFS HAVE FAILED TO PLEAD LOSS CAUSATION.

As demonstrated in the Morgan Keegan Brief (pp. 49-53), plaintiffs have failed to plead loss causation.  It is fundamental that private securities actions exist "not to provide investors with broad insurance against market losses, but to protect them against those economic losses that *misrepresentations actually cause*."  *Dura Pharm., Inc.* v. *Broudo*, 544 U.S. 336, 345 (2005) (emphasis added).  The federal securities laws are not a guarantee against losses.  Thus, "loss causation" requires a direct, causal connection between the alleged misrepresentation and the plaintiffs' loss; "[t]o 'touch upon' a loss is not to *cause* a loss, and it is the latter that the law

requires." *Id.* at 343.  Where the loss is not caused by the alleged misrepresentations or omissions, plaintiffs' claims are barred.  15 U.S.C. §§ 77k(e), 77*l*(b); *see also Dura*, 544 U.S. at 345.

According to the complaint, the Funds lost value because of poor portfolio management, not because of an omission or misstatement in a prospectus.  (CAC ¶¶ 318-21.) Therefore, plaintiffs' own allegations demonstrate that they have not pleaded loss causation.

Further, a decline in price does not establish loss causation: "[L]ower price may reflect, not the earlier misrepresentation, but changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events, which taken separately or together account for some or all of that lower price." *Dura*, 544 U.S. at 343. The complaint acknowledges that the drop in the value of the Funds was because of a sudden lack of a market for the mortgage-backed securities held by the Funds.  (CAC ¶¶ 120-21.)  These are precisely the type of "changed economic circumstances" that cut off any causal connection. *Dura*, 544 U.S. at 343.

## V.   PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR CONTROL PERSON LIABILITY.

Plaintiffs' control person liability claims against Regions and Regions Bank under Section 15 of the Securities Act (Count III), and against Regions under Section 20(a) of the Exchange Act (Count VII), also fail as a matter of law.  As demonstrated herein and in the Morgan Keegan Brief (pp. 15-49), plaintiffs have not established any underlying violation of the securities laws.  This is, of course, fatal to plaintiffs' control person liability claims.  *In re Prison Realty Sec. Litig.*, 117 F. Supp. 2d 681, 692 (M.D. Tenn. 2000); *PR Diamonds, Inc.*, 364 F.3d at 696.

Even assuming that plaintiffs adequately alleged a primary violation of the securities laws, their control person liability claims still fail because they have not adequately pleaded that Regions or Regions Bank is a "control person" with respect to any alleged primary violator. *See Sanders Confectionery Prods., Inc.* v. *Heller Fin., Inc.*, 973 F.2d 474, 486 (6th Cir. 1992); *PR Diamonds, Inc.*, 364 F.3d at 696-97. Plaintiffs must allege facts showing that Regions and Regions Bank possessed both "power to control the specific transaction or activity upon which the primary violation is predicated" and "actual participation (*i.e.*, exercise [of] control) in the operations of the primary violator." *Azzolini*, 2005 WL 2253971, at *12; *In re Prison Realty Sec. Litig.*, 117 F. Supp. 2d at 692.

Here, plaintiffs' claims about control are based solely on allegations that Regions is the "wholly owning parent" corporation of Regions Bank and Morgan Keegan.[13] (CAC ¶¶ 48, 723, 760.) Mere ownership, however, fails to establish control person status. *Azzolini*, 2005 WL 2253971, at *12 (control person status based on corporate affiliation insufficient to state a claim); *In re WorldCom, Inc., Sec. Litig.*, 2004 WL 1097786, at *3 (S.D.N.Y. May 18, 2004) (mere allegation of parent/subsidiary relationship is insufficient to allege control). And plaintiffs make no allegation that Regions Bank controls any entity at issue here, thus clearly failing to plead control person status.

---

[13]     Without differentiating among any of the defendants, plaintiffs allege for their Section 15 claim that "[e]ach of the Controlling Person Defendants was a controlling person . . . by virtue of his or her position . . . as the wholly owning parent of any of the foregoing non-Fund corporate entities" and "based on his or her having signed the registration statements and/or having otherwise participated in the process which allowed the offerings of the Funds' shares to be successfully completed." (CAC ¶¶ 723-24.) For their Section 20(a) claim, plaintiffs allege that "[e]ach of the corporate RMK Defendants, by virtue of its position as the manager of, and investment adviser to, the Funds; as the administrator of the Funds; or as the wholly owning parent of any of the foregoing non-Fund corporate entities, were controlling persons of the Company/Funds." (CAC ¶ 760.)

Plaintiffs' control person liability claims (Counts III and VII) should be dismissed.[14]

## VI.   PLAINTIFFS HAVE NO PRIVATE RIGHT OF ACTION FOR ALLEGED VIOLATIONS OF THE INVESTMENT COMPANY ACT.

Count IV of the complaint purports to assert claims against all defendants for violations of Sections 13, 22, 30, 34(b) and 47(b) of the Investment Company Act, 15 U.S.C. §§ 80a *et seq.*  (CAC ¶¶ 725-41.)  As demonstrated in the Morgan Keegan Brief (pp. 55-58), no private right of action exists for any of these sections of the Investment Company Act other than Section 47(b), which is a remedial provision concerning illegal contracts and thus not relevant here.

