IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| | | |
|---|---|---|
| IN RE REGIONS MORGAN KEEGAN SECURITIES, DERIVATIVE and ERISA LITIGATION | ) ) ) ) | MDL Docket No. 2009 |
| This Document Relates to: | ) ) ) | |
| In re Regions Morgan Keegan Open-End Mutual Fund Litigation, | ) ) ) | |
| No. 2:07-cv-02784-SHM-dkv | ) ) ) | |

_____

**MEMORANDUM OF LAW IN SUPPORT OF JACK R. BLAIR, ALBERT C. JOHNSON, WILLIAM JEFFERIES MANN, JAMES STILLMAN R. MCFADDEN, W. RANDALL PITTMAN, MARY S. STONE AND ARCHIE W. WILLIS, III'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

**K&L GATES LLP**
JEFFREY B. MALETTA
NICHOLAS G. TERRIS
NICOLE A. BAKER
1601 K Street, NW
Washington, D.C.  20006-1600
(202) 778-9000

*Attorneys for Jack R. Blair, Albert C. Johnson, William Jefferies Mann, James Stillman R. McFadden, W. Randall Pittman, Mary S. Stone and Archie W. Willis, III*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................. 1

ARGUMENT .......................................................................................................................... 4

   I.      THE FORMER INDEPENDENT DIRECTORS ARE NOT PROPERLY
          ALLEGED TO BE "SELLERS" OF SECURITIES, AND THUS CANNOT
          BE LIABLE UNDER SECTION 12(a)(2) ............................................................ 4

   II.     PLAINTIFFS HAVE NO PRIVATE CAUSE OF ACTION AGAINST THE
          FORMER INDEPENDENT DIRECTORS UNDER SECTION 47(b) OR
          ANY OTHER ICA PROVISION CITED IN THE COMPLAINT ......................... 6

   III.    THE SECTION 15 CONTROL PERSON CLAIM AGAINST THE
          FORMER INDEPENDENT DIRECTORS SHOULD BE DISMISSED .............. 8

          A.     Plaintiffs Have Failed to Allege a Primary Violation of the Securities
                  Laws by a Person that the Former Independent Directors Controlled ........ 8

          B.     Plaintiffs Fail to Adequately Allege Control ............................................... 9

          C.     The Control Person Claims Should Be Dismissed to the Extent that
                  the Complaint Seeks to Hold the Former Independent Directors
                  Primarily Liable for Violations of the Securities Laws ............................ 12

   IV.    THE SECTION 20(a) CONTROL PERSON CLAIM AGAINST THE
          FORMER INDEPENDENT DIRECTORS SHOULD BE DISMISSED ............ 13

          A.     Plaintiffs Have Failed to Allege Culpable Participation Against the
                  Former Independent Directors ................................................................. 13

          B.     Section 20(a) of the Exchange Act Does Not Provide a Private Right
                  of Action in These Circumstances .......................................................... 14

       CONCLUSION ............................................................................................. 18

       CERTIFICATE OF SERVICE ....................................................................... 19

DC-1401162 v9

Jack R. Blair, Albert C. Johnson, William Jefferies Mann, James Stillman R. McFadden, W. Randall Pittman, Mary S. Stone, and Archie W. Willis, III – the former independent directors of the mutual funds at issue – submit this Memorandum of Law in Support of their Motion to Dismiss Plaintiffs' Consolidated Amended Class Action Complaint (the "Complaint" or "Compl.").

## PRELIMINARY STATEMENT

As demonstrated in detail in the motions to dismiss filed by other defendants, this lawsuit is an impermissible effort to use the federal securities laws to seek recovery of investment losses caused by the credit crisis and/or supposed mismanagement of the funds.  These laws are ***not*** intended to "provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations actually cause."  <u>Dura Pharmaceuticals, Inc. v. Broudo</u>, 544 U.S. 336, 345 (2005).  The funds' disclosure documents complied fully with all relevant disclosure requirements at all times relevant to this lawsuit.  Therefore, there were no material misstatements or omissions actionable under the federal securities laws, let alone misrepresentations that caused plaintiffs economic losses.  The former independent directors incorporate by reference the arguments briefed by the other defendants, which compel the dismissal of the claims against them.[1]

Courts should be especially wary of efforts to impose the *in terrorem* liability of federal securities class actions on outside directors.  <u>See generally</u> H.R. CONF. REP. NO. 104-369, at 38 (1995), <u>reprinted in</u> 1995 U.S.C.C.A.N. 730, 737 (noting the "pressure placed by meritless litigation on the willingness of capable outsiders to serve on corporate boards").  This

---

[1]	<u>See</u> Memorandum in Support of Motion to Dismiss, filed by defendants Morgan Asset Management LLC, Morgan Keegan & Co., Inc. and MK Holdings, Inc. ("MAM Memo") and the Memorandum in Support of Motion to Dismiss by PricewaterhouseCoopers LLC.

memorandum demonstrates why plaintiffs' claims against the former independent directors fail even assuming counterfactually that the Complaint properly alleged a material misstatement or omission.

