IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| IN RE REGIONS MORGAN KEEGAN SECURITIES, DERIVATIVE and ERISA LITIGATION<br><br>This Document Relates to:<br><br>In re Regions Morgan Keegan Open-End Mutual Fund Litigation,<br><br>No. 2:07-cv-02784-SHM-dkv | MDL Docket No. 2009 |

**FORMER INDEPENDENT DIRECTORS' REPLY TO PLAINTIFFS' CONSOLIDATED MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

**K&L GATES LLP**
JEFFREY B. MALETTA
NICHOLAS G. TERRIS
NICOLE A. BAKER
1601 K Street, NW
Washington, D.C.  20006-1600
(202) 778-9000

*Attorneys for Jack R. Blair, Albert C. Johnson, William Jefferies Mann, James Stillman R. McFadden, W. Randall Pittman, Mary S. Stone and Archie W. Willis, III*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

I.    THE FORMER INDEPENDENT DIRECTORS ARE NOT PROPERLY ALLEGED TO BE "SELLERS" OF SECURITIES, AND THUS CANNOT BE LIABLE UNDER SECTION 12(a)(2) ................................................................................................ 2

II.   PLAINTIFFS HAVE NO PRIVATE CAUSE OF ACTION AGAINST THE FORMER INDEPENDENT DIRECTORS UNDER SECTION 47(b) OR ANY OTHER ICA PROVISION CITED IN THE COMPLAINT ............................................. 3

III.  THE SECTION 15 CONTROL PERSON CLAIM AGAINST THE FORMER INDEPENDENT DIRECTORS SHOULD BE DISMISSED ........................................... 5

      A.   Plaintiffs Have Failed to Allege a Primary Violation of the Securities Laws by a Person that the Former Independent Directors Controlled .............................. 5

      B.   Plaintiffs Fail to Adequately Allege Control ........................................................... 5

      C.   The Control Person Claims Should Be Dismissed to the Extent that the Complaint Seeks to Hold the Former Independent Directors Primarily Liable for Violations of the Securities Laws .................................................................... 10

IV.   THE SECTION 20(a) CONTROL PERSON CLAIM AGAINST THE FORMER INDEPENDENT DIRECTORS SHOULD BE DISMISSED ......................................... 10

      A.   Plaintiffs Have Failed to Allege Culpable Participation Against the Former Independent Directors ............................................................................................ 10

      B.   Section 20(a) of the Exchange Act Does Not Provide a Private Right of Action in These Circumstances .............................................................................. 11

CONCLUSION ............................................................................................................................. 12

CERTIFICATE OF SERVICE

i

The former independent directors submit this Reply to Plaintiffs' Consolidated Memorandum in Opposition to Defendants' Motions to Dismiss Plaintiffs' Consolidated Amended Class Action Complaint (filed April 13, 2010, dckt. no. 238) (hereinafter the "Opposition" or "Opp.").

The former independent directors' opening Memorandum of Law in Support of Their Motion to Dismiss (filed February 12, 2010, dckt. no. 229-1) will be referred to hereinafter as the "Memorandum" or "Mem." This Reply uses the same structure as the Memorandum. To the extent applicable, the former independent directors adopt the additional arguments and authorities in the reply briefs filed by other defendants.

## PRELIMINARY STATEMENT

The Opposition expressly confirms that plaintiffs are **not** pressing primary liability claims under the Securities Act of 1933 ("Securities Act") against the former independent directors.

This leaves as the only claims against the former independent directors a claim under § 47(b) of the Investment Company Act of 1940 ("ICA") and the two "controlling person" claims. The Opposition fails to rebut the former independent directors' arguments for dismissal of these claims.

Plaintiffs still have not identified any illegal contract that might be germane to their § 47(b) claim, or any relevant contract (illegal or otherwise) to which the former independent directors are or were parties. Absent such a contract, there is no basis for a claim against the former independent directors under this section.

As to the controlling person claims against the former independent directors, the Opposition cites a number of non-controlling cases – most of which predate the change in the pleading standards mandated by Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. 1937 (May 18, 2009) –

that allowed similar claims to withstand a motion to dismiss. These cases are unpersuasive for three reasons. First, they fail to heed the Sixth Circuit's rulings indicating that overall control of a company, and not mere director status or primary liability for a misstatement, is necessary to state a control person claim. Second, they ignore the Congressional determination that too readily imposing securities liability on independent directors will deter qualified persons from serving as directors. Third, they did not consider the express, specific statutory definition of control in the ICA that plainly precludes plaintiffs' claims. Accordingly, the Court should reject plaintiffs' authorities and adopt the persuasive authorities cited by defendants.

