IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
MEMPHIS DIVISION

| | | |
|---|---|---|
| IN RE REGIONS MORGAN KEEGAN SECURITIES, DERIVATIVE and ERISA LITIGATION | ) ) ) ) | MDL Docket No. 2009 |
| This Document Relates to: | ) ) ) | |
| *In re Regions Morgan Keegan Open-End Mutual Fund Litigation*, | ) ) ) ) | |
| No. 2:07-cv-02784-SHM-dvk | ) ) | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS BY
HELIOS SELECT FUND, INC.,
HELIOS SELECT SHORT TERM BOND FUND,
HELIOS SELECT INTERMEDIATE BOND FUND AND
HELIOS SELECT HIGH INCOME FUND**

Kevin C. Logue
Asa R. Danes
PAUL, HASTINGS, JANOFSKY &
  WALKER LLP
75 East 55th Street
New York, New York 10022
Tel: (212) 318-6000
Fax: (212) 319-4090
kevinlogue@paulhastings.com
asadanes@paulhastings.com

*Attorneys for Defendants
Helios Select Fund, Inc.,
Helios Select Short Term Bond Fund,
Helios Select Intermediate Bond Fund and
Helios Select High Income Fund (formerly
Morgan Keegan Select Fund, Inc., Regions
Morgan Keegan Select Short Term Bond
Fund, Regions Morgan Keegan Select
Intermediate Bond Fund and Regions
Morgan Keegan Select High Income Fund,
respectively)*

## **TABLE OF CONTENTS**

**Page**

ARGUMENT ..................................................................................................................................1

I. PLAINTIFFS EFFECTIVELY CONCEDE THAT ANY SECTION 12(a)(2) CLAIMS (COUNT II) DIRECTED AT THE FUND DEFENDANTS SHOULD BE DISMISSED ........................................................................................................1

II. PLAINTIFFS' SECTION 11 CLAIM (COUNT I) SHOULD BE DISMISSED AS AGAINST ALL THE FUND DEFENDANTS ...................................................................2

III. PLAINTIFFS' SECTION 10(B) AND RULE 10B-5 CLAIM (COUNT V) SHOULD BE DISMISSED AS AGAINST ALL THE FUND DEFENDANTS .................5

IV. NO PRIVATE RIGHT OF ACTION EXISTS WITH RESPECT TO §§ 13, 22, 30, 34(b) OR 47(b) OF THE ICA AND SUCH CLAIMS MUST BE DISMISSED .................6

CONCLUSION .................................................................................................................................9

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Alexander v. Sandoval*,
   532 U.S. 275 (2001) ................................................................................................ 7

*City of Monroe Employees Ret. Sys. v. Bridgestone Corp.*,
   399 F.3d 651 (6th Cir. 2005) .................................................................................... 5

*Davis v. Bailey*,
   2005 WL 352786 (D. Colo. Dec. 22, 2005) ............................................................ 8

*Gabelli Global Multimedia Trust Inc. v. Western Inv. LLC*,
   2010 WL 1253164 (D. Md. April 1, 2010) ............................................................. 7

*GFL Advantage Fund, Ltd. v. Colkitt*,
   272 F.3d 189 (3d Cir. 2001) ..................................................................................... 7

*Hamilton v. Allen*,
   396 F. Supp. 2d 545 (E.D. Pa. 2005) ....................................................................... 8

*Highland Crusader Offshore Partners, L.P. v. Motient Corp.*,
   2006 WL 3358425 (W.D. Tex. Nov. 17, 2006) ...................................................... 8

*Lessler v. Little*,
   857 F.2d 866 (1st Cir. 1988) .................................................................................... 8

*Mathers Fund, Inc. v. Colwell Co.*,
   564 F.2d 780 (7th Cir. 1977), denied ....................................................................... 8

*Northstar Fin. Advisors Inc. v. Schwab Inv.*,
   2009 WL 1126854 (N.D. Cal. Apr. 27, 2009) ........................................................ 7

*Northstar Fin. Advisors, Inc. v. Schwab Inv.*,
   609 F. Supp. 2d 938 (N.D. Cal. 2009) .................................................................... 7

*Olmsted v. Pruco Life Ins. Co.*,
   283 F.3d 429 (2d Cir. 2002) ..................................................................................... 7

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*,
   552 U.S. 148 (2008) ................................................................................................ 5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ............................................................................................ 5, 6

