# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## MEMPHIS DIVISION

|  |  |
|---|---|
| IN RE REGIONS MORGAN KEEGAN SECURITIES, DERIVATIVE and ERISA LITIGATION | MDL Docket No. 2009 |
|  | Judge Samuel H. Mays, Jr. |
| This Document Relates to: | Magistrate Judge Diane K. Vescovo |
| *In re Regions Morgan Keegan Open-End Mutual Fund Litigation*, No. 2:07-cv-02784-SHM-dkv | ORAL ARGUMENT REQUESTED |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, ENTRY OF FINAL JUDGMENT AS TO COUNTS V, VI, AND VII**

**HEAD, SEIFERT & VANDER WEIDE, P.A.**
Vernon J. Vander Weide
Thomas V. Seifert
333 South Seventh Street, Suite 1140
Minneapolis, MN 55402-2422
Telephone: 612-339-1601
Fax: 612-339-3372
vvanderweide@hsvwlaw.com

**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
Richard A. Lockridge
Gregg M. Fishbein
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Fax: (612) 339-0981
gmfishbein@locklaw.com

*Co-Lead Counsel for Lead Plaintiffs*

**APPERSON CRUMP PLC**
Jerome A. Broadhurst, TN BPR 12529
Charles D. Reaves, TN BPR 22550
6070 Poplar Avenue, Sixth Floor
Memphis, TN 38119-3954
Telephone: (901) 260-5133
Fax: (901) 435-5133
jbroadhurst@appersoncrump.com

*Liaison Counsel for Lead Plaintiffs*

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................... 1

STANDARD FOR GRANTING RECONSIDERATION ..................................... 1

ARGUMENT ..................................................................................................... 1

I.      RECONSIDERATION IS REQUIRED TO PREVENT MANIFEST INJUSTICE ........................... 1

II.     RECONSIDERATION IS REQUIRED TO CORRECT CLEAR ERRORS OF LAW: THE SCIENTER STANDARD. ........................................................................... 3

        A.      Scienter Standards under the PSLRA ................................................. 3

        B.      Knowledge Is Scienter ...................................................................... 5

III.    THE COURT ERRED IN FAILING TO CONSIDER PLAINTIFFS' ALLEGATIONS OF DEFENDANTS' KNOWLEDGE AS EVIDENCE OF SCIENTER AND IN MISAPPLYING THE SCIENTER STANDARD. ........................................................................... 6

        A.       The CAC Is Replete with Allegations of Defendants' Knowledge of Misrepresented and Omitted Material Facts. ................................... 6

        B.      The Court Erred in Evaluating the Two Allegations of Scienter that It Did Consider. ................................................................................... 9

                1.      The Court Misunderstood the Relevance of Plaintiffs' Allegations Regarding Certain Securities Prospectus Illiquidity Disclosures. ........... 9

                2.      The Court Erred in Choosing an Inference of Scienter Favoring Defendants as to MK Employees' Sales of Fund Shares. ...................... 11

        C.      The Court Erred in Ignoring the CAC's Allegations Supporting a Strong Inference of Scienter as to Illiquidity and other Risks and Conduct. .............. 12

        D.      The CAC Alleges Each Defendant's Role. .................................................. 16

IV.     THE COURT ERRED IN HOLDING THAT THE CAC DID NOT IDENTIFY THE DEFENDANTS ON THE 1934 ACT CLAIMS ....................................................... 17

V.      ALTERNATIVELY, THE COURT SHOULD ENTER FINAL JUDGMENT AS TO COUNTS V, VI AND VII PURSUANT TO FED. R. CIV. P. 54(b). ........................................... 19

CONCLUSION ................................................................................................. 20

## TABLE OF AUTHORITIES

**Cases**

*ACA Fin, Guar. Corp. v. Advest, Inc.*, 512 F.3d 46 (1st Cir. 2008) ..................................... 4

*Anderson v. Hamblen County*, 2008 WL 2782671 (E.D. Tenn. July 8, 2008) ........... 19, 20

*Ashland Inc. v. Morgan Stanley & Co., Inc.*, 2010 WL 1253932 (S.D.N.Y. Mar. 30, 2010) ................................................................................................................................. 16

*Carbon Processing & Reclamation, LLC v. Valero Marketing & Supply Co.*, 2010 WL 3925261 (W.D. Tenn. Sept. 29, 2010) ........................................................................... 2

*Chad Youth Enhancement Center, Inc. v. Colony National Ins. Co.*, 2010 WL 2253538 (M.D. Tenn. June 1, 2010) ................................................................................... 19, 20

*Fla. State Bd. of Admin. v. Greentree Fin. Corp.*, 270 F.3d 645 (8th Cir. 2001)........... 5, 11

*Frank v. Dana Corp.*, 547 F.3d 564 (6th Cir. 2008) ................................................... 3, 4, 11

*Gen-Corp., Inc. v. Am. Int'l Underwriters*, 178 F.3d 804 (6th Cir. 1999) ........................... 1

*General Acqusition v. GenCorp, Inc.*, 23 F.3d 1022 (6th Cir. 1994) ................................. 20

*Helwig v. Vencor, Inc.*, 251 F.3d 540 (6th Cir. 2001) ...................................................... 4, 5

*Hoffman v. Comshare, Inc.*, 183 F.3d 542 (6th Cir. 1999).................................................. 3

*Hubbard v. BankAtlantic Bancorp, Inc.*, 2009 WL 3261941 (S.D. Fla. May 12, 2009) .... 6

*In re Cabletron Sys.*, 311 F.3d 11 (1st Cir. 2002). ............................................................. 5

*In re Huffy Corp. Sec. Litig.*, 577 F. Supp. 2d 968 (S.D. Ohio 2008)................................. 5

*In re Regions Morgan Keegan ERISA Litig.*, 2010 WL 809950 (W.D. Tenn. Mar. 9, 2010).................................................................................................................................. 9

*In re Washington Mutual, Inc. Sec., Deriv. & ERISA Litigation*, 694 F. Supp. 2d 1192 (W.D. Wash. 2009).......................................................................................................... 6

*In re Worldcom, Inc. Sec. Litig.*, 294 F. Supp. 2d 392 (S.D.N.Y. 2003). ........................ 17

*Institutional Investors Group v. Avaya, Inc.*, 564 F.3d 242 (3d Cir. 2009) ........................ 5

*Jackson v. Novastar Mortg., Inc.*, 645 F.Supp. 2d 636 (W.D. Tenn. 2007)........................ 1

*Konkol v. Diebold, Inc.*, 590 F.3d 390 (6th Cir. 2009)........................................................ 4

*Life. Ins. Co. v. Simpson*, 2009 WL 2163498 (W.D. Tenn. July 16, 2009) ..................... 19

*Local 295/Local 851 IBT Employer Group Pension Trust & Welfare Fund v. Fifth Third Bancorp*, 2010 WL 3221813 (S.D. Ohio Aug. 10, 2010) ........................................... 4, 5

*Lumpkin v. Farmers Group, Inc.*, 2007 WL 6996777 (W.D.Tenn. July 6, 2007) .............. 1

*Mallory v. Eyrich*, 922 F.2d 1273 (6th Cir. 1991) ................................................................. 2

*Neitzke v. Williams*, 490 U.S. 319 (1989) ............................................................................. 5

*Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226 (9th Cir. 2004) . 5

*Plumbers & Steamfitters Local 773 Pension Fund v. CIBC*, 2010 WL 961596 (S.D.N.Y.
   Mar. 17, 2010) ................................................................................................................... 16

*PR Diamonds, Inc. v. Chandler*, 364 F.3d 671 (6th Cir. 2004) .............................................. 5

*Rudd Construction Equipment Co., Inc. v. Homes Ins. Co.*, 711 F.2d 54 (6th Cir. 1983) . 19

*Tellabs v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ................................. 3, 4, 5, 16

