IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| IN RE:  REGIONS MORGAN KEEGAN SECURITIES, DERIVATIVE, AND ERISA LITIGATION | ) ) ) ) ) | Case No. 07-2784 MDL 2009 |
| IN RE:  REGIONS MORGAN KEEGAN OPEN-END FUND LITIGATION | ) ) ) ) ) | |

## ORDER DENYING MOTIONS FOR RECONSIDERATION

Before the Court are the October 28, 2010 Motion for Reconsideration filed by the Lead Plaintiffs (ECF No. 275) and the November 4, 2010 Motions for Reconsideration filed by Defendants Morgan Keegan & Co., Inc. ("Morgan Keegan") and Regions Bank ("Regions"). (ECF Nos. 277-78.)  All parties filed their responses in opposition on November 30, 2010. (See ECF Nos. 286-88.)  Both the Lead Plaintiffs and the Defendants ask this Court to modify its Order of September 30, 2010, which granted in part and denied in part Defendants' Motions to Dismiss the Consolidated Amended Complaint ("CAC"). See In re Regions Morgan Keegan Open-End Fund Litig., No. 07-2784, MDL 2009, 2010 U.S. Dist. LEXIS 104246, at *43-44 (W.D. Tenn. Sept. 30, 2010).  For the following reasons, the Motions for Reconsideration are DENIED.

## I.   STANDARD OF REVIEW

District courts have the inherent authority, confirmed by the common law and Federal Rule of Civil Procedure 54(b), to reconsider any interlocutory order. Rodriguez v. Tenn. Laborers Heath & Welfare Fund, 89 F. App'x 949, 959 (6th Cir. 2004); Mallory v. Eyrich, 922 F.2d 1273, 1282 (6th Cir. 1991). On reconsideration, a district court may modify or rescind an interlocutory order and may "hold whatever hearings it deems advisable." Mallory, 922 F.2d at 1282. Courts will grant a motion for reconsideration if 1) an intervening change in controlling law occurs; 2) new evidence becomes available; or 3) there is a need to correct a clear error of law or to prevent manifest injustice. Rodriguez, 89 F. App'x at 959. Motions "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." 11 Charles Alan Wright et al., Federal Practice and Procedure § 2810.1 (2d ed. 1995).

## II.  ANALYSIS

### A. Lead Plaintiffs' Motion for Reconsideration

Familiarity with the facts is assumed. See Open-End Fund Litig., 2010 U.S. Dist. LEXIS 104246, at *5-17. Lead Plaintiffs argue that the Court erred by dismissing their claims under §§ 10(b) and 20 of the Securities and Exchange Act of 1934 ("the `34 Act"), 15 U.S.C. §§ 78j(b), 78t(a), and Rule 10b-5

2

promulgated thereunder.   17 C.F.R. § 240.10b-5.   The Court dismissed Lead Plaintiffs' claims under those provisions for failure to plead scienter as required by the Private Securities Litigation Reform Act ("PSLRA").   <u>Open-End Fund Litig.</u>, 2010 U.S. Dist. LEXIS 104246, at *20-35.   Lead Plaintiffs argue that the CAC "positively reeks of the rankest and most obvious scienter" and that the Court ignored numerous relevant allegations in the CAC.   (Pls.' Mem. in Support of Their Mot. for Reconsideration, at 7-8, 16, ECF No. 275-1.) ("Pls.' Mem.") They also assert that Court erred by drawing an inference from the CAC in the Defendants', rather than the Lead Plaintiffs', favor.   (<u>Id.</u> at 11.)

The basis of Lead Plaintiffs' primary argument is the prolixity of their Complaint.   With four hundred pages of text, including 766 paragraphs and six attached appendices, Lead Plaintiffs assert that they must have pled scienter sufficiently for the Court to make the required inference.   (<u>See</u> <u>id.</u> at 6-9.) Lead Plaintiffs note that the CAC uses some form of the word "know" more than fifty times.   (<u>Id.</u> at 6.)

