# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

| | |
|---|---|
| IN RE REGIONS MORGAN KEEGAN SECURITIES, DERIVATIVE and ERISA LITIGATION <br><br> This Document Relates to: <br><br> *In re Regions Morgan Keegan Open-End Mutual Fund Litigation*, No. 2:07-cv-02784-SHM-dkv <br><br> and <br><br> *Landers* v. *Morgan Asset Management, Inc.*, No. 2:08-cv-02260-SHM-dkv | No. 2:09-md-02009-SHM <br><br> Judge Samuel H. Mays, Jr. <br><br> Magistrate Judge Diane K. Vescovo <br><br> ORAL ARGUMENT REQUESTED |

## PLAINTIFFS' CONSOLIDATED MEMORANDUM IN SUR-SUR-REPLY TO DEFENDANTS' SUR-REPLIES IN OPPOSITION TO (1) JOINT MOTION FOR PRELIMINARY APPROVAL OF PARTIAL SETTLEMENT AND (2) JOINT MOTION FOR APPROVAL OF RULE 23.1 NOTICE TO SHAREHOLDERS AND FOR FINAL APPROVAL OF THE AMENDED MEMORANDUM OF UNDERSTANDING

**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
Richard A. Lockridge
Vernon J. Vander Weide
Gregg M. Fishbein
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Tel: (612) 339-6900
Fax: (612) 339-0981
gmfishbein@locklaw.com

**ZIMMERMAN REED, P.L.L.P.**
Carolyn G. Anderson
Patricia A. Bloodgood
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: 612-341-0400
Fax: 612-341-0844
cga@zimmreed.com

**APPERSON CRUMP, PLC**
Jerome A. Broadhurst, TN BPR 12529
Charles D. Reaves, TN BPR 22550
6070 Poplar Avenue, Sixth Floor
Memphis, TN 38119-3972
(901) 260-5133 direct
(901) 435-5133 fax
jbroadhurst@appersoncrump.com

**ATTORNEYS FOR LEAD AND DERIVATIVE PLAINTIFFS**

## TABLE OF CONTENTS

INTRODUCTORY STATEMENT .................................................................................... 1

ARGUMENT ............................................................................................................ 5

I.   THE MOVING PARTIES HAVE MET THEIR BURDEN UNDER RULES 23 AND 23.1. ............ 5

    A.   There Are No Conflicts among Members of the Proposed Settlement Classes. ..... 6

        1.   There are no competing interests between the Funds' May 29, 2009 and Redeeming Shareholders in *Landers* or in the Funds' assets. ........................ 6

        2.   The rights of the Former Shareholders in a *Landers* recovery are either superior to or congruent with those of the May 29, 2009 Shareholders........ 10

            a.   The Funds liquidated before May 29, 2009, and Former and May 29, 2009 Shareholders are to be treated equally. ......................................... 11

            b.   The AMOU is fully consistent with the Funds' Plan of Liquidation. ... 16

            c.   The purported conflict between Former and "Liquidating Shareholders" does not exist in the absence of a *Landers* recovery ......................18

            d.   Plaintiffs are not advocating against the interests of "Liquidating Shareholders." ...................................................................... 20

    B.   Lead Plaintiffs Are Adequate Class Representatives .......................................... 21

        1.   Lead Plaintiffs are not rendered inadequate by their counsel's representation because that representation entails no conflicts............................................ 21

        2.   Plaintiffs' counsel's dual representation of the Funds and the class does not violate any ethical rules. .............................................................. 22

    C.   The Partial Settlement and Amount Are Fair, Reasonable, and Adequate; Certification of a Redemption Settlement Class Is Proper**.** .................................. 24

II.  PWC'S ARGUMENTS ARE WITHOUT MERIT. ................................................................ 25

    A.   The Statute of Limitations regarding Plaintiffs' Causes of Action against PwC Was Tolled until at Least July 2008. .................................................................... 25

    B.   Plaintiffs' Shares Were Never Canceled. ........................................................... 28

    C.   This Court Has Previously Decided that the Issue of Demand Futility Is Moot... 28

CONCLUSION ......................................................................................................... 28

# INTRODUCTORY STATEMENT [1]

Lead Plaintiffs[2] and Derivative Plaintiffs,[3] by their counsel file this consolidated sur-sur-reply brief ("Sur-Sur-Reply") in further support of Plaintiffs' and Funds' (A) Joint Motion for Preliminary Approval of Partial Settlement and Approval of Notice to Settlement Class Members (ECF No. 309, Case No. 07-2784), as modified by Plaintiffs' and Funds' Joint Motion for Preliminary Approval of Partial Settlement (ECF No. 337, Case No. 07-2784), and (B) Joint Motion for Approval of Rule 23.1 Notice to Shareholders and for Final Approval of the Memorandum of Understanding (ECF No. 103, Case No. 08-2260), as modified by Plaintiffs' and Funds' Joint Motion for Approval of Rule 23.1 Notice to Shareholders and for Final Approval of the Amended Memorandum of Understanding (ECF No. 126, Case No. 08-2260).  The Settling Fund Defendants are filing on even date herewith their Sur-Sur-Reply in further support of Plaintiffs' and Funds' Joint Motion for Preliminary Approval of Partial Settlement and Final Approval of the Amended Memorandum of Understanding and related notices ("Funds' Sur-Sur-Reply").

In its Sur-Reply, Defendant MAM/MK ignores the cases that support Plaintiffs' argument that no conflict exists where the same counsel represents the same plaintiffs in both

---

[1]     All capitalized terms, nomenclature conventions, and case abbreviations are continued from Plaintiffs' Consolidated Memorandum in Reply to Defendants' Opposition to (1) Joint Motion for Preliminary Approval of Partial Settlement and (2) Joint Motion for Approval of Rule 23.1 Notice to Shareholders and for Final Approval of the Memorandum of Understanding ("Reply"), ECF No. 103, as amended by ECF. No. 126 (*Landers*) and ECF No. 309, as amended by ECF No. 337 (*Open-End Class Action*). This Sur-Sur-Reply is filed pursuant to the Court's Order granting leave to do so (ECF No. 159 in *Landers*; ECF No. 385 in the *Open-End Class Action*) in response to Defendants' Sur-Replies  (ECF Nos. 132 (Regions), 133 (PwC) and 135 (MAM/MK) in *Landers* and ECF Nos. 353 (Regions), 354 (PwC) and 356 (MAM/MK) in the *Open-End Class Action* ("MAM/MK Br. at" or "PwC Br. at")). Unreported cases are attached to the Broadhurst Declaration in support of this Sur-Sur-Reply as exhibits thereto.

[2]     Lead Plaintiffs, the "RMK Open-End Funds Group," are Kathryn S. Cashdollar Estate, Dajalis Ltd., Jeanette H. Landers, H. Austin Landers, and Frank D. Tutor.

[3]     Derivative Plaintiffs are H. Austin Landers, Jeanette H. Landers, Estate of Charles M. Crump, Diana W. Crump, James H. Frazier, James P. Whitaker and Peggy C. Whitaker.

a class action against the Funds and a derivative action on behalf of the Funds. Moreover, if, notwithstanding the cases to the contrary, any such representation were a conflict, it had long been known to Defendants without any objection by them. The only intra-class conflicts identified by MAM/MK relate to allocating damages among class members, and such conceivable conflicts, if any exist, do not preclude class certification. Thus, while what MAM/MK sees as "conflicts" may be "at the heart of Professor Moore's opinion" (MAM/MK Br. at 2), her opinion is trumped by the numerous cases, including from courts in the Sixth Circuit, that hold no conflict exists in this situation. In any event, the purported conflict is resolved by the AMOU, which removes the source of the conflict—the class claims against the Funds—by settling them.

Contrary to MAM/MK's statement (*id.*), the terms of the Partial Settlement relating to the § 11 claim against the Funds are not incomplete. The only thing that remains is to calculate the damages in accordance with the statute. MAM/MK is also wrong that "the Funds undoubtedly will continue to oppose the reinstatement of [the § 10(b)] claim." The litigation between the class and the Funds on all claims asserted by the class against the Funds has been settled; the Funds will not oppose Plaintiffs' efforts to reinstate the § 10(b) claim. Plaintiffs are preparing a proposed Second Amended Class Action Complaint. Plaintiffs expect to file a motion seeking permission to file it shortly.  If the § 10(b) claim is reinstated, the AMOU (as did the MOU) provides for a judgment thereon.

Acknowledging as it must that the Funds' debts must be paid before the "Liquidating Shareholders" may receive any distributions, MAM/MK ignores the provisions of the MOU/AMOU. MAM/MK Br. at 3. Arguing that the "'Liquidating Shareholders' have a clear interest in minimizing the size of any class recovery so as to maximize their own share of any recovery in *Landers*," MAM/MK seems to be laboring under the illusion that the Funds' § 11 judgment debt is somehow subject to further litigation. It is not. The size of the § 11 debt is determined by § 11, as the AMOU recognizes, and the § 11 judgment is a "liability" that MAM/MK admits must be satisfied before any distribution to the "Liquidating Shareholders." Likewise, the Funds have agreed that a reinstated § 10(b) claim becomes a judgment debt that must be paid before any distribution to "Liquidating Shareholders." This

is entirely consistent with the Plan of Liquidation. Moore Dec. ¶ 5.m. (recognizing that the Plan of Liquidation provides for the "distribution of any future recovery in the Derivative Action [to shareholders] *after resolution of claims and liabilities*.") (emphasis supplied).

