IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| IN RE REGIONS MORGAN KEEGAN SECURITIES, DERIVATIVE and ERISA LITIGATION<br><br>This Document Relates to:<br><br>*In re Regions Morgan Keegan Open-End Mutual Fund Litigation*, No. 2:07-cv-02784-SHM-dkv<br><br>and<br><br>*Landers v. Morgan Asset Management, Inc.*, No. 2:08-cv-02260-SHM-dkv | No. 2:09-md-02009-SHM<br><br>Judge Samuel H. Mays, Jr.<br><br>Magistrate Judge Diane K. Vescovo |

**SETTLING FUND DEFENDANTS' MEMORANDUM IN SUR-SUR-REPLY TO DEFENDANTS' OPPOSITION TO JOINT MOTION FOR PRELIMINARY APPROVAL OF PARTIAL SETTLEMENT AND JOINT MOTION FOR APPROVAL OF RULE 23.1 NOTICE TO SHAREHOLDERS AND FOR FINAL APPROVAL OF THE <u>AMENDED MEMORANDUM OF UNDERSTANDING</u>**

**PAUL, HASTINGS, JANOFSKY & WALKER LLP**
Kevin C. Logue
75 East 55th Street
New York, NY 10022
Tel: (212) 318-6000
Fax: (212) 319-4090
E-mail: kevinlogue@paulhastings.com
*Counsel for Defendants*
*Helios Select Fund, Inc. (formerly Morgan Keegan Select Fund, Inc.), Helios Select Short Term Bond Fund (formerly Regions Morgan Keegan Select Short Term Bond Fund), Helios Select Intermediate Bond Fund (formerly Regions Morgan Keegan Select Intermediate Bond Fund) and Helios Select High Income Fund (formerly Regions Morgan Keegan Select High Income Fund), collectively "the Funds".*

## INTRODUCTION

Settling Defendants, the Funds[1], respectfully submit this Sur-Sur-Reply brief, in further support of Plaintiffs' and Funds' Joint Motion for Preliminary Approval of Partial Settlement and Final Approval of the Amended Memorandum of Understanding, and related notices.

In their Sur-Replies, Defendants once again raise baseless arguments of conflicts of interest in an attempt to thwart the New Board's pursuit of claims against them and to block final approval of the Amended Memorandum of Understanding ("AMOU") and partial settlement of the *Open-End Class Action*. Defendants' arguments distract from the simple facts that the Funds are in liquidation and face significant potential liability on the class action claims, and that in an effort to maximize recovery for the Funds and all potential constituents, the independent New Board, without admitting liability, made a business judgment to settle the class action claims and bring a final resolution to the *Open-End Class Action*, while limiting any recovery to a share of proceeds from any Fund recovery.

As it is clearly set forth in the AMOU, the settlement resolves all claims against the Funds in the *Open-End Class Action*, where the Funds will no longer be an active litigant (including but not limited to any 10b-5 claims that may be reinstated), and allows the Funds to pursue their claims in the *Open-End Derivative Action*. Under the AMOU, the settlement class will be placed in the position of judgment creditor of any recovery obtained by the Funds in the derivative action; the New Board retains discretion to allocate any recovery on a *pro rata* basis, or as otherwise deemed appropriate, to ensure an equitable distribution among relevant claimants, after considering various factors, including, but not limited to, funds received by such claimants from other sources of recovery, and subject to Court approval. By its terms, therefore,

---

[1] As used herein, "the Funds" are as defined in our Reply Brief, filed on June 24, 2012, and as noted on the cover page above, and "Plaintiffs" are as defined in our Reply Brief at footnote 3.

the AMOU is entirely consistent with the Funds' Plan of Liquidation, which provided that any recovery obtained would be retained as assets of the Funds pending resolution of other claims and liabilities of the Funds.

## I. ARGUMENT

### A. Under the AMOU, All Class Action Claims Against the Funds are Resolved

Contrary to Defendants' arguments, once the AMOU is approved, the Funds do not remain adverse to Plaintiffs in the *Open-End Class Action*. Under the terms of the AMOU, all claims against the Funds are settled in full, and the Funds will no longer be an active litigant in that action. Without admitting or denying liability, upon approval of the settlement, the Funds agree to the entry of judgment against the Funds on the Section 11 claim, satisfaction of which comes solely out of recovery by the Funds on their derivative claims in the *Open-End Derivative Action*. (*See* AMOU § I.3). The putative settlement class is placed in the position of judgment creditor of the Funds. The only remaining issue is the allocation of any derivative recovery, which will be made at the appropriate time under the discretion of the New Board upon consideration of facts and developments then known, and subject to approval by the Court. The Funds will no longer be an active participant in the *Open-End Class Action*, and therefore Defendants' argument that Plaintiffs' counsel will be representing the Funds in the derivative action while simultaneously pursuing claims against them is completely unfounded.

