# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## AT MEMPHIS

| | |
|---|---|
| IN RE REGIONS MORGAN KEEGAN SECURITIES, DERIVATIVE and ERISA LITIGATION )<br><br>This Document Relates to:<br>IN RE REGIONS MORGAN KEEGAN OPEN-END MUTUAL FUND LITIGATION<br>No. 2:07-cv-02784-SHM-dkv | MDL Docket No. 2009<br><br>Judge Samuel H. Mays, Jr.<br><br>Magistrate Judge Diane K. Vescovo |

## LEAD PLAINTIFFS' UNOPPOSED MOTION AND MEMORANDUM OF LAW IN SUPPORT FOR PRELIMINARY APPROVAL OF PROPOSED CLASS SETTLEMENT AND CLASS CERTIFICATION

**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
(612) 339-6900

**APPERSON CRUMP, PLC**
6070 Poplar Avenue, Sixth Floor
Memphis, TN 38119-3972
(901) 756-6300

**ZIMMERMAN REED, P.L.L.P.**
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
(612) 341-0400

*Attorneys for Lead Plaintiffs*

## PRELIMINARY STATEMENT

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiffs the Estate of Kathryn S. Cashdollar, Dajalis Ltd., Jeanette H. Landers, H. Austin Landers, and Frank D. Tutor ("Lead Plaintiffs") on behalf of the Open-End Mutual Fund Class[1] respectfully submit this unopposed motion and memorandum of law in support for preliminary approval of the proposed settlement of this class action ("Class Settlement") and certification of the Settlement Class (or "Class") for settlement purposes.

The Class Settlement, as set forth in the Class Settlement Agreement, provides for the payment of One Hundred Ten Million Dollars in cash ($110,000,000.00) ("Class Settlement Amount") for the benefit of the Class. The Class Settlement Amount is part of a One Hundred Twenty Five Million ($125,000,000) cash settlement ("Settlement Amount") of this Class Action Lawsuit and the related Derivative Action Lawsuit.[2] Lead Plaintiffs, along with their counsel, believe the Class Settlement represents an excellent result for the Class and should be approved by the Court as fair, reasonable, and adequate.

---

[1]     Unless specifically defined herein, capitalized terms have the same meaning as defined in the Class Settlement Agreement attached as Exhibit 1 to the Declaration of Gregg M. Fishbein dated January 22, 2015 ("Fishbein Decl.").

[2]     The Derivative Action Lawsuit was settled by a separate Stipulation and Agreement of Derivative Action Settlement entered into in *Landers v. Morgan Asset Management, Inc.* (the "Derivative Action Lawsuit") between Derivative Plaintiffs Jeanette H. Landers, H. Austin Landers, Estates of Charles M. Crump and Diana W. Crump, James H. Frazier, James P. Whitaker and Peggy C. Whitaker ("Derivative Plaintiffs") and Defendants PricewaterhouseCoopers LLP, the Morgan Keegan Defendants, Regions Financial Corporation, Regions Bank, the Funds, the Officer Defendants, and  the Director Defendants (collectively "Defendants"; and together with Plaintiffs, the "Parties"). This Derivative Settlement provides for the payment of Fifteen Million Dollars in cash ($15,000,000) ("Funds Settlement Amount") for the benefit of the Funds, the Unopposed Motion for Preliminary Approval of which is being submitted separately.  The allocation of the Settlement Amount between the Class Settlement and the Derivative Settlement was negotiated by Lead and Derivative Plaintiffs and the Funds. The Class Action Lawsuit and the Derivative Action Lawsuit are hereinafter referred to as the "Lawsuits."

Lead Plaintiffs respectfully request that this Court enter the proposed Order Preliminarily Approving Class Settlement and Providing for Notice (the "Class Preliminary Approval Order"), attached as Exhibit 1 to the Class Settlement Agreement and submitted separately herewith.  The Class Preliminary Approval Order, among other things: (i) preliminarily approves the Class Settlement as within a range of reasonableness; (ii) schedules a hearing (the "Class Settlement Hearing") to consider the fairness, reasonableness, and adequacy of the proposed Class Settlement, the Plan of Allocation of the Net Class Settlement Fund (the "Plan of Allocation" or the "Plan"), and Lead Counsel's application for an award of attorneys' fees and expenses; (iii) preliminarily certifies the Class pursuant to Rules 23(a) and (b)(3) for purposes of the Class Settlement; (iv) approves the forms and methods of disseminating pre-hearing notice to the Class, and directs that such notice be issued; (v) appoints the Claims Administrator recommended by Lead Counsel to administer the Class Settlement and assist with its implementation; (vi) establishes procedures and a deadline for persons to request exclusion from the Class; (vii) establishes procedures and a deadline for Class Members to object to the terms of the Class Settlement, Plan of Allocation, or requested attorneys' fees and expenses; and (viii) establishes procedures and a deadline for Class Members to submit Proofs of Claim for payments from the Net Class Settlement Fund.

If the Court grants preliminary approval to the Class Settlement, Lead Plaintiffs respectfully seek the following proposed timetable for finalizing the Class Settlement:

- **Notice Date**: Mailing of individual Notice of Pendency and Proposed Settlement of Class Action and Derivative Action and Motion for Attorneys' Fees and Expenses ("Notice") and Proof of Claim and Release Form ("Proof of Claim") to all Settlement Class Members who can be identified through reasonable effort within ninety (90) calendar days after entry of the Class Preliminary Approval Order (the "Notice Date").

2

- **Publication Notice**: Publication of Summary Notice of Pendency of Class Action and Proposed Settlement and Motion for Attorneys' Fees and Expenses ("Summary Notice") in *Investor's Business Daily* and on the *PRNewswire* within fourteen (14) calendar days after the Notice Date.

- **Final Approval Papers Due**: Lead Plaintiffs request that the deadline for filing with the Court any submissions in support of final approval of the Class Settlement, approval of the Plan of Allocation, and Lead Counsel's application for an award of attorneys' fees and expenses be thirty-five (35) calendar days before the Class Settlement Hearing.