Following the Supreme Court's decision in *Alexander* v. *Sandoval*, 532 U.S. 275 (2001), courts have nearly uniformly rejected claims under the Investment Company Act that have not been expressly authorized by Congress.  *See, e.g., Bellikoff* v. *Eaton Vance Corp.*, 481 F.3d 110, 115-17 (2d Cir. 2007); *Olmsted* v. *Pruco Life Ins. Co.*, 283 F.3d 429 (2d Cir. 2002); *In re Salomon Smith Barney Mut. Fund Fee Litig.*, 441 F. Supp. 2d 579, 592-93 & n.12  (S.D.N.Y. 2006) (collecting cases); *Korland* v. *Capital Research & Mgmt Co.*, 2009 WL 936612 at *4 (C.D. Cal. Feb. 10, 2009) (collecting additional cases).  Since the Second Circuit's opinion in *Olmsted*, virtually every court considering the issue has found that no private right of action

---

[14]      Some district courts in the Sixth Circuit have used a more exacting standard that requires culpable participation: "To establish liability under § 20(a), plaintiffs must show: (1) a primary violation by a controlled person; (2) control of the primary violator by the defendant; and (3) that the controlling person was in some meaningful sense a culpable participant in the primary violation."  *In re Telexon Corp. Sec. Litig.*, 133 F. Supp. 2d 1010, 1032 (N.D. Ohio 2000) (citing *Boguslavsky* v. *Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998)); *see also In re Century Bus. Servs. Sec. Litig.*, 2002 WL 32254513, at *24-25 (N.D. Ohio June 27, 2002); *In re Envoy Corp. Sec. Litig.*, 133 F. Supp. 2d 647, 664 (M.D. Tenn. 2001).  Application of that standard in this case requires dismissal because plaintiffs do not even attempt to plead culpable participation.

- 17 -

exists under various provisions of the Investment Company Act, including the provisions at issue

here.  *See*, *e.g.*, *Bellikoff*, 481 F.3d at 116-17 (Sections 34(b), 36(a) and 48(a)); *In re Mut. Funds*

*Inv. Litig.*, 384 F. Supp. 2d 845, 870 (D. Md. 2005) (Sections 34(b) and 36(a)); *Jacobs* v.

*Bremner*, 378 F. Supp. 2d 861, 866 (N.D. Ill. 2005) (Sections 36(a) and (b)); *In re Van Wagoner*

*Funds, Inc. Sec. Litig.*, 382 F. Supp. 1173, 1189 (N.D. Cal. 2004) (Section 34(b)); *In re Merrill*

*Lynch & Co. Research Reports Sec. Litig.*, 272 F. Supp. 2d 243, 255-56 (S.D.N.Y. 2003)

(Section 34(b)); *White* v. *Heartland High-Yield Mun. Bond Fund*, 237 F. Supp. 2d 982, 986

(E.D. Wis. 2002) (Sections 22 and 34(b)).

Further, Section 47(b) provides that a "contract that is made, or whose

performance involves, a violation of the [Investment Company Act] . . . is unenforceable by

either party . . . unless a court finds that under the circumstances enforcement would produce a

more equitable result than nonenforcement and would not be inconsistent with the purposes of

[the Investment Company Act]."  15 U.S.C. § 80a-46(b).  No remedy under Section 47(b) is

available here given the complaint's failure to allege that plaintiffs are or were parties to any

contract that is illegal on its face or that could not be performed without a violation of the federal

securities laws.  *See*, *e.g.*, *GFL Advantage Fund, Ltd.* v. *Colkitt*, 272 F.3d 189, 200 (3d Cir.

2001) (under the voidability provisions of the federal securities laws "only unlawful *contracts*

may be rescinded, not unlawful *transactions* made pursuant to lawful contracts") (citation and

internal quotation marks omitted) (emphasis in original) (quoting *Slomiak* v. *Bear Stearns & Co.*,

597 F. Supp. 676, 681-82 (S.D.N.Y.1984)); *Zerman* v. *Jacobs*, 510 F. Supp. 132, 135

(S.D.N.Y.), *aff'd*, 672 F.2d 901 (2d Cir. 1981; *In re Lord Abbett Mut. Funds Fee Litig.*, 407 F.

Supp. 2d 616, 634-35 (D.N.J. 2005), *vacated in part on other grounds*, 463 F. Supp. 2d 505

(D.N.J. 2006).  Therefore, plaintiffs' Investment Company Act claims should be dismissed.

## CONCLUSION

For the reasons set forth herein and in the Morgan Keegan Brief, the complaint should be dismissed with prejudice.