Of the seven claims or counts asserted in the Complaint, the former independent directors are named as defendants in four:  (1) a claim for a violation of Section 12(a)(2) of the Securities Act of 1933 ("Securities Act"), which imposes on "sellers" of securities liability for prospectus misstatements, Compl. ¶¶ 708-16, (2) a claim primarily under Section 47(b) of the Investment Company Act of 1940 ("ICA"), which affords a limited right to rescind contracts that violate the ICA, Compl. ¶¶ 725-41, (3) a claim that the former independent directors were "controlling persons" within the meaning of Section 15 of the Securities Act and thus are derivatively liable for the primary violations of the Securities Act alleged in the Complaint, Compl. ¶¶ 717-24, and (4) a similar control person count under Section 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") alleging that the former independent directors are secondarily liable for a violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.  Compl. ¶ 758-66.

Each of the counts against the former independent directors fails to state a claim.

While the former independent directors are named as defendants on the Section 12(a)(2) count, closer inspection of plaintiffs' allegations suggests that plaintiffs may not have intended to assert this claim against the former independent directors.  Regardless, it is plain that the former independent directors are not sellers within the meaning of <u>Pinter v. Dahl</u>, 486 U.S. 622 (1988). They thus cannot be liable under Section 12(a)(2).

The ICA claims against the former independent directors also fail.  As demonstrated in the MAM Memo, except for the limited rescission remedy set forth in Section 47(b), there are no private rights of action under the provisions of the ICA cited in the Complaint.  Further, Section

47(b) provides no remedy against the former independent directors:  Plaintiffs have failed to allege an illegal contract, which is a prerequisite to liability under the statute.  And the former independent directors are not alleged to have been parties to any relevant contract or to have received any benefits for which they could conceivably be liable in an action that is in the nature of restitution.

Plaintiffs' Section 15 "controlling person claim" under the Securities Act must be dismissed because, as demonstrated in other defendants' motions, there is no primary violation for which the former independent directors could be secondarily liable.  Even assuming a primary violation, however, the Complaint pleads nothing more than that the former independent directors performed typical directorial functions in an allegedly deficient manner.  Such allegations fall far short of showing that an outside director is subject to potentially vast liability as a controlling person.  Alternatively, the Sixth Circuit has indicated that it may be impermissible to simultaneously assert against the same party a primary securities law violation (as plaintiffs seem to have alleged here with their Section 12 claim against the former independent directors) and a secondary violation.  PR Diamonds, Inc. v. Chandler, 364 F.3d 671, 697 n.4 (6th Cir. 2004).

Finally, the Section 20(a) "controlling person" claim under the Exchange Act suffers from all of the same fatal defects plus two more:  (1) plaintiffs have failed to allege that the former independent directors were culpable participants in the alleged fraud as required by some authorities to state a Section 20(a) claim, and (2) as a matter of apparent first impression, defendants respectfully submit that there is no private right of action under Section 20(a) of the Exchange Act for violations of 10(b) and Rule 10b-5.

**ARGUMENT**

I.   **THE FORMER INDEPENDENT DIRECTORS ARE NOT PROPERLY ALLEGED TO BE "SELLERS" OF SECURITIES, AND THUS CANNOT BE LIABLE UNDER SECTION 12(a)(2)**

It does not appear that plaintiffs intend to assert a Section 12(a)(2) claim against the former independent directors.   While Count II of the Complaint (¶¶ 708-16) is captioned "Violation of 1933 [Act] § 12(a)(2):  All Defendants Except Regions, PWC and MK Holding," the ensuing paragraphs indicate that the directors are not defendants on the § 12(a)(2) claim.  See Compl. ¶ 708 (enumerating certain entities but not the former independent directors as the "§ 12 Defendants"); ¶ 710 (similar); ¶ 716 (asserting that the "§ 12 Defendants are liable to Plaintiffs").

Irrespective of plaintiffs' intent, there is no basis to sue the former independent directors under Section 12(a)(2).   Even assuming *arguendo* that the Complaint's Section 12(a)(2) allegations were otherwise sufficient, the former independent directors did not "offer or sell" the funds' securities as required for them to be liable under the statute.  See 15 U.S.C. § 77l (liability limited to a person who "offers or sells a security … by means of a prospectus or oral communication").

Pinter v. Dahl, 486 U.S. 622 (1988), held that the "offers or sells" of Section 12 language encompasses two categories of defendants.[2]

---

[2]    The context for the Court's holding was what was then Section 12(1) (and has since been renumbered Section 12(a)(1)), but the Court's analysis applies equally to Section 12(a)(2).  See, e.g., Pinter, 486 U.S. at 642 n.20; Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1214 (1st Cir. 1996).