Plaintiffs make little effort to respond to defendants' additional arguments applicable to the § 20(a) control person claim. The Opposition effectively confirms that plaintiffs lack facts sufficient to allege culpable participation. And plaintiffs do not directly attempt to refute defendants' argument and authorities demonstrating that, under current Supreme Court precedent, there is no private right of action under § 20(a) of the Exchange Act for violations of § 10(b) and Rule 10b-5. Instead, plaintiffs misleadingly cite cases in which the issue was not addressed as if such decisions foreclosed defendants' position.

## ARGUMENT

### I. THE FORMER INDEPENDENT DIRECTORS ARE NOT PROPERLY ALLEGED TO BE "SELLERS" OF SECURITIES, AND THUS CANNOT BE LIABLE UNDER SECTION 12(a)(2)

In their opening Memorandum, the former independent directors demonstrated that: (1) plaintiffs seemingly did not intend to assert a § 12(a)(2) claim against the former independent directors, Mem. 2, 4, (2) regardless of plaintiffs' intent, the former independent directors are not proper defendants on a § 12(a)(2) claim, Mem. 2, 4-6, and (3) plaintiffs must elect between naming a party as a primary defendant and a control person. Mem. 12-13.

In response, plaintiffs make clear that they do **not** allege that the former independent directors are primarily liable. Plaintiffs state that:

> The [former independent directors] also argue that the control person claims should be dismissed because they are alleged to be primary violators of the securities laws. This is incorrect. *Plaintiffs do not plead primary liability as to the [former independent directors]*.

Opp. 136 n.150 (emphasis added).

Thus, there is no § 12(a)(2) claim against the former independent directors.

## II. PLAINTIFFS HAVE NO PRIVATE CAUSE OF ACTION AGAINST THE FORMER INDEPENDENT DIRECTORS UNDER SECTION 47(b) OR ANY OTHER ICA PROVISION CITED IN THE COMPLAINT

Plaintiffs offer three meritless responses to the former independent directors' argument that the Complaint fails to allege that *any* defendant is or was a party to a contract that is illegal on its face or that could not be performed without a violation of the federal securities laws. See Mem. 7.

1. Plaintiffs observe that defendants' principal authorities discussing this requirement involved § 29(b) of the Exchange Act or § 215 of the Investment Advisers Act of 1940 rather than § 47(b) of the ICA. But the minor differences among these provisions are immaterial for present purposes. See, e.g., Mills v. Elec. Auto-Lite Co., 396 U.S. 375, 387-88 & n.10 (1970) (recission remedies in § 29(b) of the Exchange Act, § 215 of the Investment Advisers Act, and § 47(b) of the ICA are "counterparts"); In re Mutual Funds Inv. Litig., 384 F. Supp. 2d 873, 880 (D. Md. 2005) ("[c]ourts generally look to Section 29(b), 15 U.S.C. § 78cc(b), of the Securities Exchange Act of 1934 … for guidance when interpreting Section 47(b)").

2. Plaintiffs specify that the relevant contract for purposes of their § 47(b) claim is the underwriting agreement and they labor to factually distinguish defendants' authorities. See Opp. 139 ("the applicable contract is the Underwriting Agreement"). But plaintiffs have not

3

argued and cannot argue that the underwriting agreement by its terms violates a substantive provision of the ICA, or that the performance of the underwriting agreement *necessarily* would result in such a violation. It is beyond serious dispute that the underwriting agreement *could have been* performed without violating the ICA. Hence, plaintiffs at most have alleged an unlawful transaction pursuant to a lawful contract rather than a viable claim under § 47(b). See Mem. 7. Significantly, moreover, even assuming contrary to law that the underwriting agreement otherwise could serve as the predicate for a § 47(b) claim, plaintiffs lack standing to pursue a rescission claim based on the underwriting agreement because they are not (and are not alleged to be) parties to that agreement. As the First Circuit has explained:

> Section 47(b)(1) declares that contracts entered into in violation of the other provisions of the Investment Company Act are "unenforceable **by either party**." 15 U.S.C. § 80a-46(b)(1) (emphasis added). [Plaintiff] is not a party to the [advisory contract].... [A] shareholder … lacks standing to pursue on his own claims properly belonging to the corporation.