*Western Inv. LLC* v. *DWS Global Commodities Stock Fund, Inc.*,
  2010 WL 1404208 (S.D.N.Y. April 6, 2010) .................................................................. 7

*Zerman* v. *Jacobs*,
  510 F. Supp. 132 (S.D.N.Y. 1981), *aff'd*, 672 F.2d 901 (2d Cir. 1981) ................................... 8

**STATUTES**

5 U.S.C. § 77m ................................................................................................................. 5

28 U.S.C. § 1292(b) .......................................................................................................... 7

Investment Company Act of 1940 ............................................................................... 6, 7, 8

**OTHER AUTHORITIES**

David Geffen, *A Shaky Future for Securities Act Claims Against Mutual Funds*,
  37 Sec. Reg. L.J. 20 (2009) ........................................................................................ 3, 4

Defendants Helios Select Fund, Inc. (formerly Morgan Keegan Select Fund, Inc., and referred to herein as the "Company"), Helios Select Short Term Bond Fund (formerly Regions Morgan Keegan Select Short Term Bond Fund and referred to herein as the "Short Term Fund"), Helios Select Intermediate Bond Fund (formerly Regions Morgan Keegan Select Intermediate Bond Fund and referred to herein as the "Intermediate Fund") and Helios Select High Income Fund (formerly Regions Morgan Keegan Select High Income Fund and referred to herein as the "High Income Fund") respectfully submit this reply memorandum of law in further support of their motion to dismiss plaintiffs' consolidated amended complaint, filed on November 30, 2009 (Docket No. 218) (the "CAC").  The Short Term Fund, the Intermediate Fund and the High Income Fund are collectively referred to herein as the "Funds", and together with the Company, as the "Fund Defendants."

For the reasons discussed in the opening Memorandum of Law in Support of Motion to Dismiss filed by the Fund Defendants (Docket No. 233-1) ("Opening Memorandum" or "Open. Mem."), and for the reasons stated in the separate memoranda of law filed in support of the motions to dismiss the CAC by co-defendants in this action, in which the Fund Defendants join in part, as referenced, the CAC fails to state any claim against the Fund Defendants and should be dismissed with prejudice.

## ARGUMENT

I.  **PLAINTIFFS EFFECTIVELY CONCEDE THAT ANY SECTION 12(a)(2) CLAIMS (COUNT II) DIRECTED AT THE FUND DEFENDANTS SHOULD BE DISMISSED**

As noted in our Opening Memorandum, the heading of Count II, alleging violations of Section 12(a)(2) of the 1933 Act, states that it relates to all defendants except Regions Financial Corporation, PricewaterhouseCoopers LLP and MK Holding, Inc., even though the body of the allegations defined the "§ 12 Defendants" as Morgan Keegan & Company, Inc., Morgan Asset

Management, Inc. and Regions Bank", but not the Fund Defendants.  Accordingly, the Fund Defendants maintained that any purported Section 12(a)(2) claim against them should be dismissed, both on that basis, and for the further reasons stated in the Opening Memorandum.

In their opposition memorandum, plaintiffs limit the focus of their arguments related to the sufficiency of any Section 12(a)(2) claims to those against defendants Morgan Asset Management, Inc., Morgan Keegan & Company, Inc. and Regions Bank.  Thus, without commenting on the sufficiency of those allegations as to other defendants, the Fund Defendants are entitled to dismissal of any Section 12(a)(2) claims asserted against them.

## II.   PLAINTIFFS' SECTION 11 CLAIM (COUNT I) SHOULD BE DISMISSED AS AGAINST ALL THE FUND DEFENDANTS

In the interest of avoiding duplicative submissions, the Fund Defendants join in and incorporate by reference designated portions of the reply memorandum of law in support of the motion to dismiss the CAC by defendants Morgan Keegan & Company, Inc., Morgan Asset Management, Inc. and MK Holding, Inc. filed on May 28, 2010 (Docket No. 248-1) (the "Morgan Keegan Reply Brief").  The Fund Defendants reference below the specific arguments (and page designations) from the Morgan Keegan Reply Brief in which the Fund Defendants join.  For the reasons stated therein, and below, plaintiffs fail to state any Section 11 claim against the Fund Defendants, and such claim(s) should be dismissed with prejudice.