*White v. Heartland High-Yield Municipal Bond Fund*, 237 F. Supp. 2d 982 (E.D. Wis.
   2002) ................................................................................................................................. 13

## Statutes

28 U.S.C. § 1291 ................................................................................................................. 19

Securities Act of 1933 ....................................................................................................... 20

Securities Act of 1933 § 4 ................................................................................................. 10

Securities Act of 1933 § 5 ................................................................................................. 10

Securities Exchange Act of 1934 § 10(b) ....................................................................... 1, 9

Securities Exchange Act of 1934 § 15(d) .......................................................................... 10

Securities Exchange Act of 1934 § 20 .................................................................... 1, 18, 19

## Other Authorities

*In the Matter of Evergreen Investment Management Company,* LLC, SEC Release No.
   IC-28759, June 8, 2009 ..................................................................................................... 15

*SEC v. Heartland Advisors Inc.*, No. 2:03-cv-01427-CNC (E.D. Wisc. Dec. 11, 2003),
   Dkt. No. 395; SEC Release No. IC-28136 (January 25, 2008) ....................................... 15

*SEC v. State Street Bank and Trust Company*, No. 1:10-cv-10172, Dkt. No. 1, (D. Mass.
   February 4, 2010) .............................................................................................................. 15

## Rules

Federal Rules of Civil Procedure 54(b) .................................................................. 1, 2, 19, 20

Federal Rules of Civil Procedure 59(e) .......................................................................... 1, 2

Securities Exchange Act of 1934 Rule 10b-5 .................................................................. 1, 9

Federal Rules of Civil Procedure Rule 12(b)(6)............................................................... 3, 5

## INTRODUCTION

On September 30, 2010, the Court issued its Order Granting in Part and Denying in Part Defendants' Motions to Dismiss ("Order"). ECF No. 272.[1] Pursuant to Federal Rules of Civil Procedure 54(b) and 59(e), Plaintiffs hereby respectfully request the Court to reconsider its dismissal of Plaintiffs' claims in Counts V, VI, and VII based on the Securities Exchange Act of 1934 §§ 10(b) and 20 and Rule 10b-5 thereunder ("1934 Act claims") or, in the alternative, enter judgment thereon.[2]

## STANDARD FOR GRANTING RECONSIDERATION

A party seeking reconsideration of an order that is not a final judgment should proceed under Federal Rule of Civil Procedure 54(b). *Lumpkin v. Farmers Group, Inc*., 2007 WL 6996777, at *3 (W.D.Tenn. July 6, 2007) (Recons. Ex. 1). Because Rule 54(b) does not provide for reconsideration and provides no standards governing the consideration thereof, courts in this district adopt the standards set forth in Federal Rule of Civil Procedure 59(e). *Id*.; *Jackson v. Novastar Mortg., Inc.*, 645 F.Supp. 2d 636, 642 (W.D. Tenn. 2007). Under this standard, a court should grant a motion to reconsider where there is, *inter alia*, "a clear error of law . . . . or to prevent manifest injustice." *Gen-Corp., Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999) (citations omitted).

## ARGUMENT

The Court dismissed Plaintiffs' 1934 Act claims because, according to the Court, Plaintiffs failed to plead scienter with the requisite particularity and the CAC failed to identify which of the Defendants were charged with 1934 Act liability. The Court erred

---

[1]    The Court mistakenly noted that Lead Plaintiffs were appointed by the Court by its order dated September 23, 2008. Order at 10. Lead Plaintiffs were appointed by the Court's order dated September 30, 2009. ECF No. 211. They filed their CAC two months later. ECF No. 218.

[2]    All exhibit references ("Ex."), abbreviations and proper nouns are the same as in Plaintiffs' Consolidated Memorandum in Opposition to Defendants' Motions to Dismiss Plaintiffs' Consolidated Amended Class Action Complaint ("Plfs' Mem.") notes 2, 4, 5 (ECF No. 238) and to the Declaration of Jerome A. Broadhurst in Support of Plfs' Mem (ECF No. 238-1). Exhibits disclosed by the Alabama Securities Commission are identified in the Declaration of Jerome A. Broadhurst in Support of Plaintiffs' Sur-Reply (ECF No. 265-1) ("States' Ex."). Exhibits referenced for the first time herein are to the Declaration of Jerome A. Broadhurst in Support of Plaintiffs' Motion for Reconsideration ("Recons. Ex.").

in both respects. [3]

## I. RECONSIDERATION IS REQUIRED TO PREVENT MANIFEST INJUSTICE

Plaintiffs seek reconsideration under Rule 54(b) to correct clear errors of law and to prevent manifest injustice under the standards set forth in Rule 59(e). "District courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment. A district court may modify, or even rescind, such interlocutory orders." *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991). The Sixth Circuit traces this authority to common law and Rules 54(b), 59(e) and 60(b) of the Federal Rules of Civil Procedure. *Carbon Processing & Reclamation, LLC v. Valero Marketing & Supply Co.*, 2010 WL 3925261, at * 2 (W.D. Tenn. Sept. 29, 2010). (Recons. Ex. 2).

In *Carbon Processing*, the court granted plaintiffs' motion to reconsider and reinstated certain dismissed claims, ruling "that it is in the best interest of justice and judicial economy to do so." 2010 WL 3925261, at * 2. The court concluded that, although it was "[h]ard-pressed to find clear error of law in its previous Order, the Court is nevertheless left with the firm conviction that a manifest injustice would result from the dismissal of the Plaintiffs' tort claims at the pleadings stage of this case." *Id.* at * 3.  In reinstating the plaintiffs' claims, the Court noted that "Plaintiffs should have the opportunity to conduct discovery on these issues, and so the Court will allow them to go forward." *Id.*

The 1934 Act claims are significantly different from the 1933 Act claims in that the damages are different (estimated to be substantially greater), the alleged class is larger (includes Fund shareholders who purchased their shares before the beginning of the Class Period for the 1933 Act claims), the relevant time period is shorter (essentially, from June 30, 2006 through July 1, 2007, thus shortening the relevant time period during which fraudulent conduct must be shown), and they address the separate fiduciary duties owed

---

[3]    Because the Court dismissed on these grounds, it did not consider Plaintiffs' arguments that holders have standing to assert 1934 Act liability. Thus, Plaintiffs here do not repeat their holders 1934 Act arguments. In the event the Court reconsiders the two grounds for dismissal of these claims, Plaintiffs respectfully refer the Court to those arguments. Plfs' Mem. at 86, 102-08.

by RB and MAM/MK to the beneficiaries of the trusts administered by them. These differences seriously inhibit a resolution of this litigation in its entirety without the opportunity to seek appellate review of the Court's dismissal of the 1934 Act claims.

Reconsideration here is appropriate to prevent manifest injustice. In this case the 1934 Act claims should be reinstated, and Plaintiffs should be allowed to go forward with discovery, particularly since discovery will proceed as to the 1933 Act claims. This is particularly appropriate here because the Court dismissed the 1934 Act claims, in part, due to what it claimed was a lack of evidence, which evidence Plaintiffs could not have obtained while subject to the mandatory PSLRA discovery stay. Order at 22, 24-25.

## II.   RECONSIDERATION IS REQUIRED TO CORRECT CLEAR ERRORS OF LAW: THE SCIENTER STANDARD.

### A.   Scienter Standards under the PSLRA

The PSLRA "requires plaintiffs to state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter, i.e., the defendant's intention to deceive, manipulate or defraud." *Tellabs v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007). The Supreme Court explained in *Tellab*s that Congress adopted the "strong inference" standard because it intended to raise the bar for pleading scienter, *id*. at 323-24, but the PSLRA did not change the state of mind required to prove securities fraud. *Hoffman v. Comshare, Inc.*, 183 F.3d 542, 548-49 (6th Cir. 1999).