Prolixity does not equal specificity.   The PSLRA demands specificity.   It requires that plaintiffs pleading a claim under the `34 Act 1) "state with particularity" the facts constituting the alleged violation, including "specifying each statement alleged to have been misleading," 15 U.S.C. § 78u-4(b)(1), and

2) "state with particularity the facts giving rise to a strong inference that the defendant acted with the particular state of mind." Id. § 78u-4(b)(2). That "particular state of mind" is known as scienter and requires a plaintiff to show that a defendant's intention was "to deceive, manipulate or defraud." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 313 (2007) (citation omitted). An inference of scienter is "strong" within the meaning of the PSLRA if it is "more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." Id. at 314. In the Sixth Circuit, scienter requires that a plaintiff at least state facts sufficient to support the conclusion that a defendant acted with recklessness. Konkol v. Diebold, Inc., 590 F.3d 390, 396 (6th Cir. 2009). Recklessness is "highly unreasonable conduct which is an extreme departure from the standards of ordinary care." Mansbach v. Prescott, Ball, & Turben, 598 F.2d 1017, 1025 (6th Cir. 1979).

In its prior Order, the Court analyzed all four factors[1] emphasized by Lead Plaintiffs. Compare Open-End Fund Litig., 2010 U.S. Dist. LEXIS 104246, at *27-32, with Pls.' Mem. in Opp. to Defs.' Mot. to Dismiss, at 98, ECF No. 238. ("Pls.' Dismiss

---

[1] In their Motion, Lead Plaintiffs assert that the Court analyzed only two factors in its scienter analysis. Compare Pls.' Mem. at 6 ("The Court only addressed two of the CAC's allegations of Defendants' knowledge"), with Open End Fund Litig., 2010 U.S. Dist. LEXIS 104246, at *27 ("Plaintiffs point to four factors suggesting scienter in this case." (citation omitted)).

Resp.")   The  Court  also  noted  one  important  factor  Lead
Plaintiffs  chose  not  to  emphasize.   Open-End Fund Litig., 2010
U.S. Dist. LEXIS 104246, at *32-33.   Although Lead Plaintiffs
challenge  the  inferences  the  Court  drew  from  the  CAC,  case  law
is  clear:   a  district  court  has  a  duty  to  consider  both  the
inferences  Plaintiffs  urge  and  "competing  inferences  rationally
drawn  from  the  facts  alleged."   Tellabs, 551 U.S. at 314.   That
means  that  a  district  court  must  also  consider  non-fraudulent
conclusions  that  one  could  fairly  draw  from  the  same  alleged
facts,  engage  in  a  comparative  analysis,  and  determine  whether
the  inference  of  fraudulent  intent  is  "cogent  and  at  least  as
compelling  as  any  opposing  inference  of  nonfraudulent  intent."
Id.   Here,  Lead  Plaintiffs'  allegations,  viewed  as  a  whole,  were
not  at  least  as  compelling.   See Open-End Fund Litig., 2010 U.S.
Dist. LEXIS 104246, at *24-35.

In  their  pleadings,  Lead  Plaintiffs  repeatedly  undermined
their  own  scienter  allegations.   They  have  acknowledged  that
they  did  "not  allege  that  the  dollar  value  for  any  security  was
incorrect  at  any  time  during  the  Class  Period."   (Pls.' Dismiss
Resp. at 22.)   Lead  Plaintiffs  did  make  specific  allegations
about  certain  investments  the  Funds  made.   They  alleged  that  the
Defendants  concluded  that  the  investments  were  illiquid  when
Defendants  analyzed  them  for  independent  clients,  but  concluded
the  opposite  when  analyzing  them  for  the  Funds.   See Open-End

Fund Litig., 2010 U.S. Dist. LEXIS 104246, at *29-30.  However, Lead Plaintiffs at most indentified twenty securities in which the Funds invested over a period of three years.  Id. at 30. Lead Plaintiffs did not quantify those investments in terms of the Funds' total assets of $2.2 billion.  Id.  It is more likely that those highlighted transactions involved a de minimis amount of the Funds' assets.  Id. at *30-31.  De minimis accusations will not support scienter.