With respect to those "Liquidating Shareholders" who redeemed more shares than they retained at May 29, 2009, which includes some of the Plaintiffs, they most assuredly do *not* "have a clear interest in minimizing the size of any class recovery." Positing the purported conflict as "Former versus Liquidating Shareholders" ignores what are also, as Defendants see them, conflicts among "Liquidating Shareholders." As formulated by MAM/MK and its expert, this entire conflict is focused solely on *allocating a* Landers *recovery*. Even if issues relating to allocating a *Landers* recovery are relevant to the Class Action, which they are not, the courts hold that such purported "conflicts" do not preclude class certification.

The basic problem with MAM/MK's and other Defendants' arguments throughout their opposition to the Partial Settlement and AMOU is that they refuse to recognize that the Funds are able to compromise and negotiate a settlement of litigation, which they have done regarding the §§ 11 and 10(b) claims against them. Defendants have not presented anything to the Court that would contradict this.

MAM/MK falsely states that some "Former Shareholders" are "not even members of any proposed Settlement Classes." MAM/MK Br. at 3. All Former Shareholders are members of the Redemption Settlement Class, and many Former Shareholders are members of the Purchaser Settlement Class. Likewise, all of the May 29, 2009 Shareholders are members of the Redemption Settlement Class, and many are members of the Purchaser Settlement Class.

MAM/MK tells this Court that Plaintiffs were wrong to address in their Reply "the erroneous contention that Defendants are seeking disqualification of counsel." MAM/MK Br. at 3. MAM/MK now wishes to focus its opposition solely on the requirements of Rule 23. *Id.* Plaintiffs' and the Funds' Rule 23 motion addresses a settlement in which the settling defendants agree to the entry of judgment to be payable solely out of the Funds' assets recoverable in litigation in which Plaintiffs' counsel will also represent the settling Fund de-

3

fendants. There is no conflict in that.

Defendants are seeking to exploit what they now say are ethical conflicts to gain an advantage in litigation: prevent the Funds from being represented by counsel of their choice and thwart the Partial Settlement of the class claims against the Funds. What now so greatly concerns MAM/MK (Plaintiffs' counsel proposed dual representation of the class and Funds) was of no concern during the many months preceding the MOU. Only after the Funds moved from cooperating with Defendants in their opposition to the Plaintiffs' class and derivative claims to joining Plaintiffs in pursuing those claims did Defendants decide to raise questions over the prospect of Plaintiffs' counsel representing the Funds, even though that prospect has existed since at least November 30, 2009, when the CAC was filed. The only thing that has changed in the intervening two plus years is how the Funds have aligned themselves. Now that the source of the purported conflict has been removed by the settlement of the class's claims against the Funds, Defendants assert claims of conflict.

Nothing in the MOU/AMOU is proscribed by, or contrary to, the Funds' Plan of Liquidation ("Plan"), which explicitly contemplated the pursuit of the Funds' derivative claims. *See* MAM/MK Br. at 4. The Plan by itself could not resolve the claims *against* the Funds; it is the AMOU that does just that by providing for a judgment debt that must be satisfied under the Plan before anything can be distributed to the May 29, 2009 Shareholders. The board of a liquidating company can exercise its business judgment to settle litigation. MAM/MK's argument is nothing more than a futile attempt to create conflict where none exists.

A crucial assumption underlying MAM/MK's entire Former versus "Liquidating Shareholders" conflict argument is that the "Liquidating Shareholders" are entitled to all of a *Landers* recovery. Moore Dec. ¶ 9.b. ("any recovery by the Mutual Funds in the Derivative Action would ordinarily be distributed to the Liquidating Shareholders on a pro rata basis"). In so assuming, MAM/MK and its expert ignore the cases relating to the liquidation of open-end funds that proscribe any windfall to any shareholders, including the remaining shareholders, and treat all shareholders as "creditors." Again, Professor Moore's opinions do not square with the courts. Defendants also ignore the caselaw that the "Liquidating Shareholders" are not entitled to share exclusively in a *Landers* recovery but can share therein on-

4

ly to the extent of their losses, which necessarily are less than the Funds' losses.

The Partial Settlement and AMOU have produced for the Settlement Classes all that they could gain from the Funds if litigation with the Funds continued. The proposed Settlement Classes have been adequately represented by Lead Plaintiffs and their counsel; the Funds have been adequately represented by the New Board and their counsel. Plaintiffs and the Funds have met their burden under Rule 23. The purported "conflict" issues raised by Opposing Defendants do not exist and are irrelevant to the requested approvals under Rules 23 and 23.1.

## ARGUMENT

### I.   THE MOVING PARTIES HAVE MET THEIR BURDEN UNDER RULES 23 AND 23.1.

Defendants' opposition to the Partial Settlement and AMOU is based solely on two purported conflicts: The first is that purportedly arising from Plaintiffs' counsel's dual representation of the class and the Funds; the second is the alleged conflict between two groups of investors in the Funds. If neither of these alleged conflicts constitutes a legally cognizable conflict for purposes of Rules 23 and 23.1, Defendants' opposition must be rejected.

MAM/MK contends that the AMOU and Partial Settlement cannot be approved because of the alleged conflict between what MAM/MK calls "Former Shareholders" and "Liquidating Shareholders"—i.e., between those of the Funds' shareholders who redeemed all of their shares before May 29, 2009 ("Redeeming Shareholders" or "Former Shareholders") and those who were still shareholders on May 29, 2009 ("May 29, 2009 Shareholders" or, as MAM/MK calls them, "Liquidating Shareholders").[4] Both Redeeming Shareholders since July 1, 2007 and May 29, 2009 Shareholders are "liquidating shareholders." Reply at 5-7.

MAM/MK and the other Opposing Defendants seek to prevent the Funds from being represented by counsel of their choice.[5] Having determined to pursue the claims in *Landers*,

---

[4]    The Funds' remaining shareholders approved a Plan of Liquidation on May 29, 2009.

[5]    MAM/MK makes "clear [that] Defendants do not seek disqualification of counsel" in either representation—that of the class or of the Funds. MAM/MK Br. at 5. MAM/MK seems perplexed regarding when Plaintiffs' counsel "began representing the Funds." Re-

the Funds have accepted the practical reality that they cannot defend against the facts in the *Open-End Class Action* while simultaneously pursuing claims based on the same facts in *Landers*. Recognizing what Opposing Defendants and their expert ignore, the Funds have agreed to a settlement that provides for judgments in the class action that are to be paid out of any recoveries by the Funds in *Landers*. The Funds' *Landers* claims are their only assets.

There is no issue as to how a *Landers* "recovery should be parsed out among shareholders." *See* MAM/MK Br. at 6. The § 11 judgment (or § 10(b) judgment if § 10(b) is reinstated) will be a liability to be satisfied in full before any distribution of such recovery to the May 29, 2009 Shareholders. Alternatively, viewing Former and May 29, 2009 Shareholders as "creditors" in accordance with the preferred method for liquidating open-end funds, the New Board has discretion to allocate a recovery *pro rata*. The AMOU provides for how this is to be accomplished. AMOU ¶ I.6. Furthermore, issues relating to distribution of a recovery are not a basis for denying class certification. Reply at 45-49.

### A.   There Are No Conflicts among Members of the Proposed Settlement Classes.

#### 1.   There are no competing interests between the Funds' May 29, 2009 and Redeeming Shareholders in *Landers* or in the Funds' assets.

MAM/MK repeatedly, but erroneously, asserts that the AMOU gives Former Shareholders an interest in a *Landers* recovery that they would not have in the absence of the AMOU. MAM/MK Br. at 3, 6, 9 n 8, 12 n 11, 14, 15, 20. The Redeeming Shareholders sued the Funds in the *Open-End Class Action*, asserting claims under Securities Act of 1933 § 11 and Securities Exchange Act of 1934 § 10(b). Those claims are being settled by the AMOU and Partial Settlement, resulting in judgment debts owed by the Funds. In the absence of the proposed settlement, the Redeeming Shareholders would pursue their claims against the Funds and win a judgment,[6] which would have to be paid out of the Funds' assets before the "Liquidating Shareholders" could recover anything from a *Landers* recovery.

---

garding the dual representation that underlies MAM/MK's conflict argument, that representation of the Funds' interests began four years ago, on March 28, 2008, when the *Landers* complaint was filed.

[6]     The Funds have nearly absolute liability under § 11. Reply at 52.