Furthermore, contrary to Defendants' baseless assertion that "the Funds undoubtedly will continue to oppose the reinstatement of the [§ 10(b)] claim," provided the settlement is approved, the Funds do not oppose Plaintiffs' efforts to reinstate the § 10(b) claim, and would have no reason to do so. The AMOU provides that should the § 10(b) claim be reinstated, such claim is settled with respect to the Funds under the same mechanism structured for final resolution of the

§ 11 claim.  (*See* AMOU § I.13).  The Funds will therefore not be litigating against any such claim if it is resurrected.

**B.  There are no Conflicts Among Current and Former Shareholders that Preclude Approval of the Settlement and the Board Appropriately Retains Broad Discretion to Allocate Recovery Subject to Court Approval**

Defendants argue that there is a conflict between liquidating and former shareholders in that any funds distributed to the latter may come from the same pool of money on which the former asserts a claim, and that this purported conflict precludes approval of the settlement.  This argument widely misses the mark.  As an initial matter, there already is a limited pool of money over which varying constituents will lay competing claims.  This situation is not created by the AMOU.  That is the very nature of liquidation.  What the AMOU does provide, however, is a mechanism for an equitable resolution of competing claims to any Fund recovery by retaining for the New Board ample discretion and flexibility to allocate recovery on a *pro rata* basis.  (*See* AMOU § I.4).  Under the AMOU, the Board can obtain advice of independent counsel and consult with an expert to help make the allocation, and the entire allocation and distribution process is subject to Court approval.  (*See* AMOU § I.6(a)).  As more fully described in the Funds' earlier briefing (*see* Funds' Reply Brief at 14-15), there are adequate checks and balances in place to ensure an equitable distribution of any derivative recovery to be made, and any arguments raised against it before the amount of the recovery is even determined is premature.[2]

---

[2] Defendants' reliance on the rulings in *Strigliabotti, Brickman*, and *A,chem* is inapposite. (*See* Defendants' Sur-Reply at 7, 14). In *Brickman*, the same party sought to sue a corporation directly and also sue derivatively on behalf of the corporation. Here by contrast, once the settlement is approved, there will be no class action suit against the Funds, all claims will be settled. Furthermore and perhaps even more importantly, the *Brickman* court cited a distinguishing case with facts closer to those present here: "the corporation named in the class action had been liquidated and its assets distributed. Consequently, the derivative action sought to do no more than fill the coffers of the corporation so that any class action recovery would be meaningful." 731 F. Supp. 101, 109, n. 9. Defendants' heavy reliance on *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997), is also misplaced. In *Amchem*, the

Moreover, the AMOU is consistent with the Funds' liquidation plan, which Defendants concede clearly provided that liquidating shareholders would share in the Funds' assets, subject to satisfaction of all pending liabilities and obligations of the Funds. (*See* Sur-Reply at 13). The AMOU places the settlement class in the position as judgment creditor to the Funds, with a creditor claim on the Funds that is to be satisfied before distribution to liquidating shareholders, as set forth in the liquidation plan. Furthermore, as part of the New Board's discretion to allocate the derivative recovery among the shareholders, the AMOU provides that the Board is entitled to take into consideration any recovery obtained by shareholders from other sources, such as settlements from regulatory actions, in order to ensure an equitable distribution and avoid any improper double recoveries or windfalls. (*See* AMOU § I.11).[3] Thus, any speculative and purported potential conflict is premature, and in all events, has been addressed.

Defendants' efforts to conjure false conflicts obscure the irrefutable fact that all potential constituents, whether former or liquidating shareholders, share an interest in maximizing

---

Supreme Court expressed concern that the parties to the settlement at issue "achieved a global compromise with no structural assurance of fair and adequate representation for the diverse groups and individuals affected" (*id*. at 627); here, in contrast, the AMOU provides such "structural assurance of fair and adequate representation" through the provisions discussed above allowing for independent review and determination by the New Board as to allocation and distribution of any recovery, as well as subsequent review by the Court of the New Board's determinations. The Court in *Strigliabotti* denied class certification because plaintiff's decision, at a late stage in the litigation, to add numerous "scattered, California-based claims to the national derivative ICA-based claims would substantially complicate and confuse the litigation." 2006 U.S. Dist. LEXIS at *12. Moreover, *Strigliabotti* is further distinguishable because there, plaintiffs had not provided the Court with authority or mechanism for providing a pro rata distribution of portions of the derivative recovery to former shareholders; here, as noted, the settling parties have provided such authority and have provided a mechanism, with opportunity for court approval, to facilitate such a distribution if the New Board deems it warranted based on the record then presented.