- **Objection Deadline**: Lead Plaintiffs request that the deadline for submission of requests for exclusion from the Class or objections to the Class Settlement, Plan of Allocation, or application for attorney's fees and expenses be twenty-one (21) calendar days before the Class Settlement Hearing.

- **Reply Deadline**: Lead Plaintiffs request that the deadline for filing with the Court any reply papers in support of the Class Settlement and the Funds' Plan of Allocation (including any replies to those commenting on or objecting to the Class Settlement and request for attorneys' fees and expenses) be ten (10) days prior to the Class Settlement Hearing.

- **Compliance Deadline**: Lead Plaintiffs request that the deadline for filing with the Court one or more affidavits or declarations by Lead Counsel or the Claims Administrator showing timely compliance with the mailing and publication requirements for notice to the Class be seven (7) calendar days before the Class Settlement Hearing.

- **Final Approval Hearing**: Lead Plaintiffs request that the Final Approval Hearing be held at the Court's convenience, but in any event no earlier than 150 days after the entry of the Preliminary Approval Order, so that sufficient time is left between the date the Notice is

mailed and the deadline for opt-outs or objections, and for Defendants to issue notice pursuant to the Class Action Fairness Act of 2005 ("CAFA").

- **Postmark Deadline for Submission of Proofs of Claim**: one hundred fifty (150) calendar days after the Notice Date.

## I.   PROCEDURAL AND FACTUAL BACKGROUND

### A.   Summary of Allegations and Claims

As the allegations and claims in this action are familiar to this Court, Lead Plaintiffs provide only a brief overview.  *See* Consolidated Amended Class Action Complaint ("CAC") ¶¶ 113-766 (ECF No. 394).

This securities class action arose from the 2007-2008 collapse of three Regions Morgan Keegan mutual funds that invested in bonds and other fixed income securities. The three open-end funds ("Funds"), managed by a Regions Financial Corporation subsidiary, Morgan Asset Management, Inc., were the separate portfolios of what was then known as the Morgan Keegan Select Fund, Inc., a registered investment company; the three Funds were then known as Regions Morgan Keegan Select Short Term Bond Fund ("STF"), the Regions Morgan Keegan Select Intermediate Bond Fund ("IBF"), and the Regions Morgan Keegan Select High Income Fund ("HIF").[3] This litigation also involves a shareholders derivative action that sought to recover, on behalf of the Funds, damages suffered by the Funds, the settlement of which is addressed in a separate motion.

---

[3]     Morgan Keegan Select Fund, Inc. is now known as the Helios Select Fund, Inc., and the three portfolios are now known as the Helios Select Short Term Bond Fund, the Helios Select Intermediate Bond Fund, and the Helios Select High Income Fund. They are no longer operating registered investment companies, have deregistered, and are being liquidated.

Lead Plaintiffs alleged, *inter alia*, that the Funds were marketed as bond funds that, with respect to STF and IBF, were suitable for investors seeking to preserve their capital and, with respect to HIF, was safer than other high-yield funds. Plaintiffs alleged that, notwithstanding such representations and unbeknownst to investors in the Funds, the Funds invested a disproportionate amount of their assets in low-ranking tranches of asset-backed and mortgage-backed securities as compared with their respective peer bond funds. Plaintiffs also alleged that the Funds were managed in such a manner that they incurred substantial undisclosed liquidity, valuation, concentration and credit risks and employed leverage notwithstanding representations that leverage would not be used.

Plaintiffs further alleged that the Funds and their management and underwriter represented that certain benchmarks were appropriate yardsticks by which to measure their respective performances when, in fact, the composition of those benchmarks was materially different than the composition of the Funds' portfolios, and these differences were not disclosed, thus misleading investors as to the unique risks of an investment in the Funds. Plaintiffs alleged that the Funds' auditor failed to properly audit the Funds' financial statements to ensure that required financial statement disclosures were made. Plaintiffs alleged that these undisclosed risks existed at least by July 2006 and materialized from July 2007 through early 2008 when the markets for the securities in which the Funds had heavily invested disappeared, causing the Funds far greater losses than most of their peers because of their rapidly declining asset values amid accelerating redemptions and the forced sales of illiquid assets.

### B.   Procedural History

This action was filed by Plaintiffs on December 6, 2007, alleging violations of the Securities Act of 1933 ("1933 Act") and the Investment Company Act of 1940 ("ICA").  Plaintiffs filed a Consolidated Amended Class Action Complaint on November 30, 2009 (ECF No. 394) ("CAC"), which added facts regarding Defendants' alleged wrongdoing and added claims under the Securities Exchange Act of 1934 ("1934 Act"). On September 23, 2008, this Court issued an order consolidating one set of actions on behalf of purchasers of shares in the Funds under the style *In re Regions Morgan Keegan Open-End Mutual Fund Litigation*, No. 07-cv-02784 SHM-dkv (W.D. Tenn.) (the "Open-End Funds Action"), which is this action, and a separate set of actions on behalf of purchasers of shares in certain closed-end funds (also managed by Morgan Asset Management, Inc.) under the style *In re Regions Morgan Keegan Closed-End Fund Litigation*, No. 07-cv-02830 SHM-dkv (W.D. Tenn.) ("Closed-End Fund Litigation").  By its Order dated September 30, 2010 (ECF No. 272), the Court denied Defendants' motions to dismiss Plaintiffs' 1933 Act claims and granted their motions to dismiss Plaintiffs' 1934 Act and ICA claims. Plaintiffs and Defendants moved for reconsideration, and, by its Order dated December 30, 2010 (ECF No. 291), the Court denied both sets of motions.