Dated:  February 12, 2010

Respectfully Submitted,


 /s/ Peter S. Fruin
Peter S. Fruin
**MAYNARD, COOPER AND GALE, P.C.**
1901 6th Avenue North, Suite 1900
Birmingham, Alabama 35203
Telephone:  (205) 254-1000
Facsimile:  (205) 254-1999
Email: pfruin@maynardcooper.com

David B. Tulchin
David E. Swarts
Margaret E. Bartlett
**SULLIVAN & CROMWELL LLP**
125 Broad Street
New York, New York  10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588
Email:  tulchind@sullcrom.com

*Attorneys for Regions Financial Corp.*
*and Regions Bank*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing was electronically filed this the 12th day of February, 2010, using the CM/ECF system which will automatically serve a copy of this pleading on all parties of record.

/s/ Peter S. Fruin
Of Counsel

## APPENDIX A

**Risk Disclosures**

- "Up to 100% of the fund's total assets may consist of debt securities that are rated below investment grade and their unrated equivalents."  MK Select, Prospectus, Nov. 1, 2004, at 6 ("Nov. 2004 Prosp.") (attached as Exhibit A to the Declaration of Matthew M. Curley, dated February 11, 2010 ("Curley Decl."); MK Select, Prospectus, Nov. 1, 2005, at 16 ("Nov. 2005 Prosp.") (Curley Decl. Ex. F); MK Select, Prospectus, Nov. 1, 2006, at 18 ("Nov. 2006 Prosp.") (Curley Decl. Ex. I); MK Select, Prospectus, Nov. 1, 2007, at 20 ("Nov. 2007 Prosp.") (Curley Decl. Ex. L).

- "Below investment grade debt securities are commonly referred to as 'junk bonds' and are considered speculative with respect to an issuer's capacity to pay interest and repay principal.  They involve greater risk of loss, are subject to greater price volatility and are less liquid, especially during periods of economic uncertainty or change, than higher-rated debt securities."  Nov. 2006 Prosp. at 18 (Curley Decl. Ex. I); Nov. 2007 Prosp. at 20 (Curley Decl. Ex. L).

- "[Below investment grade bonds] involve a higher degree of credit risk . . . .  The market prices of below investment grade bonds are . . . more sensitive to adverse economic or political changes or individual developments specific to the issuer. . . . [Rating agencies] consider such bonds to be speculative in nature."  MK Select, Prospectus, Feb. 18, 2005, at 2 ("Feb. 2005 Prosp.") (Curley Decl. Ex. C); Nov. 2004 Prosp. at 7 (Curley Decl. Ex. A); Nov. 2005 Prosp. at 3 (Curley Decl. Ex. F); Nov. 2006 Prosp. at 20 (Curley Decl. Ex. I); Nov. 2007 Prosp. at 3-4 (Curley Decl. Ex. L).

**Liquidity Disclosures**

- "Illiquid securities may be difficult to dispose of at a fair price at the times when either fund believes it is desirable to do so.  The market price of illiquid securities generally is more volatile than that of more liquid securities, which may adversely affect the price that each fund pays for or recovers upon the sale of illiquid securities . . . . The risks associated with illiquid securities may be particularly acute in situations in which each fund's operations require cash and could result in each fund borrowing to meet its short-term needs or incurring losses on the sale of illiquid securities."  MK Select, SAI, Nov. 1, 2005, at 28 ("Nov. 2005 SAI") (Curley Decl. Ex. G); MK Select, SAI, Nov. 1, 2006, at 29-30 ("Nov. 2006 SAI") (Curley Decl. Ex. J); MK Select, SAI, Nov. 1, 2007, at 32 ("Nov. 2007 SAI") (Curley Decl. Ex. M).

- "The market for below investment grade bonds may be thinner and less active than that for higher-quality debt securities, which can adversely affect the prices at which the former are sold."  Nov. 2005 SAI at 14 (Curley Decl. Ex. G); Nov. 2006 SAI at 13 (Curley Decl. Ex. J); Nov. 2007, SAI at 16 (Curley Decl. Ex. M).

**Pricing Disclosures**

- "When price quotations for certain securities are not readily available or if the available quotations are not believed to be reflective of market value, those securities shall be valued at 'fair value' as determined in good faith by the Adviser's Valuation Committee. . . . There can be no assurance that a fund could purchase or sell a portfolio security at the price used to calculate the fund's NAV."  Nov. 2005 Prosp. at 32 (Curley Decl. Ex. F); Nov. 2006 Prosp. at 40-41 (Curley Decl. Ex. I); Nov. 2007 Prosp. at 43 (Curley Decl. Ex. L).

- "The market prices of below investment grade bonds may fluctuate more than those of higher-quality debt securities and may decline significantly in periods of general economic difficulty, which may follow period of rising interest rates."  Nov. 2005 SAI at 14 (Curley Decl. Ex. G); Nov. 2006 SAI at 13 (Curley Decl. Ex. J); Nov. 2007, SAI at 15 (Curley Decl. Ex. M).