First, it includes defendants who pass title to the securities in question.  Id. at 642.  The former independent directors clearly are not within this category of defendants.

Second, the Pinter definition covers defendants who "engage[] in solicitation" of securities sales for financial gain, Pinter, 486 U.S. at 643, 648, "motivated at least in part by a desire to serve [their] own financial interests or those of the securities owner."  Id. at 647.  Section 12 thus "focuses on the defendant's relationship with the plaintiff-purchaser."  Id. at 651 (emphasis added).  Pinter rejected the substantial factor test, which holds defendants liable if their "participation in the buy-sell transaction is a substantial factor in causing the transaction to take place."  Id. at 649 (citation and internal quotation marks omitted).

The Complaint fails to meet this stringent test as to the former independent directors.

While other enumerated defendants are alleged to have "actively solicited the sale of the Funds' shares to serve their own financial interests," Compl. ¶ 712, the Complaint makes no comparable allegations of financial gain regarding the former independent directors.  The Section 12(a)(2) claim against the former independent directors should be dismissed on this basis alone.  See, e.g., In re Vivendi Universal, S.A. Sec. Litig., 381 F. Supp. 2d 158, 187 (S.D.N.Y. 2003) (dismissing Section 12 claim brought against chief financial officer where there were no facts "alleged to show how [he] stood to financially gain from his actions"); Atlas v. Accredited Home Lenders Holding Co., 556 F. Supp. 2d 1142, 1160-61 (S.D. Cal. 2008) (similar).

Separate and independent from the absence of financial gain allegations, the Complaint comes nowhere close to alleging the type of relationship between plaintiffs and the former independent directors that is a necessary predicate to seller status under Section 12(a)(2).  See, e.g., Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1216 (1st Cir. 1996) ("'bald assertions' or legal conclusions" that defendants had solicited need not be credited; under Pinter, moreover, "neither

involvement in preparation of a registration prospectus nor participation in 'activities' relating to the sale of securities, standing alone, demonstrates the kind of *relationship between defendant and plaintiff* that could establish statutory seller status"(emphasis in original)); <u>Rosenzweig v. Azurix Corp.</u>, 332 F.3d 854, 871 (5th Cir. 2003) (rejecting the contention that "signing the registration statement suffices for solicitation," and holding that "[t]he issuer may only be liable under § 12(a)(2) if the plaintiff alleges that an issuer's role was not the usual one; that it went farther and became a vendor's agent." (internal quotation omitted)).[3]

Accordingly, to the extent that the Complaint seeks to assert a claim against the former independent directors under Section 12(a)(2), that claim must be dismissed.

## II.    PLAINTIFFS HAVE NO PRIVATE CAUSE OF ACTION AGAINST THE FORMER INDEPENDENT DIRECTORS UNDER SECTION 47(b) OR ANY OTHER ICA PROVISION CITED IN THE COMPLAINT

Count IV of the Complaint (¶¶ 725-41) asserts claims under the ICA.  Plaintiffs allege that, as a result of alleged violations of Sections 13(a), 30(a), and 34(b), they are entitled, "pursuant to § 47(b) … to rescind their purchases or holdings of the Funds' shares during the Class Period or are otherwise entitled to damages . . . ."  Compl. ¶ 735.

As this statement of the claim appears to acknowledge, there is no private right of action under any of the provisions of the ICA cited in the Complaint other than Section 47(b).  <u>See</u>

---

[3]      <u>See also</u> <u>Craftmatic Sec. Litig. v. Kraftsow</u>, 890 F.2d 628, 636 (3d Cir.1989); <u>In re Infonet Servs. Corp. Secs. Litig.</u>, 310 F. Supp. 2d 1080, 1101 (C.D. Cal. 2003).  Some district court cases suggest that it may be sufficient at the pleading stage simply to allege the signing of the registration statement.  Defendants respectfully submit that such cases are contrary to the great weight authority and are otherwise unpersuasive.  <u>See</u> <u>Central Lab. Pension Fund v. Merix Corp.</u>, No. CV04-826-MO., 2005 WL 2244072, at *7 n.12 (D. Or. Sept. 15, 2005) (discussing and rejecting minority view cases).  Most such cases also rely on an outmoded view of the relevant pleading standards predating <u>Ashcroft v. Iqbal</u>, --- U.S. ---, 129 S. Ct. 1937, 1949 (May 18, 2009).

generally Bellikoff v. Eaton Vance Corp., 481 F.3d 110, 115-17 (2d Cir. 2007), and Part V of the Argument below.

Section 47(b) provides that a "contract that is made, or whose performance involves" a violation of the ICA "is unenforceable by either party… unless a court finds that under the circumstances enforcement would produce a more equitable result than non-enforcement and would not be inconsistent with the purposes of [the ICA]."  15 U.S.C. § 80a-46(b).  This statutory language authorizes only a "limited private remedy" consisting of a suit for rescission or for an injunction against continued operation of the contract, and for restitution but not a private damages remedy.  See Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11, 14-19, 25 (1979) (construing similar rescission provision of Investment Advisers Act of 1940).