Lessler v. Little, 857 F.2d 866, 874 (1st Cir. 1988).[1] Plaintiffs themselves appear to recognize this point. See Opp. 137-38 ("Courts have recognized that the remedies provided by § 47 may be pursued by a party to the contract.").

3.   Plaintiffs also state that they seek to "rescind their purchases" of the Funds' shares, Opp. 139, and they assert that they have rights under the Funds' articles of incorporation. Opp. 140. But this is beside the point for purposes of plaintiffs' § 47(b) claim. Plaintiffs do not and cannot allege that the Funds' shares or articles of incorporation were illegal contracts that should be voided under the statute.

---

[1]   Accord Hamilton v. Allen, 396 F. Supp. 2d 545, 558 (E.D. Pa. 2005); Davis v. Bailey, No. CIV-A05-CV00042 WYD-OES, 2005 WL 3527286 at *6 (D. Colo. Dec. 22, 2005); Highland Crusader Offshore Partners, L.P. v. Motient Corp., No. A-06-CA-540 LY, 2006 WL 3358425 at *8-*9 (W.D. Tex. Nov. 17, 2006) (same, and also rejecting argument that shareholder plaintiff was a "nonparty who acquired a direct right under the contract").

4

Even setting aside the foregoing, plaintiffs have not so much as attempted to explain how the former independent directors – who are not alleged to be parties to the underwriting agreement or to any other supposedly relevant contract – could possibly be proper defendants on plaintiffs' § 47(b) claim. See Mem. 7-8.

Accordingly, plaintiffs' § 47(b) claim against the former independent directors is patently meritless and must be dismissed.

### III.   THE SECTION 15 CONTROL PERSON CLAIM AGAINST THE FORMER INDEPENDENT DIRECTORS SHOULD BE DISMISSED

Plaintiffs also fail to resuscitate their "control person" claims under § 15 of the Securities Act and § 20(a) of the Exchange Act.

#### A.   Plaintiffs Have Failed to Allege a Primary Violation of the Securities Laws by a Person that the Former Independent Directors Controlled

The parties agree that "[t]o state a claim for control person liability, the complaint must sufficiently allege a primary violation." Opp. 127. See also Mem. 3, 8. As exhaustively and persuasively demonstrated in the briefs filed by the Morgan Keegan defendants, plaintiffs have failed to plead a primary Securities Act violation against any defendant. Accordingly, the controlling person claims against the former independent directors can and should be dismissed even without reaching the former independent directors' separate arguments.

#### B.   Plaintiffs Fail to Adequately Allege Control

Assuming *arguendo* that plaintiffs have sufficiently alleged a primary violation against other defendants, the question for the Court is whether a complaint states a control person claim against an independent director who is alleged to have done nothing more than served on the board's audit and other committees, reviewed and signed the fund's registration statement and reviewed other reports, and otherwise performed the typical directorial functions in an allegedly deficient manner. See Mem. 11. The parties have cited non-controlling authorities addressing

5

similar allegations that have reached differing conclusions. Compare Mem. 11-12 with Opp. 134-35.

Plaintiffs' principal authority, In re Livent, Inc. Noteholders Sec. Litig., 151 F. Supp. 2d 371, 437 (S.D.N.Y. 2001), reasons that the fact that a director is in a position "to approve a corporation's financial statements" gives the director some control over the accuracy of the financial registration statement and that imposing control person liability on directors "foster[s] accountability by imposing a penalty on those who are in a position to monitor the truthfulness of corporate public representations." Id.

This is an unpersuasive rationale for adopting plaintiffs' position.