First, significantly, plaintiffs' Section 11 claim fails because they have not alleged adequately a material misstatement or omission in the registration statement.  (*See* Morgan Keegan Reply Brief at 8-29; *see also* Open. Mem. 2-3).  Plaintiffs ignore the numerous risk disclosures in the relevant offering documents, and while they complain much about mismanagement of the Funds, as they do in the separate *Landers* derivative litigation that is the subject of board investigation, they fail to allege, much less with the requisite particularity, a material misstatement or omission that would state a direct securities claim under Section 11 of the 1933 Act.

Second, contrary to plaintiffs' unfounded assertions, the Funds are not proper Section 11 defendants.  Plaintiffs have cited no cases where an open-end mutual fund itself was adjudged liable on a Section 11 claim.  Nor would such a claim make sense in this case.  As plaintiffs have conceded in their complaint, the Funds are portfolios or "series" of the Company's shares of common stock; they are not legal entities separate from the Company.  (*See* CAC ¶ 36).  As plaintiffs concede, "[t]he Company/Funds had no employees or officers; all of its management was provided by either Morgan Management or Morgan Keegan, or both".  (CAC ¶ 97).  Indeed, in the separate pending *Landers* derivative action, plaintiffs argue that the Fund Defendants were victims of the conduct complained of by other defendants.  Plaintiffs further concede that the Funds are in liquidation; yet they essentially maintain, without offering appropriate legal support, that assets of the Fund Defendants should be placed at risk to defend and satisfy purported Section 11 claims (as opposed to being available to distribution to liquidating shareholders).  In so doing, they ignore their own concession that the Fund Defendants could not have acted separately from the other defendants, as well as a fundamental distinction between open-end mutual funds and other shares of publicly-traded stock:  "Unlike an ordinary share of stock traded on a stock exchange, the value of a mutual fund share is calculated according to a statutory formula.  The absence of a secondary market for a mutual fund's shares means that there is no mechanism for a misstatement in the fund's prospectus or the revelation of that misstatement to affect a fund shares' value and, therefore, there is no mechanism to cause a plaintiff's losses."  David Geffen, *A Shaky Future for Securities Act Claims Against Mutual Funds*, 37 Sec. Reg. L.J. 20, 21 (2009).

Third, for similar reasons, the Section 11 claims should be dismissed as against the Fund Defendants because the Fund Defendants' successful loss causation defense is apparent from the face of the complaint.  *See* Open. Mem. 4-5; *see also* Morgan Keegan Reply Brief at 37-39.  In fact, at least one commentator has noted that in the open-end fund context, the "fact that any

depreciation in the shares' value cannot be caused by any misstatement identified by the plaintiff means that a fund defendant can prevail by establishing a loss causation defense." Geffens, *supra*, at 21. As the Geffen article explained:

> The value or price of an ordinary share of stock is typically determined on a stock exchange by buyers and sellers without the involvement of the stock's issuer. In contrast, the value of a mutual fund share is calculated according to a statutory formula. Specifically, each day, the values of the fund's assets (principally securities and cash) are totaled. From that total, the fund's aggregate liabilities are subtracted (*e.g.*, accrued fees payable to fund service providers) to arrive at the fund's net asset value (NAV). The fund's per-share NAV is simply the fund's NAV divided by the total number of shares that the fund has outstanding that day.
>
> Mutual fund shares are also unlike an ordinary share of stock traded on a stock exchange because fund shares are offered for sale by the fund continuously and redeemed by the fund when a fund shareholder chooses. Thus, shares of a mutual fund have *no secondary market*. Moreover, as required under the Investment Company Act of 1940, a mutual fund's sales and redemptions of its shares must occur at a price equal to the then-current per-share NAV.
>
> ….
>
> A plaintiff who claims under § 11(a) or § 12(a)(2) that the NAV of his fund shares was inflated by misstatements in the fund's prospectus misses the mark due to the absence of a secondary market for the shares. The absence of a secondary market for a mutual fund's shares means that any misstatements in a fund's prospectus *by themselves* can neither inflate the shares' NAV (price) nor, when revealed, diminish the shares' NAV. Such "fraud on the market" theories cannot apply to mutual funds because a misstatement in a fund's prospectus (and revelation of the misstatement) do not affect a fund share's NAV.