In *Tellabs*, the Supreme Court prescribed a specific three-step analysis that district courts are to follow in considering a motion to dismiss private securities claims arising under Section 10(b). *Frank v. Dana Corp.*, 547 F.3d 564, 570-71 (6th Cir. 2008). First, the trial court must accept all factual allegations in the complaint as true. Second, courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference and matters of which a court may take judicial notice. Third, in deciding whether the complaint does give rise to a strong inference of scienter, the court must take into account plausible opposing inferences. *Id.* (citing *Tellabs*); *Local*

3

*295/Local 851 IBT Employer Group Pension Trust & Welfare Fund v. Fifth Third Bancorp*, 2010 WL 3221813, at * 10 (S.D. Ohio Aug. 10, 2010) (same) (Recons. Ex. 3).

The district court must conduct a "comparative inquiry" and assess the possible competing inferences that could be drawn from the allegations, including a "plausible nonculpable explanation for the defendant's conduct, as well as inferences favoring the plaintiff." *Tellabs*, 551 U.S. at 323-24. As a result, a complaint will survive a motion to dismiss so long as "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324; *Frank*, 547 F.3d at 571. When two equally compelling inferences can be drawn, one demonstrating scienter and the other supporting a nonculpable explanation, *Tellabs* instructs that the complaint should be permitted to move forward. *Id. Accord*, *ACA Fin, Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 59 (1st Cir. 2008) (where there are equally strong inferences for and against scienter, *Tellabs* now awards the draw to the plaintiff). Accordingly, under *Tellabs*, "ties" go to the plaintiff. *Frank*, 547 F.3d at 571.[4]

Where the claim requires proof of scienter, the court must consider the complaint as a whole, not each individual allegation in isolation, to determine whether the complaint gives rise to a strong inference of scienter. *Tellabs*, 551 U.S. at 323; *Fifth Third Bancorp*, 2010 WL 3221813, at * 10. In reviewing securities fraud complaints, courts are "not to scrutinize each allegation in isolation but to assess all the allegations holistically." *Tellabs*, 551 U.S. at 325. *See also Institutional Investors Group v. Avaya, Inc.*, 564 F.3d

---

[4]     Prior to *Tellabs*, the "strong inference requirement" meant that plaintiffs in the Sixth Circuit were entitled to only the *most plausible* of competing inferences. *Helwig v. Vencor, Inc.*, 251 F.3d 540, 553 (6th Cir. 2001). The "*at least as compelling*" standard of *Tellabs* replaced the old *Helwig* standard. *Konkol v. Diebold, Inc.*, 590 F.3d 390, 396 (6th Cir. 2009). The *Helwig* "standard plainly is at odds with the Supreme Court's holding in *Tellabs* that inferences of scienter that are 'at least as compelling' as competing nonculpable inferences are sufficient for the complaint to survive a motion to dismiss." *Frank*, 547 F.3d at 571. The *Tellabs* formulation rejects that previously used in the Sixth Circuit, when a plaintiff could survive a motion to dismiss only if the inference of scienter was "the most plausible of competing inferences." *See Helwig*, 251 F.3d at 533. After *Tellabs*, the standard adopted in *Helwig* is no longer good law. *Frank*, 547 F.3d at 571.

242, 272-73 (3d Cir. 2009) ("In assessing the allegations holistically as required by *Tellabs*, the federal courts certainly need not close their eyes to circumstances that are probative of scienter viewed with a practical and common-sense perspective.").

Since *Tellabs*, courts in the Sixth Circuit that still consider the *Helwig* factors in their scienter analysis consider them collectively and not in isolation. *In re Huffy Corp. Sec. Litig.*, 577 F. Supp. 2d. 968, 988-89 (S.D. Ohio 2008) (court will not consider *Helwig* factors in isolation since the focus should be on allegations collectively and not individually in isolation). The relevant question under *Tellabs* is "whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Fifth Third Bancorp*, 2010 WL 3221813, at * 25. "Each individual fact about scienter may provide only a brushstroke, but the resulting portrait satisfies the requirement for a strong inference of scienter under the PSLRA." *In re Cabletron Sys.*, 311 F.3d 11, 40 (1st Cir. 2002).

Although the Court was entitled to indulge possible competing inferences arising out of the CAC, it was not entitled to disbelieve the CAC's allegations outright. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance. . . dismissals based on a judge's disbelief of a complaint's factual allegations"); *accord Tellabs,* 551 U.S. at 322 (allegations are accepted as true).

### B.     Knowledge Is Scienter

Scienter can be satisfied by allegations demonstrating Defendants' knowledge of the fraud at issue. *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 682 (6th Cir. 2004); *In re Huffy Corp. Sec. Litig.*, 577 F. Supp. 2d. at 987 (In the Sixth Circuit, scienter "consists of knowledge or recklessness."); *see also Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1234 (9th Cir. 2004) (scienter found based upon specific admissions made by defendants showing they were aware of improper revenue recognition); *Fla. State Bd. of Admin. v. Greentree Fin. Corp.*, 270 F.3d 645, 665 (8th Cir. 2001) (scienter found where defendants made statements "when they knew facts or had access to information

suggesting that their public statements were materially inaccurate"); *In re Washington Mutual, Inc. Sec., Deriv. & ERISA Litigation*, 694 F. Supp. 2d 1192, 1209-12 (W.D. Wash. 2009) (scienter found where allegations showed actual knowledge by defendant of company's risk management problems, appraisal demands, and underwriting guidelines); *Hubbard v. BankAtlantic Bancorp, Inc.*, 2009 WL 3261941, at *2 (S.D. Fla. May 12, 2009) (scienter found where complaint included specific facts demonstrating that defendants knew or were reckless in not knowing that the company's risk exposure was greater than what was disclosed to investors) (Recons. Ex. 4).

In dismissing Plaintiffs' 1934 Act claims for failing to allege scienter with sufficient particularity, the Court addressed only two of the CAC's allegations of Defendants' knowledge of misrepresented and omitted material facts. The Court ignored numerous other allegations of Defendants' knowledge, as detailed more specifically below, including allegations related to the Funds' violations of the limit on illiquid/restricted securities and liquidity, valuation, credit, concentration and leverage risks. The Court also ignored the CAC's allegations regarding RF's knowledge of the coming subprime debacle (to which the Funds were uniquely vulnerable), Kelsoe's understanding that the securities he was directing the Funds to purchase were illiquid, and the heavy redemptions in August 2007 and the post-CAC revelation that these redemptions of selected accounts were funded by an MAM/MK affiliate. The Court likewise ignored MAM/MK's recognition, but failure to disclose, that IBF was not a bond fund but an "alternative" investment vehicle.

## III. THE COURT ERRED IN FAILING TO CONSIDER PLAINTIFFS' ALLEGATIONS OF DEFENDANTS' KNOWLEDGE AS EVIDENCE OF SCIENTER AND IN MISAPPLYING THE SCIENTER STANDARD.