Similarly, Lead Plaintiffs' allegations of insider trading are insufficient because Lead Plaintiffs admitted that the information that triggered the insider sales appeared in a published article available to any member of the general public. (CAC ¶ 352, ECF No. 218.)  The CAC also failed to allege "how many employees sold their shares in the Funds, when these sales took place, how many total employees held the Funds' shares, or whether individual share sales made a marked difference in the number of shares held by Morgan Keegan employees."  Open-End Fund Litig., 2010 U.S. Dist. LEXIS 104246, at *34.

Lead Plaintiffs complain that they could not fill the holes in their Complaint absent discovery.  (Pls.' Mem. at 3.) Congress enacted the PSLRA to "check against abusive litigation by private parties."  Tellabs, 551 U.S. at 313.  One of those checks was a stay on all discovery in cases under the `34 Act until they had survived a motion to dismiss.  15 U.S.C. §78u-

4(b)(3)(B).  A plaintiff's suit must be meritorious when it is filed, not after the completion of a "fishing expedition[]" aided by discovery.  See Konkol, 590 F.3d at 397 (citing Fischer v. Vantive Corp. (In re Vantive Corp. Secs. Litig.), 283 F.3d 1079, 1087 (9th Cir. 2002)).  One cannot survive the PSLRA's heightened scrutiny merely by listing a series of disturbing facts and generally alleging that the defendants knew about them.  (Cf. Pls.' Mem. at 6-8.)  One must plead specific facts that permit the Court to draw a strong inference that the defendants acted with the required intent.  See Konkol, 590 F.3d at 397 (noting that alleging "access to information" is not enough to satisfy the PSLRA's standard (citation omitted)).  It is not the job of the Court to sort through a "data dump" and construct plaintiffs' claims for them.  They must cogently state them on their own.

Lead Plaintiffs also argue that the Court erred by dismissing their `34 Act claims because of confusion about the defendants Lead Plaintiffs actually sued.  (Pls.' Mem. at 17-19); see also Open-End Fund Litig., 2010 U.S. Dist. LEXIS 104246, at *22-24.  A complaint that fails to identify clearly who is a defendant fails under any form of heightened pleading standard.  Open-End Fund Litig., 2010 U.S. Dist. LEXIS 104246, at *24.  Here, Plaintiffs chose to define "Morgan Asset Management" and "Morgan Keegan" to include not only those corporate

Defendants but also "their respective officers and employees as
named Defendants, including John Does One through Twenty." (CAC
¶ 88.)   The CAC uses those defined terms in Counts V and VI,
leading one to believe that the officers and directors were also
defendants in those counts.   (Id. ¶¶ 742, 752.)   Despite Lead
Plaintiffs' definition of "Morgan Asset Management" and "Morgan
Keegan," Counts I and VII of the CAC specifically state whether
they include or do not include the officers and directors.   (Id.
¶¶ 684, 758.)   Thus, Lead Plaintiffs introduced ambiguity into
the CAC about what those defined terms mean.   Certain individual
Defendants noted this confusion.   (See Mem. of Law in Support of
the Individual Defs.' Mot. to Dismiss, at 1 n.1, ECF No. 226-1.)
Lead Plaintiffs did not respond.   The ambiguity remained.

Lead Plaintiffs argue that the questionable headings were
"simply silent as to the Defendant officers and directors," but
that the "pattern" should have been clear.   (Pls.' Mem. at 18.)
The Individual Defendants did not find it clear; neither did the
Court.   If there is one topic about which a plaintiff's
complaint can never be silent, it is the identity of the
defendants.   See Bell Atl. v. Twombly, 550 U.S. 544, 555 (2007)
(noting that, even under the relaxed standards of Federal Rule
of Civil Procedure 8, a complaint must contain "a short and
plain statement of the claim" that will "give the defendant fair
notice of what the . . . claim is." (omission in original;

citation omitted)).  That is true, a fortiori, under the PSLRA's heightened pleading standards, which require specificity about every required element.  See Konkol, 590 F.3d at 396.  Cogency and prolixity are rarely allies.  Lead Plaintiffs' arguments for reconsideration of the dismissal of the `34 Act claims are not well-taken, and their Motion is DENIED.[2]