6

A litigated judgment would depend entirely on a *Landers* recovery for satisfaction, just like the judgment provided for in the Partial Settlement and AMOU. Thus, MAM/MK's statement is patently false. Yet, it is on this false premise that MAM/MK's and its expert's argument regarding the purported conflict between Redeeming and "Liquidating" Shareholders is concocted. The AMOU does *not* provide the *only means* by which Former Shareholders can access a *Landers* recovery. However, the AMOU and Partial Settlement do provide the *only means* by which those "Liquidating Shareholders" whose losses are not recoverable under § 11 *are assured* of sharing in a *Landers* recovery. If the § 11 judgment should equal or exceed a *Landers* recovery, the ability of all "Liquidating Shareholders" to share in a recovery would depend on the New Board electing to distribute it on a *pro rata* basis.[7]

There is no competition between the class action (or the proposed Settlement Classes) and the Funds' action (or the May 29, 2009 Shareholders) for the same pool of money for four reasons: First, the § 11 judgment gives the Purchaser Settlement Class members priority over the May 29, 2009 Shareholders in any distribution of a *Landers* recovery; this priority is subject to the New Board's adoption, at its discretion, of *pro rata* as the basis for distributing a *Landers* recovery to all those with recognized interests, including the May 29, 2009 Shareholders and the § 11 judgment creditors.[8] Second, there is no *Strigliabotti*-type

---

[7]    *Strigliabotti v. Franklin Res., Inc.*, 2006 U.S. Dist. LEXIS 73672 (N.D. Cal. Sept. 27, 2006), is not relevant to this case. *Strigliabotti* involved no claims by the class against the funds on whose behalf the derivative action was brought and no settlement with a judgment giving the class members access to a derivative recovery. The *Strigliabotti* court expressly noted plaintiffs' failure to supply the court with "any statute or case in which derivative recovery in a securities action was passed on to former shareholders." 2006 U.S. Dist. LEXIS 73672 at *14 n 5. Here, Plaintiffs have done just that. Also, the *Strigliabotti* funds had not liquidated but were fully operating active funds.

[8]    This provision is supported by the *Reserve* court's rationale in enjoining that fund's plan of liquidation as unfair and inequitable because it would have arbitrarily rewarded those who won "a race among investors to obtain favorable judgments." 673 F. Supp. 2d at 194-95. Instead, the court approved a plan for a *pro rata* distribution because, *inter alia*, "distinctions that might be drawn among parties receiving funds would be arbitrary or based on mere chance" in view of, during a run on the fund, misleading information relating to a material fact about the fund and unreliable NAVs. *Id.* at 195-99. In so ruling, the court rejected the objections to a *pro rata* distribution by those investors who unsuccessfully sought

7

conflict here[9] because the Funds themselves, not Derivative Plaintiffs, will be pursuing their claims for the benefit of their creditors in tandem with the class whose members are those creditors.[10] Third, to avoid any windfall[11] or double recovery,[12] any class recovery from Defendants under §§ 11 or 10(b) operates to reduce the settlement judgments against the

---

to redeem their shares while the NAV of $1.00 per share was still in effect. *Id.* at 196. "While some investors sought to redeem earlier than others, in light of the confusion emanating from the Primary Fund and the unreliability of the NAVs calculated on September 15 and 16, such a distinction is insufficient to set those investors apart. Furthermore, the NAVs at which earlier redeemers Seek [sic] to be paid out simply cannot be credited in crafting an equitable remedy." *Id.* If it is inequitable to allow redemptions at an NAV prior to its reduction, it is likewise inequitable to allow those who did not redeem to be paid more for their shares out of a recovery than those who suffered losses. The *Reserve* rationale applies here with even greater force because here the fraudulent conduct during the run on the Funds was far more egregious over a longer period of time than in *Reserve*.

[9]     In *Strigliabotti*, the same plaintiffs pursuing derivative claims on behalf of operating funds for the benefit of its current shareholders were also pursuing a class action asserting only California-based claims, which class included former shareholders of the funds.

[10]     A fundamental fallacy underlying MAM/MK's and its expert's argument regarding the alleged conflict between Former and May 29, 2009 Shareholders is that the Funds' interests are identical to the "Liquidating Shareholders" and vice versa. As MAM/MK concedes, a corporation's creditors take precedence over shareholders in the corporation's liquidation. The New Board must first marshal the Funds' assets for the benefit of the Funds' creditors and, only after they have been satisfied, the Funds' remaining shareholders. In assuming the representation of the Funds (not the May 29, 2009 Shareholders) and in continuing to represent the Purchaser Settlement Class, Plaintiffs' counsel will be representing clients that have identical interests. The normal priority of creditors may be modified in the liquidation of an open-end fund. Reply at 22-26. Accordingly, the AMOU provides, at the New Board's discretion, for a *pro rata* distribution to all shareholders who redeemed after the Funds began liquidating in July 2007. AMOU ¶ I.6.

[11]     The May 29, 2009 Shareholders cannot recover more than what they paid for their shares. *See Reserve*, 673 F. Supp. 2d at 193, 200.

[12]     The AMOU precludes the possibility of dual recoveries in both the *Open-End Class Action* and *Landers*. This is consistent with courts that have upheld offsets against court-ordered distributions based on claimants' recoveries in related litigation. *See, e.g., SEC v. Capital Consultants, LLC,* 397 F.3d 733 (9th Cir. 2005); *In re Equity Funding Corp. of America Sec. Litig.,* 603 F.2d 1353 (9th Cir. 1979). It is also consistent with the FADC. FADC ¶ 876.

8

Funds.[13] AMOU ¶ I.7. Fourth, according to the courts that have addressed who shares in a liquidating open-end fund's assets, both those who redeemed during its liquidation and those who did not are creditors of the fund.[14]

Because the judgment gives the Purchaser Settlement Class a priority claim to a *Landers* recovery, the Former Shareholders in the Purchaser Settlement Class and "Liquidating" Shareholders not in the Purchaser Settlement Class do *not* have competing claims to a *Landers* recovery. However, *by settlement* and if the New Board so chooses, the Purchaser Settlement Class agreed to parity with the May 29, 2009 Shareholders. The Lead Plaintiffs agreed to this condition in exchange for obtaining finality for the judgment. In exchange, the Funds obtained the ability, at their discretion, to eliminate what would otherwise be the Purchaser Settlement Class's judgment creditor priority over the May 29, 2009 Shareholders. AMOU ¶ § I.4., 6.

The AMOU was agreed upon between adversarial parties in an arm's-length negotiation with all parties represented by competent counsel to settle the class claims against the Funds. Neither MAM/MK nor its expert disputes this. The rights and interests of the Purchaser Settlement Class (including both Former and May 29, 2009 Shareholders) and the May 29, 2009 Shareholders in a *Landers* recovery are fixed in this negotiated settlement.

Both MAM/MK and its expert had previously cited cases almost entirely from a juris-

---

[13]      The second and third reasons distinguish two cases upon which Professor Moore relies: *Brickman v. Tyco Toys, Inc.*, 731 F. Supp. 101, 109 (S.D.N.Y. 1990) ("[s]ubstantial recovery on the class claim may reduce the potential recovery on behalf of the corporation on the derivative claims"); *Forsythe* v. *Sun Life Financial, Inc.* 2005 WL 81576 (D. Mass. 2005) (law firm representing plaintiffs asserting derivative claims on behalf of mutual funds while simultaneously representing persons with direct claims against the same funds would violate Massachusetts Rule 1.7 because any possible recovery in direct actions would effectively come from fund's assets). Moore Dec. ¶ 10. These courts' rationales are not relevant here. Thus, contrary to MAM/MK's oft-repeated argument (Br. at 3, 7, 9), a recovery by the Settlement Classes *does not* "come at the expense of the [May 29, 2009] Shareholders under the terms of the MOU and AMOU."

[14]      *See*, e.g., *Reserve*, 673 F. Supp. 2d at 199 n 46 (". . . given that the Primary Fund is in liquidation, all of its current shareholders are 'creditors' seeking the return of their investments."); Reply at 17, 25-26.

diction that adheres to the "*per se* rule" that class and derivative actions are always in conflict (*see*, e.g., Moore Dec. ¶ 10). Now, both claim their arguments do not depend upon that rule. MAM/MK Br. at 7; Moore Supp. Dec. ¶ 21. Professor Moore asserts instead an unsupported generalization that the AMOU creates "additional and far more serious conflicts than are typically present in the ordinary dual representation case in which the same counsel represents both derivative plaintiffs and a class." Moore Supp. Dec. ¶ 21. She identifies neither these purported "far more serious conflicts" nor those "typically present in the ordinary dual representation case" and provides no basis for comparing either.[15]

> ### 2. The rights of the Former Shareholders in a *Landers* recovery are either superior to or congruent with those of the May 29, 2009 Shareholders.

The rights of the Former Shareholders in a *Landers* recovery are either superior to or congruent with those of the May 29, 2009 Shareholders for three reasons: First, the § 11 judgment resulting from approval of the settlement gives Former Shareholders in the Purchaser Settlement Class an interest in a *Landers* recovery that has priority over that of the May 29, 2009 Shareholders, unless the Funds' New Board elects to treat the judgment creditors on a *pro rata* basis along with the May 29, 2009 Shareholders. Second, in the event that the § 10(b) claim is reinstated, the issue will be moot, because the Redemption Settlement Class includes all shareholders, both Former/Redeeming and May 29, 2009 (non-redeeming) Shareholders. While the Redemption Settlement Class will in that event also have a judgment against the Funds, and, therefore, a prior claim over the "Liquidating Shareholders," all "Liquidating Shareholders" are also in the Redemption Settlement Class. Thus, both Redeeming and May 29, 2009 Shareholders' interests are the same in a § 10(b) judgment. Third, because all shareholders (Former and May 29, 2009 Shareholders) are *de facto* liqui-

---

[15]    MAM/MK's reliance on *Hall v. Tennessee Dressed Beef Co.*, 957 S.W.2d 536 (Tenn. 1997), is misplaced. Unlike that case, Plaintiffs are no longer suing the Funds; their claims have been settled. The source of the adversity between the class and the Funds is extinguished. All that is left is for the New Board to decide how to distribute any *Landers* recovery, either first to satisfy the Funds' debts in their entirety with any remaining cash to the May 29, 2009 and Former Shareholders not covered by the judgment(s) or *pro rata* among all of the Funds' investors who incurred losses on their investments.

dating shareholders, they must all be treated equally. Reply at 21-27. MAM/MK and its expert steadfastly refuse to recognize these basic elements of the proposed settlement and the undeniable legal effect thereof.