[3] Defendants also attempt to fabricate a conflict based on Plaintiffs' argument that by virtue of Co-Defendants' conduct, the Funds were in de facto liquidation mode long prior to formal liquidation in May 2009. Nothing in the terms of the AMOU or the New Board's allocation of any proceeds from the derivative recovery require the Funds or the New Board to take a position on this side issue. Moreover, as noted above and in earlier briefs, the Funds' liquidation plan specifically calls for distribution to liquidating shareholders only after payment of the Funds' liabilities and obligations. At the very least, this assertion is, once again, premature, and should wait any ultimate recovery by the Funds in the derivative action.

recovery by the Funds on the derivative claims, which the AMOU ensures. The larger the recovery obtained by the Funds, the more available for allocation by the New Board, subject to this Court's approval (at which time any claimant can object to the allocation as appropriate).[4] The only parties who do not have an interest in maximizing Fund recovery are Defendants, from whom such recovery is sought. Their objections should be seen as what they really are: desperate attempts to preclude the liquidating Funds from pursuing viable claims against them.[5]

## II.   CONCLUSION

For the reasons set forth herein and in deference to the sound business judgment of the independent New Board, the undersigned respectfully requests that the Court enter the Proposed Order approving Partial Settlement of the *Open-End Class Action* and for final approval of the Amended Memorandum of Understanding.

Dated this 18th day of April, 2012.

PAUL, HASTINGS, JANOFSKY &
    WALKER LLP

By:      /s/Kevin C. Logue
          Kevin C. Logue
75 East 55th Street
New York, NY 10022
Tel: (212) 318-6000
Fax: (212) 319-4090
E-mail: kevinlogue@paulhastings.com
*Counsel for the Fund Defendants*

---

[4] Defendants seem to make the confounding argument that the New Board enjoys too much discretion under the AMOU, and is not absolutely required to make a *pro rata* distribution, but rather is afforded as much discretion and flexibility as possible, in order to equitably resolve any conflicts that may arise among the recovering classes once the recovery is obtained, subject to Court approval. (*See* Sur-Reply at 19-20). Defendants cannot point to any reason why it would be problematic to afford wide discretion to the New Board, which Defendants have conceded is independent and capable of exercising sound business judgment. (*See* Funds' Reply Br. at 5-6).

[5] Defendants also present an inaccurate account of the AMOU when they assert that this Court would be required to undertake a fairness review "at every stage" of the implementation of the proposed settlement. (*See* Sur-Reply at 28). This assertion is completely unsupported by the terms of the AMOU, which calls for Court approval only once the New Board makes a determination on how to allocate the derivative recovery.

## CERTIFICATE OF SERVICE

      I hereby certify that on June 18, 2012, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following and/or served the following via U.S. Mail:

**APPERSON CRUMP, PLC**
CHARLES D. REAVES, ESQ.
JEROME A. BROADHURST, ESQ.
6070 Poplar Avenue, 6th Floor
Memphis, TN 38119-3954

**ZIMMERMAN REED, P.L.L.P.**
CAROLYN G. ANDERSON, ESQ.
PATRICIA A. BLOODGOOD, ESQ.
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402

**KIRKLAND & ELLIS, LLP**
TIMOTHY DUFFY, ESQ.
EMILY NICKLIN, ESQ.
KRISTOPHER RITTER, ESQ.
300 North LaSalle
Chicago, IL 60654

**SUTHERLAND ASBILL & BRENNAN, LLP**
S. LAWRENCE POLK, ESQ.
999 Peachtree Street NE
Atlanta, GA 30309

**MAYNARD COOPER & GALE PC**
LUTHER M. DORR, JR., ESQ.
MAIBETH J. PORTER, ESQ.
AmSouth/Harber Plaza
1901 6th Avenue North, Suite 2400
Birmingham, AL 35203

**MAYNARD COOPER & GALE PC**
PETER S. FRUIN, ESQ.
SCOTT S. BROWN, ESQ.
2400 Regions Harbert Plaza
1901 Sixth Avenue North
Birmingham, AL 35203

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**
LEO BEARMAN, ESQ.
EUGENE PODESTA, ESQ.
165 Madison Avenue
First Tennessee Building
Memphis, TN 38103

**SULLIVAN & CROMWELL LLP**
DAVID B. TULCHIN, ESQ.
DAVID E. SWARTS, ESQ.
125 Broad Street
New York, New York 1004

**LOCKRIDGE GRINDAL NAUEN PLLP**
RICHARD A. LOCKRIDGE, ESQ.
VERNON J. VANDER WEIDE, ESQ.
GREGG M. FISHBEIN, ESQ.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401

**BASS BERRY & SIMS PLC**
MICHAEL L. DAGLEY, ESQ.
BRITT K. LATHAM, ESQ.
W. BRANTLEY PHILLIPS, JR., ESQ.
150 Third Avenue South, Suite 2800
Nashville, TN 37201

**K&L GATES LLP**
JEFFREY B. MALETTA, ESQ.
NICOLE A. BAKER, ESQ.
1601 K Street, NW
Washington, D.C. 20006-1600

**BASS BERRY & SIMS PLC**
SHEPHERD D. TATE, ESQ.
MICHAEL A. BRADY, ESQ.
100 Peabody Place, Suite 900
Memphis, TN 38103-3672

**EVANS PETREE, PC**
JOHN MCQUISTON, II, ESQ.
1000 Ridgeway Loop Road, Suite 200
Memphis, TN 38120

                                                     /s/Kevin C. Logue
                                                        Kevin C. Logue