On March 14, 2011, Lead Plaintiffs and the Funds jointly filed a Motion for Preliminary Approval of Partial Settlement (ECF No. 309) in the Class Action and in the related Derivative Action (ECF No. 103) ("Partial Settlement"). In connection with the Partial Settlement, which was opposed by the non-Funds Defendants, the Funds produced over 510,000 pages of documents, which included audit workpapers and related documents regarding the Funds' 2006 and 2007 audits. The Court has not ruled on this motion, which has now been rendered moot as a result of the proposed settlement addressed herein and, accordingly, has been withdrawn.  In June 2012,

Lead Plaintiffs moved for leave to file a proposed Second Consolidated Amended Class Action Complaint (ECF No. 392) ("SCAC"), which motion was stayed pursuant to agreement with Defendants pending the Court's decision regarding the Partial Settlement. The SCAC alleges additional wrongdoing by Defendants in support of the 1934 Act claims.  AS a condition of the Class Settlement Agreement, Defendants have stipulated to the filing of the SCAC, subject to reservation of all their rights and defenses as to any claims and allegations asserted in the SCAC.

     **C.**     **Settlement Negotiations**

In the summer of 2013, the Parties retained United States District Court Judge Layn Phillips (Ret.), an experienced mediator in complex class actions, to assist them in exploring a potential negotiated resolution of the claims asserted in the Lawsuits.  On July 18, 2013, Defendants provided Plaintiffs' Counsel with more than 6.7 million pages of confidential documents and other confidential information pursuant to an agreement in advance of the mediation.  On December 17 and 18, 2013, the Parties met with Judge Phillips in Chicago for two days of intensive settlement negotiations. The mediation sessions were preceded by an exchange of comprehensive mediation statements and supporting evidence, including information from expert reports and consultations with experts.  These settlement negotiations narrowed the Parties' differences and clarified the merits and value of the Parties' claims and defenses, but no agreement was reached.

Following the Chicago session, the Parties continued to negotiate through Judge Phillips, until these negotiations reached an impasse. On February 19, 2014, the Parties resumed settlement negotiations with Judge Phillips in New York City and reached an agreement-in-principle.  The Parties signed a "Proposed Term Sheet for Settlement of RMK Open-End Funds Litigation" consistent with the terms and conditions set forth herein.  The agreement-in-principle provided for certain of the Defendants other than the Funds to pay $125 million into a settlement fund for the

benefit of the Class and the Funds in settlement of the Class and Derivative Action Lawsuits. The settlement of both Lawsuits for $125 million ("Settlement") was achieved in the negotiations between Lead/Derivative Plaintiffs (in consultation with the Funds) and the RMK Defendants and PwC.

### D.      Settlement Consideration

The Settlement provides that all Released Defendant Parties will be released in exchange for payment by certain of the Defendants of $125 million in cash into an interest bearing escrow account for the benefit of the Class within ten (10) days after the Court enters the Class and Derivative Preliminary Approval Orders.  Of this $125 million, $110 million will be allocated to the Class Settlement Fund for the benefit of the Class.  This Class Settlement consideration and any accrued interest, after the deduction of attorney's fees and expenses awarded by the Court, notice and administration expenses, and taxes and related expenses (the "Net Class Settlement Fund"), will be distributed among all Settlement Class Members who submit timely and valid Proofs of Claim that are accepted by the Claims Administrator and approved by the Court ("Authorized Claimants"), in accordance with the Plan of Allocation.

The Derivative Settlement Agreement additionally provides that the $15 million to be paid to the Funds, after the deduction of attorney's fees and expenses awarded by the Court, notice and administration expenses, and taxes and related expenses (the "Net Funds Settlement Fund"), will be distributed to shareholders in the Funds who continued to hold shares in the Funds on May 29, 2009 ("Funds Shareholders"; "Funds' Distribution"). The Derivative Settlement Agreement further provides that the *pro rata* share of the Net Class Settlement Fund to be paid to those Settlement Class Members who are also Funds Shareholders who receive the Funds' Distribution will be reduced by their share of the Funds' Distribution. Based on available information, Lead

Plaintiffs believe that, except for those Funds Shareholders who are excluded from either the Settlement Class or from sharing in the Funds' Distribution by the terms of the Class and Derivative Settlement Agreements, all of the Funds Shareholders are also Settlement Class Members so that all but approximately 11% of the Net Funds Settlement Fund will inure to the benefit of the Settlement Class by virtue of the reduction of the Funds' Distribution. This set-off of the Funds' Distribution against what the Funds Shareholders will receive from the Net Class Settlement Fund ensures that all Class Members who incurred losses on their investments in the Funds during the Holders/Sellers Loss Settlement Class Period (July 3, 2006 through May 29, 2009) will be treated on equal terms in the Settlement.

## ARGUMENT

## I.   THE COURT SHOULD GRANT PRELIMINARY APPROVAL TO THE PROPOSED CLASS SETTLEMENT

### A.   Legal Standard

Courts strongly favor the resolution of complex litigation through settlement. *See*, *e.g.*, *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1976) ("Public policy strongly favors settlements of disputes without litigation."); *In re Nationwide Fin. Servs. Litig.*, 2009 WL 8747486, at *8 (S.D. Ohio Aug. 19, 2009) (approving a settlement in the case of "long and protracted litigation" and noting that "there is certainly a public interest in settlement of disputed claims that require substantial federal judicial resources to supervise and resolve"). Public policy especially favors settlements of class action disputes given their complexity, protracted nature, and substantial requirement of judicial resources. *See Union v. General Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) (emphasizing "the federal policy favoring settlement of class actions" as a justification for approval of settlements); *In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188,

at *7 (E.D. Mich. Dec. 13, 2011) ("The Sixth Circuit and courts in this district have recognized that the law favors the settlement of class action lawsuits.").

Court approval is required to settle a class action. Fed. R. Civ. P. 23(e).  The Sixth Circuit has outlined a three-part procedure for courts to follow in order to approve a class action settlement.  *Williams v. Vukovich*, 720 F.2d 909, 920-21 (6th Cir. 1983); *see also Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565-66 (6th Cir. 2001).  This procedure is as follows:

> (1) the court must preliminarily approve the proposed settlement, i.e., the court should determine whether the compromise embodied in the decree is illegal or tainted with collusion; (2) the members of the class must be given notice of the proposed settlement; and (3) a hearing must be held to determine whether the decree is fair to those affected, adequate and reasonable.