No remedy under Section 47(b) is available to plaintiffs given the Complaint's failure to allege that defendants are or were parties to any contract that is illegal on its face, or that could not be performed without a violation of the federal securities laws.  See, e.g., GFL Advantage Fund, Ltd. v. Colkitt, 272 F.3d 189, 200-02 (3d Cir. 2001) (under the voidability provisions of the federal securities laws "only unlawful *contracts* may be rescinded, not unlawful *transactions* made pursuant to lawful contracts") (citation and internal quotation marks omitted); Zerman v. Jacobs, 510 F. Supp. 132, 135 (S.D.N.Y. 1981), aff'd, 672 F.2d 901 (2d Cir. 1981).

But even overlooking this fatal flaw, it is beyond reasonable dispute that the former independent directors are not proper defendants on a Section 47(b) claim.  The former independent directors are not alleged to have been parties to any illegal contract, and they are not alleged to have received any money or other benefits pursuant to an illegal contract for which they might be liable in an action for restitution.  See Wellington Int'l Commerce Corp. v. Retelny, 727 F. Supp. 843, 845 (S.D.N.Y. 1989) ("The traditional contract remedy of recission

does not include a tort claim against other entities who are not parties to the contract.");
Mekhjian v. Wollin, 782 F. Supp. 881, 888-89 (S.D.N.Y. 1992) (same); Cohen v. Citibank, N.A.,
954 F. Supp. 621, 626 (S.D.N.Y. 1996) (plaintiff in a rescission claim under the securities laws
must show that "he is in contractual privity with the defendant").[4]

## III.   THE SECTION 15 CONTROL PERSON CLAIM AGAINST THE FORMER INDEPENDENT DIRECTORS SHOULD BE DISMISSED

The two remaining counts against the former independent directors consist of "control
person" claims under Section 15 of the Securities Act and Section 20(a) of the Exchange Act,
respectively.  See Compl. ¶¶ 717-24; 758-66.  Both of these claims suffer from a number of
defects that compel their dismissal.

### A.      Plaintiffs Have Failed to Allege a Primary Violation of the Securities Laws by a Person that the Former Independent Directors Controlled

There can be no secondary "control" person liability under Section 15 or Section 20(a)
absent a primary violation by the person allegedly controlled – in this case, presumably the
funds.  See, e.g., J&R Mktg., SEP v. General Motors Corp., 549 F.3d 384, 398 (6th Cir. 2008);
Ley v. Visteon Corp., 543 F.3d 801, 818 (6th Cir. 2008).

Therefore, to the extent that the Court agrees with the arguments of the Morgan Keegan
defendants adopted herein that there were no primary violations of the securities laws by the
funds, the Court must dismiss the corresponding control person allegations against the former
independent directors.

---

[4]      Cf. In re Eaton Vance Mut. Funds Fee Litig., 403 F. Supp. 2d 310, 316 (S.D.N.Y. 2005),
aff'd, 481 F.3d 110 (2d Cir. 2007) (mutual fund trustees' receipt of compensation for their
service as trustees did not make them liable under ICA Section 36(b), which affords a private
right of action for the return of excessive advisory fees); Green Fund Asset Mgmt., L.P., 147 F.
Supp. 2d 318, 330 (D.N.J. 2001), aff'd, 285 F.3d 682 (3d Cir. 2002) (similar); In re
Alliancebernstein Mut. Fund Excessive Fees Litig., No. 04 Civ. 4885 (SWK), 2005 WL 267753
at *6-7 (similar).

**B.**     **Plaintiffs Fail to Adequately Allege Control**

"A director of a corporation is not automatically liable as a controlling person." <u>Herm v. Stafford</u>, 663 F.2d 669, 684 (6th Cir. 1981).  Indeed, where as here a plaintiff seeks to impose controlling person liability on an outside director, he must allege facts showing far more than that the outside director performed the typical functions associated with that role.  Three reasons for this conclusion warrant emphasis.

<u>First</u>, control person liability cannot be imposed merely because a defendant personally engaged in culpable conduct or signed or otherwise participated in the preparation of disclosure documents.  While some such conduct may support primary liability, controlling person liability requires a finding that the defendant actually "***controls*** a[] person liable under [Section 11 or 12]," 15 U.S.C. § 77o (emphasis added),  often  through stock ownership in combination with other necessary factors demonstrating actual control.   The impetus for control liability provisions was to ensure recourse against those who sought to use the limited liability of the corporate form and "dummy directors."