To begin with, as noted in the Memorandum, the relevant inquiry is not whether a director has some control over the relevant statements at issue – or is even solely responsible for making the statement. See Mem. 9. Responsibility for misstatements may suffice to support a claim for primary liability under the Securities Act or the Exchange Act – *the type of claim against the former independent directors that plaintiffs have eschewed in this case*. But responsibility for a misstatement does not suggest that the director exerts overall control over a company in a manner akin to a controlling stockholder. See Mem. 9. See also Sanders Confectionery Prod., Inc. v. Heller Fin., Inc., 973 F.2d 474, 486 (6th Cir. 1992) (rejecting controlling person claim where plaintiff "only alleged participation in the specific activity [i.e. participating in the development of the prospectus] without attempting to establish broader actual control").[2] The impetus for control person liability was *not* to impose liability on the makers or

---

[2] Plaintiffs observe that the defendant in Sanders Confectionery Prod., Inc. v. Heller Fin., Inc., 973 F.2d at 474 "was not a shareholder … but a lender." Opp. 135 n.149. This ignores that the Sixth Circuit characterized as the "least rigorous" plausible standard an Eighth Circuit case rejecting a control person claim against a defendant bank that was a lender *and* a 20% shareholder of the borrower's stock *and* that "held a proxy on a controlling interest of the

6

aiders and abettors of allegedly false statements. It was to ensure recourse against those who sought to use the limited liability of the corporate form and "dummy directors" to carry out fraudulent securities schemes with impunity. See LaPerriere v. Vesta Ins. Group, Inc., 526 F.3d 715, 721 (11th Cir. 2008); Paul F. Newton & Co. v. Texas Commerce Bank, 630 F.2d 1111, 1118-19 (5th Cir. 1980), rehearing denied, 634 F.2d 1355 (5th Cir. 1980).

Imposing control person liability against independent directors to "foster accountability" also risks undermining the Congressional determination in enacting the Private Securities Litigation Reform Act of 1995 that outside directors should not be saddled with joint and several liability. See Mem. 10 & n.5. Potentially massive primary liability is more than enough of a "penalty" against independent directors who ordinarily earn nothing more than a typical director's fee for their service. As the Reform Act Congress concluded, the risk of still further liability would weaken investor protection by deterring qualified persons from serving as independent directors. See Mem. 10 & n.5.

While it appears to be common ground that there is no Sixth Circuit authority precisely on point, it is clear that plaintiffs' position is difficult to reconcile with the controlling guidance that the court of appeals has provided. Mutual fund independent directors effectively are required to sign registration statements and to serve on audit committees.[3] Deeming these typical directoral functions sufficient to state a claim for control person liability is in

---

borrower's subsidiary, had power over the borrower's policy regarding capital stock, bank personnel attended board meetings, and it influenced the borrower's debt structure." Sanders Confectionery, 973 F.2d at 486. "Despite all of this power, the Eighth Circuit held that the facts suggested only the potential for control, not actual control." Id.

[3] See 15 U.S.C. § 77f(a) (majority of board must sign registration statement); 15 U.S.C. § 80a-31(a) (generally requiring that auditors must be selected by independent directors). See generally A.B.A., SECTION OF BUSINESS LAW, FUND DIRECTOR'S GUIDEBOOK at 26 (1996) (stating that the audit committees of many funds are comprised of all of the fund's independent directors).

7

considerable tension with (if not contrary to) the Sixth Circuit's admonition that "[a] director of a corporation is not automatically liable as a controlling person." Herm v. Stafford, 663 F.2d 669, 684 (6th Cir. 1981).

Plaintiffs' theory of control person liability also is plainly inconsistent with the express statutory provision in the ICA defining "control." See Mem. 10-11. Plaintiffs do not directly dispute this point, but urge the Court simply to ignore the statute and look only to an SEC definition of control in Regulation C, 17 C.F.R. § 230.405, which contains general requirements regarding the preparation and filing of registration statements and was designed primarily with operating companies in mind. See Opp. 135 n.149. While plaintiffs' attempt to equate an independent directorship with controlling person status fails under either definition, the later-enacted statute specifically defining control in the investment company context cannot properly be disregarded. "A general statutory rule usually does not govern unless there is no more specific rule." Green v. Bock Laundry Machine Co., 490 U.S. 504, 524 (1989). See also FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 132-33 (2000) (When reviewing an agency's construction of a statute it administers, a reviewing court must first ask whether Congress has directly spoken to the precise question at issue and, if Congress has done so, the inquiry is at an end. In making this determination, it should be recognized that "the meaning of one statute may be affected by other Acts, particularly where Congress has spoken subsequently and more specifically to the topic at hand."); 17 C.F.R. § 239.15A (prescribing distinct registration statement for mutual funds as set forth in Form N-1A).