*Id.* at 23-24 (footnotes omitted). Thus, for these reasons, and the further reasons summarized in the briefs cited above, dismissal is warranted where, as here, the CAC itself establishes that any decline in value of the security in question was not caused by the alleged material omissions or misstatements.

Fourth, as stated in greater detail in the Morgan Keegan Reply Brief (at 7-8), plaintiffs do not have standing to pursue direct claims based on allegations premised on a shareholder's "holding" of securities, and thus, plaintiffs' claims against the Fund Defendants should be dismissed on this basis as well.

Finally, applying the three-year statute of repose and one-year statute of limitations to plaintiffs' claims eliminates those based on the November 1, 2004 registration statement, which became effective more than three years prior to December 7, 2007, the date the original complaint in this lawsuit was filed.  *See* 5 U.S.C. § 77m; *see also* Open. Mem. at 5, 6, 8.

### III. PLAINTIFFS' SECTION 10(b) AND RULE 10b-5 CLAIM (COUNT V) SHOULD BE DISMISSED AS AGAINST ALL THE FUND DEFENDANTS

As discussed in our Opening Memorandum, the heightened pleading standards applicable to Section 10(b) claims require a plaintiff to plead with specificity as to each defendant (1) a material misrepresentation or omission by that defendant; (2) scienter on the part of that defendant; (3) a connection between the misrepresentation or omission by that defendant and the purchase or sale of security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.  *See* Open. Mem. at 9-13; *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008).  Plaintiffs fail to meet these heightened standards as to the Fund Defendants.

First, plaintiffs fail to allege with the requisite particularity any material misstatement or omission, and fail to specify with particularity the Fund Defendants' role in the allegedly fraudulent scheme.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 318-19 (2007); *see also* Morgan Keegan Reply Brief, at 2-3, 30-32.  Plaintiffs have not, and cannot, come close to the "statement-by-statement" analysis on a defendant-by-defendant basis, that is required for such claims.  *City of Monroe Employees Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 682 (6th Cir. 2005).

Second, plaintiffs have not alleged the requisite level of scienter on behalf of the Fund Defendants.  *See* Open. Mem. at 10-11.  Nor can they, of course, given their understandable concessions that the Fund Defendants had no employees or officers, and that the Funds were not even separate legal entities.  (*See also* Plaintiffs' Consolidated Memorandum in Opposition at 38

("The Funds could act only through MAM/MK, which provided all of the Funds' officers and employees, statistical information, reports, and facilities."); *id.* at 37 ("By virtue of their complete control of, and responsibility for, the Funds' management, all of the Funds' alleged misleading statements are attributable to MAM/MK in the first instance, as well as to the Funds' directors who signed the Funds' registration statement and amendments thereto and reviewed the Funds' reports to shareholders."). Plaintiffs offer no basis for imputing alleged scienter on the part of others to the Fund Defendants, and such imputation would contravene the holdings of *Tellabs* and the other authority cited. Plaintiffs have failed to allege the required strong inference of scienter, *i.e.*, that is "more than merely plausible or reasonable" but "cogent and at least as compelling as any opposing inference of nonfraudulent intent" on the part of the Fund Defendants. *Tellabs*, 551 U.S. at 314.

Third, as discussed above, and in the Morgan Keegan Reply Brief (at 37-39), plaintiffs fail to adequately plead loss causation with respect to their 1934 Act claims. (Open. Mem. at 12).

Fourth, plaintiffs fail to plead the requisite connection with a purchase or sale, and cannot maintain their claim as holders. (Open. Mem. at 11-12; *see also* Morgan Keegan Reply Brief at 7-8).

Finally, because the Funds are not legal entities separate from the Company, they are not proper parties to the action in any event. (Open. Mem. at 12).

Thus, for all of these reasons, the purported Section 10(b) claims against the Fund Defendants should be dismissed.

## IV.   NO PRIVATE RIGHT OF ACTION EXISTS WITH RESPECT TO §§ 13, 22, 30, 34(b) OR 47(b) OF THE ICA AND SUCH CLAIMS MUST BE DISMISSED.