### A. The CAC Is Replete with Allegations of Defendants' Knowledge of Misrepresented and Omitted Material Facts.

Plaintiffs alleged in their CAC, with respect to facts relevant to Plaintiffs' claims, "know," "knowledge," "acknowledge," or "knew," of facts that form the basis for Defendants' knowledge, more than 50 times. These allegations of knowledge relate to the fol-

lowing facts and other matters that support Plaintiffs' claims of misrepresented and omitted material facts:

- preparation of false and misleading investor reports and sales materials (¶ 99);

- false and misleading statements regarding the Funds' performance and compliance with their investment objectives and restrictions (*id.*);

- factors that determine illiquidity (¶¶ 162, 173-74, 177) ;

- securities for which market quotations are not readily available and securities subject to legal or contractual restrictions on resale are illiquid securities (¶ 174);

- factors that determine when securities must be fair valued (¶¶ 175, 220(d)-(l));

- 52%-90% of IBF's and HIF's portfolios and 34%-56% of STF's portfolio consisted of fair valued and/or restricted securities or securities that were otherwise illiquid or had the characteristics and history of securities that could suddenly become unsalable at their estimated values (¶¶ 183-85);[5]

- during the period relevant to the 1934 Act claims, 68.1%-73.4% of IBF's, 57.2%-60.9% of HIF's, and 34.9%-45.9% of STF's respective portfolios consisted of illiquid securities, violating the 15% limitation thereon (¶¶ 161-82, 183 rows 38, 45);

- the illiquid nature of the structured financial instruments that overwhelmingly dominated the Funds' portfolios (¶¶ 183, 198, 203, 249-52, 361);

- misrepresenting restricted securities as liquid when in fact they were illiquid (¶¶ 183, 197, 199, 201, 203);

- GAAP Statement of Position 93-1 alerted the Funds' accounting management to the illiquidity of, and valuation issues related to, securities such as the ABS/MBS in which the Funds invested (¶¶ 203, 240-41, 430, 490);

- the Funds' fair valued securities as a percentage of their respective portfolios at June 30, 2006 (¶¶ 183 row 41, 469-72);

- the effect of using fair value pricing, and of the uncertainty and risks inherent in such estimated valuations, on the valuation of the Funds' portfolios and the Funds' respective NAVs in view of the heavy concentration of fair valued securities in the Funds' respective portfolios (¶¶ 183, 198, 220-26, 469-72);

- the illiquidity of CDOs (as distinguished from the mortgage-backed securities whose illiquidity was disclosed in their prospectuses [¶ 197]) and the illiquidity of the securities purchased by the CDOs, which consisted of tranches from other ABS/MBS (¶¶ 199, 265, 361);

---

[5]    Because these facts were taken from the Funds' reports and SEC filings by issuers of the securities purchased by the Funds (¶ 183), they were necessarily known to Defendants.

- the Funds' board's reckless failure to satisfy itself either that all relevant factors were considered in valuing the Funds' portfolio securities or that the methods used to estimate value were acceptable (¶ 246);

- the Funds' vulnerability to losses as a result of the extraordinary credit risk inherent in the Funds' concentration in low ranking ABS/MBS (¶¶ 249-57, 306-28);

- the extraordinary credit risk disclosed in the prospectuses for the ABS/MBS purchased by the Funds (¶¶ 258-62) (knowledge of substandard underwriting standards is scienter; *see Washington Mutual*, 694 F. Supp. 2d at 1209-12);

- RF's insightful analysis (about which it later boasted) of the forthcoming subprime debacle and its acting thereon to dump its subprime subsidiary and the attribution of such knowledge to the other RMK Defendants (¶¶ 329-40, 669);

- the extraordinary risks of the subprime securities purchased by the Funds (¶¶ 341-45, citing ¶¶ 183, 197-247, 249-63, 267-305, 641-42);

- false and misleading representations and disclosures related to HIF (¶¶ 371-72);

- HIF was not like other high-yield mutual funds with which RMK Defendants compared HIF's performance (¶¶ 317, 372(o), 373, 399);

- false and misleading representations and disclosures related to IBF (¶¶ 374-75);[6]

- false and misleading representations and disclosures related to STF (¶¶ 376-77);

- the Funds' disproportionate (in comparison with their respective peer funds) investments in the highly risky lower-ranking tranches of illiquid ABS/MBS, resulting in false and misleading benchmark comparisons (¶¶ 126-27, 308, 318(k), 378);

- the incomplete, false and misleading SAI disclosure of the risks of investing in subordinated and illiquid securities (¶¶ 381-85);

- RMK Defendants touting on, *inter alia*, RB's website the virtues of investing in the Funds, including that, when investing in the Funds, an investor will "know exactly where you're going and exactly what you own," each Fund "has a well defined, 'no-surprises' style of structured, disciplined decision making," and "each portfolio manager is required to select only the most promising investments consistent with that style," when, in fact, MAM's credit risk research capability was minimal to non-existent (¶¶ 130-42, 361, 364, 393-94, 400);

- the significantly more robust risk disclosures in the RMK closed-end funds' prospectuses, notwithstanding the substantial identity of the portfolios of HIF, IBF and the RMK closed-end funds (¶¶ 418, 419, Appendix F).

---

[6]   IBF was also not like other intermediate bond funds, as MAM/MK determined in September 2006, a fact unknown to Plaintiffs (and unknowable to plaintiffs because of the PSLRA discovery stay) until the Alabama Securities Commission published the evidence underlying the four states' joint action against MAM/MK in April 2010. States' Ex. 49.

Again, to emphasize, as to each of these factual allegations that support Plaintiffs' claims of fraud under § 10(b) and Rule 10b-5 against Defendants (except PwC), Plaintiffs alleged Defendants' knowledge and also alleged the basis for Defendants' knowledge, identifying the specific securities (by name, characteristic or proportion of the Funds' portfolios) purchased by the Funds that were the subject of the alleged prospectus disclosures.[7] These allegations of the RMK Defendants' knowledge were identified and discussed by Plaintiffs in their opposition to Defendants' motions to dismiss. Plfs' Mem. (ECF No. 238) at 5, 12-13, 16-24, 27-29, 40-43, 48-49, 93, 96-99, 109, 139; Sur-Reply (ECF No. 265) at 2-14, 31-33.

MAM/MK has conceded that the Funds "bore significant liquidity risk." ECF 222-1 at 33. MAM/MK's concession is consistent with what MK recognized in September *2006*—that IBF's portfolio included "generally the inferior tranches in structured deals. They trade at large discounts due to a lack of demand and liquidity." States' Ex. 49. In *In re Regions Morgan Keegan ERISA Litig.*, 2010 WL 809950, at *14 (W.D. Tenn. Mar. 9, 2010) (Ex. 9), this Court concluded that "Defendants knew or should have known that the Bond Funds violated their own investment guidelines when they assumed high levels of risk by investing primarily and imprudently in the subprime market."

### B.   The Court Erred in Evaluating the Two Allegations of Scienter that It Did Consider.

Of all these allegations of knowledge related to misrepresented and omitted material facts, the Court addressed only two: (1) PwC's and MK's knowledge derived from prospectuses in which they are named and (2) the sales by MK personnel of the Funds' shares upon learning about the source and nature of the securities being purchased by the Funds. The Court ruled that neither of these instances of Defendants' knowledge was quantified.

### 1.   The Court Misunderstood the Relevance of Plaintiffs' Allegations Regarding Certain Securities Prospectus Illiquidity Disclosures.

The Court agreed Plaintiffs alleged PwC and MK had actual knowledge of the illiq-

---

[7]   ¶¶ 183, 197-99, 205, 209-10, 249, 251, 253-54, 256. This multitude of quantitative data clearly shows specific securities have been identified to support these allegations. *Id.*

9

uidity of at least some of the ABS/MBS purchased by the Funds but then concluded that Plaintiffs failed to show that these particular investments were not more than a miniscule portion of the Funds' portfolios. Order at 22. In so ruling, the Court ignored the relevance of these allegations, which is that MK and PwC were knowledgeable about the nature of a category of securities in which the Funds were heavily invested.

The disclosures in prospectuses with which PwC and MK were associated (¶ 205) are not specific to only those ABS/MBS but relate to all ABS/MBS, including all those purchased by the Funds, as Plaintiffs alleged. ¶ 197(a) (quoted liquidity disclosures "are typical" of such disclosures in the prospectuses "for all or almost all" of the Funds' "non-restricted" investments), ¶ 258 (excerpted disclosures "typical" of the prospectuses for the "non-restricted" MBS purchased by the Funds).[8] The Court ignored these allegations in ¶¶ 197(a) and 258. The point is not whether MK's and PwC's names were on a preponderance of the prospectuses for ABS/MBS purchased by the Funds (most of which had no prospectuses and, therefore, were even more risky) but that PwC's and MK's names were on *any* prospectuses containing risk disclosures pertaining to a category of complex structured financial instruments purchased by the Funds but not disclosed to investors in the Funds.