### B. Defendants' Motions for Reconsideration

Defendants Morgan Keegan and Regions have filed separate Motions for Reconsideration, arguing that the Court erred in failing to dismiss Lead Plaintiffs' claims under the Securities Act of 1933 (the "`33 Act"), 15 U.S.C. §§ 77k, 77l, 77o.  See Open-End Fund Litig., 2010 U.S. Dist. LEXIS 104246, at *35-40. Morgan Keegan argues that 1) these claims allege mismanagement of the Defendant Funds and therefore, under Maryland law, may only be raised in a derivative action; and 2) Lead Plaintiffs' CAC demonstrates that they cannot prove loss causation.  (Morgan Keegan Mem. in Support of Mot. for Reconsideration, at 2-9, ECF No. 277-1.) ("Morgan Keegan Mem.")  Regions joins Morgan Keegan in its arguments.  (Regions Mem. in Support of Mot. for Reconsideration, at 1-2, ECF No. 278-1.)

---

[2] Lead Plaintiffs did not move for reconsideration of the Court's dismissal of their claims under §§ 13, 22, 30, 34(b), and 47(b) of Investment Company Act of 1940.  See Open-End Fund Litig., 2010 U.S. Dist. LEXIS 104246, at *41-43.

### 1. Derivative v. Direct Claims

Morgan Keegan and Regions argue that Lead Plaintiffs may raise their claims only in a derivative action because the gravamen of the CAC is that the Defendants mismanaged the Funds. (Morgan Keegan Mem. at 2-3.) Defendants cite the recent opinion of the Alabama Supreme Court in Ex parte Regions Financial Corp., No. 1090425, 2010 Ala. LEXIS 183, at *24-26 (Ala. 2010), which dismissed a related shareholder suit filed in Alabama state court after determining that the claims were derivative in nature.  Morgan Keegan and Regions also argue that they never promised to abide by any of the alleged investment restrictions that Lead Plaintiffs assert appeared in the Funds' documentation.  (Morgan Keegan Mem. at 6.)

Defendants are correct that, under general principles of corporate law, "if a shareholder's investment is frittered away by corporate mismanagement, only the corporation can recover." See, e.g., Lubin v. Skow, 382 F. App'x 866, 870 (11th Cir. 2010) (citation omitted).  A plaintiff also may not plead a cause of action under the federal securities laws by alleging "fraud by hindsight."  That occurs when a plaintiff claims that 1) the company should have disclosed bad news it eventually revealed sooner or 2) a defendant's optimistic past statements were fraudulent because later developments proved them to be false.

10

In re Atlas Air Worldwide Holdings, Inc. Sec. Litig., 324 F. Supp. 2d 474, 494 (S.D.N.Y. 2004).

These prohibited categories of claims are distinct from the claims made by Lead Plaintiffs here. Material misrepresentations in a registration statement of the risk posed by the Funds' holdings are actionable under the `33 Act. See 15 U.S.C. § 77k(a); In re Citigroup, Inc. Bond Litig., No. 08 Civ. 9522, 2010 U.S. Dist. LEXIS 69257, at *68-69 (S.D.N.Y. July 12, 2010). An allegation that a statement was false when made is actionable under the federal securities laws and does not state an invalid mismanagement or fraud-by-hindsight claim. In re Atlas Worldwide Holdings, 324 F. Supp. 2d at 494 n.11. Lead Plaintiffs allege that Defendants stated they would not invest more than 15% of the Funds' assets in illiquid securities or more than 25% of the Funds' assets in securities related to the same industry. (CAC ¶¶ 162, 276.) Lead Plaintiffs also allege that those statements were misleading when made because the Funds were, at that time, in violation of the stated restrictions. (See, e.g., id. ¶¶ 171, 276(a), (c).) Whether Defendants made those statements is a question of fact not justiciable on a motion to dismiss. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (per curiam) (cautioning courts that factual disputes are not for resolution on motions to dismiss

and that the facts as alleged should be read in the light most favorable to the plaintiff).