> ### a.   The Funds liquidated before May 29, 2009, and Former and May 29, 2009 Shareholders are to be treated equally.

While the Funds' shareholders approved a formal Plan of Liquidation on May 29, 2009, the Funds had actually begun liquidating in July 2007 and had mostly liquidated by April 30, 2008. Reply at 5-7. The Plan was an after-the-fact recognition of what had already happened. A corporation's liquidation is not limited to a formal plan of liquidation.[16] That the Funds' shareholders were not presented with a formal liquidation plan much earlier (July or August 2007) is simply evidence of the dereliction and carelessness of the Funds' former management and directors.

A fundamental lesson of *Reserve* is that extensive litigation in connection with the

---

[16]   *See In re Reserve Fund Sec. & Deriv. Litig.*, 1:09-cv-04346-PGG, ECF No. 140 (SEC's Memorandum of Law in Response to Objections to Its Application for Injunctive and Other Relief and Approval of the Commission's Proposed Plan of Distribution) at 10 n 9 (addressing the options facing the fund's trustees, the SEC noted that taking any one of specified actions "would have greatly and almost immediately triggered an even more substantial run on the Fund and put the Fund into liquidation mode"); *Semida v. Rice*, 863 F.2d 1156, 1161 (4th Cir. 1988) (plaintiff sole shareholder of a corporation in informal liquidation required to sue derivatively on behalf of the corporation to maintain claim for tortious interference); *Herzog v. Russell*, 483 F. Supp. 1346, 1352 (E.D.N.Y. 1979) (sales of a fund's shares enabled the fund to redeem its shares without potentially disadvantageous impairment of its investment program through premature liquidations of portfolio positions); *Horn & Hardart Baking Co. v. United States*, 34 F. Supp. 89, 90-91 (E.D. Pa. 1940) (liquidation "is an existing condition which is brought about by affirmative action, the normal and necessary result of which is the winding up of the corporation business." "The adoption or failure to adopt a resolution of dissolution or liquidation is not controlling or determinative" of a liquidation."); *Phelps v. Loupias*, 97 Cal. App. 2d 350, 356 (Cal. App. 1950) (a transaction in question "amounted  to an informal liquidation of the partnership, and no authority has been cited by appellants holding that this cannot be done."); *Northwest Sav. & Loan Ass'n v. Lockwood*, 168 P.2d 379, 386 (Wash. 1946) (shareholders of a mutual savings association who redeemed their entire accounts during a "*de facto* liquidation" for less than the value of all of the association's assets were entitled to share in those assets upon the realization of the value thereof).

liquidation of an open-end fund is to be avoided. In *Reserve*, the court adopted the SEC's position that "the equitable principle that all claims should be considered in parity, with no claimant being preferred over another, should not be displaced by any other theory of recovery." *Reserve*, 1:09-cv-04346-PGG, ECF No. 140 at 13 (citations omitted).

The AMOU, like the *Reserve* court's plan, cuts through extended and wasteful litigation to recognize the interests of the Funds' investors in a *Landers* recovery based on wrongdoing in connection with which the Funds fraudulently redeemed their shares. The *Reserve* court endorsed these objectives in approving the SEC's *pro rata* distribution plan, recognizing the inequity in the alternative plan that would result in extensive litigation. *Reserve*, 673 F. Supp. 2d at 194-95, 197-98. In rejecting objectors to the SEC's *pro rata* distribution plan who argued they were contractually entitled to a higher redemption NAV than the proposed *pro rata* distribution, the court reasoned that the effort to retroactively reconstruct the "true" NAV "would undoubtedly inordinately delay the distribution of funds investors have been awaiting for more than a year." *Id.* at 198.[17]

One group of the *Reserve* fund's investors consisted of "straddler" investors who redeemed some but not all of their shares at $1.00. *Id.* at 193.[18] Noting the unreliable NAV calculation and the misleading information that caused some investors not to redeem, the court agreed it was not equitable to permit investors who received $1.00 NAV payments for

---

[17]     The alternative to the proposed Partial Settlement and AMOU, one that MAM/MK apparently prefers, is that the litigation continue between the class and the Funds, putting the Funds in the difficult position of pursuing their claims while defending the §§ 11 and 10(b) claims. Because of the Funds' virtually absolute liability under § 11 and their undisputed insolvency, the § 11 claimants could put the Funds into bankruptcy, the bankruptcy trustee would pursue the Funds' claims, and settle the § 11 claim without pursuing approval under Rule 23.1. Those "Liquidating Shareholders" whose losses are not covered by § 11 would be paid only after the § 11 claim is satisfied. The proposed settlement avoids the necessity for this extensive additional litigation and protects the "Liquidating Shareholders" about whom MAM/MK professes such touching concern.

[18]     Regarding MAM/MK's argument (Br. at 18 n 16), the "straddler" investors were treated differently than those who the SEC proposed be subject to a "claw back" of a portion of their successful redemptions at $1.00 before the fund's custodian halted redemptions and terminated overdraft privileges, although the SEC saw the two as the same. 673 F. Supp. 2d

some of their shares to participate in the lower *pro rata* distribution with no offset. Accordingly, distributions made to the "straddlers" were offset to ensure that they did not obtain an overall recovery of more money per share than other investors participating in the *pro rata* distribution. *Id.* at 200. Thus, even though the straddlers had fully redeemed shares and been paid therefor, the court in effect recovered part of the amounts paid on their redeemed shares by reducing the *pro rata* distribution that these shareholders would otherwise have received on their unredeemed shares.

If it is inequitable to allow shareholders who redeemed and were paid *more* than the eventual *pro rata* distribution during a period of unreliable NAVs and misleading information that caused some investors not to redeem, then the obverse is likewise true: It is inequitable to prevent shareholders who redeemed during a period when NAVs were unreliable and did not include the value of all of the Funds' assets from sharing in the recovery of those assets. This should especially be the case where the liquidating distribution will be entirely derived from a recovery on claims for injuries that occurred during the period that the Funds' NAVs did not reflect the value of those claims.

Incredibly, MAM/MK seeks to distinguish *Reserve* and the other open-end fund cases cited by Plaintiffs on the ground that those cases involved receivers because the funds could not meet redemptions. MAM/MK Br. at 12 n 11. MAM/MK offers no legally cognizable basis for this distinction.[19] In so arguing, MAM/MK and the Individual Defendants seek to

---

at 192-93 n 42, 200, 208.

[19]     This Court has the same equity powers exercised by the *Reserve* court without regard to whether this action was brought by the SEC. "It is now well established that Section 22(a) of the 1933 Act, 15 U.S.C. § 77v(a) (1970), and Section 27 of the 1934 Act, 15 U.S.C. § 78aa (1970), confer general equity powers upon the district courts." *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1103 (2d Cir. 1972). "[I]t is for the federal courts to adjust their remedies so as to grant the necessary relief where federally secured rights are invaded." *Id.* (internal quotation marks and citations omitted). *See also Liberte Capital Group, LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006) ("There remains a class of cases, however, in which the federal courts may exercise their equitable powers and institute receiverships over disputed assets in suits otherwise falling within the federal court's jurisdiction, but which fall outside the statutory bankruptcy proceedings or other legislated domain. In this range of cases the federal courts exercise the traditional, common law powers of equity," citing Fed.

gain an advantage as a result of their own mismanagement and fraud. The Funds' former management and board should have suspended redemptions and sought a receiver for the Funds when it became apparent that RF would not provide sufficient liquidity support, thereby avoiding the forced sale of illiquid assets at unrealistically low prices.[20] If such action had been timely taken, the Former Shareholders (those redeeming during the Funds' informal liquidation) would have been "Liquidating Shareholders" and would have had the benefit of an orderly liquidation.[21] Defendants provide the Court with no authority that the Funds' New Board does not have the ability under Maryland law to take the actions taken by the receivers in the cases cited by Plaintiffs that involved the liquidation of open-end funds.[22]

---

R. Civ. Proc. 66).

[20]     Reply at 5-21. The *Reserve* fund's board, in response to lawsuits filed against the fund and its trustees and officers upon redemptions being suspended, created a $ 3.5 billion reserve to satisfy pending and threatened claims against the fund and its officers and trustees. 673 F. Supp. 2d at 189. Had the Funds' board timely suspended redemptions in August 2007, the same opportunity would have presented itself to allow an orderly liquidation.