*Id.*

Preliminary approval is the first step in this process and such approval should be granted if "the proposed settlement falls within the range of possible approval, does not disclose grounds to doubt its fairness, and includes no obvious deficiencies." *Int'l Union v. Ford Motor Corp.*, 2006 WL 1984363, at *4 (E.D. Mich. July 13, 2006), *aff'd sub nom. Int'l Union v. General Motors Corp.*, 497 F.3d 615 (6th Cir. 2007).   In making this assessment, a court should base preliminary approval of the proposed settlement "upon its familiarity with the issues and evidence of the case as well as the arm's-length nature of the negotiations prior to the settlement." *Kizer v. Summit Partners, L.P.*, 2012 WL 1598066, at * 7 (E.D. Tenn. May 7, 2012) (quoting *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 903 (S.D. Ohio 2001)).  The following factors should guide the Court in determining whether preliminary approval is warranted:

> (1) the plaintiffs' likelihood of ultimate success on the merits balanced against the amount and form of relief offered in the settlement; (2) the complexity, expense and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the judgment of experienced trial counsel; (5) the

nature of the negotiations; (6) the objections raised by class members; and (7) the public interest.

*Id.*, *at* *8.

At the preliminary approval stage, "the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval." *In re Skechers Toning Shoe Prod. Liab. Litig.*, 2012 WL 3312668, at *7 (W.D. Ky. Aug. 13, 2012) (quoting David F. Herr, *Annotated Manual for Complex Litigation (Fourth)* § 21.662 (2012)). Instead, the Court need only "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of certification, proposed settlement, and date of the final fairness hearing." *Id.*  Under this approach, the Class Settlement warrants preliminary approval.

**B.** **The Proposed Class Settlement Was Produced through Good Faith, Arm's Length Negotiations among Experienced Counsel Facilitated by a Respected Private Mediator, Will be Distributed Fairly, and Lacks Obvious Deficiencies**

Courts accord considerable weight to the opinion of experienced and informed counsel who put time and expertise into negotiating a settlement. *See Sheick v. Automotive Component Carrier, LLC,* 2010 WL 3070130, at *13 (E.D. Mich. Aug. 2, 2010) ("[N]egotiations of the Settlement Agreement were conducted at arm's-length by adversarial parties and experienced counsel, which itself is indicative of fairness, reasonableness, and adequacy.); *In re Rio Hair Naturalizer Products Liab. Litig.,* 1996 WL 780512, at *14 (E.D. Mich. Dec. 20, 1996) ("Courts respect the integrity of and presume good faith in the absence of fraud or collusion in settlement negotiations unless someone offers evidence to the contrary.") (citing 2 Newberg on Class Actions 3d § 1151).

Here, the Class Settlement is the product of extensive, arm's length negotiations resulting from protracted litigation, including sessions with a highly experienced mediator in complex class

actions, Judge Layn Phillips (Ret.). The negotiations were well-informed by the exchange of comprehensive mediation statements and supporting evidence, including information and analyses from experts, as well as the provision of more than seven million pages of confidential documents and other confidential information to Lead Plaintiffs by Defendants pursuant to an agreement in advance of a two-day negotiation session and the Partial Settlement. On December 17 and 18, 2013, the Parties met with Judge Phillips in Chicago for two days of intensive settlement negotiations, which narrowed the Parties' differences but did not result in an agreement. The mediation continued thereafter, as Judge Phillips sought to further narrow the differences between Plaintiffs and certain of the Defendants regarding the settlement amount. On February 19, 2014, the Parties resumed settlement negotiations with Judge Phillips in New York City, which, after further negotiation, ultimately resulted in an agreement-in-principle and a signed "Proposed Term Sheet for Settlement of RMK Open-End Funds Litigation." *See* Fishbein Decl., Ex. 2 at 3.

The two mediation sessions and intervening negotiations with Judge Phillips were indispensable in airing the issues and obstacles to a resolution and clarifying the strengths and weaknesses of the Parties' claims and defenses. Judge Phillips' close involvement in the settlement negotiations strongly supports a finding that the negotiations were conducted at arm's length and without collusion. *See*, *e.g.*, *In re Southeastern Milk Antitrust Litig.*, 2012 WL 2236692, at *4 n.6 (E.D. Tenn. June 15, 2012) (noting that the participation of a "well respected" mediator helps support the court's conclusion that settlement negotiations were made at arm's length); *In re Delphi Corp. Sec., Derivative & ERISA Litig.*, 248 F.R.D. 483, 498 (E.D. Mich. 2008) (approving settlement negotiated by "one of the most prominent and highly skilled mediators of complex actions," Judge Phillips, and characterizing the settlement there as "outstanding work," the excellent outcome of which was "in great part a measure of his prodigious efforts and skill").

Lead Plaintiffs, through Lead Counsel, Liaison Counsel and their additional counsel, have conducted a thorough investigation relating to the claims, defenses, and underlying events and transactions that are the subject of the Lawsuits.  This process included reviewing and analyzing: (i) over seven million pages of nonpublic e-mails, valuation-related materials and other pertinent documents produced by the Funds, PricewaterhouseCoopers ("PwC") and the Morgan Keegan Defendants (including over 236,000 pages of audit workpapers produced by PwC); (ii) publicly available orders, reports and other information concerning the administrative enforcement proceedings brought by the SEC, multiple State securities regulators, and the Financial Industry Regulatory Authority ("FINRA") against certain Defendants related to some of the conduct at issue in the Lawsuits; (iii) documents filed publicly by the Funds and certain Defendants with the SEC; (iv) other publicly available information and data concerning the Funds and the claims asserted in the Complaints, including press releases, news articles, and other public statements issued by or concerning the Defendants; (v) research reports issued by financial analysts concerning the Funds and securities held in the Funds' portfolios; (vi) prospectuses and other offering documents related to the mortgage- and asset-backed securities in which the Funds' invested; and (vii) the applicable law governing the claims and potential defenses.  Plaintiffs' Counsel also reviewed the deposition transcripts of certain employees of Defendants taken in the regulatory enforcement actions that were based on some of the allegations in the Lawsuits. Plaintiffs' Counsel also consulted with qualified experts on damages and causation, accounting and auditing, and investment company issues.