It appears that plaintiffs' theory is that the former independent directors controlled the funds and thus are liable for the funds' alleged violations of Section 11.  But a single outside director does not control a company.  <u>See, e.g.,</u> <u>Nat'l Mining Ass'n. v. United States Dep't of Interior</u>, 177 F.3d 1, 6 (D.C. Cir. 1999) ("Being an officer or director does not by itself enable an entity to control the company or its operations.").  By comparison, the Sixth Circuit has noted that, even under the "least rigorous" standard, it was not enough that an alleged controlling person held nearly 20% of the primary violator's stock, held a proxy on a controlling interest of the primary violator's subsidiary, had power over the primary violator's policy regarding capital stock, had personnel attend the primary violator's board meetings, and influenced the primary violator's debt structure.  <u>Sanders Confectionery Prod., Inc. v. Heller Fin., Inc.</u>, 973 F.2d 474,

486 (6th Cir. 1992). "Despite all of this power ... the facts suggested only the potential for control, not actual control." Id. (citation omitted).

Second, as part of the Private Securities Litigation Reform Act, Pub. L. No. 104-67, 109 Stat. 737, 762 (1995), Congress in 1995 amended Section 11 to temper the joint and several liability imposed on most defendants in a Section 11 case by generally limiting outside director exposure to proportionate liability.  See Section 11(f), 15 U.S.C. § 77k(f)(2)(A).  It is not apparent that the same liability limitations necessarily would apply to a controlling person claim for a violation of Section 11 or Section 12.  Thus, imposing controlling person liability based on ordinary directorial functions risks gutting a protection that Congress carefully and deliberately provided.[5]  Cf. Pinter v. Dahl, 486 U.S. 622, 650 n.26 (1988) (Given its express enumeration of the various persons involved in the registration process who are subject to suit, Section 11 "lends strong support to the conclusion that Congress did not intend to extend § 12 primary liability to collateral participants in the unlawful securities sales transaction.").

Third, the text of the ICA confirms that it would be improper to predicate a finding of control of the company on nothing more than the exercise of typical directorial functions.  The statute specifies that control "means the power to exercise a controlling influence over the management or policies of a company, unless such power is solely the result of an official position with such company."  15 U.S.C. § 80a-2(a)(9).  This language shows that "it was the

---

[5]     The legislative history of the Reform Act demonstrates that Congress was concerned that the broad liabilities previously imposed under the federal securities laws would jeopardize the ability of companies to attract qualified outside directors.  See, e.g., H.R. CONF. REP. NO. 104-369, at 38 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 737 (quoted in Preliminary Statement above); S. REP. NO. 104-98, at 21 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 700; 141 CONG. REC. 35240 (1995) (statement of Sen. D'Amato); 141 CONG. REC. 35291 (1995) (statement of Sen. Moseley-Braun) (noting the "increasing difficulty in attracting the best people" to serve on boards, which results in "less protection for investors").

legislative intent to refrain from entering the field of director responsibility."  Brouk v. Managed Funds, Inc., 286 F.2d 901, 916 (8th Cir. 1961), vacated for mootness, 369 U.S. 424 (1962).  The ICA further specifies that any person "who does not so own more than 25 per centum of the voting securities of any company shall be presumed not to control such company."  15 U.S.C. § 80a-2(a)(9). [6]  Here, plaintiffs affirmatively allege that the former independent directors had relatively insignificant holdings in the funds that were far below the 25% threshold.  Compl. ¶¶ 89-92.

Against this backdrop, plaintiffs have fallen far short of pleading a plausible control person claim against the former independent directors.  The Complaint merely offers conclusory allegations that the former independent directors exercised control, see, e.g., Compl. ¶ 613; allegations that the former independent directors served on the board's audit and other committees, Compl. ¶¶ 68-70, 615-17, and had a general oversight role and fiduciary duties as directors, Compl. ¶ 614; and allegations that the former independent directors reviewed and signed registration statements and reviewed the annual, semi-annual, and quarterly reports. Compl. ¶¶ 61-70.

Substantially similar averments could be made about many or perhaps most mutual fund independent directors.  They are insufficient to saddle the former independent directors with potentially annihilating liability as controlling persons.  See, e.g., Picard Chem. Inc. Profit Sharing Plan v. Perrigo Co., 940 F. Supp. 1101, 1135 (W.D. Mich. 1996) ("[Defendant] is merely alleged to have signed Registration Statements, served on the Audit, Nominating, and

---

[6]      The statute provides that "[a]ny such presumption may be rebutted by evidence, but except as hereinafter provided, shall continue until a determination to the contrary is made by the Commission by order either on its own motion or on application by an interested person."  15 U.S.C. § 80a-2(a)(9).