Finally, it is significant that plaintiffs' position leans heavily on cases predating the Supreme Court's overhaul of the federal pleading standards in Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. 1937 (May 18, 2009). See Mem. 12 n.7. (Plaintiffs' assertion that In re Charles Schwab

8

Corp. Sec. Litig., 257 F.R.D. 534 (N.D. Cal. Feb. 4, 2009) was issued after Iqbal, see Opp. 135, is obviously erroneous.)

Plaintiffs fault defendants for failing to explain why Iqbal affects the analysis.  Opp. 135.  But the relevance of Iqbal should be apparent.  Previously, a complaint was merely required to provide a defendant fair notice of a plaintiff's claim.  At that point, courts were obliged to deny a motion to dismiss unless the movant showed "beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Supreme Court ruled that, at least in the context of complex antitrust litigation, this formulation of the pleading standard had "earned its retirement."  Twombly, 550 U.S. at 563.  Subsequently, in Iqbal, the Court mandated that in all cases (not just large antitrust matters), 129 S. Ct. at 1953, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."  Iqbal, 129 S. Ct. at 1949 (citation and internal quotation marks omitted).  Now, therefore, pleading facts that are "merely consistent with a defendant's liability" is insufficient, and the factual content set forth in the complaint must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

It is understandable that courts applying the extraordinarily permissive Conley standard (such as In re Nat'l Century Fin. Enter., Inc. Inv. Litig., 504 F. Supp. 2d 287 (S.D. Ohio 2007), cited by plaintiffs at Opp. 134) would have allowed claims similar to plaintiffs' to proceed past a motion to dismiss.  The allegations in plaintiffs' complaint – essentially that the independent directors performed typical directoral functions – may not be *inconsistent* with liability.  However, plaintiffs' factual allegations fall well short of allowing the Court to draw a reasonable inference of control person liability, as Iqbal now requires.

9

  **C.**  **The Control Person Claims Should Be Dismissed to the Extent that the Complaint Seeks to Hold the Former Independent Directors Primarily Liable for Violations of the Securities Laws**

In light of plaintiffs' clarification that they do not seek to hold the former independent directors liable as primary violators of the securities laws, <u>see</u> Opp. 136 n.150, the Court need not consider defendants' argument that the control person claims must be dismissed on the ground that a plaintiff may not simultaneously assert primary and secondary claims against the same defendant. <u>See</u> Mem. 12-13. Plaintiffs' clarification has mooted the issue.

**IV.** **THE SECTION 20(a) CONTROL PERSON CLAIM AGAINST THE FORMER INDEPENDENT DIRECTORS SHOULD BE DISMISSED**

Plaintiffs make little effort to rebut defendants' additional arguments for dismissal of the § 20(a) control person claim.

  **A.**  **Plaintiffs Have Failed to Allege Culpable Participation Against the Former Independent Directors**

The Opposition underscores that plaintiffs cannot adequately allege culpable participation. It indicates that plaintiffs lack sufficient facts to plead such basic matters as whether certain allegedly important information was shared with the former independent directors, "the extent to which the Director Defendants participated in the fair value pricing of the Funds' securities," or whether the fund's auditor "advised the Funds' board and management regarding one or more of the issues alleged in the [Complaint]." Opp. 94. <u>See also</u> Opp. 22 n.22 (plaintiffs lack "any information" as to "just what kind of oversight did the Funds' board exercise").

### B. Section 20(a) of the Exchange Act Does Not Provide a Private Right of Action in These Circumstances

Defendants also demonstrated that, under the methodology prescribed in Alexander v. Sandoval, 532 U.S. 275 (2001), there is no private right of action under § 20(a) of the Exchange Act for violations of § 10(b) and Rule 10b-5. See Mem. 14-18.

Plaintiffs do not directly respond to defendants' analysis. They merely assert that defendants' argument would "wipe out established Supreme Court and Sixth Circuit precedent and abolish a settled cause of action"; cite four recent circuit cases addressing § 20(a) claims; and conclude by stating that "there is *no* authority that suggests that a private cause of action does not exist under § 20(a)." Opp. 136.

Contrary to plaintiffs' baseless assertion, there is no Supreme Court precedent holding that there is an implied private right of action under § 20(a) for a violation of Rule 10b-5, and no published Sixth Circuit case applying Sandoval that so holds. Accord Reeves v. Cont'l Equities Corp. of America, 912 F.2d 37, 41 (2d Cir. 1990) (recognizing that, in determining the existence of an implied private right of action, courts must "employ the analysis currently required by the Supreme Court for making the determination of Congressional intent") (citation and internal quotation marks omitted).