As noted in our Opening Memorandum, plaintiffs' claims against all defendants for violations of Sections 13, 22, 30, 34(b) and 47(b) of the Investment Company Act of 1940 (the "ICA") should be dismissed because no private right of action exists for any of these provisions

LEGAL_US_E # 88267178. 1                                6

other than Section 47(b), which is a remedial provision concerning illegal contracts and is not relevant here. (Open Mem. at 13-14). This Court likewise should decline to create a private right of action under the sections of the ICA at issue here, because (i) these sections do not explicitly provide for a private right of action, (ii) these sections contain no rights-creating language, and (iii) the ICA provides an alternative enforcement method authorizing SEC enforcement of all sections of the ICA. *See* Open. Mem. at 13-14; s*ee also Western Inv. LLC* v. *DWS Global Commodities Stock Fund, Inc.*, 2010 WL 1404208 (S.D.N.Y. April 6, 2010) (declining to find a private right of action under § 13 of the ICA); *Gabelli Global Multimedia Trust Inc.* v. *Western Inv. LLC*, 2010 WL 1253164 (D. Md. April 1, 2010) (declining to find a private right of action under § 12(d)(1)(A) and 48(a) of the ICA).[1]

After failing to identify in the CAC any illegal contract to which they were party, Plaintiffs have attempted in their opposition brief to base their claim for rescission of their purchases of the Funds' shares on purported violations of the underwriting agreement between the Company and Morgan Keegan & Co., Inc. *See* Pls.' Opp'n at 139 ("the applicable contract is the Underwriting Agreement"). This claim must fail. First, Plaintiffs have not argued and cannot argue that the underwriting agreement was illegal on its face or that it could not be performed without violating the ICA. Accordingly, their Section 47(b) claim should be dismissed. *See* Open Mem. at 14; *see, e.g.*, *GFL Advantage Fund, Ltd.* v. *Colkitt*, 272 F.3d 189, 200-202 (3d Cir. 2001) (under the voidability provisions of the federal securities laws "only unlawful *contracts* may be rescinded,

---

[1] Plaintiffs' reliance (Pls.' Opp'n at 136-37) on *Northstar Fin. Advisors, Inc. v. Schwab Inv.*, 609 F. Supp. 2d 938 (N.D. Cal. 2009), is misplaced in light of the overwhelming authority demonstrating that no private right of action exists with respect to the various ICA provisions that Plaintiffs invoke, and because the district court in *Northstar* granted defendants' motion for interlocutory appeal and stayed the case because there was "substantial ground for difference of opinion." *See Northstar Fin. Advisors Inc. v. Schwab Inv.*, 2009 WL 1126854, at *1 (N.D. Cal. Apr. 27, 2009) (granting interlocutory appeal of decision implying a private right of action under ICA § 13(a)) (quoting 28 U.S.C. § 1292(b)). The Ninth Circuit heard oral argument on the interlocutory appeal on April 12, 2010. Plaintiffs and the *Northstar* decision ignore the principles governing implied private rights of action as set forth in *Alexander v. Sandoval*, 532 U.S. 275 (2001), and *Olmsted v. Pruco Life Ins. Co.*, 283 F.3d 429 (2d Cir. 2002).

not unlawful *transactions* made pursuant to lawful contracts") (citation and internal quotation marks omitted); *Zerman* v. *Jacobs*, 510 F. Supp. 132, 135 (S.D.N.Y. 1981), *aff'd*, 672 F.2d 901 (2d Cir. 1981).  Second, plaintiffs lack standing to pursue a rescission claim based on the underwriting agreement because they are not (and are not alleged to be) parties to that agreement. *See Lessler v. Little*, 857 F.2d 866, 874 (1st Cir. 1988) (dismissing § 47(b) claim where plaintiff was not a party to the advisory agreement, stating a "shareholder … lacks standing to purse on his own claims properly belonging to the corporation");  *Hamilton v. Allen*, 396 F. Supp. 2d 545, 558 (E.D. Pa. 2005); *Davis v. Bailey*, 2005 WL 352786, at *6 (D. Colo. Dec. 22, 2005); *Highland Crusader Offshore Partners, L.P. v. Motient Corp.*, 2006 WL 3358425, at *8-9 (W.D. Tex. Nov. 17, 2006).  Plaintiffs concede this point (Pls.' Opp'n "at 137-38; "[c]ourts have recognized that the remedies provided by § 47 may be pursued by a party to the contract"), and the authority cited by the plaintiffs, *Mathers Fund, Inc. v. Colwell Co.*, 564 F.2d 780, 783 (7th Cir. 1977), denied rescission under Section 47(b) even though the claim was brought by a party to the agreement at issue.  Plaintiffs offer no authority for their theory that the underwriting agreement (or their offhand references to the Company's articles of incorporation (Pls.' Opp'n at 140)) offer any basis for their Section 47(b) claim.  Accordingly, plaintiffs' ICA claims should be dismissed.