These liquidity risk disclosures appear in prospectuses filed with the SEC for those securities purchased by the Funds that were registered with the SEC and, therefore, were freely tradable.[9] Securities purchased by the Funds that were not registered with the SEC ("restricted securities") are not freely tradable, and their offering memoranda necessarily disclosed their liquidity risk as well. *See*, e.g., ¶ 199 (excerpts of the liquidity risk inherent in the

---

[8]     By their very terms, it is wholly implausible to conclude the excerpted disclosures are specific to only the security that is the subject of the prospectus, and not to all such securities. *See*, *e.g*., ¶ 197(b)(1) ("The secondary markets for asset-backed securities have experienced periods of illiquidity and can be expected to do so in the future."). SEC and accounting guidance recognizes that liquidity risk is common to all esoteric thinly traded securities. ¶¶ 203, 240-41, 429-30, 486-90. In any event, that PwC and MK had knowledge derived from one or more of the Funds' registered deals put them on notice as to such risks regarding all other such securities.

[9]     *See* Securities Act of 1933 §§ 4, 5; Securities Exchange Act of 1934 § 15(d). Many of the Funds' "non-restricted securities" were not registered with the SEC or the issuers thereof did not file reports with the SEC (¶¶ 183, 188-90, 196-98), suggesting they also were not freely tradable.

CDO purchased by the Funds and in the various structured securities to be purchased by the CDO). Indeed, in purchasing this unregistered CDO, the Funds were obliged to represent that they acknowledged, understood and agreed "that there is no market for the Offered Securities and that no assurance can be given as to the liquidity of any trading market for the Offered Securities and that it is unlikely that a trading market for any of the Offered Securities will develop" and that the purchaser "must be prepared to hold the Offered Securities for an indefinite period of time or until their maturity." Recons. Ex. 8 pp. 165, 170, 185.

## 2. The Court Erred in Choosing an Inference of Scienter Favoring Defendants as to MK Employees' Sales of Fund Shares.

The Court discounted Plaintiffs' allegations that Edwards ordered MK officials to stop selling the Funds' shares after learning of the risky securities being purchased by Kelsoe for the Funds and that Edwards did so for fear of word spreading that would undermine confidence in the Funds. Order at 24-25; ¶¶ 352-54. The Court first says Plaintiffs failed to identify the selling accounts or the quantities sold. Such quantification is irrelevant to the fact that certain officials became sufficiently concerned to act on this information to sell their shares.

Next, contradicting the CAC's *specific* allegations, the Court speculated that Edwards might really have believed in the merits of the Funds, notwithstanding the information that animated the employees' sales. ¶¶ 352-54. On this allegation alone, the Court's speculative *inference* is no more plausible than the CAC's *explicit allegations*.[10] However, given the rest of the allegations (MK officials' concerns regarding the safety of their investments in the Funds, and accepting the truth of those allegations, as the Court must do), the Court's speculative inference regarding Edwards' mental state is patently less plausible than the CAC's.

---

[10]     ¶¶ 352-54 ("When Defendant Edwards became aware of these sales [motivated by information the Funds were purchasing risky illiquid securities], he became angry because he was concerned that word of such sales could have a negative impact on the Funds."). Because the Court's inference is, at most, no more plausible than Plaintiffs' allegation, the tie goes to Plaintiffs. *Frank*, 547 F.3d at 571. The PSLRA's scienter particularity pleading requirements did not replace the jury trial. *Fla. Bd. of Admin.*, 270 F.3d at 666 (defendants' possible belief in the adequacy of reserves "cannot render the complaints inadequate, lest the heightened pleading requirements of the [PSLRA] replace the function of a trial.").

C. **The Court Erred in Ignoring the CAC's Allegations Supporting a Strong Inference of Scienter as to Illiquidity and other Risks and Conduct.**

While the Court focused on the lack of quantification regarding the two allegations of scienter it did consider, the Court ignored the allegations that specified the portions of the Funds' portfolios affected by the liquidity and credit risk disclosures. ¶¶ 183, 197-99, 209-11, 249-58. The liquidity and credit risk disclosures are in ABS/MBS prospectuses comprising 34.7%, 46.5%, and 38.5% of HIF's, IBF's, and STF's respective non-restricted securities at December 31, 2006. ¶ 197(c). But these are the *non-restricted* (i.e., supposedly freely trading) ABS/MBS for which prospectuses have been found; it is certainly plausible to infer that the same liquidity risk disclosures appeared in the private placement memoranda for the Funds' unregistered ("restricted") ABS/MBS, and in fact they do appear in one such offering circular. ¶ 199; Recons. Ex. 8 pp. 27, 35, 37-38, 41, 55, 170, 185. For example, restricted securities constituted 51.0% of HIF's, 54.7% of IBF's, and 25.7% of STF's respective portfolios at December 31, 2006. ¶ 183(row 35). Thus, for this date, it can be inferred with mathematical plausibility that the liquidity risk disclosures alleged at ¶¶ 197 and 199 related to at least 68% of HIF's, 75.8% of IBF's, and 54.3% of STF's portfolios [11]—i.e., it is reasonable to infer that these liquidity risk disclosures likewise pertained to the restricted securities, as well as the non-restricted securities, purchased by the Funds.

Moreover, the holding of an issuer's securities by a small number of investors renders that security illiquid because of the fact that it is necessarily thinly traded. ¶¶ 173(a), 176(d). At June 30, 2006, 59.7% of HIF's, 55.5% of IBF's, and 32.2% of STF's non-restricted securities consisted of securities held by less than ten record holders. ¶ 197(f). The illiquidity characteristics of a substantial portion of the Funds' *non-restricted securities* (securities for which a registration statement was filed, a prospectus was available, and reports filed with the SEC) together with the Funds' holdings of *restricted securities* establishes the illiquidity, and the enormous liquidity risk, of the Funds' portfolios. ¶ 197(g). Indeed, the securities that,

---

[11]     Respectively calculated as follows: $([\{1-.51\}*.347]+.51=.68)$; $([\{1-.547\}*.465]+.547=.758)$; $[\{1-.257\}*.385]+.257=.543)$. Unregistered/restricted securities are illiquid. ¶¶ 162, 174-77.

based on Defendants' own definitions of illiquidity, were illiquid, and to which the liquidity risk disclosures would have applied, at June 30, 2006, constituted 57.2%, 73.4%, and 45.9% of HIF's, IBF's and STF's respective portfolios. ¶¶ 173-77, 183(row 45), 191, 195. These percentages were even greater when the overlapping holdings of the Funds and the RMK closed-end funds are taken into account. ¶¶ 207-11 (e.g., up to 90% for IBF [¶ 210(b)(4)]).

The CAC alleges the prominent role played by the Funds' ABS/MBS investments in their illiquid investments and in the losses incurred by the Funds. ¶¶ 198, 249, 253, 308, 310, 313, 316. Taken together, the CAC alleges the specific liquidity and credit risks of the Funds' ABS/MBS, Defendants' knowledge of such risks, the sources of such knowledge, the non-disclosure of such risks, and the materialization of such risks. ¶¶ 197-99, 249, 253, 258-62, 308, 310, 313, 316. The CAC likewise alleges the extent to which the Funds exceeded their concentration restrictions, and the RMK Defendants' knowledge thereof. ¶¶ 273-83.