Ex parte Regions Financial Corp. is distinguishable because it was a separate suit with a separate complaint. That complaint is only briefly excerpted in the Alabama Supreme Court's opinion; therefore, it is impossible to compare its allegations to those presently before the Court. See 2010 Ala. LEXIS 183, at *2-4. The portion excerpted makes only a general allegation of fraud and is not comparable to Lead Plaintiffs' more specific allegations here. Compare id. with e.g., CAC ¶¶ 162, 171, 276. Lead Plaintiffs' allegations are sufficient, and they have stated claims under the `33 Act. In re Citigroup Bond Litig., 2010 U.S. Dist. LEXIS 69257, at *49, 68-69; In re Atlas Worldwide Holdings, 324 F. Supp. 2d at 494 & n.11; cf. In re Surebeam Corp. Sec. Litig., No. 03 CV 1721 JM (FOR), 2004 U.S. Dist. LEXIS 26951, at *41-42 (S.D. Cal. June 3, 2005) (noting that merely because the same allegations may support a derivative mismanagement claim and a federal securities law claim does not mean that a plaintiff must bring one claim instead of the other).

## 2. Loss Causation

Morgan Keegan and Regions next argue that the Court erred in refusing to dismiss Lead Plaintiffs' `33 Act claims for failure to plead loss causation. See Open-End Fund Litig., 2010

U.S. Dist. LEXIS 104246, at *38.   Loss causation is not an element of a claim under § 11 of the `33 Act.   It is an affirmative defense that the Defendants must <u>prove</u>.   <u>See</u> 15 U.S.C. § 77l(b).   Lead Plaintiffs have not pled themselves out of court by demonstrating that it is impossible for them to demonstrate loss causation – the only way Defendants could succeed on this affirmative defense at the motion-to-dismiss stage.   <u>Cf.</u> <u>Jackson v. Marion County</u>, 66 F.3d 151, 153 (7th Cir. 1995) ("[A] plaintiff can plead himself out of court by alleging facts which show that he has no claim, even though he was not required to allege those facts." (citation omitted)).   Affirmative defenses are best left for adjudication on motions for summary judgment or at trial.   <u>See</u> <u>Indiana State Dist. Council of Laborers v. Omnicare, Inc.</u>, 583 F.3d 935, 947 (6th Cir. 2009) (reversing a district court's dismissal of a plaintiff's § 11 claim for failure to plead loss causation because that affirmative defense is generally not grounds for dismissal).   Defendants' Motions for Reconsideration are DENIED. <u>See</u> 11 Charles Alan Wright et al., <u>Federal Practice and Procedure</u> § 2810.1 (2d ed. 1995) (noting that reconsideration should not be used "to relitigate old matters").

### C. Lead Plaintiffs' Motion to Certify Final Judgment

Lead Plaintiffs move in the alternative for the Court to certify its judgment dismissing their `34 Act claims against

Defendants as final under Federal Rule of Civil Procedure 54(b) so that they may appeal immediately. (Pls.' Mem. at 19-20.) Defendants oppose that request and argue that the `34 Act and `33 Act claims are not severable and thus are unsuitable for piecemeal, interlocutory appeals. (Morgan Keegan Mem. in Opp. to Pls.' Mot. for Reconsideration, at 11-14, ECF. No. 286.) ("Morgan Keegan Opp.")

Rule 54(b) provides, in pertinent part:

When an action presents more than one claim for relief – whether as a claim, counterclaim, crossclaim, or third-party claim – or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

A district court must make two findings before it may certify a partial judgment as final. First, the judgment must be final as to one or more claims. Lowery v. Fed. Express Corp., 426 F.3d 817, 821 (6th Cir. 2005). Second, there must be no just reason for delay. Id. Rule 54(b) "attempts to strike a balance between the undesirability of piecemeal appeals and the need for making review available at a time that best serves the needs of the parties." Solomon v. Aetna Life Ins. Co., 782 F.2d 58, 60 (6th Cir. 1986) (citation omitted). It "does not tolerate immediate appeal of every action taken by a district court." Gen. Acquisition, Inc. v. GenCorp, Inc., 23 F.3d 1022, 1026 (6th Cir. 1994).