[21]     In granting the *Reserve* funds' request for an exemption under ICA § 22(e) to suspend redemptions, the SEC acknowledged the need for an orderly liquidation so that all shareholders could be treated fairly and recognized the suspension of redemptions was necessary to that end. The SEC granted the requested exemption "based on the Reserve Fund's representation that it would 'create a plan for the orderly liquidation of each Fund's assets to meet redemption requests and for the appropriate payments to each Fund's shareholders. . .'" *Reserve*, 673 F. Supp. 2d at 190.

[22]     When a Maryland corporation is voluntarily dissolved, and until a court appoints a receiver, "Directors become trustees" and "the business and affairs of the corporation shall be managed under the direction of the board of directors solely for the purpose set forth in § 3-408(b)." Md. Code Ann. Corps. & Ass'ns § 3-410(a). Md. Code Ann. Corps. & Ass'ns § 3-408(b) provides that, upon dissolution, the "corporation continues to exist for the purpose of paying, satisfying, and discharging any existing debts or obligations, collecting and distributing its assets, and doing all other acts required to liquidate and wind up its business and affairs." A single shareholder may petition a Maryland court of equity to take jurisdiction of the liquidation of a corporation in a voluntary dissolution. *Id.* at § 3-411. A director may be appointed receiver. *Id.* at § 3-416. A receiver's authority is virtually the same as the board's. *Cf. id.* at §§ 3-418,  3-408(b), and 3-410(a). The Partial Settlement and AMOU renders all of this additional litigation unnecessary. For this and the reasons recited in note 20, MAM/MK's is wrong that "[n]either Plaintiffs, nor Plaintiffs' Counsel, nor the Funds,

14

Defendants are now arguing that only the "Liquidating Shareholders" are entitled to a *Landers* recovery based on fraudulent conduct and mismanagement, and they oppose Former Shareholders sharing in a recovery based on that wrongdoing. Thus, they want to cheat the former shareholders twice: first in 2007-08 with the fraudulent redemptions and now a second time by opposing their right to share in the recovery based on the fraudulent conduct by which they were harmed. This is exactly the kind of inequitable outcome that the *Reserve* and other courts have ruled is prohibited in the liquidation of open-end funds.[23]

This issue is not new. In *Francestown Sav. Bank Case*, members (depositors) of a mutual savings bank who withdrew their accounts but were paid less than their *pro rata* share of the full value of all of the bank's assets were held to be entitled to share in the value of the additional assets. *Francestown Sav. Bank Case*, 63 N.H. 138, 140-42 (N.H. 1884).[24] The court noted that, while this treatment was provided by a statute, the result would be the same at equity without regard to a statute. *Id.* at 140-41.[25] A mutual savings bank is similar to a mutual fund.

The same result was reached in *Northwest Sav. & Loan Ass'n v. Lockwood*, 168 P.2d

---

nor the Funds' Board are equitable receivers or bankruptcy trustees," suggesting they lack the power to allocate a *Landers* recovery. *See* MAM/MK Br. at 14. As in *Reserve*, the Court, if appropriate, can appoint the Magistrate Judge to oversee the resolution of many, if not all, of the allocation issues raised by MAM/MK. *See Reserve*, 673 F. Supp. 2d at 206-07. At this point, however, those issues are premature.

[23]    The *Reserve* court ruled that shareholders who redeemed in accordance with their contract under the fund's prospectus and the ICA would share in the fund's assets at the NAV determined on a *pro rata* basis and not at the higher NAV to which they were entitled by contract and the ICA, a result demanded by equity. 673 F. Supp. 2d at 191-92, 196-99.

[24]    Depositors in a mutual savings bank are deemed equity holders. *Id.* at 142.

[25]    The court said that a depositor who withdraws his deposit is not "deprived of their right to an equitable share upon a division of all the assets of the bank. The statute expressly provides that if a bank, after such reduction [in depositors' accounts], shall realize from the assets a greater amount than that fixed upon at the time of the reduction, the amount so realized shall be equitably divided and credited to the accounts of the depositors which had been reduced. . . . It is a statute of partition that does not . . . require any depositor withdrawing his deposit . . . to give his share of the undivided property to those who withdraw nothing. *The rule must be the same in the absence of any statute.*" *Id.* (emphasis supplied).

379 (Wash. 1946). A mutual savings association lost most of its assets to panicking share-holders during the Depression. Eight years later, after 1150 of 1157 shareholders had with-drawn their accounts, the remaining seven shareholders sought to resume business. *Id.* at 388. In the interim period, the association's assets had increased to a value that exceeded the deposits attributable to the shares of the remaining shareholders. *Id.*   The court held that these unallocated funds should have been divided among all the shareholders, including those who had left the association. *Id.* at 386. The court reasoned that, because of the nature of a mutual savings association, its shareholders fared alike in profits and losses, in the ab-sence of a class of shareholders having a superior equity position. *Id.* In rejecting the re-maining shareholders' argument that it would be inequitable to allow the 1150 shareholders who withdrew their funds to share equally with the seven shareholders in a surplus they generated by not withdrawing, the court cited *Francestown* for the "principles which govern the distribution of mutually owned funds." *Id.* at 389.[26]

> **b.    The AMOU is fully consistent with the Funds' Plan of Liqui-dation.**

The AMOU is not contrary to, inconsistent with, or prohibited by the Funds' Plan of Liquidation. Nor is there anything in the Plan that is violated by any provision of the AMOU. The AMOU provides for how the Plan will be carried out if there is a *Landers* re-covery. The AMOU does not give Former Shareholders an interest in a *Landers* recovery that they would not have in the absence of the AMOU. It simply recognizes the existence of such an interest arising from claims asserted in the *Open-End Class Action* against the Funds and makes provision for their satisfaction. This is what the Plan requires the Funds' New Board to do.

As it must, MAM/MK acknowledges that the Plan provides that a *Landers* recovery must first be used to pay "claims and liabilities," which, MAM/MK admits, include "any

---

[26]     The equities in favor of the remaining shareholders in *Northwest Sav. & Loan* were far greater than those of the May 29, 2009 Shareholders. In *Northwest*, the remaining share-holders were not seeking to dissolve the bank to claim an exclusive right to the undistributed funds. *Id.* at 388. This is precisely what MAM/MK is arguing the "Liquidating Shareholder-ers" are entitled to do.

judgment in the *Open-End Class Action* or other actions asserted against the Funds." MAM/MK Br. at 13. MAM/MK further acknowledges that any "*amounts remaining after such resolution* will be distributed to such shareholders of the Funds at such time as is determined by the Board and in a manner that complies with applicable law." *Id.* (emphasis added; original emphasis omitted). The "applicable law" includes law that says the shareholders of a liquidating open-end fund are creditors, are not entitled to more than their losses, and are not entitled to share exclusively in those assets.[27]

The Plan provides that a *Landers* recovery will be paid out to satisfy claimants and judgment creditors with the remainder, if any, going to the May 29, 2009 Shareholders, and the AMOU says nothing different.[28] It appears that MAM/MK's only quarrel with the AMOU relates to the provision in § I.6 that addresses "shareholders whose losses are not recoverable in the class action under the 1933 Act." However, these shareholders' losses are compensable under the § 10(b) claim. If that claim is reinstated, this provision is moot. Moreover, the AMOU provides that these shareholders' interests spring from the prohibition against windfalls to the May 29, 2009 Shareholders and from the constructive trust provided for in the FADC. AMOU § I.6.(iii).[29]

---

[27]    In providing for no double recovery and in recognizing the relief sought in the FADC, the AMOU elaborates on the direction in the Plan to distribute any *Landers* recovery "in a manner that complies with applicable law." AMOU § I.6; FADC ¶ 876.

[28]    The purpose of the Plan's provision that the Funds' shares will not be canceled pending resolution of the derivative action was to preserve Derivative Plaintiffs' standing to pursue the derivative action. Curley Dec. Ex. J (Proxy Statement at 2, 4). With the Funds taking over the action, assuming approval of the AMOU, Derivative Plaintiffs' standing is moot. Whether the Funds' shares at May 29, 2009 are deemed canceled or outstanding is irrelevant to the basic issue of how a *Landers* recovery will be allocated. While MAM/MK seeks to attach great significance to these shares remaining outstanding (MAM/MK Br. at 12-13), in fact there is none. MAM/MK neglects to include the Plan's text that the redemption rights of these shares have been indefinitely suspended. Curley Dec. Ex. J (Proxy Statement at A-1 [Plan of Liquidation ¶ 2]). Thus, although outstanding, the May 29, 2009 Shareholders have no right to demand the redemption of these shares in the event of a *Landers* recovery.

[29]    MAM/MK's reliance on *Brickman v. Tyco Toys, Inc.*, 731 F. Supp. 101, 109 (S.D.N.Y. 1990), Br. at 13-14, is misplaced for the reasons *Brickman* itself clearly states. *Brickman* involved a class and derivative action against and on behalf of an operating corpo-

c.   **The purported conflict between Former and "Liquidating Shareholders" does not exist in the absence of a *Landers* recovery.**

A difficulty in this discussion is the absence of numbers—the absence of an actual *Landers* recovery to give the issues raised by MAM/MK a meaningful context within which they can be considered. Let us assume a *Landers* recovery of $500 million, a § 11 computation of $250 million, and May 29, 2009 Shareholders losses of $150 million. Putting aside whether § 10(b) is reinstated and ignoring for purposes of this example the fact that many of the May 29, 2009 Shareholders' losses are compensable under the § 11 judgment, the distribution of $250 million to the Purchaser Settlement Class (the § 11 judgment creditors) and $150 million to the May 29, 2009 Shareholders (the maximum that can be paid to them) leaves $100 million. AMOU § I.6 provides that this $100 million may be paid to the Former Shareholders who are not otherwise compensated in the Purchaser Settlement Class.[30] As this example demonstrates, there are no conflicts.