Counsel for all Parties have significant experience prosecuting or defending securities class actions and are well informed about the strengths and weaknesses of the Parties' claims and defenses. *See also infra* at Part II.B.4.   The Settlement is the product of intensive, informed

negotiations among experienced counsel, is not the product of collusion, and, accordingly, deserves preliminary approval.

Finally, the "Settlement Agreement should be preliminarily approved if it . . . does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment to class representatives or of segments of the class, or excessive compensation for attorneys." *Dallas v. Alcatel-Lucent USA, Inc.*, 2013 WL 2197624 (E.D. Mich. May 20, 2013). As discussed above, the $110 million recovery (as augmented by the reduction for the Funds' Distribution) constitutes a significant and certain benefit for Settlement Class Members. In addition to the cash recovery, all Class Members, including Funds Shareholders who are Settlement Class Members, will be treated fairly on equal terms, each recovering their *pro rata* share of the overall settlement, if the Court approves both the Class and Derivative Settlement Agreements, including the Class Plan of Allocation.

Under this settlement structure, no Settlement Class Members, and no segment of the Settlement Class, will receive a benefit not shared on a *pro rata* basis by all Settlement Class Members. This structure recognizes that (i) the Funds' recovery is for claims that are based on alleged misconduct that occurred while all Settlement Class Members were investors in the Funds during the period July 2006 through May 2009 and (ii) the value of those claims was not reflected in the Funds' net asset values at which Settlement Class Members redeemed during said period. Settlement Class Members who mitigated their losses by redeeming earlier than others are not penalized for doing so, and Settlement Class Members who did not redeem until later do not get a windfall.

    **C.**    **The Proposed Settlement Falls Well Within a Range of Reasonableness and Warrants the Dissemination of Class Notice and a Hearing on Final Approval**

This Court should approve the proposed Class Settlement if it is "within the range of fairness and reasonableness." *Brent v. Midland Funding, LLC*, 2011 WL 3862363 (N.D. Ohio Sept. 1, 2011).  Lead Plaintiffs believe the proposed Class Settlement represents an excellent result for the Class in light of the risks, costs and duration of continued litigation, and falls well within a range of what is considered fair, reasonable, and adequate. The $110 million recovery (or up to almost the entire $125 million, net of fees, expenses and taxes, giving effect to the reduction of the share of the Net Class Settlement Fund to be paid to Funds Shareholders who are also Settlement Class Members) compares favorably with other securities class action settlements in recent years, and is nearly double the class settlement recently approved in the Closed-End Fund Litigation.  *In re Regions Morgan Keegan Closed-End Fund Litigation*, No. 2:07-cv-02830-SHM-dkv (slip op.) (W.D. Tenn. Jan. 4, 2014) (Order Preliminarily Approving Settlement and Providing For Notice) (ECF No. 276).

A study of such settlements by NERA Economic Consulting, a firm that frequently consults with defendants in securities cases on damages and causation issues, reported that in 2013 the median settlement amount for securities class actions was $9.1 million, and that between 1996 and 2013, median settlement amounts in securities class actions ranged between $3.7 and $9.1 million, with a high of $12.3 million in 2012.  Renzo Comolli & Svetlana Strykh, *Recent Trends in Securities Class Litigation: 2013 Full-Year Review*, at 28 (NERA January 21, 2014), Fishbein Decl. Ex. 3.  The report of an annual study by Cornerstone Research, Inc. further notes that the median settlement amount in 2013 for securities class actions alleging both 1933 Act and 1934 Act claims was $11.7 million, with a median settlement amount of $8.8 million for those cases settling after more than five years of litigation. Laarni Bulan, Ellen M. Ryan & Lauren E.

Simmons, *Securities Class Action Settlements: 2013 Review and Analysis*, at 12, 19 (Cornerstone Research 2013), Fishbein Decl. Ex. 4.

Continued litigation of this action would be subject to the many risks of complex securities litigation. Defendants have raised a number of defenses which they would continue to raise at summary judgment and trial. In considering whether to enter into the proposed Class Settlement, Lead Plaintiffs, represented by experienced counsel, took into account the risks inherent in establishing reliance, scienter, loss causation, and recoverable damages, as well as the expense and likely duration of continued litigation. *See Southeastern Milk*, 2012 WL 2236692, at *4 (noting risk, expense and delay of further litigation as factors supporting final approval of settlement).

Lead Plaintiffs and their counsel agreed to settle this Action based on their careful investigation and evaluation of the facts and law relating to the allegations in the Complaint, and consideration of the issues noted and views expressed by Judge Phillips and Defendants during the mediation process. *See Sheick*, 2010 WL 300130, at* 13 ("Plaintiffs' Counsel's informed and reasoned judgment and their weighing of the relative risks and benefits of protracted litigation are entitled to deference.").

Lead Plaintiffs and their counsel also took into consideration the substantial cash benefit to Settlement Class Members and the desirability of providing certain and effective relief to Settlement Class Members now, as opposed to years later after additional contentious fact discovery, dispositive motion practice, and a lengthy trial, followed by appeals. There is no doubt that in any such trial both sides would have to present dense and complex information, including a "battle of the experts" on damages calculations and securities disclosure requirements. The results of the trial would almost certainly not end the litigation, as one side would likely appeal.

Absent a settlement, Settlement Class Members would have to wait substantially longer before they obtained any relief, even assuming Plaintiffs were successful and overcame every obstacle.

In conclusion, Lead Plaintiffs respectfully submit that if the Court preliminarily approves the Class Settlement, the Court ultimately will find that the Class Settlement is fair, reasonable, adequate, and deserving of final approval.  Nothing in the course of the settlement negotiations or the terms of the Class Settlement itself disclose grounds to doubt its fairness. Rather, the Lead Plaintiffs' counsel's review and analysis of over seven million pages of documents and other data, Plaintiffs' counsel's extensive legal analysis of the Class's claims, the substantial recovery to the Settlement Class, the arm's-length nature of the negotiations, and the participation of sophisticated counsel and a well-respected mediator support a finding that the proposed Class Settlement is sufficiently fair, reasonable, and adequate to justify notice to the Class and a hearing on final approval. Lead Plaintiffs respectfully request preliminary approval of the Settlement.