Compensation Committee, and sold a sizable amount of stock during the class period.... A rational inference of control may not be drawn from any of these facts."); <u>Kimmel v. Labenski</u>, No. 85 Civ. 0804, 1988 WL 19229, at *5 (S.D.N.Y. Feb. 10, 1988) (allegations that directors served on audit committee and signed SEC filings were insufficient to show how each director "possessed the power to direct or cause the direction of the management") (<u>quoting</u> <u>McFarland v. Memorex Corp.</u>, 493 F. Supp. 631, 649 (N.D. Cal. 1980)); <u>In re Nextcard, Inc. Secs. Litig.</u>, No. C 01-21029 JF (RS), 2006 WL 708663, at *5 (N.D. Cal. Mar. 20, 2006) (dismissing control person claim where defendant "was an outside director of the company and a member of the Audit Committee and Compensation Committee"; "while Plaintiffs do allege that [the defendant] met with the company's CFO to review accounting policies, financial statements and the like, Plaintiffs do not allege that Qureshey was involved in the day to day management of the company") (citations omitted), <u>id.</u>; <u>In re Envoy Corp. Sec. Litig.</u>, 133 F. Supp. 2d 647, 664 (M.D. Tenn. 2001) ("a failure to investigate cannot serve as a basis for a corporate director's [controlling person] liability").[7]

**C.   The Control Person Claims Should Be Dismissed to the Extent that the Complaint Seeks to Hold the Former Independent Directors Primarily Liable for Violations of the Securities Laws**

To the extent that the Complaint seeks to hold the former independent directors liable as primary violators of the securities laws, this provides another reason to dismiss the control person claims.

Although the Sixth Circuit has not decided the question, it has noted that "some authority suggests that a plaintiff may not be able simultaneously to assert both Section 10(b) and Rule

---

[7]   Defendants acknowledge that some cases have sustained control person claims roughly comparable to those at bar.  Defendants submit that such authorities are unpersuasive for the reasons discussed in the text.  In addition, most such cases predated the Supreme Court's groundbreaking decision in <u>Iqbal</u>.

10b-5 claims and Section 20(a) claims against the same defendant." PR Diamonds, Inc. v. Chandler, 364 F.3d 671, 697 n.4 (6th Cir. 2004) (collecting cases).  Defendants respectfully urge this Court to adopt this reasoning and conclude that "secondary liability under § 20(a) is an alternative, not a supplement, to primary liability under § 10(b) and Rule 10b-5.  Because Plaintiffs assert a [primary] claim against [defendants]… this would preclude a [control person] claim against them." In re Capstead Mortg. Corp. Secs. Litig., 258 F. Supp. 2d 533, 566 (N.D. Tex. 2003) (internal citations omitted).

## IV.    THE SECTION 20(a) CONTROL PERSON CLAIM AGAINST THE FORMER INDEPENDENT DIRECTORS SHOULD BE DISMISSED

Plaintiffs' § 20(a) control person claim fails for the same reasons as their similar Section 15 claims.  There are also two further independent grounds for dismissal of the Section 20(a) claims:  (1) plaintiffs have failed to properly allege that the former independent directors were culpable participants in the supposed fraud, and (2) there is no private right of action under Section 20(a) of the Exchange Act for a violation of Section 10(b) and Rule 10b-5.  Each of these grounds is discussed in turn.

### A.    Plaintiffs Have Failed to Allege Culpable Participation Against the Former Independent Directors

While the Sixth Circuit apparently has not resolved the issue, as other defendants have pointed out, the more persuasive view of the law is that a plaintiff seeking to maintain a control person claim under Section 20(a) of the Exchange Act must also plead facts sufficient to establish culpable participation.[8]  This requirement is generally similar to a plaintiff's burden to plead that a defendant acted with scienter. See In re Fed. Nat'l Mortgage Ass'n Sec., Derivative, and "ERISA" Litig., 503 F. Supp. 2d 25, 43-45 (D.D.C. 2007) ("plaintiffs must plead, at a

---

[8]        See MAM Memo at 53-55.

minimum, particularized facts of a defendant's culpable participation") (internal quotation marks omitted).

The Complaint lacks allegations that support a reasonable inference of culpable participation on the part of the former independent directors, and the Section 20(a) claim against them therefore must be dismissed.

### B.   Section 20(a) of the Exchange Act Does Not Provide a Private Right of Action in These Circumstances

As a matter of law, and especially in light of the Supreme Court's recent decision in Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc., 128 S. Ct. 761 (2008), an alternative and independent reason exists to dismiss the control person claim against the former independent directors.  The former independent directors contend that there is no private right of action under Section 20(a) of the Exchange Act for a violation of Section 10(b) and Rule 10b-5.

Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), provides:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

As already noted, Section 20(a) provides for a form of secondary liability.  If a controlled person is "liable under any provision of this chapter," the controlling person "shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable."  15 U.S.C. § 78t(a).

Under the plain language of the Exchange Act, however, **no person** is liable under Section 10(b) and Rule 10b-5 to a private plaintiff: "[t]he text of § 10(b) does not provide for private claims" and "[t]here is no indication that Congress, or the Commission when adopting Rule 10b-5, contemplated such a remedy."  Lampf, Pleva, Lipkind v. Gilbertson, 501 U.S. 350,

358-59 (1991) (citations and internal quotation marks omitted).  Thus, when there is a primary

violation of Section 10(b), there is no "liab[ility] under any provision of this title," 15 U.S.C. §

78t(a), to a private person to which Section 20(a) could attach.