Further, plaintiffs' four cases have no bearing on the question presented. None of them addressed whether an implied private right of action should be recognized in this context, which is understandable given that it seems no party raised the issue. Compare Burks v. Lasker, 441 U.S. 471, 475-76 (1979) ("we shall assume without deciding that respondents have implied, derivative causes of action under the ICA and IAA," id. at 476); Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 97 n.4 (1991) (similar). And it is established that "[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be

11

considered as having been so decided as to constitute precedents." Cooper Indus., Inc. v. Aviall Servs., Inc., 543 U.S. 157, 170 (2004) quoting Webster v. Fall, 266 U.S. 507, 511 (1925); Nemir v. Mitsubishi Motors Corp., 381 F.3d 540, 559 (6th Cir. 2004) (same).

Finally, while plaintiffs are correct that there is no published authority adopting defendants' argument, it is equally true that plaintiffs have cited no published authority rejecting it. In short, the issue seems to be one of first impression, and the failure of parties in other cases to raise it underscores the desirability of a ruling from this Court. See McCormick v. United States, 500 U.S. 257, 280 (1991) (opinion of Scalia, J.) ("unexamined assumptions have a way of becoming, by force of usage, unsound law").

## CONCLUSION

Plaintiffs' claims against the former independent directors should be dismissed in their entirety with prejudice.

Respectfully submitted,

/s/ Jeffrey B. Maletta
Jeffrey B. Maletta
Nicholas G. Terris
Nicole A. Baker
K&L GATES LLP
1601 K Street, NW
Washington, DC  20006
Tel:  202-778-9062
Fax:  202-778-9100
jeffrey.maletta@klgates.com

*Attorneys for Jack R. Blair, Albert C. Johnson, William Jefferies Mann, James Stillman R. McFadden, W. Randall Pittman, Mary S. Stone and Archie W. Willis, III*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 28, 2010, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following, and/or served the following via U.S. Mail:

**APPERSON CRUMP PLC**
CHARLES D. REAVES
JEROME A. BROADHURST
6070 Poplar Avenue, Sixth Floor
Memphis, TN 38119-3954

**KIRKLAND & ELLIS, LLP**
TIMOTHY DUFFY, ESQ.
EMILY NICKLIN, ESQ.
KRISTOPHER RITTER, ESQ.
300 North LaSalle
Chicago, IL 60654

**HEAD, SEIFERT & VANDER WEIDE, P.A.**
VERNON J. VANDER WEIDE
THOMAS V. SEIFERT
333 South Seventh St., Suite 1140
Minneapolis, MN 55402-2422

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**
LEO BEARMAN, ESQ.
EUGENE PODESTA, ESQ.
165 Madison Avenue
First Tennessee Building
Memphis, TN 38103

**LOCKRIDGE GRINDAL NAUEN PLLP**
RICHARD A. LOCKRIDGE
GREGG M. FISHBEIN
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401

**SULLIVAN & CROMWELL LLP**
DAVID B. TULCHIN
DAVID E. SWARTS
125 Broad Street
New York, New York 10004

**ZIMMERMAN REED, P.L.L.P.**
CAROLYN G. ANDERSON
TIMOTHY J. BECKER
651 Nicollet Mall, Suite 501
Minneapolis, MN 55402

**SUTHERLAND ASBILL & BRENNAN, LLP**
S. LAWRENCE POLK
999 Peachtree Street, NE
Atlanta, GA 30309

**MAYNARD COOPER & GALE PC**
PETER S. FRUIN
2400 Regions Harbert Plaza
1901 Sixth Avenue North
Birmingham, AL 35203

**BASS BERRY & SIMS PLC**
MICHAEL L. DAGLEY
MATTHEW M. CURLEY
BRITT K. LATHAM
150 Third Avenue South, Suite 2800
Nashville, TN 37201

**PAUL HASTINGS JANOFSKY & WALKER LLP**
KEVIN C. LOGUE
ASA R. DANES
75 E. 55th Street
New York, NY 10022

**BASS BERRY & SIMS PLC**
SHEPHERD D. TATE
MICHAEL A. BRADY
100 Peabody Place, Suite 900
Memphis, TN 38103

/s/ Jeffrey B. Maletta