## **CONCLUSION**

For the reasons set forth herein and in the Opening Memorandum, the Fund Defendants respectfully request that this Court dismiss plaintiffs' claims against the Fund Defendants with prejudice.

DATED this 28th day of May, 2010.                    Respectfully submitted,

/s/Kevin C. Logue
Kevin C. Logue
Asa R. Danes
PAUL, HASTINGS, JANOFSKY &
    WALKER LLP
75 East 55th Street
New York, New York 10022
Tel:  (212) 318-6000
Fax: (212) 319-4090
kevinlogue@paulhastings.com
asadanes@paulhastings.com

*Attorneys for Defendants*
*Helios Select Fund, Inc.,*
*Helios Select Short Term Bond Fund,*
*Helios Select Intermediate Bond Fund and*
*Helios Select High Income Fund (formerly*
*Morgan Keegan Select Fund, Inc., Regions*
*Morgan Keegan Select Short Term Bond*
*Fund, Regions Morgan Keegan Select*
*Intermediate Bond Fund and Regions Morgan*
*Keegan Select High Income Fund,*
*respectively)*

**CERTIFICATE OF SERVICE**

       I hereby certify that on May 28, 2010, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following and/or served the following via U.S. Mail:

| | |
|---|---|
| **APPERSON CRUMP PLC**<br>CHARLES D. REAVES<br>JEROME A. BROADHURST<br>6070 Poplar Avenue, 6th Floor<br>Memphis, TN 38119-3954 | **KIRKLAND & ELLIS, LLP**<br>TIMOTHY DUFFY, ESQ.<br>EMILY NICKLIN, ESQ.<br>KRISTOPHER RITTER, ESQ.<br>300 North LaSalle<br>Chicago, IL 60654 |
| **HEAD, SEIFERT & VANDER WEIDE, P.A.**<br>VERNON J. VANDER WEIDE<br>THOMAS V. SEIFERT<br>333 South Seventh St., Suite 1140<br>Minneapolis, MN 55402-2422 | **BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**<br>LEO BEARMAN, ESQ.<br>EUGENE PODESTA, ESQ.<br>165 Madison Avenue<br>First Tennessee Building<br>Memphis, TN 38103 |
| **LOCKRIDGE GRINDAL NAUEN PLLP**<br>RICHARD A. LOCKRIDGE<br>GREGG M. FISHBEIN<br>100 Washington Avenue South, Suite 2200<br>Minneapolis, MN 55401 | **K&L GATES LLP**<br>JEFFREY B. MALETTA, ESQ.<br>NICOLE A. BAKER, ESQ.<br>1601 K Street, NW<br>Washington, D.C. 20006-1600 |
| **ZIMMERMAN REED, P.L.L.P.**<br>CAROLYN G. ANDERSON<br>TIMOTHY J. BECKER<br>651 Nicollet Mall, Suite 501<br>Minneapolis, MN 55402 | **SUTHERLAND ASBILL & BRENNAN, LLP**<br>S. LAWRENCE POLK<br>999 Peachtree Street NE<br>Atlanta, GA 30309 |
| **MAYNARD COOPER & GALE PC**<br>PETER S. FRUIN<br>2400 Regions Harbert Plaza<br>1901 Sixth Avenue North<br>Birmingham, AL 35203 | **SULLIVAN & CROMWELL LLP**<br>DAVID B. TULCHIN<br>DAVID E. SWARTS<br>125 Broad Street<br>New York, NY 10004 |
| **BASS BERRY & SIMS PLC**<br>MICHAEL L. DAGLEY<br>MATTHEW M. CURLEY<br>BRITT K. LATHAM<br>W. BRANTLEY PHILLIPS, JR.<br>150 Third Avenue South, Suite 2800<br>Nashville, TN 37201 | **BASS BERRY & SIMS PLC**<br>SHEPHERD D. TATE<br>MICHAEL A. BRADY<br>100 Peabody Place, Suite 900<br>Memphis, TN 38103-3672 |

                                                   /s/Kevin C. Logue
                                                      Kevin C. Logue