Equally important as these risks are the undisclosed fair valued securities at June 30, 2006, which concealed the extent to which the Funds' respective NAVs were no more than speculative estimates.[12] The 1934 Act claims belong to persons holding the Funds' shares on July 1, 2007, thereby implicating the Funds' June 30 and December 31, 2006 financial state-

---

[12]     The Court misconstrues Plaintiffs' claim that the Funds' valuations were incorrectly disclosed because of the failure to disclose the amount of fair valued securities held by the Funds, thus concealing the extent to which the Funds' portfolios consisted of securities whose valuations were uncertain and subjective. The Court correctly notes that Plaintiffs do not contend any specific valuation of a portfolio security was incorrect in terms of its *numeric value*. Order at 21. But, ignoring caselaw, the Court says "Plaintiffs admit that a perfect disclosure of the facts surrounding the Funds' investments would not have revealed that any dollar value assigned to a Fund security was incorrect." *Id.*  Plaintiffs do *not* so admit; such disclosure would have revealed that any dollar value assigned to such a security was purely speculative, that the stated value should not be assumed to be any more correct than a range of other values, and that the assignment of such a value suggested a certainty that was unwarranted and unreliable. Plaintiffs' contention that these valuations were incorrectly stated for failure to comply with GAAP-required disclosures states a cause of action for misleading financial statement disclosures. *See White v. Heartland High-Yield Municipal Bond Fund,* 237 F. Supp. 2d 982, 984-85 (E.D. Wis. 2002) (allegations that funds' financial statements failed to disclose the valuation uncertainty attendant to the high-yield municipal bonds in which the funds invested stated a claim against PwC). Moreover, there is now evidence that the Funds' valuations *were,* in fact, numerically incorrect after mid-2006. PwC reads allegations like those in the CAC as asserting that the Funds' losses would only have been incurred earlier if they had tried to bring their portfolios into compliance with their investment objectives, policies and restrictions. *See* Plfs' Mem. at 33-34.

13

ments and other related facts.[13] Those financial statements did not disclose the percentages of the fair valued securities held by the Funds, as was disclosed in the Funds' June 30, 2007 financial statements. ¶¶ 183, 187-89, 220(l), 223, 469-72, 479-80, 497. MAM/MK is alleged to have known those of the Funds' securities that were fair valued at June 30, 2006, and this knowledge is confirmed by the June 30, 2007 financial statements' disclosure thereof. *Id.* This was a material omission because such nondisclosure failed to warn investors as to the Funds' speculative NAVs. ¶ 222(a). Likewise, Defendants are alleged to have known the effect of using fair value pricing, and of the uncertainty inherent in such estimated valuations, on the valuation of the Funds' portfolios and the Funds' respective NAVs. ¶ 224.

Besides the quantified[14] undisclosed material risks (and the factual bases therefor) of which Defendants had knowledge, MAM/MK and RB engaged in deceit, as evidenced by the insider conduct of the RMK Defendants that was at significant variance with their public disclosures and pronouncements and by RB's conflicting interests, all of which supports scienter: RF's sale of EquiFirst, MK's preferential redemptions, MK continuing to promote the Funds even after such redemptions, MAM/MK learning in September 2006 that IBF was not a bond fund but not disclosing it, Edwards's quashing insider sales of personal investments in the Funds to conceal MK's officials' concerns about the safety of Kelsoe-managed funds, and RB's and MAM/MK's conflicts as a result of the overlapping holdings of the Funds and the four RMK closed-end funds.

RF actually foresaw the coming subprime disaster. In 2006, RF and RB were sufficiently convinced of the coming "sub-prime market meltdown" to decide to sell at a significant loss a subsidiary that accounted for 52% of RB's securitized residential real estate mortgage loans. ¶¶ 329-38, 738. Thus, RF and RB bailed out of the very same business in which the Funds were heavily investing, even though RB continued to falsely tout the

---

[13]    ¶¶ 106, 107, 164, 187, 197(c), 197(f), 220(h)-(k), 222(g)-(j), 238, 242, 253, 338, 469, 471-72, 479, 497, 538-39, 543, 556, 606, 632, 669, 721, 738, 742-57.

[14]    The quantified credit risks are understated because the allegations are based solely on the data that was then accessible to Plaintiffs. ¶¶ 253, 256, 264-65.

Funds as safe preferred alternatives to RB's own certificates of deposit.[15]

RF/RB's failure to get the Funds out of their ABS/MBS was compounded by the fiduciary duty owed by RB to the Fiduciary Accounts and the preferential redemptions directed by MK in August 2007, both of which were also ignored by the Court. The breach of fiduciary duty arising from conflicting interests accompanied by omissions of material facts constitutes a violation of § 10(b).[16] Preferential redemptions are fraudulent.[17] Here, they are especially fraudulent for several reasons: first, RB's and MAM/MK's fiduciary duty to the Fiduciary Accounts; second, MAM/MK's fiduciary duty to the Funds and their shareholders; third, MAM/MK's knowledge that the valuations of the Funds' ABS/MBS at June 30, 2007 could not be determined to the satisfaction of PwC, thus delaying the issuance of the Funds' June 30, 2007 financial statements; fourth, the Funds' NAVs were likely to decline; and, finally, because of the illiquidity of the Funds' investments, those redemptions could be achieved only by capital infusions into HIF and IBF by the RMK organization.[18] After earlier prohibiting MK officials' redemptions of their Funds and then

---

[15]  ¶¶ 49, 53-56, 129-39, 233, 249, 253, 258-62, 338, 370-401, 393, 635-45, 649-653, 659, 661-70. States' Exs. 37, 39-42, 95, 121, 123, 125-27. The Court ignored Plaintiffs' argument that the States Exhibits demonstrate the plausibility of the CAC's allegations. Sur-Reply at 8, 13 n.21, 17, 29, 34 (ECF No. 265); Plfs' Opp. to Defs' Motion to Strike at 1-3 (ECF No. 268). The Funds' portfolio managers were not even subject to MAM's and the Funds' board's oversight. States' Ex. 130; Sur-Reply at 34. The CAC alleges that the management of the Funds was an undisclosed rogue operation of which MAM/MK and RF/RB were fully knowledgeable.

[16]  ¶¶ 107, 661-70; Plfs' Mem. at 112-15 and the CAC paragraphs and States Exhibits cited therein.

[17]  In *SEC v. State Street Bank and Trust Company*, No. 1:10-cv-10172, Dkt. No. 1, (D. Mass. February 4, 2010) (Ex. 34), the SEC asserts that holders of an open-end fund's shares have a protectable interest in having equal access to material information about the fund. *Id.* at 37. *See also In the Matter of Evergreen Investment Management Company,* LLC, SEC Release No. IC-28759, June 8, 2009, at ¶¶ 15-23, 27 (disclosure of likelihood of continuing repricings of the fund's illiquid securities to selective accounts would be viewed by a reasonable investor in the fund as important information in deciding whether to redeem the fund's shares; such selective disclosure operated as a fraud and deceit on fund's existing shareholders) (Ex. 45); *SEC v. Heartland Advisors Inc.*, No. 2:03-cv-01427-CNC (E.D. Wisc. Dec. 11, 2003), Dkt. No. 395; SEC Release No. IC-28136 (January 25, 2008) (where two bond funds' NAVs were incorrect, "investors purchased and redeemed Fund shares at prices that benefited redeeming investors at the *expense of remaining* and new investors.") (emphasis supplied) (Ex. 60).

[18]  ¶¶ 107, 227-30, 322-28, 661-70; States' Exs. 71-72, 100-01. This funding also proves the allegations that MAM/MK had a conflict of interest that prevented them from causing the Fiduci-

directing the preferential redemptions, MK encouraged the remaining Fund shareholders to hold on to their shares and not redeem. ¶¶ 352-54; States' Exs. 58-66; Ex. 3 ¶ 83.

While MAM/MK touted its credit research capability, in truth it had none. ¶¶ 132, 134(b), 139, 361, 364, 400; Exs. 74, 104A-J.[19] This was a deliberate falsehood that went to the heart of what a bond fund, especially one investing in high yield securities, is all about.