14

When considering certification under Rule 54(b), a "claim" is "the aggregate of operative facts which give rise to a right enforceable in the courts."   Lowery, 426 F.3d at 821 (quoting McIntyre v. First Nat'l Bank of Cincinnati, 585 F.2d 190, 192 (6th Cir. 1978)) (internal quotation marks omitted).   One "claim" for purposes of an interlocutory appeal may give rise to multiple avenues for legal relief under separate theories of liability.   Id.   In Lowery, the Sixth Circuit dismissed an appeal brought after the district court had found the requirements of Rule 54(b) satisfied.   Id. at 819.   Lowery brought claims against his employer for racial discrimination and retaliation under federal employment law and breach of contract under state law.   Id. at 820.   The district court granted summary judgment in favor of the employer on Lowery's federal claims, but found that the state-law contract claim should proceed to trial.   Id.   It entered final judgment on the federal claims under Rule 54(b) at Lowery's request.   The Sixth Circuit held that the district court erred because Lowery's federal employment discrimination claims and his state-law contract claim arose from the "same aggregate of operative facts" for "the same underlying injury," Lowery's failure to receive a pay increase and job opportunities similar to those of other managers.   Id. at 821.

15

Lead Plaintiffs have brought suit against Defendants under two separate theories of recovery under the `33 and 34 Acts. However, their theories of recovery are based on one "claim," as defined by Lowery – that Defendants misrepresented the risks the Funds undertook and hid the actual state of the Funds' portfolios from investors. Open-End Fund Litigation, 2010 U.S. Dist. LEXIS 104246, at *13-16. The Court's Order dismissed Lead Plaintiffs' theory of recovery under the `34 Act, but it did not extinguish their claim. Id. at *35. Under the same aggregate of operative facts, Plaintiffs successfully stated a theory of recovery under the `33 Act, which, although it has a heightened pleading standard, does not require Lead Plaintiffs to plead scienter. Id. at *35-40. The Order did not finally determine all matters concerning one of Lead Plaintiffs' claims within the meaning of Rule 54(b). See Lowery, 426 F.3d at 820-21. Thus, the Court cannot make the required first finding.

Even if Lead Plaintiffs could meet the first requirement, they have failed to demonstrate that there is no just reason for delaying an appeal. See id. at 821. A non-exhaustive list of five factors helps to guide a district court's analysis of whether there is no just reason for delay:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged

16

to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense and the like.

Id. at 822 (citing Gen. Acquisition, 23 F.3d at 1030). District courts have great discretion in weighing these factors. Curtiss-Wright Corp. v. Gen. Elec. Co., 446 U.S. 1, 12 (1980) ("[T]he task of weighing and balancing the contending factors is peculiarly one for the trial judge," who knows the case best.).

As discussed previously, the relationship between Lead Plaintiffs' adjudicated and unadjudicated claims is close because they are based on the same set of facts. That also means that, if Lead Plaintiffs take an immediate appeal, the Court of Appeals would be likely to review the same facts and consider similar issues twice – once on appeal from the dismissal of the `34 Act claims and once after the final disposition of Lead Plaintiffs' claims under the `33 Act. Cf. Curtiss-Wright, 446 U.S. at 9 (noting that, where a district court finds that the claims are severable both factually and legally, certification under Rule 54(b) may be appropriate). Because the facts supporting the different theories of recovery are so intertwined, any appeal would result in delay. This case has been pending since 2007 and is now ready for discovery. Further interlocutory legal maneuvering would unjustifiably

17

delay final adjudication of the pending claims and prejudice both the class members represented by the Lead Plaintiffs and the Defendants, who have an interest in a final and speedy determination of all claims.