A second example addresses how reinstatement of the § 10(b) claim would affect the distribution of a *Landers* recovery. Assume the same numbers as in the preceding paragraph with the additional assumption that the § 10(b) damages are computed to be $500 million. The Redemption Settlement Class includes all of the members of the Purchaser Settlement Class, all Former Shareholders with losses, and all of the May 29, 2009 Shareholders. Again, to avoid double recoveries and windfalls, the May 29, 2009 Shareholders are not entitled to share exclusively in the entire $500 million recovery but only to the extent of their

---

ration. In denying class certification, the court distinguished a case in which the corporation named in the class action had been liquidated and its assets distributed, reasoning that the derivative action sought "to do no more than fill the coffers of [the corporation] so that any class action recovery [would] be meaningful." *Id.* at n 9, citing *Kane Associates v. Clifford*, 80 F.R.D. 402 (E.D.N.Y. 1978). These distinguishing facts likewise distinguish the instant case from *Brickman*.

[30]    All of MK Properties' shares were purchased within the § 11 Class Period. MKP holds 52% of IBF's liquidating shares and 26% of HIF's shares. Reply at 3. Excluding MKP from the May 29, 2009 Shareholders and from the Purchaser Settlement Class, as provided by CAC ¶ 106, significantly reduces the portions of a *Landers* recovery that must be allocated to either group, leaving that much more for Former Shareholders not in either group.

assumed $150 million in losses. As members of the Redemption Settlement Class, they, along with the Funds' Former Shareholders (including those in the Purchaser Settlement Class and those who are not), share on an equal basis in the $500 million recovery, as the cases require. In this example, nothing would be paid on the § 11 judgment because the Purchaser Settlement Class members recover as members of the Redemption Settlement Class. Again, as this example demonstrates, there are no conflicts.

A third example addresses a *Landers* recovery that is less than the aggregate damages of the Redemption Settlement Class. Assume a *Landers* recovery of $500 million and, assuming the § 10(b) claim is reinstated, Redemption Settlement Class damages of $900 million. Because the Redemption Settlement Class encompasses all Former and May 29, 2009 Shareholders, they would share *pro rata* in the recovery on the basis of the § 10(b) judgment. Again, there are no conflicts.

As is apparent from these examples, whether the purported conflicts alleged by MAM/MK will actually ever exist depends upon the amount of a *Landers* recovery, the measure of § 11 damages, whether the § 10(b) claims are reinstated and the measure of § 10(b) damages, and the May 29, 2009 Shareholders' damages. Ironically, the extent of the conflict argued by Defendants is entirely in Defendants' hands: a *Landers* recovery of 100% of the Funds' losses would mean no conflict at all. These alleged conflicts do not exist unless there is a *Landers* recovery. If there is, the AMOU provides the framework for dealing with them. In the absence of a *Landers* recovery, and in the absence of the § 10(b) claim being reinstated, the Funds' Former and May 29, 2009 Shareholders can look only to their §§ 11 and 12(a)(2) claims in the *Open-End Class Action*.[31]

Courts look favorably on settlements. Lead Plaintiffs, Derivative Plaintiffs and the Funds have reached a settlement relatively early in this complicated litigation. Because of

---

[31]     The only purported conflict raised by Defendants in opposition to certifying the proposed Settlement Classes is between Former and "Liquidating" Shareholders. *See*, e.g., MAM/MK Br. at 15. In the *Open-End Class Action*, the "Liquidating Shareholders" have no basis for the kind of superior claim for which MAM/MK argues. Accordingly, the alleged intra-class conflict does not exist in the *Open-End Class Action* and is wholly dependent upon a *Landers* recovery but only with respect to allocating that recovery.

the timing of this settlement, there are some foreseeable contingencies. Plaintiffs and the Funds negotiated a settlement that provides for these contingencies, which the New Board did in the independent exercise of its sound business judgment in reliance on its counsel, as did Plaintiffs in reliance on their counsel. However, the resolution of certain contingencies depends upon additional facts, primarily relating to whether there is a *Landers* recovery and, if so, the amount thereof and the compensable losses of the Funds' shareholders in the two proposed Settlement Classes, as well as the compensable losses of the May 29, 2009 Shareholders. The Non-Settling Defendants are obviously not parties to the AMOU, and they should not be allowed to obstruct it by raising spurious conflict claims raising issues that are resolvable under the mechanism established by the AMOU.

### d. Plaintiffs are not advocating against the interests of "Liquidating Shareholders."

MAM/MK contends that, by informing the Court that the May 29, 2009 Shareholders are not entitled to share exclusively in a *Landers* recovery and are not entitled to a windfall, "Plaintiffs are advocating against the interests of Liquidating Shareholders." MAM/MK Br. at 15. The AMOU, along with the FADC, recognize the potential for double recoveries and windfalls, to which the courts say fund investors are not entitled. The Funds' potential damages are substantial, and it would be grossly unfair for the May 29, 2009 Shareholders to exclusively share therein, a windfall they are equitably proscribed from receiving. Providing for a fair way to treat all investors in the Funds who incurred losses was the objective of the derivative action, and this is what the AMOU does.

*Reserve* provides guidance for determining how any *Landers* recovery should be distributed. The principal difference between this case at this point and *Reserve* is that *Reserve* had a $3.5 billion fund to distribute; this case has a zero fund now. If the Funds' former management and board had taken the actions taken by the *Reserve* fund's trustees, the issues now being raised by MAM/MK would have been avoided. That this is not an SEC action is immaterial, and MAM/MK offers no authority as to why that point should preclude the New Board from applying the rules laid down in *Reserve* and the other cases cited by Plaintiffs. MAM/MK approvingly notes the *Reserve* court's appointment of a monitor or magistrate

20

judge to oversee the liquidation and protect shareholders' interests. As noted above, that option is clearly available to the Court in this case should it become appropriate.

The alleged conflict in *Landers* regarding Former versus May 29, 2009 Shareholders does not exist in the proposed Settlement Classes and, therefore, is not a basis for denying certification. MAM/MK's only authority is *Amchem Products*, a case clearly distinguishable on its facts but, more to the point, expressly cited securities actions as being particularly suitable for class treatment. MAM/MK Br. at 15, 18; Reply at 37. MAM/MK's only other authority is its expert who ignores the abundant caselaw that issues relating to the allocation of a settlement fund are not a basis for denying class certification. MAM/MK Br. at 18; Reply at 45-49.

### B.     Lead Plaintiffs Are Adequate Class Representatives

#### 1.     Lead Plaintiffs are not rendered inadequate by their counsel's representation because that representation entails no conflicts.

MAM/MK's arguments that Lead Plaintiffs cannot be certified as class representatives because of Plaintiffs' counsel's representation of adverse parties fails for the reasons discussed above. Plaintiffs' counsel's proposed dual representation of the Funds and their representation of a class that includes *de facto* liquidating shareholders from July 1, 2007 as well as the May 29, 2009 Shareholders includes no conflicting interests.

MAM/MK says that "the AMOU stands silent on the method of allocating the Funds' assets among the proposed Settlement Classes and Liquidating Shareholders in the event the Funds' assets are not sufficient to fully satisfy the total § 11 damages of each member of the proposed Settlement Class." MAM/MK Br. at 20. MAM/MK is wrong. If the *Landers* recovery is less than the computed § 11 damages of the Purchaser Settlement Class and if the New Board does not elect a *pro rata* distribution, *all* of the *Landers* recovery will be paid to the Purchaser Settlement Class, and *nothing* will be paid to the May 29, 2009 Shareholders (unless they are in the Purchaser Settlement Class). AMOU § I.4., 6. However, in that event and to benefit the largest number of the Funds' injured investors, the New Board may elect to do a *pro rata* distribution between the Purchaser Settlement Class and the remaining rec-

ognized interests.[32]

MAM/MK's criticism of Mark Hays's opinion based on his statement that a *pro rata* distribution is a commonly accepted method of allocating recovery proceeds in securities litigation is wholly unfounded. *See* MAM/MK Br. at 21. The criticism is based on MAM/MK's repeated erroneous argument that Former Shareholders are not in a Settlement Class; they are. All are in the Purchaser Settlement Class for some or all of their losses, and all are in the Redemption Settlement Class for all of their losses. Moreover, they are also liquidating shareholders if they redeemed after July 1, 2007. As such, they are entitled to share *pro rata* in a *Landers* recovery based on wrongful conduct that occurred while they were fraudulently forced to redeem in a fraudulent and disorderly liquidation. Reply at 5-26.

### 2.   Plaintiffs' counsel's dual representation of the funds and the class does not violate any ethical rules.

MAM/MK says Plaintiffs' interests in the *Open-End Class Action* and the Funds are adverse. MAM/MK Br. at 21. MAM/MK is wrong.

Two claims are asserted against the Funds in the *Open-End Class Action*. Both claims have been settled. The preposterous assumption underlying MAM/MK's argument and its expert's opinion is that an arm's-length negotiated settlement between a plaintiff and a defendant in a multiple-defendant litigation does not end the litigation against the settling defendant. Nor, other than its expert's unsupported opinion, does MAM/MK offer any authority for the notion that a conflict arises because the amount of the judgment has not been determined. The measure of potential damages is not a basis for denying class certification.[33]

For the reasons discussed above, there is no adversity in determining the amount of the § 11 judgment. The amount will be calculated in accordance with the statute. The New

---

[32]   It is important to understand that MAM/MK's "Liquidating Shareholders" have differing interests. If the *Landers* recovery is less than the computed § 11 damages, those "Liquidating Shareholders" whose losses are wholly recoverable under § 11 would prefer no *pro rata* distribution so as to be able to maximize their recovery and not share with those "Liquidating Shareholders" whose losses are largely recoverable only under § 10(b) or out of the remaining assets after satisfying the § 11 judgment.

[33]   Classes in securities litigation are often certified before damages are determined or a settlement is reached.

Board will then determine whether to approve that calculation, and the amount will then be subject to the Court's approval. The New Board will then elect whether to pay that judgment amount to the extent that the Funds have sufficient assets to do so or to pay it on a *pro rata* basis with all other recognized interests in a *Landers* recovery.

Regarding the claims against the Funds (MAM/MK Br. at 22-23), the Funds could either have sought to enjoin these actions, as was done in *Reserve*,[34] or settle on the terms proposed herein. MAM/MK and its expert ignore that, having determined that the allegations in *Landers* have merits and that the Funds have claims, the Funds are not in a position to defend actions asserting claims against them based on the same facts as alleged in *Landers* in support of the Funds' claims.

In yet another red herring argument, MAM/MK says nothing in the AMOU precludes Plaintiffs from pursuing discovery from the Funds. MAM/MK Br. at 23. In its selective quote from Plaintiffs' Reply that it uses as the premise for its argument, MAM/MK ignores the rest of what Plaintiffs said: Plaintiffs and the Funds will be cooperating in the pursuit of their claims on the same facts against common defendants; thus, neither Plaintiffs nor the Funds will need to pursue formal discovery from the other. Reply at 54. Former adversaries have settled and agreed to cooperate in their joint pursuit of the same objective—a recovery from the Non-Settling Defendants. This is not an uncommon event.

The assumption stated by Mark Hayes, Plaintiffs' expert, that the Funds will not oppose the reinstatement of the § 10(b) claim is correct. The Funds unequivocally state that, assuming approval of the AMOU, they "do not oppose Plaintiffs' efforts to reinstate the § 10(b) claim, and would have no reason to do so." Funds' Sur-Sur-Reply, pp. 2-3.

Regardless of whether the alleged conflicts are "consentable" (which Mark Hayes correctly says they are by the named class members), there are no actual conflicts. Underlying MAM/MK's entire argument is the false premise that the "class is suing the Funds in the *Open-End Class Action*." MAM/MK Br. at 25. If the settlement is approved, the class *is no*

---

[34]     *Reserve*, 673 F. Supp. 2d at 202-03.

*longer suing* the Funds in that action.[35]

### C.   The Partial Settlement and Amount Are Fair, Reasonable, and Adequate; Certification of a Redemption Settlement Class Is Proper.

MAM/MK's argument that the proposed Partial Settlement and AMOU are not "'fair, reasonable, and adequate' to all parties involved" (MAM/MK Br. at 26-27) is absurd. A bankrupt corporation with very little cash is consenting to a judgment to be paid out of damages recovered in litigation. From the standpoint of the proposed Settlement Classes, it is impossible to conceive of a more "fair, reasonable, and adequate" settlement. From the Funds' standpoint, having determined to pursue claims against the same Opposing Defendants that the class is suing and on the same facts, the settlement is likewise "fair, reasonable, and adequate" as it frees the Funds to do so with the assistance of counsel who have developed those claims.

MAM/MK also complains that details are missing and the AMOU's terms are ambiguous, but offers only two examples—the calculation of damages in *Landers* and "details" regarding the calculation of the § 11 claim. *Id.* at 27. The FADC, in which the Funds will join if the settlement is approved, estimates the Funds' damages and shows how that estimate was made. FADC ¶¶ 871-73. Regarding the "details" relating to the calculation of § 11 damages, MAM/MK does not provide any examples of such missing details. Besides the methodology found in § 11, the only other "details" are the data relating to the purchases (including reinvested dividends) and redemptions of the Funds' shares during the Purchaser

---

[35]   MAM/MK's statement that the Supreme Court has recently held that "[o]nly an investment company may be held liable for statements made by the investment company," citing *Janus Capital Group, Inc. v. First Deriv. Traders*, 131 S.Ct. 2296 (2011), is incorrect. The Court held that, under Rule 10b-5, the "maker of a statement [in an investment company prospectus] is the person with ultimate authority over the statement, including its content and whether and how to communicate it." *Id.* at 2306. The CAC asserts claims against MAM/MK both as a maker of misleading statements in the Funds' prospectuses (Count V) and as a controlling person of the Funds (¶ 749, Count VII). ECF No. 218 pp. 360-65. Moreover, *Janus* addressed prospectus liability, not the liability for sales materials prepared by a fund's investment adviser and distributor that contained false statements used to sell and redeem a fund's shares or the § 11 liability of a fund's underwriter and distributor. *See* CAC ¶¶ 129-44; Broadhurst Decl. Ex. ¶¶ 14-20, 33-36.

Settlement Class Period, which data MAM/MK has but Plaintiffs do not. The criticism is wholly without merit.[36]

Contrary to MAM/MK's argument, as discussed above, the AMOU clearly provides for how damages in *Landers* will be allocated,. MAM/MK Br. at 27. Such damages will be first paid to satisfy the judgment(s) against the Funds or, in the New Board's discretion, allocated *pro rata* among those determined by the New Board as having an interest in the recovery to the extent that they are not already covered by the judgment(s). AMOU § I.4., 6. Given the status of this litigation, no more can be provided for at this time.

That the § 10(b) claim has been dismissed is not a reason for the proposed Redemption Settlement Class not to settle the § 10(b) claim against the Funds. No final judgment has been entered. New facts and a change in the law regarding how courts are to evaluate scienter allegations (and the Court's recent ruling in the related closed-end funds cases[37]) make an amended complaint reviving the § 10(b) claim entirely appropriate, and Plaintiffs intend to pursue such an amended complaint shortly. *See* Reply at 28 n 35. As MAM/MK says (*id.*), setting a deadline for amending complaints "is a standard provision included in any CMO," clearly contemplating such an action. Any such amended complaint will obviously be sought in accordance with the Federal Rules of Civil Procedure.

## II.    PwC's Arguments Are without Merit.

### A.    The Statute of Limitations regarding Plaintiffs' Causes of Action against PwC Was Tolled until at Least July 2008.

Contrary to PwC's arguments (PwC Br. at 2-4), August 21, 2006, the date on which it submitted the defective audit to the Fund is irrelevant; the only relevant date is that on which the New Board took control of the Fund and learned, or could have learned, of PwC's culpable actions. Regardless of whether Tennessee has expressly adopted the "adverse domination" doctrine, the doctrine is nonetheless applicable in the present action under Tennes-

---

[36]    If the Court deems such "details" to be relevant at this time, Plaintiffs could, upon being provided the requisite data by MAM/MK, produce a calculation of § 11 damages for the Purchaser Settlement Class, including the May 29, 2009 Shareholders.

[37]    *In re Regions Morgan Keegan Closed-End Fund Litigation*, No. 2:07-cv-02830-SHM-dkv, March 30, 2012 (ECF No. 246).

see's "internal affairs" doctrine. Thus, pursuant to Tennessee's "internal affairs" doctrine and Maryland's "adverse domination" doctrine, the statute of limitations was tolled as to Plaintiffs' claims against PwC until at least after July 2008.

Tennessee adheres to the internal affairs doctrine.  Under that doctrine, matters involving the internal affairs of a foreign corporation are deemed substantive in nature and should be resolved in accordance with the laws of the state of incorporation.  *Bayberry Assocs. v. Jones*, 1988 Tenn. App. LEXIS 718 (Tenn. Ct. App. Nov. 9, 1988) (*vacated and remanded on other grounds)* (Ex. A); *In re Healthways, Inc. Derivative Litig*., 2011 Tenn. App. LEXIS 129 (Tenn. Ct. App. Mar. 14, 2011) (Ex. B); T.C.A. § 48-25-105(c) (Tennessee's corporation statutes "do not authorize this state to regulate the organization or internal affairs of a foreign corporation authorized to transact business in this state").

The internal affairs doctrine is premised on the concept that a corporation's internal affairs should not be subject to the laws of multiple jurisdictions since doing so could result in the corporation being held to inconsistent legal standards. *Vantagepoint Venture Partners v. Examen, Inc.*, 871 A. 2d 1108, 1113 (Del., 2005) (*citing Edgar v. MITE Corp.,* 457 U.S. 624, 645 (1982)).  Accordingly, for all matters that pertain to the relationships among or between a corporation and its officers, directors, and shareholders, the laws of the corporation's state of incorporation should govern. *Limor v. Buerger (In re Del-Met Corp.)*, 322 B.R. 781, 801 (Bankr. M.D. Tenn. 2005).

Tennessee courts have broadened the boundaries of the internal affairs doctrine to extend to the "existence and extent of liability" related to derivative shareholder actions. *Roberts v. Fin. Tech. Ventures, L.P*., 2007 U.S. Dist. LEXIS 78448, 14 (M.D. Tenn. Oct. 23, 2007) (*citing* The Restatement (Second) Conflicts of Law § 309 (1969)) (Ex. C). In *Roberts*, the plaintiff was an officer of a Delaware corporation that brought a contract action against a California corporation. The dispute involved an oral agreement made between the plaintiff and defendant regarding the plaintiff's business.  Although Delaware law (the state of incorporation of plaintiff's business) did not govern the merits of plaintiff's contract action against Defendant, the court ultimately held that the effect and ramifications the agreement had on the plaintiff's cause of action were governed by Delaware law. *See also Sons of*

26

*Confederate Veterans, Inc. v. Sweeney*, 2007 Tenn. App. LEXIS 219 (Tenn. Ct. App. Apr. 16, 2007) (pursuant to the internal affairs doctrine, the Tennessee court applied Mississippi law to determine whether attorney's fees should be awarded in a derivative action previously brought on behalf of a Mississippi corporation) (Ex. D).  Therefore, beyond the action itself, the legal implications and effect of a company's internal actions are also governed by the law of the relevant state of incorporation.

When the laws of the state of incorporation govern a dispute, the state's statute of limitations and tolling rules apply as well, including a state's application of the adverse domination doctrine. *Mervyn's, LLC v. Lubert-Adler Group IV, LLC (In re Mervyn's Holdings, LLC)*, 426 B.R. 488, 503 (Bankr. D. Del. 2010) (because California law governed the breach of fiduciary claim under the internal affairs doctrine, Delaware court applied California's statute of limitations); *In re Norstan Apparel Shops, Inc,* 367 B.R. 68, 82; 2007 Bankr. LEXIS 1012 (E.D.N.Y. March 30, 2007) (pursuant to its internal affairs doctrine, a New York court applied Pennsylvania's tolling rules pursuant to its adverse domination doctrine) (Ex. E); *Burch v. Dent (In re Circle Y)*, 354 B.R. 349, 358-59 (Bankr. D. Del. 2006) (in determining whether a breach of fiduciary duty claim was viable against a Texas corporation, Delaware court applied Texas's adverse domination doctrine to toll the statute of limitations until the date on which a non-culpable trustee was appointed).

Because Maryland has adopted the adverse domination doctrine,[38] the statute of limitations governing the Funds' claims against PwC was tolled until the Funds' board was replaced by a majority of non-culpable directors.  Since the New Board took control in July 2008, Plaintiffs' causes of action will have accrued as of that date, making this action, filed in March of 2008, timely under either Tennessee's one-year, or Maryland's three-year, statute of limitations periods for claims against professionals.[39]  Even if Plaintiffs' causes of ac-

---

[38]     *Hecht v. Resolution Trust Corp.*, 333 Md. 324, 336-340 (Md. 1994) (the adverse domination doctrine creates a rebuttable presumption that a cause of action does not accrue against culpable directors and officers until a "disinterested majority" gains control of the corporation).

[39]     Tennessee's statute of limitations for actions against accountants is one year; Mary-

tion were not tolled, pursuant to Tennessee's internal affairs doctrine, Maryland's three-year statute of limitations applies to Plaintiffs' claims against PwC, making the commencement of this derivative action in March 2008 well within the statutory time period.[40]

**B.      Plaintiffs' Shares Were Never Canceled.**

In order to preserve Plaintiffs' standing in *Landers*, Plaintiffs' shares were not canceled under the Plan, which was approved by shareholders on May 29, 2009. *See* fn. 29 above. Accordingly, PwC's argument is meritless. *See* PwC Br. at 4-6.

**C.      This Court Has Previously Decided that the Issue of Demand Futility Is Moot.**

As previously determined by this Court, "Plaintiffs' decision to make demand on the New Board moots the question of whether Maryland law would have required them to make a new demand." Order at 15.  Demand is an "either/or proposition, and a derivative plaintiff may not 'stand neutral…by simultaneously making a demand…<u>and</u> continuing to argue that demand is excused.'" *Id.* at 14 (*citing Spiegel v. Buntrock*, 571 A.2d 767, 775 (Del. 1990)). Accordingly, because Plaintiffs made demand on the New Board, they were not required to plead sufficient facts to excuse demand on the Old Board under Maryland law. PwC's argument is meritless. *See* PwC Br. at 6-7.

**CONCLUSION**

Lead Plaintiffs' and the Funds' Joint Motion for Preliminary Approval of Partial Settlement and Approval of Notice to Settlement Class Members in the *Open-End Class Action* and Derivative Plaintiffs' and the Funds' Amended Joint Motion for Approval of  Rule 23.1 Notice to Shareholders and for Final Approval of the Amended Memorandum of Under-

---

land applies a three-year statutory period for such actions.  T.C.A. §§ 28-1-112; Md. Courts and Judicial Proceedings Code Ann. § 5-101.

[40]      In addition, "borrowing" Maryland's relevant statute of limitations and tolling provisions for the causes of action against PwC would not frustrate Tennessee's borrowing statute, since it would not be allowing an otherwise time-barred Maryland claim to be heard in Tennessee court.  *See* T.C.A. § 28-3-104. The Court has already rejected PwC's statute of limitations argument under Tennessee law. Order Denying Defendants' Motions to Dismiss and Staying Case Pending the Response of the Funds' Board of Directors ("Order"), *Landers*, 08-2260, ECF No. 92, at 17.

standing in *Landers* should be granted.

DATED:  April 18, 2012                    Respectfully submitted,


**APPERSON CRUMP PLC**
*/s/ Jerome A. Broadhurst*
Jerome A. Broadhurst, TN BPR 12529
Charles D. Reaves, TN BPR 22550
6070 Poplar Avenue, Sixth Floor
Memphis, TN 38119-3954
Tel : 901-260-5133
Fax : 901-435-5133
jbroadhurst@appersoncrump.com

**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
Richard A. Lockridge
Vernon J. Vander Weide
Gregg M. Fishbein
100 Washington Avenue South, Suite 2200
Minneapolis, MN  55401
Tel:  (612) 339-6900
Fax:  (612) 339-0981
gmfishbein@locklaw.com

**ZIMMERMAN REED PLLP**
Carolyn G. Anderson
Patricia A. Bloodgood
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: 612-341-0400
Fax: 612-341-0844
carolyn.anderson@zimmreed.com

**ATTORNEYS FOR LEAD AND DERIVA-
TIVE PLAINTIFFS**

29

## CERTIFICATE OF SERVICE

I hereby certify that on April 18, 2012, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Shepherd D. Tate, Esq.
Michael A. Brady, Esq.
**Bass, Berry, & Sims, PLC**
100 Peabody Place, Suite 900
Memphis, TN 38103-3672

Michael L. Dagley, Esq.
Britt K. Latham
W. Brantley Phillips, Jr.
**Bass, Berry, & Sims, PLC**
150 Third Avenue South, Ste. 2800
Nashville, TN 37201

David B. Tulchin
David E. Swarts
**Sullivan & Cromwell, LLP**
125 Broad Street
New York, NY 10004

S. Lawrence Polk, Esq.
**Sutherland Asbill & Brennan LLP**
999 Peachtree Street, NE
Atlanta, GA 30309-3996

Jeffrey Maletta, Esq.
Nicole A. Baker
**K & L Gates**
1601 K Street NW
Washington, DC 20006

Emily Nicklin, Esq.
Timothy A. Duffy
Kristopher Ritter
Devon M. Largio
**Kirkland & Ellis**
300 North LaSalle Street
Chicago, IL 60654

Leo Maurice Bearman, Jr.
Eugene J. Podesta, Jr.
**Baker Donelson Bearman Caldwell**
**& Berkowitz**
165 Madison Avenue, Suite 2000
Memphis, TN 38103

Peter S. Fruin
Scott S. Brown, Esq.
**Maynard Cooper & Gale PC**
2400 Regions Harbert Plaza
1901 Sixth Avenue North
Birmingham, AL 35203

R. Hal Meeks, Jr.
**Pursley Lowery Meeks LLP**
260 Peachtree Street, NW
Suite 2000
Atlanta, GA 30303

John McQuiston, II
**Evans Petree, PC**
1000 Ridgeway Loop Rd., Ste. 200
Memphis, TN 38120

Luther M. Dorr, Jr.
Maibeth J. Porter
**Maynard Cooper & Gale, PC**
AmSouth/Harbert Plaza
1901 6th Avenue North, Ste. 2400
Birmingham, AL 35203

Kevin C. Logue
**PAUL, HASTINGS LLP**
75 East 55th Street
New York, NY 10022

<u>s/ Jerome A. Broadhurst</u>
Jerome A. Broadhurst

31