## II.   THE COURT SHOULD GRANT PRELIMINARY CLASS CERTIFICATION FOR PURPOSES OF THE SETTLEMENT

### A.   Applicable Standards

In granting preliminary approval of the Settlement, the Court should also preliminarily certify the Class under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. A party seeking class certification must first show that the class action satisfies the following four requirements set forth in Rule 23(a):

> (1) the class is so numerous that joinder of all members is impracticable;

> (2) there are questions of law or fact common to the class;

> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

> (4) the representative parties will fairly and adequately protect the interests of the class.

17

The party seeking class certification must also satisfy one of the categories set forth in Rule 23(b).   Certification is sought pursuant to Rule 23(b)(3), which requires that the Court find that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Courts have long acknowledged the propriety of certifying a class solely for purposes of a class action settlement. *See*, *e.g.*, *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 517 (E.D. Mich. 2003) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619 (1997)). Here, Defendants have stipulated to certification for settlement purposes.  Fishbein Decl. Ex. 1, p. 21-22.

**B.      This Action Meets the Requirements of Rule 23(a)**

**1.      The Class is Sufficiently Numerous**

Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable. No "strict numerical test" determines the impracticability of joinder.  *Kizer*, 2012 WL 1598066, at *3. *See Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004); *Skechers*, 2012 WL 3312668 at *3. Moreover, a "court may assume that the numerosity requirement has been met in class action suits involving purchasers or sellers of nationally traded securities." *In re Kmart Corp. Sec. Litig.*, 1996 WL 924811, at *3 (E.D. Mich. Dec. 16, 1996).

During both the proposed Settlement Class Period (December 6, 2004 through May 29, 2009) and the period during which Settlement Class Members' losses and claims are to be measured (July 3, 2006 through May 29, 2009) ("Holders/Sellers Loss Period"), each of the Funds sold and redeemed millions of shares. At June 30, 2007, STF had 9.6 million shares outstanding, IBF had 107.1 million shares outstanding, and HIF 114.8 million, all of which were redeemed between June 30, 2007 and May 29, 2009. All of the Funds' shares outstanding on June 30, 2007

had been sold by the Funds in a public offering to investors pursuant to registration statements filed with the SEC.  Based on information regarding IBF and HIF shareholders accounts on August 7, 2007, there were over 7500 HIF accounts and over 17,000 IBF accounts. Although the precise number of investors may not be currently known, the proposed Settlement Class plainly exceeds the minimum numbers needed to satisfy numerosity under Rule 23. *See Delphi*, 248 F.R.D. at 493.

### 2.       Common Questions of Law and Fact Exist

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed R. Civ. P. 23(a)(2).  "Federal securities cases easily satisfy the commonality requirement of Rule 23(a)(2)." *Delphi*, 248 F.R.D. at 494.  The CAC alleges numerous issues of fact and law common to all Settlement Class Members, including whether Defendants violated the federal securities laws, whether Defendants' public statements were materially false and misleading, and whether the registration statement and prospectuses contained material misstatements or omitted to state material information.  With respect to Plaintiffs' 1933 Act claims, the Defendants subject to those claims can attempt to sustain their burden of establishing an affirmative defense pursuant to the applicable statute in a manner common to all Settlement Class Members.   With respect to Plaintiffs' 1934 Act claims, common issues of fact and law underlie whether the Defendants subject to those claims acted with the requisite level of scienter and whether and to what extent the Class has suffered recoverable damages. The commonality requirement is met.

### 3.       The Proposed Class Representatives' Claims Are Typical of Those of Other Class Members

Under Rule 23(a)(3), "the claims or defenses of the representative parties" must be  "typical of the claims or defenses of the class" to justify class certification.  The typicality requirement "is not onerous." *Int'l Union*, 2006 WL 1984363, at *19. "A claim is typical if 'it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if

19

his or her claims are based on the same legal theory.'" *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007).

Lead Plaintiffs' claims are typical of the claims of those of the Settlement Class as a whole. The claims of all Settlement Class Members arise from the same alleged uniform course of conduct, namely, the alleged misrepresentations relating to the risks attendant to the complex asset-backed securities acquired by the Funds. Like all Settlement Class Members, Lead Plaintiffs purchased their shares during the Settlement Class Period and held and redeemed the Funds' shares during the Holders/Sellers Loss Period and were damaged as a result of material misstatements. The typicality requirement is met.

### 4. The Proposed Class Representatives Will Fairly and Adequately Protect the Interests of the Class

To satisfy Rule 23(a)(4)'s requirement of adequacy of representation, two showings must be made: "(1) the representatives must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Grier v. Goetz*, 2012 WL 1393057, at *11 (M.D. Tenn. Apr. 23, 2012). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Gooch v. Life Inv. Ins. Co. of Am.*, 672 F.3d 402, 429 (6th Cir. 2012); *Kizer*, 2012 WL 1598066, at *5.

First, Lead Plaintiffs have common interests with all unnamed Settlement Class Members. Lead Plaintiffs purchased shares of the Funds during the Purchasers Class Period and held and redeemed such shares during the Holders/Sellers Loss Period, as did all other Settlement Class Members, and have been similarly damaged by Defendants' conduct. Lead Plaintiffs and Settlement Class Members share the common goal of maximizing recovery, and there is no conflict

between them. *See Int'l Union*, 2006 WL 1984363, at *19-20 (finding no conflict between named plaintiff and class members where both groups sought maximum recovery).

Second, Court-appointed Lead Counsel and Liaison Counsel are amply qualified and experienced, and have conducted the Action vigorously and effectively on behalf of Lead Plaintiffs and the proposed Class. Lockridge Grindal Nauen P.L.L.P. has extensive experience representing plaintiffs in securities class actions in courts throughout the nation. The firm has successfully prosecuted such actions for decades and has achieved significant results for its clients and certified investor classes. *See* Fishbein Decl. Ex. 5 (Lockridge Grindal Nauen P.L.L.P. firm resume); *see also* Fishbein Decl. Ex. 6 (Liaison Counsel, Apperson Crump, firm resume); Fishbein Decl. Ex. 7 (Additional Counsel, Zimmerman Reed, firm resume). The adequacy-of-representation requirement is met.

### C.      The Proposed Class Satisfies Rule 23(b)(3)

Under Rule 23(b)(3), common questions of law or fact must predominate over any questions affecting only individual members, and a class action should be superior to other available methods for the fair and efficient adjudication of the controversy. Both requirements are met here.

### 1.      Common Questions of Law and Fact Predominate

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "Predominance is a test readily met in certain cases alleging . . . securities fraud[.]" *Id*. at 625. A district court must determine if the questions common to the class are "at the heart of the litigation." *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007).

The common questions of law and fact set forth above predominate over any conceivable individual questions because Defendants' alleged misconduct affected all Settlement Class Members in the same manner. Each Settlement Class Member would need to establish the same facts to prove Defendants' alleged violations of the 1934 Act, that is, whether Defendants' public statements, including their financial statement disclosures, during the Settlement Class Period misrepresented or omitted material facts about the Funds with respect to, *inter alia*, the risks of investing in the Funds and whether the Funds were being managed in accordance with their investment objectives, policies and restrictions; whether the Defendants acted knowingly, or with severe recklessness, in allegedly misrepresenting or omitting those material facts; whether Defendants wrongful conduct caused the Class's losses; and whether Plaintiffs and other Settlement Class Members suffered damages, as well as the appropriate measure thereof.

Accordingly, Plaintiffs are able to present common legal and factual arguments regarding all elements of their claims, thus satisfying the predominance requirement of Rule 23(b)(3).

### 2.      A Class Action Is the Superior Method for Resolution

Rule 23(b)(3) also requires that "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy," and provides the following factors for consideration when determining whether a class action is superior: "(a) the class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against class members; [and] (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum[.]"[4] Fed. R. Civ. P. 23(b)(3)(A)-(C). Here, as with most securities class

---

[4]      "[T]he likely difficulties in managing a class action" is a fourth consideration generally relevant to whether the superiority requirement is met. Fed. R. Civ. P. 23(b)(3)(D). "Confronted with a request for settlement-only class certification," however, "a district court need not inquire

actions, class action treatment is the best and, indeed, the only practicable means for adjudicating the controversy. *See Bovee v. Coopers & Lybrand*, 216 F.R.D. 596, 607 (S.D. Ohio 2003) ("It is well-recognized that class actions are a particularly appropriate means for resolving securities fraud actions.") (citation omitted); *Castillo v. Envoy Corp*., 206 F.R.D. 464, 474 (M.D. Tenn. 2002) ("Courts have generally considered that class actions are the most favorable means of adjudicating federal securities fraud claims.").

The scope and complexity of Plaintiffs' claims against Defendants, together with the massive cost of litigating these claims, make it unlikely that the vast majority of Settlement Class Members would be able to seek relief in individual actions without class certification.[5] *See In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig*., 722 F.3d 838, 861 (6th Cir. 2013) ("Use of the class method is warranted particularly because class members are not likely to file individual actions—the cost of litigation would dwarf any potential recovery."). Accordingly, the Court should certify the Class for purposes of the Settlement.

### D.    The Court Should Appoint Lead Counsel as Class Counsel

"[A] court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1). Plaintiffs respectfully request that Lockridge Grindal Nauen be appointed Class Counsel for the Settlement Class. Lockridge Grindal Nauen has represented and will continue to fairly and

---

whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Cardizem CD*, 218 F.R.D. at 517 (quoting *Amchem*, 521 U.S. at 619).

[5]    Some of the Funds' investors chose to pursue FINRA arbitrations or individual actions. The only respondents in the FINRA arbitrations were Morgan Keegan and certain FINRA registered individual respondents.  Of those individual actions in court of which Plaintiffs' counsel are aware, none sued PwC, notwithstanding that in the view of Plaintiffs' counsel, substantial accounting and auditing issues are presented by the Funds' financial disclosures; nor did any of such actions seek to establish the multiplicity of complex facts alleged in Plaintiffs' proposed SCAC.

adequately represent the Class.  Proposed counsel are knowledgeable about the applicable law, experienced in handling class actions, have performed substantial work in pursuing the claims and in reaching a settlement, and have committed the necessary resources to representing the Class. Rule 23(g)(1)(A); *see* Fishbein Decl. Ex. 5.

## III.   THE COURT SHOULD APPROVE THE PROPOSED FORMS OF NOTICE AND PLAN FOR PROVIDING NOTICE TO THE CLASS

Lead Plaintiffs request that the Court approve the form and content of the proposed Notice and Summary Notice.  *See* Exs. A-1 and A-3 to Fishbein Decl. Ex. 1.  The Notice is written in plain language and features a question-and-answer format that sets out the relevant information and answers most questions Class Members will have. Consistent with Rules 23(c)(2)(B) and 23(e)(1), the proposed "long form" Notice will be mailed to all potential Settlement Class Members who can be identified and apprises them of (among many other disclosures) the nature of the action, the definition of the class to be certified for purposes of the Class Settlement, the Settlement Class claims and issues, and the claims that will be released, and how the Settlement Amount will be distributed. The Notice also advises that a Settlement Class Member may enter an appearance through counsel if desired; notes that the Court will exclude from the Settlement Class any Settlement Class Member who requests exclusion (and sets forth the procedures and deadline for doing so); identifies those who are excluded from the Settlement Class pursuant to the Class Settlement Agreement; describes the binding effect of a judgment on Settlement Class Members under Rule 23(c)(3); how and by when to object to the proposed Class Settlement, Plan of Allocation or requested attorneys' fees and expenses; how and by when to submit a Proof of Claim to share in the Net Class Settlement Fund; and the date, time and location of the final Class Settlement Hearing. *See Kizer*, 2012 WL 1598066, at *3 (approving notice that stated the settlement terms and that class members have the option to object to the settlement and requested

24

attorneys' fees); *Skechers*, 2012 WL 3312668 at \*11 (approving notice that includes benefits provided by the settlement, how to opt-out or object to the settlement, date of final fairness hearing, and contact information of relevant attorneys).

The Notice also satisfies the PSLRA's separate disclosure requirements by, among other things, stating the amount of the Class Settlement as a percentage of Settlement Class Members' losses during the Holders/Sellers Loss Period and, it is expected, on an average per Settlement Class share basis[6]; providing a brief statement explaining the reasons why the Parties are proposing the Settlement; stating the amount of attorney's fees and maximum amount of expenses (both on an aggregate and average per share basis) that Lead Counsel will seek; and providing the names, addresses, and telephone numbers of representatives of the Claims Administrator and Lead Counsel who will be available to answer questions from Class Members. *See* 15 U.S.C. § 78u-4(a)(7). These disclosures are thorough and should be approved.

Lead Plaintiffs also request that the Court appoint Garden City Group ("GCG") as the Claims Administrator.  GCG has extensive relevant experience and is a nationally recognized notice and claims administration firm. Its staff consists of experienced CPAs, IT specialists and various other professionals with substantial experience in notice and claims administration. GCG has administered several large securities class action settlements approved by courts, including the settlement of the Closed-End Fund Litigation. *See* Fishbein Decl. Ex. 8 (Claims Administrator resume).

Rule 23(c)(2)(B) requires a certified class to receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through

---

[6]     This information, which is not in the form of the Notice presented herewith, will be determined upon the calculation of the Settlement Class Members' claims prior to the mailing of the Notice.

reasonable effort." Similarly, Rule 23(e)(1) requires a court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." The proposed Notice plan readily meets these standards and is typical of Notice plans in similar actions. Lead Plaintiffs, through the Claims Administrator, will cause the Notice, including the proposed Plan of Allocation and Proof of Claim, to be mailed by first class mail to every Settlement Class Member who can be identified through reasonable effort. The Summary Notice, which summarizes the essential Settlement terms and informs readers how to obtain the long-form Notice, will be published in *Investor's Business Daily* and transmitted over *PR Newswire*, a national business-oriented wire service.

The notice program clearly satisfies the requirements of Rule 23 and due process, and should be approved by the Court.

## **CONCLUSION**

Based on the arguments presented herein, Lead Plaintiffs respectfully request that the Court grant this motion and issue the proposed Class Preliminary Approval Order submitted herewith to grant preliminary approval of the proposed Class Settlement, approve the proposed form and method of providing notice of the Class Settlement to the Settlement Class Members, schedule the Class Settlement Hearing, and grant such other and further relief that the Court may deem to be appropriate.

DATED:  January 22, 2015       **LOCKRIDGE GRINDAL NAUEN P.L.L.P.**

*s/Richard A. Lockridge*

Richard A. Lockridge
Vernon J. Vander Weide
Gregg M. Fishbein
100 Washington Avenue South
Suite 2200
Minneapolis, MN  55401
Tel:  (612) 339-6900
Fax:  (612) 339-0981
gmfishbein@locklaw.com

*Lead Counsel for Plaintiffs*

**APPERSON CRUMP PLC**

s/ Jerome A. Broadhurst
Jerome A. Broadhurst, TN BPR 12529
Charles D. Reaves, TN BPR 22550
6070 Poplar Avenue, Sixth Floor
Memphis, TN 38119-3954
Tel : 901-260-5133
Fax : 901-435-5133
jbroadhurst@appersoncrump.com

*Liaison Counsel for Plaintiffs*

**ZIMMERMAN REED, P.L.L.P.**
Carolyn G. Anderson
Patricia A. Bloodgood
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone:  612-341-0400
Fax: 612-341-0844
Carolyn.Anderson@zimmreed.com

*Additional Counsel for Plaintiffs*

27

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that this 22nd day of January, 2015, a true and correct copy of the forgoing document was served by electronic means via e-mail transmission (including the Court's ECF System) on the following:

Shepherd D. Tate, Esq.
Michael A. Brady, Esq.
**Bass, Berry, & Sims, PLC**
100 Peabody Place, Suite 900
Memphis, TN 38103-3672


Michael L. Dagley, Esq.
Britt K. Latham, Esq.
W. Brantley Phillips, Jr., Esq.
**Bass, Berry, & Sims, PLC**
150 Third Avenue South, Ste. 2800
Nashville, TN 37201

David B. Tulchin, Esq.
David E. Swarts, Esq.
**Sullivan & Cromwell, LLP**
125 Broad Street
New York, NY 10004

S. Lawrence Polk, Esq.
**Sutherland Asbill & Brennan LLP**
999 Peachtree Street, NE
Atlanta, GA 30309-3996

Jeffrey Maletta, Esq.
Nicole A. Baker, Esq.
**K & L Gates**
1601 K Street NW
Washington, DC 20006

Emily Nicklin, Esq.
Timothy A. Duffy, Esq.
Kristopher Ritter, Esq.
Devon M. Largio, Esq.
**Kirkland & Ellis**
200 East Randolph Dr., Ste. 5400
Chicago, IL 60601-6636

Leo Maurice Bearman, Jr., Esq.
Eugene J. Podesta, Jr., Esq.
**Baker Donelson Bearman Caldwell
& Berkowitz**
165 Madison Avenue, Suite 2000
Memphis, TN 38103

Peter S. Fruin, Esq.
Scott S. Brown, Esq.
Luther M. Dorr, Jr., Esq.
Maibeth J. Porter, Esq.
**Maynard Cooper & Gale PC**
2400 Regions Harbert Plaza
1901 Sixth Avenue North
Birmingham, AL 35203

R. Hal Meeks, Jr., Esq.
Amanda N. Wilson, Esq.
**James Bates Brannan Grover LLP**
3339 Peachtree Street, NE
Suite 1700
Atlanta, GA 30326

s/ Jerome A. Broadhurst
Jerome A. Broadhurst

29