To be sure, it is "beyond peradventure" that there is a ***judicially implied*** private right of

action under Section 10(b) and Rule 10b-5.  Herman & MacLean v. Huddleston, 459 U.S. 375,

380 (1983).  The relevant inquiry, therefore, is whether a judicially implied private right of

action also should be recognized under Section 20(a) for a violation of Section 10(b) and Rule

10b-5.  The former independent directors acknowledge that numerous cases have so held or

assumed.  Cf. Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S.

164 (1994) (holding that there is no liability for aiding and abetting a violation of Section 10(b)

even though, as the dissent pointed out, "*hundreds* of judicial and administrative proceedings,"

id. at 192 (dissenting opinion of Stevens, J.), had held or assumed that such liability existed).

But there appears to have been no focused consideration of the issue in any published federal

judicial opinion applying the Supreme Court's current approach to implied private rights of

action announced in Alexander v. Sandoval, 532 U.S. 275 (2001), and recently underscored in

Stoneridge, 128 S. Ct. 761 (2008).

Under the approach of J.I. Case Co. v. Borak, 377 U.S. 426, 433 (1964), the federal

courts once routinely found implied private causes of action in the Exchange Act and other

federal securities laws.   Sandoval, 532 U.S. at 287.   But the Supreme Court has since

"abandoned" that approach "even when interpreting the same Securities Exchange Act of

1934."[9]  Id.  The governing approach today is simply to ask whether the congressionally enacted

---

[9]      The Supreme Court has indicated that those implied private remedies recognized in prior
holdings of the Supreme Court remain viable but that additional such remedies will not be
recognized unless they meet current governing standards.  See, e.g., Central Bank of Denver,

text of the statute at issue comports with the implication of a private right of action.  See id. at

288 ("We therefore begin (and find that we can end) our search for Congress's intent with the

text and structure of [the statute].").

As stated by the Stoneridge Court in the course of its holding circumscribing the implied

private remedy under Section 10(b):

> Though the rule once may have been otherwise [citing J.I. Case Co. v. Borak, 377
> U.S. 426, 432-33 (1964)], *it is settled that there is an implied cause of action*
> *only if the underlying statute can be interpreted to disclose the intent to create*
> *one* [citing Sandoval and other authorities].  This is for good reason.  In the
> absence of congressional intent the Judiciary's recognition of an implied private
> right of action necessarily extends its authority to embrace a dispute Congress has
> not assigned it to resolve.

Stoneridge, 128 S. Ct. at 772 (citations and internal quotation marks omitted, emphasis added).

See also Iqbal, 129 S. Ct. 1937 (stating in the context of a constitutional tort action, "implied

causes of action are disfavored," and the Court therefore has been reluctant to extend them "to

any new context or new category of defendants") (citation and internal quotation marks omitted);

Sosa v. Alvarez-Machain, 542 U.S. 692, 727 (2004) (The Supreme Court "has recently and

repeatedly said that a decision to create a private right of action is one better left to legislative

judgment in the great majority of cases.").

Accordingly, in Bellikoff v. Eaton Vance Corp., 481 F.3d 110 (2d Cir. 2007), the Second

Circuit applied Sandoval and confirmed that there is no implied private right of action under the

---

N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 171 (1994) ("Private plaintiffs may
sue under the express rights of action contained in the Acts.  They may also sue under private
rights of action we have found to be implied by the terms of § 10(b) and § 14(a) of the 1934
Act."); Touche Ross & Co. v. Redington, 442 U.S. 560, 577 (1979) ("The Court in Borak found
a private cause of action implicit in § 14(a).…  We do not now question the actual holding of that
case, but we decline to read the opinion so broadly that virtually every provision of the securities
Acts gives rise to an implied private cause of action.") (citations omitted).  See also Newcome v.
Esrey, 862 F.2d 1099, 1102 (4th Cir. 1988) (en banc) (overturning prior Fourth Circuit opinion
that had found an implied private right of action under Section 17(a) of the Securities Act,
stating: "the decisions implying a private right of action have come under increasing criticism").

"control person" provision – Section 48(a), 15 U.S.C. § 80a-47(a), and other provisions of another federal securities statute, the ICA, 15 U.S.C. § 80a-1 et seq.  The Second Circuit reached this conclusion in light of the lack of an express right of action in the statute and the express provision of other causes of action in the ICA.  <u>Id.</u> at 116-17.  The Second Circuit further rejected plaintiffs' reliance on such factors as "a long line of decisions recognizing implied private rights of action" under the same statutory provisions and even a legislative committee report that expressly stated that the committee "expect[ed] the courts to imply private rights of action" under the ICA.  <u>Id.</u> at 117 (citations and internal quotation marks omitted).

The reasoning of <u>Bellikoff</u> plainly applies here.  <u>See</u> <u>Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis</u>, 444 U.S. 11, 20-21 (1979) ("Congress provided an express damages remedy for misrepresentations contained in an underwriter's registration statement in § 11(a) of the Securities Act of 1933, and for certain materially misleading statements in § 18(a) of the Securities Exchange Act of 1934.  Obviously, then, when Congress wished to provide a private damages remedy, it knew how to do so and did so expressly.") (citations and internal quotation marks omitted).

Indeed, <u>Stoneridge</u> carefully delineated the circumstances in which secondary actors may be subject to civil liability under the federal securities laws and the Court's discussion conspicuously omits any mention of private secondary control person liability under Section 20(a) for violations of Section 10(b) and Rule 10b-5:

> Secondary actors are subject to criminal penalties, <u>see, e.g.</u>, 15 U.S.C. § 78ff, and civil enforcement by the SEC, <u>see, e.g.</u>, § 78t(e)….
>
> All secondary actors, furthermore, are not necessarily immune from private suit. The securities statutes provide an express private right of action against accountants and underwriters in certain circumstances, <u>see</u> 15 U.S.C. § 77k [<u>i.e.</u>, Section 11 of the Securities Act], and the implied right of action in § 10(b) continues to cover secondary actors who commit primary violations.  [<u>citing</u>

Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 191 (1994)].

Stoneridge, 128 S. Ct. at 773-74.

In short, the control person claim against the former independent directors should be dismissed because Section 20(a) of the Exchange Act does not provide for an implied private right of action for a primary violation of Section 10(b) and Rule 10b-5.

## **CONCLUSION**

Plaintiffs' claims against the former independent directors should be dismissed in their entirety with prejudice.

Respectfully submitted,


/s/ Jeffrey B. Maletta
Jeffrey B. Maletta
Nicholas G. Terris
Nicole A. Baker
K&L GATES LLP
1601 K Street, NW
Washington, DC  20006
Tel:  202-778-9062
Fax:  202-778-9100
jeffrey.maletta@klgates.com

*Attorney for Jack R. Blair, Albert C. Johnson, William Jefferies Mann, James Stillman R. McFadden, W. Randall Pittman, Mary S. Stone and Archie W. Willis, III*

- 18 -

## CERTIFICATE OF SERVICE

I hereby certify that on February 12, 2010, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following and/or served the following via U.S. Mail:

**APPERSON CRUMP PLC**
CHARLES D. REAVES
JEROME A. BROADHURST
6070 Poplar Avenue, Sixth Floor
Memphis, TN 38119-3954

**KIRKLAND & ELLIS, LLP**
TIMOTHY DUFFY, ESQ.
EMILY NICKLIN, ESQ.
KRISTOPHER RITTER, ESQ.
300 North LaSalle
Chicago, IL  60654

**HEAD, SEIFERT & VANDER WEIDE, P.A.**
VERNON J. VANDER WEIDE
THOMAS V. SEIFERT
333 South Seventh St., Suite 1140
Minneapolis, MN  55402-2422

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**
LEO BEARMAN, ESQ.
EUGENE PODESTA, ESQ.
165 Madison Avenue
First Tennessee Building
Memphis, TN  38103

**LOCKRIDGE GRINDAL NAUEN PLLP**
RICHARD A. LOCKRIDGE
GREGG M. FISHBEIN
100 Washington Avenue South, Suite 2200
Minneapolis, MN  55401

**SULLIVAN & CROMWELL LLP**
DAVID B. TULCHIN
DAVID E. SWARTS
125 Broad Street
New York, New York  1004

**ZIMMERMAN REED, P.L.L.P.**
CAROLYN G. ANDERSON
TIMOTHY J. BECKER
651 Nicollet Mall, Suite 501
Minneapolis, MN  55402

**SUTHERLAND ASBILL & BRENNAN, LLP**
S. LAWRENCE POLK
999 Peachtree Street NE
Atlanta, GA  30309

**MAYNARD COOPER & GALE PC**
PETER S. FRUIN
2400 Regions Harbert Plaza
1901 Sixth Avenue North
Birmingham, AL  35203

**BASS BERRY & SIMS PLC**
MICHAEL L. DAGLEY
MATTHEW M. CURLEY
BRITT K. LATHAM
150 Third Avenue South, Suite 2800
Nashville, TN  37201

**PAUL HASTINGS JANOFSKY & WALKER LLP**
KEVIN C. LOGUE
ASA R. DANES
75 E. 55th Street
New York, NY  10022

**BASS BERRY & SIMS PLC**
SHEPHERD D. TATE
MICHAEL A. BRADY
100 Peabody Place, Suite 900
Memphis, TN  38103

/s/ Jeffrey B. Maletta