In sum, all of this violative conduct (*see also* footnote 23 below) viewed holistically, as *Tellabs* requires, positively reeks of the rankest and most obvious scienter.[20]

### D.    The CAC Alleges Each Defendant's Role.

The CAC clearly alleges each Defendant's role in the alleged material misrepresentations and omissions. E.g., ¶¶ 40-104, 329-69, 618-70. For example, Defendant Morgan, *inter alia*, signed the Funds' Form N-1A registration statement, or amendments thereto, throughout the Class Period.[21] ¶ 59. Defendant MK distributed the Funds' shares and was

---

ary Accounts to redeem in view of the overlapping illiquid holdings of the Funds and the RMK closed-end funds. Because of the overlapping holdings of the same ABS/MBS by the Funds and the four RMK closed-end funds, MAM/MK had a strong incentive to discourage redemptions, thereby avoiding the need to sell illiquid securities to satisfy redemptions. Obviously, substantial sales by one of these funds would have depressed the prices of those same securities held by the other funds. ¶¶ 204, 207, 209-15, 322-28, 341-42, 382(c), 383, 385(f)-(g), 415-16, 643, 740, 755.

[19]    If MAM/MK did not have the prospectuses excerpted in the CAC, MAM/MK was reckless. *Ashland Inc. v. Morgan Stanley & Co., Inc.*, 2010 WL 1253932, at * 14 (S.D.N.Y. Mar. 30, 2010) ("it was unreasonable, perhaps reckless, for [plaintiff investor] to not insist upon receiving, in writing, the prospectus . . . . before making its initial investment . . . .") (Recons. Ex. 6). Using the "obvious" standard (instead of "reckless") for accounting violations (Order at 23), what can be more "obvious" than omitting an entire financial statement? ¶¶ 551, 552(m), 570(k), 599, 600(e). As to the importance of cash flow for funds like these, in view of their liquidity needs and holdings of illiquid or fair valued securities, *see*, e.g., ¶¶ 204, 213, 233, 265, 270, 374(i), 400, 576(c), 601. Equally "obvious," given the magnitude of fair valued securities at June 30, 2006, is the failure to disclose the securities that were fair valued and the aggregate amount thereof, as was done at June 30, 2007 *for June 30, 2006*. ¶¶ 220(l), 469-72. Also "obvious," given the identity of fair valued and illiquid securities, is the misrepresentation at June 30, 2006, that none of the Funds' restricted securities were illiquid. ¶¶ 173, 175-77, 183, 201, 205, 475.

[20]    Deceitful conduct over an extended period of time demonstrates scienter. *Cf. Plumbers & Steamfitters Local 773 Pension Fund v. CIBC*, 2010 WL 961596, at * 14 (S.D.N.Y. Mar. 17, 2010) (court declined "to extrapolate a year-long fraudulent scheme from [one] isolated and imprecise remark on a conference call") (Recons. Ex. 7). Here, Plaintiffs' claims do not rest on a single misstatement or omission or even a single instance of misconduct—the CAC alleges an extended pattern of misleading statements over three years related to the Funds' mismanagement and an ongoing business scheme to move RB depositors to MK accounts while misleading RB's depositors about the risks of the Funds. ¶¶ 53, 161-305, 370-401, 659; States' Ex. 123.

[21]    Persons are responsible for the contents of what they sign. *In re Worldcom, Inc. Sec. Litig.*,

responsible for the Funds' administration, compliance, accounting, valuation of their portfolio investments, monitoring the investments in the Funds of those Fund shareholders who invested through MK, and overseeing the Funds' investment strategy.[22]

MK played the dominant role in what is among the most devious of all of Defendants' conduct. This is the preferential redemptions of selected accounts while keeping the Fiduciary Accounts invested in the Funds, notwithstanding MAM/MK's and RB's fiduciary duty to the Fiduciary Accounts, and actively discouraging the rest of the Funds' shareholders from redeeming, even into November 2007.[23] These preferential redemptions are directly relevant to the CAC because the CAC focused on the substantial increase in redemptions in mid-August 2007 and alleged MAM/MK's and RB's failure to redeem the Fiduciary Accounts. ¶¶ 228, 231, 322, 325-28, 669. It turns out these redemptions included the favored "PF2" accounts, enabling them to get out before the Funds' total collapse.

## IV.   THE COURT ERRED IN HOLDING THAT THE CAC DID NOT IDENTIFY THE DEFENDANTS ON THE 1934 ACT CLAIMS

The Court acknowledges that the CAC names the Funds, MAM, MK and RB as Defendants on Plaintiffs' § 10(b) claims.[24] Order at 16. Paragraph 88 of the CAC defines how the term "RMK Defendants" is used "unless otherwise alleged." The manner in which the Defendants are identified in Counts I-III is identical to the manner in which they are identified in Counts V-VII. The only difference is in the heading of Count I (which "explicitly"

---

294 F. Supp. 2d 392, 420 (S.D.N.Y. 2003).

[22]      ¶¶ 41, 45-46, 49, 57, 110, 346-50, 619-34.

[23]      ¶¶ 42, 43, 49, 53-56, 107-09, 322-28, 635-45, 661-70, 755-57; States' Exs. 58-66, 71-72, 100-01. In a November 15, 2007 conference call with MK's sales force, Edwards, in encouraging MK's brokers "to hang in there," said MK "supported the funds through this period when liquidity has been tough" without revealing that this "support" was to facilitate the preferential redemptions of favored customers and that some of that "support" had since been withdrawn. Ex. 3 ¶¶ 83-85. The preferential redemptions occurred in mid-August 2007 while MAM/MK knew HBAM had been engaged to help ascertain the Funds' NAVs and further knew, but concealed from the Funds' shareholders, that the Funds would be unable to timely issue their 2007 annual reports because of the uncertainty as to the valuation of the Funds' structured financial instruments. ¶¶ 227-30.

[24]      Contrary to the Court's statement, while PwC is named as a knowing participant under Count V (¶ 750), PwC is not named as a Defendant in either Count V or Count VI. ¶¶ 742, 752. Nor does PwC's name appear in the heading of either Count.

excludes "Defendant Directors and Officers") as compared with the heading of Count V (which does not so state). Contrary to the Court's statement (Order at 16), the Defendant directors and officers are not "explicitly" excluded by ¶ 684 (Count I) any more than they are "explicitly" excluded in ¶¶ 742 and 752 (Counts V and VI). In all three of Counts I, V, and VI, the Defendant officers and directors are excluded from the opening paragraph of each Count by their omission therefrom. The heading for Count I is consistent with ¶ 684's exclusion of the Defendant officers and directors; as it happens, the headings of Counts V and VI are simply silent as to the Defendant officers and directors but are nevertheless consistent with the opening paragraphs of each Count. ¶¶ 742, 752.[25]

Counts I-III follow the same pattern, both substantively and semantically, as Counts V-VII. Count I is asserted against the Funds, MK, MAM, RB and PwC; the Funds' directors and officers are not named as defendants in Count I. ¶ 684. Count II identifies only MK, MAM and RB, not the Funds' directors and officers. ¶ 708. The Funds' officers and directors are named as defendants only in Count III, as controlling persons under the Securities Act of 1933 § 15. ¶ 717. An examination of Counts V-VII reveals the same pattern: Count V is asserted against the Funds, MK, MAM and RB, just like Count I is, while Count VI is asserted only against RB, MK and MAM. ¶¶ 742, 752. Like Counts I and II, neither Count V nor VI is asserted against the Funds' officers and directors. Like Count III, the Funds' officers and directors are named in Count VII, asserting claims against them

---

[25]    The "Individual Defendants" said, "Plaintiffs affirmatively exclude 'Defendant Officers and Directors' from Plaintiffs' claims under § 11 of the 1933 Act (Count I) and do not include the Individual Defendants among those defendants against which Plaintiffs purport to assert claims under § 10(b) of the 1934 Act." ECF No. 226-1, at 4 n. 3. The Court said Plaintiffs failed to respond to this statement. Order at 16-17. But this statement required no response as Plaintiffs did not take issue with the statement; the Individual Defendants clearly understood they were being sued under § 15 of the 1933 Act and § 20 of the 1934 Act. Plaintiffs saw that the Individual Defendants read Counts I, III, V, VI and VII exactly as they were pled and were not confused, thus requiring no clarification. As to the statement quoted by the Court from Plaintiffs' brief (Order at 17), this statement addressed all Defendants sued under Counts V-VII, including those sued as controlling persons under § 20. The statement was not intended as a response to the Individual Defendants footnote observation that they understood they were not being named as primarily liable defendants under either the 1933 or 1934 Acts.

as controlling persons under Securities Exchange Act of 1934 § 20. ¶ 758.

As the Court and Defendants had no trouble understanding that the Funds, MK, MAM and RB were named in Count V and MK, MAM and RB were named in Count VI, the Court improperly dismissed those claims against those Defendants merely because the Court said it was unable to ascertain whether the officers and directors were also named in those Counts. Even assuming the Individual Defendants were confused, which they were not, this confusion does not justify dismissing the 1934 Act claims against the Funds, MK, MAM and RB, Defendants as to which there was no such confusion whatsoever, simply because the descriptive headings for Counts I, V and VI were not uniformly phrased (but were nonetheless accurate). That the officers and directors were not named in Counts V and VI should be dispositive of the issue; indeed, it was unnecessary to dismiss Counts V and VI as to them because they were not named therein. To dismiss Counts V and VI against those Defendants explicitly named because of supposed confusion as to whether other Defendants clearly not named were intended to be named is manifestly erroneous.

## V.  ALTERNATIVELY, THE COURT SHOULD ENTER FINAL JUDGMENT AS TO COUNTS V, VI AND VII PURSUANT TO FED. R. CIV. P. 54(b).

Under Rule 54(b), entering final judgment on an order is proper "if the order disposes of at least one claim with the degree of finality required to satisfy the appealability standards of 28 U.S.C. § 1291." *Anderson v. Hamblen County*, 2008 WL 2782671, at * 2 (E.D. Tenn. July 8, 2008) (citing *Rudd Construction Equipment Co., Inc. v. Homes Ins. Co.*, 711 F.2d 54, 56 (6th Cir. 1983)) (Recons. Ex. 5). Rule 54(b) relaxes the traditional finality requirement for appellate review by allowing the district court to direct the entry of final judgment as to one or more but fewer than all claims. *Lowery v. Fed. Exp. Corp.*, 426 F.3d 817, 820 (6th Cir. 2005); *Chad Youth Enhancement Center, Inc. v. Colony National Ins. Co.*, 2010 WL 2253538, at * 2 (M.D. Tenn. June 1, 2010) (Recons. Ex. 9).

The Sixth Circuit has held that Rule 54(b) requires two independent findings. *Life Ins. Co. of N. Am. v. Simpson*, 2009 WL 2163498, at * 5 (W.D. Tenn. July 16, 2009) (Recons. Ex. 10). First, "the district court must expressly 'direct the entry of final judgment

19

as to one or more but fewer than all the claims or parties' in a case." *Anderson*, 2008 WL 2782671, at * 2. Second, "the district court must 'expressly determine that there is no just reason to delay appellate review.'" *Id.*

The Sixth Circuit has set forth a "nonexhaustive list of factors which a district court should consider when making a Rule 54(b) determination":

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need to review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or a counterclaim which could result in a set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense and the like.

*General Acquisition v. GenCorp, Inc.*, 23 F.3d 1022, 1030 (6th Cir. 1994); *Chad Youth Enhancement Center, Inc*, 2010 WL 2253538, at * 2.

A review of these factors shows that there is no just reason to delay appellate review. Counts V-VII were all of the claims asserted pursuant to the 1934 Act. Order at 13-14. Those claims were dismissed because the Court believed that scienter was not adequately pleaded. Scienter is not an element of the 1933 Act claims. In the event this Court denies the motion for reconsideration, there would be no reason for the Court to consider the same issue again as to the remaining claims. Thus, there is no reason not to proceed with an appeal to determine whether the CAC adequately alleged scienter. The Order finally disposed of all of the 1934 Act claims. As the case will go forward with respect to the remaining claims, a Rule 54(b) judgment will not prejudice Defendants.

## CONCLUSION

For the reasons stated herein, Plaintiffs' Motion for Reconsideration of the dismissal of Counts V, VI, and VII should be granted and the claims reinstated. Alternatively, if the Court declines to grant Plaintiffs' Motion for Reconsideration, the Court should enter judgment on Counts V, VI, and VII to permit an immediate appeal thereof.

DATED:  October 28, 2010                              Respectfully submitted,

20

**APPERSON CRUMP PLC**

*s/ Jerome A. Broadhurst*
Jerome A. Broadhurst, TN BPR 12529
Charles D. Reaves, TN BPR 22550
6070 Poplar Avenue, Sixth Floor
Memphis, TN 38119-3954
Tel : 901-260-5133
Fax : 901-435-5133
jbroadhurst@appersoncrump.com

*Liaison Counsel for Lead Plaintiffs*

**HEAD, SEIFERT & VANDER WEIDE, P.A.**
Vernon J. Vander Weide
Thomas V. Seifert
333 South Seventh Street, Suite 1140
Minneapolis, MN 55402-2422
Tel: 612-339-1601
Fax: 612-339-3372
vvanderweide@hsvwlaw.com

**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
Richard A. Lockridge
Gregg M. Fishbein
100 Washington Avenue South
Suite 2200
Minneapolis, MN  55401
Tel:  (612) 339-6900
Fax:  (612) 339-0981
gmfishbein@locklaw.com

*Co-Lead Counsel for Lead Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that this 28th day of October, 2010, a true and correct copy of the foregoing served by electronic means via e-mail transmission (including the Court's ECF System) to the following:

Shepherd D. Tate, Esq.
Michael A. Brady, Esq.
**Bass, Berry, & Sims, PLC**
100 Peabody Place, Suite 900
Memphis, TN 38103-3672

Matthew M. Curley, Esq.
Michael L. Dagley, Esq.
Britt K. Latham
W. Brantley Phillips, Jr.
**Bass, Berry, & Sims, PLC**
150 Third Avenue South, Ste. 2800
Nashville, TN 37201

David B. Tulchin
Margaret E. Bartlett
David E. Swarts
**Sullivan & Cromwell, LLP**
125 Broad Street
New York, NY 10004

Peter J. Anderson, Esq.
S. Lawrence Polk, Esq.
**Sutherland Asbill & Brennan LLP**
999 Peachtree Street, NE
Atlanta, GA 30309-3996

Jeffrey Maletta, Esq.
Nicole A. Baker
**K & L Gates**
1601 K Street NW
Washington, DC 20006

Emily Nicklin, Esq.
Timothy A. Duffy
Kristopher Ritter
**Kirkland & Ellis**
200 East Randolph Dr., Ste. 5400
Chicago, IL 60601-6636

Leo Maurice Bearman, Jr.
Eugene J. Podesta, Jr.
**Baker Donelson Bearman Caldwell**
**& Berkowitz**
165 Madison Avenue, Suite 2000
Memphis, TN 38103

Peter S. Fruin
**Maynard Cooper & Gale PC**
2400 Regions Harbert Plaza
1901 Sixth Avenue North
Birmingham, AL 35203

Kevin C. Logue, Esq.
**Paul, Hastings, Janofsky & Walker LLP**
75 East 55th Street
New York, NY 10022


s/Jerome A. Broadhurst
Jerome A. Broadhurst