Against these strong reasons for declining to authorize an immediate appeal, there are no correspondingly strong reasons to authorize. The cases Lead Plaintiffs cite in support of their Motion are inapposite and demonstrate the impropriety of a Rule 54(b) certification in the present case. See, e.g., Chad Youth Enhancement Ctr., Inc. v. Colony Nat'l Ins. Co., No. 3:09-0545, 2010 U.S. Dist. LEXIS 53561, at *6-7 (M.D. Tenn. June 1, 2010) (granting certification where the only issue remaining was the correctness of the court's challenged order and "the parties [had] resolved their differences" on all remaining issues); Life Ins. Co. of N. Am. v. Simpson, No. 08-2446, 2009 U.S. Dist. LEXIS 62944, at *19 (W.D. Tenn. July 16, 2009) (finding certification under Rule 54(b) appropriate where "no other claims" existed against the moving party and "it no longer has any role in this litigation"). Because Lead Plaintiffs have not demonstrated the presence of either factor required to certify a partial final judgment under Federal Rule of Civil Procedure 54(b), their Motion is DENIED.

18

### D. Motion to Strike

Defendants filed a Motion to Strike Lead Plaintiffs' Sur-Reply and note in their Motions for Reconsideration that the Motion to Strike remains pending.  (See ECF No. 267; Morgan Keegan Opp. at 1 n.1.)  Defendants' Motion argues that the Court should strike the 637-page declaration Lead Plaintiffs attached to their Sur-Reply.  They note that, in addition to new case law, Lead Plaintiffs also included recent regulatory filings and more than seventy exhibits.  (Defs.' Mot. to Strike, at 3-4., ECF No. 267.)  Lead Plaintiffs respond that Defendants have engaged in similar behavior, supplementing their filings in support of their Motions to Dismiss with voluminous extraneous materials.  (Pls.' Mem. in Opp. to Mot. to Strike, at 2-4, ECF No. 268.)

The Sixth Circuit generally takes "a liberal view of what matters fall within the pleadings for purposes of" a motion to dismiss.  Armengau v. Cline, 7 F. App'x 336, 344 (6th Cir. 2001).  That does not mean that a court may consider any and all materials the parties submit.  Motions to dismiss test the sufficiency of the complaint.  5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (2d ed. 1990).  If a court considers matters outside the pleadings, it must treat the motion as one for summary judgment, give notice to the parties, and allow for supplementation of the record.  Fed. R.

19

Civ. P. 12(d); Armengau, 7 F. App'x at 343.  Documents attached
to a motion to dismiss may be considered as part of the
pleadings if they are "referred to in a complaint and central to
the claim." Armengau, 7 F. App'x at 343 (citing Jackson v. City
of Columbus, 194 F.3d 737, 745 (6th Cir. 1999)).  A court may
also consider public records, decisions of governmental
agencies, and matters of which it may take judicial notice.
Jackson, 194 F.3d at 745.

   Both parties to this action have filed numerous extraneous
materials with the Court.  The Court has declined to convert
Defendants' Motions into motions for summary judgment.  See Fed.
R. Civ. P. 12(d).  It, therefore, necessarily has limited its
analysis to matters contained within the CAC and the additional
documents referred to in it.  See Armengau, 7 F. App'x at 343.
No other materials from any party factored into the Court's
analysis.

   It is inappropriate for a party to attach more than six
hundred pages of documents to a pleading to which the opposing
parties do not have an opportunity to respond.  Lead Plaintiffs'
Motion to File a Consolidated Sur-Reply sought permission to
respond to thirty-five cases that the Defendants had not cited
previously.  (Mem. in Supp. of Pls.' Mot. to File Sur-Reply, at
2-3, ECF No. 259-1.)  The Court granted Lead Plaintiffs' Motion
on that basis alone.  (See ECF No. 261.)  To the extent the

materials submitted by Lead Plaintiffs are not cases cited in response to Defendants' prior arguments, the Motion to Strike is GRANTED because Lead Plaintiffs exceeded the leave they sought and were granted.

### III. CONCLUSION

The Motions for Reconsideration are DENIED. Lead Plaintiffs' Motion to Certify the Judgment under Federal Rule of Civil Procedure 54(b) is DENIED. Defendants' Motion to Strike is GRANTED IN PART.

So ordered this 30th day of December, 2010.

s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE